No. 23-16091

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

HOWARD JARVIS TAXPAYERS ASSOCIATION, *et al.*,

*Plaintiffs-Appellants,*

v.

CITY OF SAN JOSE,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Northern District of California
Consolidated Case Nos. 5:22-cv-00501-BLF and 5:22-cv-02365-BLF
Hon. Beth Labson Freeman

**APPELLANTS' OPENING BRIEF**

Jonathan M. Coupal, SBN 107815
Timothy A. Bittle, SBN 112300
Laura E. Dougherty, SBN 255855
Howard Jarvis Taxpayers Foundation
1201 K Street, Ste. 1030
Sacramento, CA 95814
Telephone: (916) 444-9950

*Attorneys for Appellants*

## <u>TABLE OF CONTENTS</u>

RULE 26.1 DISCLOSURE STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

STATEMENT OF ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

I.    PLAINTIFFS' FIRST AMENDMENT CLAIMS SHOULD NOT
      HAVE BEEN DISMISSED BECAUSE THEY ARE RIPE AND
      MERITORIOUS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

      A.    *Plaintiffs' Rights Should Not Hang In Limbo Pending
            Implementation*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

      B.    *Plaintiffs' First Amendment Claims Are Ripe Enough For Facial
            Review*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

II.   PLAINTIFFS' UNVOTED TAX CLAIM SHOULD NOT HAVE BEEN
      DISMISSED AS IT WAS ADEQUATELY PLED, IS DISTINGUISHABLE
      FROM *SCHMEER*, AND IS NONETHELESS ALLOWED UNDER
      *SCHMEER*, A STATE CASE THAT THE FEDERAL COURTS
      SHOULD NOT EXTEND BEYOND ITS FACTS. . . . . . . . . . . . . . . . . . 35

      A.    *The Complaint Contains All Elements Needed To Support
            The 6th Claim*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

      B.    *This Case Is Distinguishable From* Schmeer. . . . . . . . . . . . . . . . 40

            1.    *The Fee Is Not Currently Being Paid To A Private
                  Entity*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

2.    *The Facts Of This Case Are Distinguishable From* Schmeer*'s Facts*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

3.    Schmeer *Contains Its Own Exception, Which Applies To This Case*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

C.    *This Court Should Not Extend* Schmeer *When the State Courts Haven't*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

## <u>TABLE OF AUTHORITIES</u>

**PAGE(S)**

## CASES

*303 Creative LLC v. Elenis*
143 S. Ct. 2298 (2023). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 23

*Ashcroft v. Iqbal*
556 U.S. 662 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35-36

*Babbitt v. United Farm Workers Nat'l Union*
442 U.S. 289 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35-36

*California Chamber of Commerce v. State Air Resources Board*
(2017) 10 Cal.App.5th 604. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Cal. Motor Transp. Co. v. State Bd. of Equal.*
31 Cal.2d 217 (1947). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

*City of Madera v. Black*
181 Cal. 306 (1919). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49, 52

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*
657 F.3d 936 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 34

*Conley v. Gibson*
355 U.S. 41 (1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35-36

*Friedland v. City of Long Beach*
62 Cal.App.4th 835, 842 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Griffith v. City of Santa Cruz*
207 Cal.App.4th 982 (2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

*Hill RHF Hous. Partners, L.P. v. City of L.A.*
12 Cal.5th 458 (2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

4

*Home Builders Assn. v. City of Madison*
143 F.3d 1006 (5th Cir. 1998).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50, 51

*In re Lorber Industries of California, Inc.*
675 F.2d 1062 (9th Cir. 1982).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49-50, 51

*In re Southeast Banking Corp.*
69 F.3d 1539 (11th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Jacks v. City of Santa Barbara*
3 Cal.5th 248, 263 (2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55-56

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*
138 S. Ct. 2448 (2018). . . . . . . . . . . . . . . . . . . . . . . . 18, 20, 21, 30-31, 32, 33, 34

*Jones v. Metro. Denver Sewage Disposal Dist.*
537 F. Supp. 966 (D. Colo. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Karasek v. Regents of the Univ. of Cal.*
956 F.3d 1093 (9th Cir. 2020).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Knox v. City of Orland*
4 Cal.4th 132 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49, 50

*Knox v. SEIU, Local 1000*
567 U.S. 298 (2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Lehnert v. Ferris Faculty Assn.*
500 U.S. 507 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Leslie's Pool Mart v. Dept. of Food & Agric.*
(1990) 223 Cal.App.3d 1524.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49, 50

*Libertarian Party of L.A. Cnty. v. Bowen*
709 F.3d 867 (9th Cir. 2013).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*
540 F.3d 1049 (9th Cir. 2008).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*MGIC Indem. Corp. v. Weisman*
803 F.2d 500 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Mills v. Cnty. of Trinity*
108 Cal.App.3d 656 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

*Nat'l Ass'n for Gun Rights, Inc. v. City of San Jose*
No. 22-cv-00501-BLF, 2022 U.S. Dist. LEXIS 138385
(N.D. Cal. Aug. 3, 2022). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

*Prof. Engineers in Cal. Gov. v. Kempton*
40 Cal.4th 1016 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

*Reese v. BP Exploration (Alaska) Inc.*
643 F.3d 681 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Roberts v. U.S. Jaycees*
468 U.S. 609 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 21, 30

*Schmeer v. County of Los Angeles*
213 Cal.App.4th 1310 (2013). . . . . . . . . . . . . . 19, 35, 40, 41, 42, 45-47,49-54, 56

*Sinclair Paint Co. v. State Bd. of Equalization*
15 Cal.4th 866 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*United Pacific-Reliance Ins. Co. v. Didomenico*
173 Cal.App.3d 673 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*United States v. Baxter Int'l, Inc.*
345 F.3d 866 (11th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*United States v. Stevens*
130 S.Ct. 1577 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

## CONSTITUTIONS

**United States Constitution**

U.S. Const. art. VI, cl. 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**California Constitution**

Cal. Const. art. XIII C. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 41, 53, 55, 56
Cal. Const. art. XIII C, § 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40-41
Cal. Const. art. XIII C, § 1(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
Cal. Const. art. XIII C, § 1(e). . . . . . . . . . . . . . . . . . . . 19, 38, 41, 53, 54, 55
Cal. Const. art. XIII C, § 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40, 41
Cal. Const. art. XIII C, § 2(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 36, 38, 40

## STATUTES

**United States Code**

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
28 U.S.C. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
28 U.S.C. § 1367. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
28 U.S.C. § 1391(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
28 U.S.C. § 1391(c)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**California Code of Civil Procedure**

§ 416.50. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
§§ 860 *et seq.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 21
§ 864. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**California Government Code**

§ 34501. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**San Jose Municipal Code**

§ 1.08.010. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
§ 10.32.210(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
§ 10.32.215. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 37
§ 10.32.200. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
§ 10.32.220. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 47, 48
§ 10.32.220(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
§ 10.32.220(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

§ 10.32.240(A).................................................... 14
§ 10.32.235. ............................................... 31, 46-47
§ 10.32.245. ...................................................... 14

## RULES

### Federal Rules of Civil Procedure

§ 8(a)(2)......................................................... 35
§ 12(b)(6)........................................................ 12

## MISCELLANEOUS

https://sanjose.legistar.com/View.ashx?M=F&ID=10972300&
    GUID=8729FAF4-9C72-49E8-B07A-2FEB3A618FBE.. .............. 23
https://www.sanjoseca.gov/home/showpublisheddocument/87508............ 24
https://www.sanjoseca.gov/home/
showpublisheddocument/97428/638189081853400000. .................... 38
https://www.sanjoseca.gov/home/showpublisheddocument/106960/
    638355445275230000..........................................  38

## RULE 26.1 DISCLOSURE STATEMENT

The Howard Jarvis Taxpayers Association is an IRC § 501(c)(3) nonprofit public benefit corporation.  It has no parent corporation.  No publicly held corporation owns stock therein.

Date:  December 20, 2023.

> JONATHAN M. COUPAL
> TIMOTHY A. BITTLE
> LAURA E. DOUGHERTY
>
>   */s/ Timothy A. Bittle*
> Timothy A. Bittle
> *Attorneys for HJTA Plaintiffs-Appellants*

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction over this case pursuant to the Supremacy Clause, U.S. Const. art. VI, cl. 2, and 28 U.S.C. § 1331, granting District Courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Specifically, the District Court had original jurisdiction of plaintiffs' claim under the First Amendment that defendant City of San Jose, by requiring all gun owners within the city to pay an annual fee to a city-designated nonprofit organization or else face a fine, is violating plaintiffs' rights against compelled speech and/or compelled association.

The District Court had supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over plaintiffs' state law claim that the City's gun fee is really a tax under article XIII C of the California Constitution which needed, but did not receive, voter approval.

Personal jurisdiction over defendant City of San Jose was established when plaintiffs, prior to removal of the case to federal court, personally served the City with a copy of the complaint and summons under California Code of Civil Procedure section 416.50.

Venue was proper in the District Court for the Northern District of California pursuant to 28 U.S.C. § 1391(b)(1) and (c)(2) because the City of San Jose is an entity with the capacity to sue and be sued (see Cal. Gov. Code § 34501)

10

whose incorporated territory and principal place of business are located within the geographical boundaries of the Northern District of California.

This Court of Appeals has jurisdiction pursuant to 28 U.S.C. § 1291 because the decision in the District Court disposing of all claims became final on July 28, 2023 (ECF # 109) and plaintiffs filed their notice of appeal on August 11, 2023 (ECF # 110, amended ECF ## 112, 113).[1]

## STATEMENT OF ISSUES

1.      Did the District Court err by dismissing plaintiffs' First Amendment claim challenging the annual gun harm reduction fee imposed by defendant City of San Jose as unlawful compelled speech and/or compelled association, based on the Court's finding that, although the claim is a facial challenge, it is "unripe" because the City has not yet designated a specific nonprofit organization to receive the fee?

2.      Did the District Court err by dismissing, for failure to state a claim, plaintiffs' state law claim challenging the City's gun fee as an unvoted tax in violation of the California Constitution, based on the Court's finding that a mandatory charge imposed by the government can never be a tax if it is not paid or remitted to a governmental agency?

---

[1]  Citations to "ECF #" refer to entries in the District Court docket for the consolidated Case No. 22-cv-00501-BLF.  Citations to "Case No. 5:22-cv-02365-BLF, ECF #" refer to docket entries in that case before it was consolidated with Case No. 22-cv-00501-BLF.

## STATEMENT OF THE CASE

This is an appeal from a dismissal of plaintiffs' Second Amended Complaint, ECF # 94 ("Complaint") for failure to state a claim under F.R.C.P. § 12(b)(6). Therefore, the facts of the case are the facts alleged in the Complaint, construed in the light most favorable to plaintiffs, and facts of which the Court can take judicial notice. (*Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).)

As alleged in the Complaint, the City of San Jose ("City") in February, 2022, passed Ordinance No. 30716 which requires any San Jose resident who owns a firearm to "obtain and continuously maintain in full force and effect a homeowner's, renter's or gun liability insurance policy ... specifically covering losses or damages resulting from any accidental use of the Firearm." (San Jose Muni. Code § 10.32.210(A).) This requirement of the ordinance is no longer challenged herein.[2]

The ordinance also requires San Jose gun owners to pay an "Annual Gun Harm Reduction Fee" to a "Designated Nonprofit Organization" that the City

---

[2] Plaintiff National Association of Gun Rights, the plaintiff in consolidated Case No. 5:22-cv-00501-BLF, did challenge the insurance requirement, but has withdrawn its appeal.

Manager will designate from time to time. The amount of the annual fee "will be set forth in the schedule of fees and charges established by resolution of the City Council." (S.J. Muni. Code § 10.32.215.) In the 2022/2023 schedule of fees, the Gun Harm Reduction Fee was set at $25 per year. It was renewed at $25 in the 2023/2024 schedule of fees. It is this fee that plaintiffs challenge herein.

The ordinance provides basic guidelines for expenditure of the fee by the nonprofit organization. It says, "expenditures may include, but are not necessarily limited to the following: (1) Suicide prevention services or programs; (2) Violence reduction or gender based violence services or programs; (3) Addiction intervention and substance abuse treatment; (4) Mental health services related to gun violence; or (5) Firearms safety education or training." (S.J. Muni. Code § 10.32.220(A).)

The ordinance further states, "The Designated Nonprofit Organization shall spend every dollar generated from the Gun Harm Reduction Fee, minus administrative expenses, exclusively for programs and initiatives designed to (a) reduce the risk or likelihood of harm from the use of firearms in the City of San Jose, and (b) mitigate the risk of physical harm or financial, civil, or criminal liability that a San Jose firearm owner or her family will incur through her possession of firearms." (S.J. Muni. Code § 10.32.220(C).)

Aside from these foundational guidelines, the ordinance provides that "the

13

City shall not specifically direct how the monies from the Gun Harm Reduction Fee are expended." (S.J. Muni. Code § 10.32.220(C).)

A gun owner's failure to pay the required fee to the designated private organization is punishable by a fine (S.J. Muni. Code § 10.32.240(A).) and confiscation of the owner's firearms "subject to a due process hearing" (S.J. Muni. Code § 10.32.245).  However, the parties disagree over whether a violation of the ordinance is lawfully punishable by confiscation.  Ironically, it is the City who contends that, although authorized to do so by its ordinance, city police cannot impound a firearm for a firearm-related violation of the law, with or without a due process hearing.  (City's Motion to Dismiss, ECF # 95 at PDF p. 13:20.)  Plaintiff Howard Jarvis Taxpayers Association ("HJTA"), however, alleged in the Complaint that "City police are authorized by law to, and often do, confiscate firearms when carried or used in violation of the law.  If a student brings a firearm to school, if someone is carrying a firearm in public without a CCW permit, if someone with a CCW permit is carrying a firearm while intoxicated, if someone purchases a firearm on the street without going through a federally licensed dealer, if someone discharges a firearm in the air on New Year's Eve, and for a host of other reasons, city police are authorized to, and often do, confiscate firearms when carried or used in violation of the law.  The City's ordinance makes it a violation of the law to own a gun in the City of San Jose unless you timely pay the annual

14

Gun Harm Reduction Fee. San Jose Municipal Code section 1.08.010 provides, "... Any person violating any of the provisions or failing to comply with any of the mandatory requirements of this Code or of any city ordinance, other than administrative provisions thereof, shall be guilty of a misdemeanor." (Complaint (ECF # 94) at PDF p. 21:24.)

Plaintiff HJTA's action was filed in the California Superior Court because, under California law, it was required to take the form of an *in rem* validation action against all persons, a procedure for which there is no comparable federal equivalent. (Cal. Code of Civ. Proc. §§ 860 *et seq.*) Nonetheless, the City removed the case to the United States District Court and on April 22, 2022, moved to dismiss the case as unripe because the City Manager had not yet designated a nonprofit organization to collect the fee, and the City Council had set $25 as only a "placeholder" amount until a nonprofit was designated and its budget known. (Case No. 5:22-cv-02365-BLF, ECF # 9.)

The City provided to the District Court an Implementation Status Report. (Case No. 5:22-cv-02365-BLF, ECF # 25.) The Report estimated that, "the contract with the yet-to-be-designated nonprofit organization will be finalized in December 2022." (*Id.* at 3:24.)

The District Court granted the City's motion to dismiss plaintiffs' claims as unripe, with leave to amend the complaint by February 2, 2023, based on the

15

Report's estimate that the City would select a nonprofit and finalize a contract by the end of December. (Case No. 5:22-cv-02365-BLF, ECF # 27.)

After that, the District Court consolidated HJTA's case with another case challenging San Jose's ordinance that had been filed by the National Association of Gun Rights ("NAGR"). The NAGR case (Case No. 5:22-cv-00501-BLF), unlike HJTA's case, attacked both the insurance requirement and the annual fee as violations of the Second Amendment.

On January 6, 2023, the City filed a Status Report in which it represented that the City Manager "has now completed all relevant tasks in the Implementation Timeline, except for the task listed as 'Finalize contract with designated nonprofit' with an estimated completion date of December 2022." (01/06/23 Status Report, ECF #85 at 3:6.)

The Status Report informed the Court that the City Manager had twice gone through a Request for Information process "for soliciting interest and information from nonprofit organizations regarding using the Fee's funds to provide the programs and services contemplated by the Ordinance." However, no qualified organizations responded to the City Manager's Requests for Information. (*Id.* at 3:13.) The City Manager therefore "has decided that the best approach to progress implementation at this point is to ... publish a full Request for Proposals .... Unfortunately, the lack of satisfactory RFI responses and the

16

upcoming RFP process will delay the steps necessary for full implementation."
(*Id.* at 3:20.) The Status Report offered no date by which these overdue "steps
necessary for full implementation" might be completed.

Based on the new Status Report, plaintiffs sought an extension of time for
filing the amended complaint, which was denied, so they timely filed an amended
complaint as ordered. (ECF # 94.)

The amended Complaint alleged that, "[d]espite the City's delay in
designating a nonprofit, and its equivocation on the ultimate amount of the fee,
this controversy is ripe because a fee of $25 has been imposed for the 2022/2023
fiscal year and, although the City is not currently enforcing proof of payment
(because there is no nonprofit to accept payment), the City has *not* waived the fee.
The 2022/2023 fee apparently will be due and payable once a nonprofit has been
designated." (*Id.* at PDF p. 11:15 [emphasis in orig.].)

The City moved to dismiss the amended Complaint for failure to state a
claim. The motion again sought dismissal of the First Amendment claims on
ripeness grounds, and dismissal of the unvoted tax claim on its merits. (ECF #
95.) On July 13, 2023, the District Court granted the motion with leave to amend
only the First Amendment claims once a nonprofit was designated. (ECF # 107.)
Because their facial First Amendment claims do not depend on the identity of the
nonprofit, plaintiffs notified the Court that they would not be filing another

17

amended complaint.  (ECF # 108.)  The Court entered a final judgment dismissing all claims on July 28, 2023.  (ECF # 109.)

Plaintiffs filed a Notice of Appeal on August 11, 2023.  On December 13, 2023, counsel for the NAGR (plaintiff in Case No. 5:22-cv-00501-BLF) notified counsel for HJTA (plaintiff in Case No. 5:22-cv-02365-BLF) that his client did not want to spend any more money on this case and was dropping its appeal.  This appeal, then, is limited to HJTA's claims that the San Jose annual gun fee is either an unvoted city tax or a compelled donation to a private nonprofit in violation of the First Amendment.

## SUMMARY OF ARGUMENT

Plaintiffs challenged, on its face, a new city ordinance requiring gun owners to pay an annual fee to a private nonprofit organization, designated from time to time by the City Manager in office, to fund the designated organization's provision of "gun harm reduction" services outlined in the ordinance.  The Court held that, until the current City Manager names a first nonprofit to receive the fee, the challenge is unripe because the Court cannot know whether plaintiffs' rights against compelled speech or compelled association have been violated.  This was error because, under *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31,* 138 S. Ct. 2448 (2018), *303 Creative LLC v. Elenis*, 143 S. Ct. 2298 (2023), and *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1994), plaintiffs have the right to not

18

associate with any group and the right to not support their work or message.

The District Court also erred in dismissing plaintiffs' state law claim that the City's gun fee constitutes a "tax" under article XIII C, § 1(e) of the California Constitution which defines a tax as "any levy, charge, or exaction of any kind imposed by a local government" unless it fits one of seven limited exceptions, none of which apply here. As a tax, the City's gun fee needed voter approval (Cal. Const., art. XIII C, § 2(d)) which it did not receive. The Court held that, under *Schmeer v. County of Los Angeles*, 213 Cal.App.4th 1310 (2013), the gun fee cannot be a tax because it is not paid or remitted to the government. But this case is distinguishable from *Schmeer* which simply held that an ordinance requiring retailers with no connection to the government to collect a 10 cent payment for a 10 cent product (a paper bag), and only from persons who voluntarily purchased the product, did not impose a tax. Applying any judicial test other than *Schmeer*'s private payee test, San Jose's gun fee would be a tax because it is: (1) imposed by the City; (2) compulsory; (3) for a public purpose; (4) not in return for a benefit received; (5) not to remedy a condition caused by the payer; and (6) to fund services available to people who don't pay the fee. Even *Schmeer* provided an exception for charges that, although not paid to the government, are "for the benefit of" the government. (*Schmeer*, 213 Cal.App.4th at 1328-29.) That is the case here because the nonprofit will be implementing the City's ordinance.

19

# ARGUMENT

# I

## PLAINTIFFS' FIRST AMENDMENT CLAIMS SHOULD NOT HAVE BEEN DISMISSED <u>BECAUSE THEY ARE RIPE AND MERITORIOUS</u>

In its Order dismissing plaintiffs' amended complaint, the District Court ruled that plaintiffs' First Amendment challenges to the City's gun fee are unripe because the City has not yet designated a specific nonprofit organization to receive the fee. The Court stated, "Plaintiffs' First Amendment challenges to the Fee Provision [are] unripe because the Court [has] no information as to what activities—and more critically what speech or expression, if any—the proceeds from the Fee would fund. ... Plaintiffs argue that the claim is ripe for review because it presents a facial challenge and there is no constitutional way to enforce the requirement, regardless of what Nonprofit is chosen. ... HJTA Plaintiffs cite to *Janus* [*v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31,* 138 S. Ct. 2448 (2018)] in support of their argument. HJTA Opp. at 9. As the Court explained in [its first] Motion to Dismiss Order, *Janus* is distinguishable because there the recipient of the compulsory fees (i.e., the union) and the activities the fees would fund were known and well-defined for First Amendment scrutiny. ... Here, by contrast, there are no such concrete activities that the Court can consider in applying any level of First Amendment scrutiny or the Supreme Court's reasoning

in *Janus*. HJTA Plaintiffs also cite to *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1994). HJTA Opp. at 8. In that case, the Supreme Court recognized that "[f]reedom of association . . . plainly presupposes a freedom not to associate." 468 U.S. at 623. But again, there, the factual circumstances were well-defined for First Amendment scrutiny. See generally *id.* The Supreme Court analyzed whether application of the Minnesota Human Rights Act to United States Jaycees to require the group to accept women as members violated the male members' freedom of association. *Id.* Again, here, the facts are not sufficiently concrete for the Court to apply the First Amendment." (Order, ECF # 107, PDF pp. 15-16.)

The District Court erred for two reasons: (1) plaintiffs' rights should not hang in limbo, and the City should not gain a litigation advantage as a result of its delayed implementation of the ordinance; and (2) even without an identified nonprofit the case is ripe for facial review.

## A.   *Plaintiffs' Rights Should Not Hang In Limbo Pending Implementation*

As its label suggests, plaintiffs' "facial challenge" claims that San Jose's ordinance is unconstitutional on its face. By simply reading it, the Court can see that, when implemented, it will violate the First Amendment. The Court does not need to wait until people are being harmed.

The HJTA plaintiffs framed their state lawsuit as a validation action. (Cal. Code of Civ. Proc. §§ 860 *et seq.*) The NAGR plaintiffs framed their federal

lawsuit as an action for declaratory relief. Validation actions and declaratory relief actions are commonly used to determine the validity of legislation *before* it takes effect or is enforced. (*United Pacific-Reliance Ins. Co. v. Didomenico* 173 Cal.App.3d 673, 677, (1985) ["The cause of action for declaratory relief may accrue, in the sense that an action may be maintained, before any breach occurs. *This is the very purpose of the remedy*."].) In fact, the most common use of the validation statute is to obtain a judicial declaration of the validity of an agency's mere resolution to issue bonds, *before* the bonds are actually issued. (Cal. Code of Civ. Proc. § 864; *Friedland v. City of Long Beach* 62 Cal.App.4th 835, 842 (1998).)

The same is true in the federal courts. "When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he should not be required to await and undergo … prosecution as a sole means of seeking relief." (*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).) Such is the case here.

Especially in the First Amendment context, a plaintiff may make a pre-enforcement claim when there is "an actual and well-founded fear that the challenged statute will be enforced." (*Libertarian Party of L.A. Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013). The enforcement provision in a statute or

ordinance is sufficient in itself to justify a pre-enforcement facial challenge. (*303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2310-12 (2023) ["[T]he government may not compel a person to speak its own preferred messages. Nor does it matter whether the government seeks to compel a person to speak its message when he would prefer to remain silent."].)

From the beginning, the City's strategy here has been to avoid facing the merits of plaintiffs' claims. A June 2, 2022, memo from city staff to the Mayor and City Council states, "pending litigation has caused uncertainty as to when the City will be able to begin implementation of the ordinance. ... The ordinance requires that the fee be collected by a designated nonprofit organization. ... Staff recommends a procurement process open to any interested organizations be used to select the designated nonprofit. *In August 2022, based on an evaluation of the status of litigation, staff will decide whether to initiate a procurement process.*" (Staff Memo pp. 2-3 at https://sanjose.legistar.com/View.ashx?M=F&ID=10972300& GUID=8729FAF4-9C72-49E8-B07A-2FEB3A618FBE.)[3]

A July 1, 2022, update from city staff to the Mayor and City Council recites: "On July 1, 2022 the City Manager's Office issued regulations that *suspend*

---

[3] Unless noted otherwise, all emphasis is added.

23

*implementation* of both the insurance requirement and the Gun Harm Reduction Fee [until] the legal situation has been clarified. ... *Per Council direction, implementation of the Gun Harm Reduction Fee can only begin after the legal challenges have been <u>fully</u> resolved.*"  (City's Status Rpt., ECF 25 at PDF 3:12; Staff Memo at https://www.sanjoseca.gov/home/showpublisheddocument/87508.)

The City's suspended Implementation Timeline had called for "issu[ing] a Request for Proposals to procure the designated nonprofit" to occur some time in September 2022.  (See Staff Memo, Attachment A, PDF p. 4., at https://www.sanjoseca.gov/home/showpublisheddocument/ 87508.)  The Timeline had projected "December 2022" as the date by which the City Manager would "[f]inalize contract with designated nonprofit."  (*Id.* at PDF p. 5.)

Despite halting implementation of the ordinance until "the legal challenges have been fully resolved," the City nonetheless moved to dismiss plaintiffs' complaints as unripe because the ordinance had not yet been implemented.  The District Court called this a "chicken and egg problem."  (Transcript of Aug. 4, 2022 hearing, ECF 76, PDF pp. 15:20-16:4; 23:19; 26:12.)

The Court granted the City's motion to dismiss on ripeness grounds, but with leave to amend the complaint by February 2, 2023, based on the Implementation Timeline showing that the City Manager would issue a Request for Proposals in September, then select a nonprofit from among the proposals

24

received and finalize a contract by the end of December.

On January 6, 2023, however, the City filed a Status Report indicating that those deadlines had not been met. Although it represented that the City Manager "has now completed all relevant tasks in the Implementation Timeline, except for the task listed as 'Finalize contract with designated nonprofit' with an estimated completion date of December 2022" (Status Report, ECF 85 at PDF p. 3:6), that representation deviated from what was promised in the Timeline.

The City Manager had *not* "issu[ed] a Request for Proposals to procure the designated nonprofit" which, according to the Timeline, was supposed to be done in September. Instead, the City Manager issued something else – a "Request for Information." The Status Report explained the difference: "RFIs are used by the City to solicit information about potential solutions and do *not* typically result in a contract award, whereas RFPs are used by the City to gather responses and pricing from potential contractors to deliver a specific City defined scope of work, with the purpose of awarding one or more contracts at the end of the RFP process." (ECF 85 at PDF p. 3:25.)

The Status Report informed the Court that no qualified organizations responded to the City Manager's Request for Information (*id.* at PDF p. 3:13.) so the City Manager "has decided that the best approach to progress implementation at this point is to ... publish a full Request for Proposals .... Unfortunately, the lack

of satisfactory RFI responses and the upcoming RFP process will delay the steps necessary for full implementation." (*Id.* at PDF p. 3:20.) The Status Report offered no date by which these overdue "steps necessary for full implementation" might be completed. And to date, an additional year having passed, the City has filed no more status reports or updates indicating what progress, if any, the City has made in completing the implementation process.

Despite the City's delay in designating a nonprofit, it opposed plaintiffs' request for an extension of the deadline to file an amended complaint, even though the deadline for the amended complaint was based on the City's representation that the controversy would be ripe by the end of December 2022 when the City inked a contract with a designated nonprofit. Without explanation, the District Court denied the extension of time, forcing plaintiffs to file an amended complaint that was still unable to allege any specifics about the nonprofit. The City again moved to dismiss the complaint as unripe, and the District Court again granted the motion, which led to this appeal.

The complaint alleges that a $25 fee is imposed for the current year and will eventually be collected once a nonprofit has been designated: "[A]lthough the City is not currently enforcing proof of payment (because there is no nonprofit to accept payment), the City has not waived the fee." (Cons. 2d Amnd. Complaint at PDF p. 11:15.) The City agrees that a $25 fee is in effect. (City's Mot. to Dismiss

26

at PDF p. 26:4 ["The primary thing that has changed since the Court previously dismissed claims for lack of ripeness is that the City Council passed in its 2022-2023 schedule of fines and fees a Fee amount of $25"].) However, the City's lawyer argued (apparently with success) that the Court should not accept as true plaintiffs' allegation that the currently adopted fees can eventually be collected. "[Plaintiffs] falsely assert ... that San Jose gun owners are somehow currently 'accumulating debt of $25/year' while the Fee requirement remains unimplemented. The Fee requirement is not retroactive. When implemented, it will start to be enforced, and not before." (City's Reply, ECF # 104, at PDF 15-16.)

The District Court erred in accepting counsel's unsupported reassurance rather than the complaint's allegation. Counsel's statement is clearly illusory. The statement "[w]hen implemented, it will start to be enforced" is no different from the allegation in plaintiffs' complaint that "although the City is not currently enforcing proof of payment ... the City has not waived the fee." The fee requirement need not be "retroactive" to be owed and eventually collected for the 2022-23 and 2023-24 fiscal years because the fee was officially imposed by the City Council for those years and, for lack of a nonprofit, was included in the Police Department's budget. (See City's second Motion to Dismiss (ECF # 95) at PDF page 26:4 and footnote 4 herein; see also City's 8/17/22 Status Report, ECF

27

25 at PDF p. 4:6 ["the City Council, after a public hearing, voted in June 2022 to approve the City's 'Fee and Charges Report' for the 2022-2023 fiscal year, which included the Fee as part of the City Police Department's annual budget and set a placeholder Fee amount of $25 per gun-owning household"].)

Thus, all of the available evidence supports plaintiffs' allegation. And "[w]hen considering a motion to dismiss, we accept 'as true all well-pleaded allegations of fact in the complaint' and construe them in the light most favorable to the non-moving party." (*Karasek v. Regents of the Univ. of Cal.*, 956 F.3d 1093, 1104 (9th Cir. 2020) (quoting *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 991 (9th Cir. 2008).) Moreover, counsel for the City cited no city public record or city officer declaration to back up its empty reassurance (if counsel's statement can even be interpreted as reassurance) that, contrary to plaintiffs' allegation, the fee will be waived.

In any event, however, for purposes of this appeal from the dismissal of plaintiffs' First Amendment claims, it is undisputed that a fee has been enacted and has been adopted for the prior and current fiscal years. That is enough. For the question before this Court is whether an ordinance may be enacted requiring a defined group of city residents – whether they be gun owners, gas-powered car owners, irrigated lawn owners, parents of large families, Donald Trump voters, or any other group deemed harmful by the San Jose City Council – to annually pay a

28

fee to a private nonprofit organization designated by the City.  And the answer to that question is no, not under the United States Constitution.

**B.** *Plaintiffs' First Amendment Claims Are Ripe Enough For Facial Review*

As the City readily admits, this case presents a facial challenge to the City's Gun Harm Reduction Fee.  (City's Mot. to Dismiss (ECF # 95) at PDF p. 23:10.) A facial challenge ordinarily alleges that "no set of circumstances exists under which the law would be valid."  But in the First Amendment context, it need only allege that "a substantial number of its applications [would be] unconstitutional." (City's Mot. to Dismiss (ECF # 95) at PDF p. 17:2; *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 944 (9th Cir. 2011); *United States v. Stevens*, 130 S.Ct. 1577, 1587, 176 L.Ed. 2d 435 (2010).)

Here, plaintiffs' contend that, by requiring the payment of an annual fee to a private nonprofit organization that plaintiffs did not voluntarily choose, which provides services plaintiffs do not need and will not utilize, the City will be forcing plaintiffs to make a compelled donation to the City's designated nonprofit organization in violation of their First Amendment rights against compelled association and compelled support of someone else's speech.  As applied to plaintiffs, then, "no set of circumstances exists under which the law would be valid."  But even if the Court zooms out and looks at the entire group of San Jose gun owners, "a substantial number of [the fee's] applications [will be]

29

unconstitutional."

The City argues that, until the nonprofit is designated, it is unknown "how the Nonprofit will actually behave in delivering voluntary services." (City's Mot. to Dismiss (ECF # 95) at PDF p. 25:13.) Regarding plaintiffs' compelled association claim, however, it is irrelevant how the nonprofit will actually behave. Plaintiffs' complaint alleges a right against being forced by the government to associate with *anyone*. (Complaint (ECF # 94 at PDF p. 19:11.) Americans have a right to choose for themselves which private organizations, if any, they want to associate with or support financially. (*Roberts v. United States Jaycees*, 468 U.S. 609, 623 (1984).) The complaint therefore adequately pleads a claim for compelled association.

For similar reasons, the complaint adequately pleads a claim for compelled speech. The City argues that, until a nonprofit is actually designated, it is unknown whether plaintiffs will "disagree with their message," or whether the nonprofit will engage in expressive conduct at all. (City's Mot. to Dismiss (ECF # 95) at PDF p. 25:12-24.)

Plaintiffs' facial challenge, however, does not rest on the content of the nonprofit's speech. It is irrelevant whether plaintiffs will agree or disagree with its message. It is enough that the nonprofit will be speaking, and the City of San Jose is ordering gun owners to subsidize that speech. (*Janus v. AFSCME Council*

*31*, 585 U.S. ___, 138 S.Ct. 2448, 2463 (2018).)  Moreover, the designated

nonprofit can change from year to year at the discretion of the City Manager.  (S.J.

Muni. Code § 10.32.235.)  Waiting to learn how the first designated nonprofit will

"actually behave" provides no guarantee that subsequent nonprofits will behave

the same way.

The District Court found that "*Janus* is distinguishable because there the

recipient of the compulsory fees (i.e., the union) and the activities the fees would

fund were known and well-defined for First Amendment scrutiny."  (ECF # 107 at

PDF p. 16:3.)  But in *Janus*, the compulsory fee was not full union dues, it was

only a fraction thereof known as an "agency fee" that covered no more than the

payer's share of the union's collective bargaining activity.  (*Janus*, 138 S.Ct. at

2460.)  In other words, even though the payer disliked unions, he was actually

receiving representation in return for the fee, and generally benefitting from it.

Yet the Supreme Court held the fee unconstitutional.  Here, regardless of exactly

how the nonprofit implements the services described in the ordinance, plaintiffs

have alleged that they may *never* need or utilize them.  (Complaint (ECF # 94) at

PDF p. 11:24.)

Under *Janus*, the District Court erred in accepting the City's argument that,

until the nonprofit is designated and begins functioning, it is unknown whether it

will engage in controversial speech or whether plaintiffs will "disagree with their

31

message." *Janus* explained that even compelled subsidization of something as benign as commercial speech is unconstitutional unless the government can show "a compelling state interest" that cannot be achieved through less restrictive means. (138 S.Ct. at 2464 [quoting *Knox v. SEIU, Local 1000*, 567 U.S. 298, 310 (2012).)

Here, the City has not shown a compelling interest for requiring every owner of a registered gun to subsidize the City's nonprofit. It attached to its Motion for Dismissal a study regarding gun violence in the City of San Jose. Predictably, the study showed that criminals using guns in the commission of a crime injured and killed a large number of people – an annual average of 148 and 58 respectively. (Pacific Institute for Research and Evaluation, "Incidence and Cost of Firearm Injuries in San Jose, CA" [Case No. 5:22-cv-02365-BLF, ECF #9-4], Ex. 3 at PDF p. 5.) Of course, however, the ordinance is not aimed at criminals but at law-abiding citizens whose guns are registered. Based on statistics for Santa Clara County, the study estimated that 50,000 - 55,000 households in San Jose own guns that were purchased through a licensed dealer where the purchaser underwent a state criminal background check. (*Id.* at PDF p. 6.) The study did not know exactly how many accidental gunshot wounds occur annually in San Jose, but reported that a broader category – "Unintentional/Undetermined" firearm discharges are responsible for two deaths a year. Even applying the lowest end of

32

the estimated number of households owning registered guns (50,000) and even

assuming that both of the two deaths were from accidental discharges of registered

guns, that means that only 0.004% of households required to pay the City's fee are

responsible for an accidental gun death per year. That number surely pales in

comparison to accidental automobile deaths per year. The study, then, does not

establish a compelling state interest that cannot be achieved through less

restrictive means. (*Janus*, 138 S.Ct. at 2464.)

Therefore, even if the chosen nonprofit engages in only commercial speech,

the fee is still unconstitutional. The City cannot seriously argue that the nonprofit

might engage in no speech at all. It will *have* to speak. It is tasked by the

ordinance with providing services that "include, but are not necessarily limited to

the following: (1) Suicide prevention services or programs; (2) Violence reduction

or gender based violence services or programs; (3) Addiction intervention and

substance abuse treatment; (4) Mental health services related to gun violence; or

(5) Firearms safety education or training." (SJ Muni Code § 10.32.220.) None of

these services can be provided without communication. For example, if a person

contacts the nonprofit ready to commit suicide, does this Court believe he will be

met with silence? Does the Court believe that a "firearms safety education or

training" class could be taught without communication? While it may be possible

that *some* of the nonprofit's activities will involve no speech, for a First

33

Amendment facial challenge, it is sufficient that "a substantial number" of its services will.  (*Comite de Jornaleros*, 657 F.3d at 944.)

Because, under the ordinance, the nonprofit will be offering voluntary services that involve speaking, and plaintiffs have alleged a right against being forced by the government to subsidize *anyone's* speech (Cons. 2d Amnd. Complaint (ECF # 94) at PDF p. 19:9), the complaint adequately pleads not only a claim for compelled association, but a claim for compelled speech as well.  As *Janus* held, even when private speech "'furthers the interests of nonspeakers' ... 'that does not alone empower the state to compel the speech to be paid for.'  In simple terms, the First Amendment does not permit the government to compel a person to pay for another party's speech just because the government thinks that the speech furthers the interests of the person who does not want to pay."  (138 S.Ct. at 2466-2467 [quoting  *Lehnert v. Ferris Faculty Assn.*, 500 U.S. 507, 556, 111 S.Ct. 1950 (1991) Scalia, J., concurring and dissenting].)

The District Court erred in ruling that plaintiffs' facial challenge is unripe. The order dismissing plaintiffs' complaint should be reversed.

/ / /

/ / /

/ / /

/ / /

## II.

### PLAINTIFFS' UNVOTED TAX CLAIM SHOULD NOT HAVE BEEN DISMISSED AS IT WAS ADEQUATELY PLED, IS DISTINGUISHABLE FROM *SCHMEER*, AND IS NONETHELESS ALLOWED UNDER *SCHMEER*, A STATE CASE THAT THE FEDERAL COURTS <u>SHOULD NOT EXTEND BEYOND ITS FACTS</u>

Plaintiffs' sixth claim for relief alleges that, under California law, the City's Gun Harm Reduction Fee is a special tax that needed but did not obtain voter approval. The District Court gave two reasons for dismissing the claim: (1) "Plaintiffs have provided very limited factual allegations in support of this claim ... and thus fall short of the federal standard required by *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)," and (2) "While [plaintiffs] are correct that the fee is not *currently* being paid to a private entity, they neither allege nor argue that the fee is being paid to the City. Therefore, the Court's previous determination that the Fee is not a tax under *Schmeer* still stands because the Fee is not 'payable to, or for the benefit of, a local government.'" (Order Granting Def's Mot. to Dismiss (ECF # 107) at 20:22-21:8 (emphasis in orig.).) The Court erred.

### A.  *<u>The Complaint Contains All Elements Needed To Support The 6th Claim</u>*

Under Federal Rule of Civil Procedure 8(a)(2), a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This "short and plain" standard does *not* require "detailed

factual allegations." (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007); *Conley v. Gibson*, 355 U.S. 41, 47 (1957).)

The complaint is not supposed to be a trial brief. Its purpose is simply to "give the

defendant fair notice of what the ... claim is and the grounds upon which it rests."

(*Twombly*, 550 U.S. at 555; *Conley*, 355 U.S. at 47.) "A plaintiff need not allege

all the facts necessary to prove its claim ... the threshold of sufficiency to which a

complaint is held at the motion-to-dismiss stage is 'exceedingly low.'" (*United*

*States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881 (11th Cir. 2003) [quoting *In re*

*Southeast Banking Corp.*, 69 F.3d 1539, 1551 (11th Cir. 1995).) "[T]he discovery

process bears the burden of filling in the details." (*Jones v. Metro. Denver Sewage*

*Disposal Dist.* 537 F. Supp. 966, 969 (D. Colo. 1982).)

　　Plaintiffs' sixth claim is a state law claim. It alleges a violation of article

XIII C, section 2(d) of the California Constitution. Section 2(d), then, provides

the elements of the claim. It states simply, "No local government may impose,

extend, or increase any special tax unless and until that tax is submitted to the

electorate and approved by a two-thirds vote." Thus, the complaint need only

allege that defendant City of San Jose: (1) imposed, extended or increased; (2) a

special tax; (3) without submitting it to the voters and obtaining two-thirds

approval. This it did.

　　The complaint explains that it seeks "declaratory judgment [and]

36

invalidation of the fee provisions [of] Part 6 of Chapter 10.32 of Title 10 of the

San Jose Municipal Code (the 'Ordinance')." (Complaint (ECF # 94) at PDF pp.

2:5, 3:2, 24:21.) The complaint alleges that the ordinance "requires San Jose gun

owners to pay an 'Annual Gun Harm Reduction Fee' to a 'Designated Nonprofit

Organization' that the City Manager will designate from time to time," that under

the ordinance "[t]he amount of the annual fee 'will be set forth in the schedule of

fees and charges established by resolution of the City Council," and that "[i]n the

2022/2023 schedule of fees, the Gun Harm Reduction Fee is set at $25 per year."

(Complaint (ECF # 94) at PDF p. 8:12 [citing SJ Muni. Code § 10.32.215].)

Thus, the complaint fully alleges that a monetary exaction is being

"imposed" by the City. Moreover, this allegation is not denied, but was admitted

by the City in the District Court. In its first Motion to Dismiss (Case No.

5:22-cv-02365-BLF, ECF # 9) at PDF page 26:20, the City states, "The Ordinance

findings and legislative record more than sufficiently support the reasonableness

of the fit between City's important interests in deterring gun-related deaths and

injuries and the imposition of a reasonable annual Fee to fund programs aimed at

advancing those exact interests." And at PDF page 30:1, the City concedes, "the

imposition of the Fee and the Fee amount are both controlled entirely by the City

Council, per the express terms of the Ordinance." In its second Motion to Dismiss

(ECF # 95) at PDF page 26:4, the City states, "The primary thing that has changed

37

since the Court previously dismissed claims for lack of ripeness is that the City

Council passed in its 2022-2023 schedule of fines and fees a Fee amount of $25."[4]

The first element – City imposition – having been adequately pled, the

second element is "of a special tax." (Cal. Const., art. XIII C, § 2(d).) The

complaint alleges, "Because its revenue will fund public services, not services

requested by each payer, the 'fee' is a tax under California law." (Complaint (ECF

# 94) at PDF p. 11:25.) It further alleges, "Article XIII C, section 1(e) of the

California Constitution defines a 'tax' as 'any levy, charge, or exaction of any kind

imposed by a local government' unless it fits one of seven limited exceptions.

Although labeled a 'fee' by the City, the Annual Gun Harm Reduction Fee does

not qualify for any exception from the definition of a 'tax' enumerated in article

XIII C, section 1(e). Therefore it is a tax. Taxes are either 'general taxes' or

'special taxes.' A 'special tax' is 'any tax imposed for specific purposes.' (Cal.

Const., art. XIII C, § 1(d).) The Annual Gun Harm Reduction Fee is imposed

ostensibly for the purpose of reducing gun harm. Therefore, it is a special tax."

(Complaint (ECF # 94) at PDF p. 23:5.) While the City may deny these

---

[4] The Fee was renewed in the City's 2023-2024 schedule of fees, again at
$25. See Police Department fees and charges, https://www.sanjoseca.gov/home/
showpublisheddocument/97428/638189081853400000 at p. 3, as adopted by City
Council, https://www.sanjoseca.gov/home/showpublisheddocument/106960/
638355445275230000 at p. 4.

allegations, they are sufficient to allege that the exaction imposed by the City is not a true fee, but qualifies as a special tax under California law. Whether or not the fee funds public services, as the complaint alleges, or funds only services requested by fee payers so as to qualify for an exception from California's constitutional definition of a "tax," is a legal question that the parties may argue over. But the complaint has done its job of framing that dispute and putting the City on notice of plaintiffs' claim.

Having adequately pled that the City has (1) "imposed" (2) a "special tax," the third and final element of a claim that the City is in violation of article XIII C, section 2(d) is that the special tax was not "submitted to the electorate and approved by a two-thirds vote." The complaint alleges this as well. It pleads, "Article XIII C, section 2(d) of the California Constitution provides, 'No local government may impose, extend, or increase any special tax unless and until that tax is submitted to the electorate and approved by a two-thirds vote.' The Annual Gun Harm Reduction Fee was not submitted to the electorate or approved by a two-thirds vote. The fee is therefore invalid." (Complaint (ECF # 94) at PDF p. 23:13.)

Like the first allegation that the fee is "imposed" by the City, this latter allegation is also not disputed by the City. Rather than show proof of voter approval, the City argues that, because "the Ordinance's annual Fee is not ... paid

or remitted to the local government, but rather paid directly to and used by the private nonprofit organization to provide gun-safety and other programming and services ... the voter approval requirements of article XIII C, section 2 therefore are inapplicable" under a California case called *Schmeer v. County of Los Angeles*, 213 Cal.App.4th 1310 (2013). (City's Mot. to Dismiss (ECF # 9 at PDF p. 28.)

Again, the parties may argue about whether *Schmeer* bars plaintiffs' claim, but the complaint did its job of framing that dispute and putting the City on notice of plaintiffs' claim. The District Court erred in ruling that the complaint fails to adequately plead a violation of article XIII C, section 2(d) of the California Constitution.

**B.** ***This Case Is Distinguishable From* Schmeer**

Besides finding that the complaint did not adequately plead a violation of article XIII C, section 2(d), the District Court's only other reason for dismissing plaintiffs' complaint was that, on the merits, "the Fee is not a tax under *Schmeer* ... because the Fee is not 'payable to, or for the benefit of, a local government.'" (Order Granting Def's Mot. to Dismiss (ECF # 107) at PDF p. 21:7.)

*Schmeer v. County of Los Angeles* challenged a county ordinance that prohibited retail stores from providing plastic carryout bags and required stores to charge and keep 10 cents for each paper bag requested by a customer. The Court held that the ordinance did not impose a "tax" that required voter approval as that

40

term is used in article XIII C, sections 1 and 2 of the California Constitution.

Article XIII C, section 1 defines a "tax" as "*any* levy, charge, or exaction of *any* kind imposed by a local government." (Cal. Const., art. XIII C, § 1(e).) The *Schmeer* court agreed that the bag fee was *imposed* by a local government, and that article XIII C "does not explicitly state that the levy, charge or exaction must be *payable* to a local government." (*Schmeer*, 213 Cal.App.4th at 1327.) Nevertheless the court noted that "[t]he term 'tax' in ordinary usage refers to a compulsory payment made to the government or remitted to the government." (*Id.* at 1326-27.) Juxtaposing its own "ordinary usage" definition alongside the precise definition contained in the constitution, the Court found the constitutional definition "ambiguous," and resolved the ambiguity in favor of the "ordinary usage" definition. (*Id.* at 1327-28.) The *Schmeer* court cited no precedent for this interpretation of article XIII C. And in the eleven years since *Schmeer* was decided, no court has followed it – until the District Court did in the case at bar.

The case at bar is distinguishable from *Schmeer* for at least three reasons. First, the City's "fee," currently and for the foreseeable future, is not being paid to a private entity. Second, the facts in the case at bar are significantly different from the unique facts in *Schmeer*. Third, *Schmeer* itself provided a test that excludes the case at bar from its holding.

/ / /

41

### 1.     *The Fee Is Not Currently Being Paid To A Private Entity*

This case is distinguishable from *Schmeer* because the City's "fee" is in effect

while there is no nonprofit organization to receive or collect it.  The complaint

alleges the facts upon which this distinction is based.  It states:

39.     On October 21, 2022, City Manager Regulations for the

Ordinance went into effect (attached as Exhibit H ).

...

41.     Fines for violations of the Ordinance begin at $250 for a

first offense and increase to $500 for a second offense and $1000 for

a third offense within a year.

42.     Section 2.2 of the Regulations state "[t]his version of the

City Manager Regulations for the Reduction of Gun Harm Ordinance

does not set a payment date; a payment date will be established in an

amended version of these regulations to be issued in the future.

Individuals covered by the Gun Harm Reduction Fee are not required

to pay the fee until a payment date is set through the amended

regulations.

43.     With respect to the purported Gun Harm Reduction Fee,

the City provided to the District Court an Implementation Timeline.

Per the Timeline, "issu[ing] a Request for Proposals to procure the

42

designated nonprofit" would not occur until September 2022. The Timeline projected "December 2022" as the date by which the City Manager would "finalize contract with designated nonprofit."

44.    The District Court granted the City's motion to dismiss plaintiffs' claims as unripe, with leave to amend the complaint by February 2, 2023, based on the Timeline showing that the City Manager would issue a Request for Proposals in September, then select a nonprofit from among the proposals received and finalize a contract by the end of December.

45.    On January 6, 2023, the City filed a Status Report in which it represented that the City Manager "has now completed all relevant tasks in the Implementation Timeline, except for the task listed as 'Finalize contract with designated nonprofit' with an estimated completion date of December 2022." (01/06/23 Status Report, ECF #85 at 3:6).

46.    Yet the City Manager had not "issu[ed] a Request for Proposals to procure the designated nonprofit" which, according to the Timeline, was supposed to be done in September. Instead, the City Manager issued something else – a "Request for Information." The Status Report explained the difference: "RFIs are used by the

43

City to solicit information about potential solutions and do not typically result in a contract award, whereas RFPs are used by the City to gather responses and pricing from potential contractors to deliver a specific City defined scope of work, with the purpose of awarding one or more contracts at the end of the RFP process." (ECF #85 at 3:25.).

47.    The Status Report informed the Court that no qualified organizations responded to the City Manager's Request for Information (*id.* at 3:13.) so the City Manager "has decided that the best approach to progress implementation at this point is to ... publish a full Request for Proposals .... Unfortunately, the lack of satisfactory RFI responses and the upcoming RFP process will delay the steps necessary for full implementation." (*Id.* at 3:20.) The Status Report offered no date by which these overdue "steps necessary for full implementation" might be completed.

48.    Despite the City's delay in designating a nonprofit, and its equivocation on the ultimate amount of the fee, this controversy is ripe because a fee of $25 has been imposed for the 2022/2023 fiscal year and, although the City is not currently enforcing proof of payment (because there is no nonprofit to accept payment), the City

has not waived the fee. The 2022/2023 fee apparently will be due and payable once a nonprofit has been designated." (Complaint (ECF # 94) at 10-11.)

The City has not filed an Answer to the Complaint denying these allegations, nor has it disproved them in its moving papers. For purposes of this appeal from the dismissal of plaintiffs' complaint, then, this Court must accept as true plaintiffs' allegation that the City has imposed a gun fee that is currently in effect despite there being no designated nonprofit on which to base a *Schmeer* defense.

The City may object to having its fee analyzed under the current state of affairs, but the City's Motion to Dismiss demands that plaintiffs' complaint be analyzed under the current state of affairs. The City's motion asked the District Court to dismiss the complaint as unripe because, at this snapshot in time, there is no designated nonprofit payee. What's good for the goose is good for the gander. At this snapshot in time, when the fee is included in the Police Department's budget because there is no designated nonprofit payee, *Schmeer* does not apply to rescue the City's fee. The City's motion should have been denied.

### 2. ***The Facts Of This Case Are Distinguishable From*** **Schmeer**'***s Facts***

In the first few paragraphs of its opinion, the California Court of Appeal described the Los Angeles County ordinance at issue in *Schmeer*. The ordinance prohibited retail stores within the unincorporated areas of Los Angeles County

from providing disposable plastic carryout bags to customers. Stores could offer recyclable paper carryout bags or reusable carryout bags, or let customers use their own bags. Stores could sell or give away reusable bags. But if a customer requested paper bags, the store was required to charge the customer 10 cents for each paper bag. Stores could keep the money received for paper bags and use it to recover the cost of providing paper bags or any other cost related to compliance with the ordinance. (*Schmeer v. County of Los Angeles*, 213 Cal.App.4th 1310, 1314.)

In sum, then, the ordinance required commercial retailers with no connection to the government to collect a 10 cent payment for a 10 cent product, and only from persons who voluntarily purchased the product. The entity regulated by the ordinance was the store, not the customer. Customers were free to bring and use their own carryout bags, whether made of fabric, plastic or paper, and were also free to simply wheel their purchases to the car unbagged.

The facts of the gun fee at issue here are quite different. Here, there will be a close connection between the City and the nonprofit retained by the City (if the City ever retains a nonprofit to take the place of the Police Department). First, the nonprofit will be under contract with the City. Second, as the District Court acknowledged, the City Manager will "promulgate[] regulations identifying the Nonprofit's activities." (ECF # 107 at PDF p. 15:20; see also S.J. Muni. Code §

10.32.235 [City Manager shall promulgate regulations "to implement the requirements and fulfill the policies of this Part relating to the reduction of gun harm, including, but not limited, to ... additional guidelines or auditing of the use of the monies from the fee."].)  Third, the nonprofit's regulated activities will implement the gun harm reduction services codified in the City's ordinance, services that could have been and often are provided by the local government itself – services such as suicide prevention, gender based violence prevention, addiction intervention, substance abuse treatment, gun safety education, and mental health counseling for victims of gun violence.  (S.J. Muni. Code § 10.32.220.)

The facts here are further distinguishable from *Schmeer* in that gun owners will be charged an annual fee whether or not they utilize any of the services offered by the nonprofit.  They cannot escape the fee by not needing the services or by obtaining services elsewhere.

Moreover, unlike *Schmeer*, the services provided by the nonprofit will be available to people who do not pay the gun fee.  Although the City argued below that the nonprofit will provide services only to "gun owners and their families." (City's Motion (ECF # 95) at PDF pp. 8:8, 8:25, 30:18), the complaint alleges – and the ordinance states – that the nonprofit is authorized to (and logically must) offer services to unrelated members of a gun owner's household, unrelated intimate friends, and even the general public.  (Complaint (ECF # 94) at PDF pp.

47

14:11, 11:20.)  This Court must accept the complaint's version of the facts, not only because this is an appeal from dismissal, but also because only plaintiffs' version is supported by the actual text of the ordinance.  To be qualified for selection as the Designated Nonprofit Organization, an organization must "provid[e] services to residents of the City that own or possess a Firearm in the City *or* to members of their household, *or* to those with whom they have a close familial or intimate relationship."  (S.J. Muni. Code § 10.32.220.)  Unrelated members of one's household, such as roommates, renters, exchange students or nannies, and unrelated people with whom one has an intimate relationship, such as sweethearts and close friends, are members of the public, not family, despite the City's repeated misrepresentation otherwise.

Moreover, services that the nonprofit will provide logically reach outside the payer's inner circle.  They include suicide prevention services, addiction and substance abuse treatment; and mental health counseling for victims of gun violence.  (*Id.*)  It is far-fetched for the City to suggest that the nonprofit will hang up the phone when a non-gun owner calls ready to end his life by jumping or overdosing, or will hang up the phone if a non-gun owning drug addict calls wanting to admit himself into a rehabilitation program.  It is far-fetched to suggest that the nonprofit is going to counsel victims of gun violence only if they currently possess a gun of their own.  Logically, these services will be available to the

48

general public.  In any event, the complaint so alleges and must be accepted as true.

The stark factual differences between this case and *Schmeer* have legal significance.  For under California law, the bag fee in *Schmeer* did not fit the classic profile of a tax, but the gun fee in the case at bar does.  Generally speaking, "a tax has two hallmarks: 1) it is compulsory, and 2) it does not grant any special benefit to the payor.  (*California Chamber of Commerce v. State Air Resources Board* 10 Cal.App.5th 604, 640 (2017) .)  "Nothing is more familiar in taxation than the imposition of a tax upon a class or upon individuals who enjoy no direct benefit from its expenditure, and who are not responsible for the condition to be remedied."  (*Knox v. City of Orland* 4 Cal.4th 132, 135 (1992); *Leslie's Pool Mart v. Dept. of Food & Agric.* 223 Cal.App.3d 1524, 1543 (1990).)  Fees, however, are "in return for a specific benefit conferred or privilege granted ... in response to a voluntary decision."  (*Sinclair Paint Co. v. State Bd. of Equalization* 15 Cal.4th 866, 874 (1997) .)  "A 'tax,' in the general sense of the word, includes every charge upon persons or property, imposed by *or under the authority of* the Legislature, for public purposes."  (*City of Madera v. Black* 181 Cal. 306, 310 (1919) [citations omitted].)  Federal law is similar.  Taxes "constitute a pecuniary burden laid upon individuals or property for the purpose of supporting the Government *or to support some special purpose authorized by it*." (*In re Lorber*

*Industries of California, Inc.*, 675 F.2d 1062, 1066 (9th Cir. 1982).) "[T]he classic tax is designed to provide a benefit for the entire community." (*Home Builders Assn. v. City of Madison*, 143 F.3d 1006, 1011 (5th Cir. 1998).)

*Schmeer* itself articulated three reasons why the 10 cent bag charge was not a tax: "The term 'tax' in ordinary usage refers to [1] a compulsory payment [2] made to the government or remitted to the government ... and [3] not in return for a specific benefit conferred or privilege granted." (*Schmeer*, 213 Cal.App.4th at 1326-27 [citations omitted].) The paper bag fee in *Schmeer* failed all three tests. First, it was not compulsory. It was charged only to shoppers who requested a paper bag. Second, it was not paid or remitted to the government. And third, it was charged only in return for a benefit granted. In other words, those charged received a paper bag, and no one received a paper bag for free.

The only thing the present case has in common with *Schmeer* is that the annual gun fee is not paid or remitted to the government. The gun fee satisfies the other two tests for a tax. It is compulsory and it is not in return for a specific benefit conferred or privilege granted. It also fits tests articulated in the cases cited earlier. *Knox* and *Leslie's Pool Mart* said, "Nothing is more familiar in taxation than the imposition of a tax upon a class or upon individuals who enjoy no direct benefit from its expenditure, and who are not responsible for the condition to be remedied." San Jose's annual gun fee is imposed on law-abiding

50

owners of registered guns kept for home defense. The City has presented no evidence that such individuals are responsible for gun violence in San Jose. Nor is there evidence that all such individuals need the services to be provided by the City's designated nonprofit. One of the federal cases, *Home Builders Assn. v. City of Madison*, noted that "the classic tax is designed to provide a benefit for the entire community." The gun fee meets that test by funding services that will be available to persons who don't own a gun or pay the fee. And this Court, in *In re Lorber Industries*, held that a tax supports the government *or* "support[s] some special purpose authorized by it." (675 F.2d at 1066 (9th Cir. 1982).) That is exactly what the San Jose gun fee will do. It will support a special purpose authorized by the City, even though that purpose will be served by a private organization under contract with the City. This last test has the effect of neutralizing the one and only thing that *Schmeer* and the gun fee have in common: payment to a private organization. A compulsory payment to a private organization to support a special purpose authorized by the government can be a tax. Since the gun fee passes all of the other tests for a tax as well, it is a tax. Taxes need voter approval in California. Since the gun fee was not voter approved, it is invalid.

### 3.   **Schmeer *Contains Its Own Exception, Which Applies To This Case***

*Schmeer* held that the term "tax," among other things, "is limited to charges

51

payable to, *or for the benefit of*, a local government." (*Schmeer*, 213 Cal.App.4th at 1328-29.) Thus, *Schmeer* itself recognizes the exception noted above in *Lorber Industries* (675 F.2d at 1066 [a tax supports the government *or* "support[s] some special purpose authorized by it"]) and in *City of Madera v. Black* (181 Cal. at 310 [a tax is "imposed by *or under the authority of* the Legislature, for public purposes"]).

Plaintiffs' complaint alleges, "the City's Ordinance requires the nonprofit to expend the fee providing services such as suicide prevention, gender based violence prevention, addiction intervention, substance abuse treatment, and mental health counseling for victims of gun violence, which services will be available to the general public, not just gun owners, and which gun owners are not required to, and may not choose to, utilize. Because its revenue will fund public services, not services requested by each payer, the 'fee' is a tax under California law." (Complaint (ECF # 94) at PDF p. 11:21.)

San Jose Municipal Code section 10.32.200 contains Findings regarding the need for the ordinance, and a declaration of purpose. It finds, "Conservatively, San Jose taxpayers annually spend approximately $39.7 million ... to respond to gun violence with such public services as emergency police and medical response, victim assistance, incident investigation, acute and long-term health care, and perpetrator adjudication and judicial sanctioning." It declares, "This Part is passed

52

and adopted in the exercise of the police power of the City, and for the protection of the welfare, peace and comfort of the residents of the City of San Jose. Specifically, it is the intent of this Ordinance to reduce gun harm."

Thus, for the purpose of reducing the annual cost incurred by "San Jose taxpayers ... to respond to gun violence with such public services as emergency police and medical response, [etc.]," and "for the protection of the welfare, peace and comfort of the residents of the City of San Jose," the ordinance requires gun owners to pay an annual fee to a nonprofit organization to fund its provision of services which plaintiffs allege are available to, or at least for the benefit of, the San Jose general public – which services could have been provided by the City directly had the City been willing to pay for them.

This, plaintiffs contend, is a tax requiring voter approval under *Schmeer's* exception for "charges payable ... *for the benefit of*, a local government." (*Schmeer*, 213 Cal.App.4th at 1328-29.)

## C.    *This Court Should Not Extend Schmeer When the State Courts Haven't*

The California Constitution defines a "tax" as "*any* levy, charge, or exaction of *any kind* imposed by a local government."  (Cal. Const., art. XIII C, § 1(e).) The *Schmeer* court admitted that the bag fee was *imposed* by a local government, and that article XIII C "does not explicitly state that the levy, charge or exaction must be *payable* to a local government."  (*Schmeer*, 213 Cal.App.4th at 1327.)

53

Nevertheless, the court ruled that the paper bag fee was not a tax primarily because the word tax "in ordinary usage" refers only to payments made to or for the benefit of the government.

Plaintiffs believe that, had their case not been removed, but allowed to remain in state court and progress up to the state courts of appeal, *Schmeer* would not have been extended to facts like those at bar.

*Schmeer* cited no precedent for its interpretation of article XIII C, section 1(e). It also cited no precedent for redefining a constitutionally defined term of art. In fact, the only precedent at the time acknowledged that the voters who enacted article XIII C, section 1(e) intended a "*broadened* definition of 'tax'," not the one in ordinary usage. (*Griffith v. City of Santa Cruz*, 207 Cal.App.4th 982, 989 (2012).)

In the ten years since *Schmeer* was decided, only one court has followed it – the District Court hereinbelow. (See *Nat'l Ass'n for Gun Rights, Inc. v. City of San Jose*, No. 22-cv-00501-BLF, 2022 U.S. Dist. LEXIS 138385, at *42 (N.D. Cal. Aug. 3, 2022).)

As plaintiffs argued above, *Schmeer* can be easily distinguished from the case at bar. Applying any judicial test other than *Schmeer*'s private payee test, San Jose's gun fee would be a tax. The fee is: (1) imposed by the City; (2) compulsory; (3) for a public purpose; (4) not in return for a benefit received; (5)

not to remedy a condition caused by the payer; (6) to fund services available to people who don't pay the fee.  The fee is also a tax under the only test contained in article XIII C, section 1(e) where "tax" is defined as "*any* levy, charge, or exaction of *any* kind imposed by a local government."

"Absent ambiguity, we presume that the voters intend the meaning apparent on the face of an initiative measure and the court may not add to the statute or rewrite it to conform to an assumed intent that is not apparent in its language." (*Prof. Engineers in Cal. Gov. v. Kempton*, 40 Cal.4th 1016, 1037 (2007) .)  Where there is ambiguity, "construction is to favor the taxpayer rather than the government."  (*Cal. Motor Transp. Co. v. State Bd. of Equal.*, 31 Cal.2d 217, 223-24 (1947).)  "Initiative measures as well as other general constitutional provisions should be interpreted liberally to give full effect to the framers' objective."  (*Mills v. Cnty. of Trinity*, 108 Cal.App.3d 656, 660 (1980).)  Here, the "framers' objective" is contained in the Liberal Construction Clause of the statewide initiative that added article XIII C to the constitution, and the Findings and Declarations of the subsequent initiative that amended it.  "[I]ts provisions 'shall be liberally construed to effectuate its purposes of limiting local government revenue and enhancing taxpayer consent'" (*Hill RHF Hous. Partners, L.P. v. City of L.A.*, 12 Cal.5th 458, 475 (2021).) "so that neither the Legislature nor local governments can circumvent these restrictions on increasing taxes by simply

defining new or expanded taxes as 'fees'" (*Jacks v. City of Santa Barbara,* 3 Cal.5th 248, 263 (2017).).

This Court, then, in exercising its supplemental jurisdiction, is required to construe Article XIII C to favor taxpayers rather than the government, and is bound to adopt a liberal interpretation that gives full effect to the framers' objective of enhancing taxpayer consent and preventing local governments from circumventing voter approval by labeling exactions as "fees." For these reasons, rather than expand *Schmeer*, which no California court has done, this Court should either distinguish *Schmeer* based on its vastly different facts, or find that the fee at bar constitutes a tax even under *Schmeer* because it is "for the benefit of" the City of San Jose.

## CONCLUSION

For the reasons above, the District Court's order dismissing this case for failure to state a claim should be reversed.

DATED:   December 20, 2023.

Respectfully submitted,

JONATHAN M. COUPAL
TIMOTHY A. BITTLE
LAURA E. DOUGHERTY

 /s/ Timothy A. Bittle
Timothy A. Bittle
*Attorneys for HJTA Plaintiffs-
Appellants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 11,211 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Times New Roman 14-point font.


Date:      December 20, 2023

                                        JONATHAN M. COUPAL
                                        TIMOTHY A. BITTLE
                                        LAURA E. DOUGHERTY


                                          */s/ Timothy A. Bittle*
                                        Timothy A. Bittle
                                        *Attorneys for HJTA Plaintiffs-*
                                        *Appellants*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2023, I electronically filed the

foregoing with the Clerk of the Court for the United States Court of Appeals for

the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by

the appellate CM/ECF system.

Date: December 20, 2023

JONATHAN M. COUPAL
TIMOTHY A. BITTLE
LAURA E. DOUGHERTY

*/s/ Timothy A. Bittle*
Timothy A. Bittle
*Attorneys for HJTA Plaintiffs-Appellants*