No. 23-16091

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

HOWARD JARVIS TAXPAYERS ASSOCIATION, *et al.*,

*Plaintiffs-Appellants,*

v.

CITY OF SAN JOSE,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Northern District of California
Consolidated Case Nos. 5:22-cv-00501-BLF and 5:22-cv-02365-BLF
Hon. Beth Labson Freeman

**APPELLANTS' EXCERPTS OF RECORD VOLUME 1 OF 4**

Jonathan M. Coupal, SBN 107815
Timothy A. Bittle, SBN 112300
Laura E. Dougherty, SBN 255855
Howard Jarvis Taxpayers Foundation
1201 K Street, Ste. 1030
Sacramento, CA 95814
Telephone: (916) 444-9950

*Attorneys for Appellants*

[This page intentionally left blank]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

NATIONAL ASSOCIATION FOR GUN RIGHTS, INC., et al.,

        Plaintiffs,

        v.

CITY OF SAN JOSE, et al.,

        Defendants.

Case No. 22-cv-00501-BLF

**ORDER DISMISSING CASE**

On July 13, 2023, the Court issued an Order Granting Defendant's Motion to Dismiss With Leave to Amend in Part and Without Leave to Amend in Part. ECF No. 107. The Court dismissed Claims 1, 4, 5, 6, and 7 without leave to amend; it dismissed Claim 2 with leave to amend; and it dismissed Claim 3 with leave to amend in part and without leave to amend in part. *Id.* at 22.

The Ninth Circuit has explained that "[o]rdinarily an order dismissing a complaint but not dismissing the action is not appealable under section 1291 unless circumstances make it clear that the court concluded that the action could not be saved by an amendment of the complaint." *Lopez v. City of Needles, Cal.*, 95 F.3d 20, 22 (9th Cir. 1996) (quoting *Hoohuli v. Ariyoshi*, 741 F.2d 1169, 1171 n.1 (9th Cir. 1984)). Therefore, "an order dismissing a complaint was not appealable where it was not shown that the trial court had found that the plaintiffs could not save the action by amendment." *Id.* (citing *Proud v. United States*, 704 F.2d 1099, 1100 (9th Cir. 1983)). "Unless a plaintiff files in writing a notice of intent not to file an amended complaint, such dismissal order is not an appealable final decision." *Id.* The "filing of such notice gives the district court an opportunity to reconsider, if appropriate, but more importantly, to enter an order dismissing the action, one that is clearly appealable." *Id.*

1    Plaintiffs have filed a notice of their intent not to amend the complaint.  ECF No. 108.

2  Therefore, the Court enters this Order DISMISSING the action in its entirety.  The purpose of this

3  Order is to serve as "a final decision of the purposes of 28 U.S.C. § 1291."  *See Lopez*, 95 F.3d at

4  23.

5    **IT IS SO ORDERED.**

6

7  Dated:  July 28, 2023

8  _____

9  BETH LABSON FREEMAN
   United States District Judge

1

2

3                    UNITED STATES DISTRICT COURT

4                  NORTHERN DISTRICT OF CALIFORNIA

5                         SAN JOSE DIVISION

6

7    NATIONAL ASSOCIATION FOR GUN            Case No. 22-cv-00501-BLF
     RIGHTS, INC., et al.,
8                                            **ORDER GRANTING DEFENDANTS'**
                  Plaintiffs,                **MOTION TO DISMISS WITH LEAVE**
9                                            **TO AMEND IN PART AND WITHOUT**
          v.                                 **LEAVE TO AMEND IN PART**
10
     CITY OF SAN JOSE, et al.,               [Re: ECF No. 95]
11
                  Defendants.
12
     HOWARD JARVIS TAXPAYERS
13   ASSOCIATION, et al.,

14                Plaintiffs,

15        v.

16   CITY OF SAN JOSE,

17                Defendant.

18

19        On February 8, 2022, the City of San Jose City Council voted to approve the Reduction of

20   Gun Harm – Liability Insurance Requirement and Gun Harm Reduction Fee (the "Ordinance"),

21   requiring San Jose gun owners to maintain gun liability insurance and pay a mandatory annual fee

22   to a designated gun harm reduction nonprofit. This ordinance has been challenged by two sets of

23   plaintiffs, one led by the National Association for Gun Rights, Inc. ("NAGR Plaintiffs") and the

24   other by the Howard Jarvis Taxpayers Association ("HJTA Plaintiffs").

25        Now before the Court is Defendants' motion to dismiss the Second Amended Complaint.

26   For the following reasons, the Court GRANTS Defendants' motion WITH LEAVE TO AMEND

27   IN PART and WITHOUT LEAVE TO AMEND IN PART.

28

United States District Court
Northern District of California

## I. BACKGROUND

### A. The Ordinance

The San Jose Ordinance at issue here is comprised of two primary obligations: the requirement for gunowners to maintain liability insurance (the "Insurance Requirement") and the payment of an annual fee to a nonprofit of the City's designation (the "Fee Provision").

The Insurance Requirement obligates San Jose residents who own or possess a firearm to obtain a homeowner's, renter's, or gun liability insurance policy "covering losses or damages resulting from any accidental use of the Firearm." ECF No. 94[1] ("SAC"), Ex. E ("Ordinance") § 10.32.210 (the "Insurance Requirement"). The Insurance Requirement went into effect on January 1, 2023. ECF No. 85 at 3.

The Fee Provision requires San Jose gun owners to pay an Annual Gun Harm Reduction Fee (the "Fee") to a Designated Nonprofit Organization (the "Nonprofit"), selected by the City Manager. Ordinance § 10.32.215, 10.32.235. The Ordinance did not set the Fee amount, but stated that it would be established by the City Council, and every dollar generated must be used by the Nonprofit to provide "services to residents of the City that own or possess a [f]irearm in the City, to members of their household, or to those with whom they have a close familial or intimate relationship." *Id.* § 10.32.220(A). The Ordinance instructs the Nonprofit to spend the funds generated from the Fee exclusively for programs and initiatives designed to "(a) reduce the risk or likelihood of harm from the use of firearms in the City of San Jose, and (b) mitigate the risk of physical harm or financial, civil, or criminal liability that a San Jose firearm owner or her family will incur through her possession of firearms." *Id.* § 10.32.220(C). Proceeds generated by the Fee may not be used for litigation, political advocacy, or lobbying activities nor may the City "specifically direct how the monies from the Gun Harm Reduction Fee are expended." *Id.* §§ 10.32.220(B)-(C).

---

[1] Citations to "ECF No." refer to entries in the docket for the consolidated case, Case No. 22-cv-00501-BLF. Any citations to the docket for Case No. 22-cv-002365 will be referred to as "HJTA ECF No."

1    In June 2022, the City Council set a placeholder Fee amount of $25 per gun-owning

2  household with the express caveat that the Fee would not yet be enforced.  SAC ¶ 31; ECF No. 78

3  at 2.  This action did not permanently set the Fee; once the City Manager's Office ("CMO") has

4  completed all necessary prerequisites to enforcing the Fee, including designating and securing a

5  contract with a nonprofit, it will need to reappear before the City Council and ask it to vote on and

6  approve the CMO's authority to begin requiring Fee payment.  ECF No. 78 at 2-3.  When this

7  second vote occurs, the amount could change from $25.  *Id.* at 3.

8    In addition to obtaining gun liability insurance and paying the annual Fee, San Jose

9  residents must also maintain City-designated proof of compliance.  Ordinance § 10.32.230.  The

10  Ordinance sets out a limited number of exemptions from its obligations, including a "financial

11  hardship" exemption, the criteria for which were to be promulgated by the City Manager.  *Id.* §§

12  10.32.225, 10.32.235(A)(4).

13    Violations of the Ordinance are punishable by administrative citation with fines to be

14  established by City Council.  *Id.* § 10.32.240.  Although the Ordinance would permit the

15  impoundment of any non-compliant person's firearm to the extent allowed by law (*id.* §

16  10.32.245), the City admits in its briefing that the section is inoperable because "there is currently

17  no lawful basis to impound firearms under state or federal law."  MTD at 6.  And Plaintiffs allege

18  this lack of authority to impound.  SAC ¶ 51.

19    The Ordinance authorizes the City Manager to promulgate certain implementing

20  regulations, including the designation of the Nonprofit, additional guidelines on and audits of the

21  use of the Fee, and establishing the criteria for the "financial hardship" exemption.  *Id.* §

22  10.32.235.  The CMO has defined the criteria for a hardship exemption.  SAC, Ex. H § 4-3; ECF

23  No. 82 at 1.  The City Council and City Manager have not yet established the identity of the

24  Nonprofit.  *See* SAC ¶ 58.  The CMO "initiated an RFI process for soliciting interest and

25  information from nonprofit organizations regarding using the Fee's funds to provide the programs

26  and services contemplated by the Ordinance" but received no responses.  ECF No. 85 at 2; *see*

27  SAC ¶ 47.  The CMO will publish a full Request for Proposals to elicit proposals from qualified

28  nonprofit organizations.  ECF No. 85 at 2; *see* SAC ¶ 47.

United States District Court
Northern District of California

### B.    Procedural History

#### 1.    National Association for Gun Rights, Inc. ("NAGR"), et al.

Plaintiff National Association for Gun Rights, Inc. ("NAGR") describes itself as a nonprofit grassroots organization dedicated to defending the Second Amendment right to keep and bear arms.  SAC ¶ 13.  Its members include San Jose residents, such as Plaintiff Mark Sikes, who legally own guns and would be subject to the Ordinance if it were to go into effect.  *Id.* ¶¶ 13-14. NAGR Plaintiffs filed their original complaint on January 25, 2022, the same day the City passed the first reading of the Ordinance.  *See* ECF No. 1.  NAGR Plaintiffs moved for a preliminary injunction against the enforcement of the Ordinance.  ECF No. 25.  Shortly thereafter, the City filed a motion to dismiss NAGR Plaintiffs' First Amended Complaint.  ECF No. 36.  On June 23, 2022, the United States Supreme Court issued its opinion in *New York State Rifle & Pistol Ass'n., Inc. v. Bruen*, 142 S. Ct. 2111 (2022), expressly rejecting the "two-step" means-end scrutiny framework that Circuit Courts of Appeals and the parties had used to analyze Second Amendment challenges.  After requesting and receiving the parties' supplemental briefings on the application of *Bruen* and hearing oral arguments, the Court denied NAGR Plaintiffs' motion for preliminary injunction on August 3, 2022.  ECF No. 72 ("PI Order"); *see Nat'l Ass'n for Gun Rights, Inc. v. City of San Jose*, 618 F. Supp. 3d 901 (N.D. Cal. 2022).

#### 2.    Howard Jarvis Taxpayers Association ("HJTA"), et al.

Plaintiff Howard Jarvis Taxpayers Association ("HJTA") is a nonprofit public benefit corporation that engages in civil litigation to ensure constitutional taxation in California.  SAC ¶ 16.  Plaintiffs Silicon Valley Taxpayers Association, Inc. ("SVTA") and Silicon Valley Public Accountability Foundation ("SVPAF") are also nonprofit public benefit corporations comprised of Santa Clara County residents, seeking to reduce taxes and monitor Santa Clara County public officials, respectively.  *Id.* ¶¶ 17-18.  All three associations' members include San Jose gun owners who would be subject to the Fee Provision.  *Id.* ¶¶ 16-18.  In addition to the associational plaintiffs, the suit is also brought by individual plaintiffs, James Barry and George Arrington (collectively with HJTA, SVTA, and SVPAF, the "HJTA Plaintiffs"), both of whom are San Jose residents who legally own firearms.  *Id.* ¶¶ 19-20.

On March 7, 2022, HJTA Plaintiffs filed their Complaint in the Santa Clara County Superior Court. HJTA ECF No. 1. The City removed the HJTA Complaint to the Northern District of California based on the First and Second Amendment claims. *Id.* Shortly thereafter, the Court granted the City's motion to relate the HJTA Plaintiffs' case with the NAGR Plaintiffs' case. ECF No. 41; HJTA ECF No. 5. On April 22, 2022, the City moved to dismiss the HJTA Complaint on Rule 12(b)(1) and (b)(6) grounds. HJTA ECF No. 9.

### 3. Consolidated Case

On September 30, 2022, the Court consolidated both cases for all purposes. ECF No. 80. The Court also issued an Order granting in part and denying in part Defendants' motion to dismiss the NAGR Plaintiffs' Complaint and the HJTA Plaintiffs' Complaint. ECF No. 81 ("MTD Order"); *see Nat'l Ass'n for Gun Rights, Inc. v. City of San Jose*, --- F. Supp. 3d ---, 2022 WL 4625133 (N.D. Cal. Sept. 30, 2022).

On February 2, 2023, Plaintiffs filed a "Consolidated Second Amended Complaint for Injunctive Relief, Declaratory Judgment, Invalidation of §§ 10.32.215 and 10.32.230(B) of Chapter 10.32 of the Title 10 of the San Jose Municipal Code, and Nominal Damages." *See* SAC. The claims in the SAC are as follows:

| Claim for Relief | Requirement Challenged | | Plaintiff | |
|---|---|---|---|---|
| **1.** U.S. Constitution, Second Amendment | Fee | Insurance | NAGR | |
| **2.** U.S. Constitution, First Amendment (compelled speech and association) | Fee | | NAGR | HJTA |
| **3.** Declaratory Judgment, 28 U.S.C. §§ 2201-02 (derivative of Claims 1 and 2) | Fee | Insurance | NAGR | HJTA |
| **4.** Cal. Constitution, art. I (§§ 2-3) (compelled speech and association) | Fee | | | HJTA |
| **5.** Cal. Unconstitutional Conditions Doctrine (based on Second Amendment rights) | Fee | | | HJTA |
| **6.** Cal. Constitution, art. XIII C (§§ 1-2) (special tax lacking voter approval) | Fee | | | HJTA |
| **7.** Cal. Constitution, arts. XIII (§ 31) and XI (§ 11) (delegation of power to tax) | Fee | | | HJTA |

SAC ¶¶ 84-127.

Defendants moved to dismiss the SAC. ECF No. 95 ("MTD"); *see also* ECF No. 104 ("Reply"). NAGR Plaintiffs and HJTA Plaintiffs oppose the motion. ECF Nos. 103 ("NAGR

Opp."), 102 ("HJTA Opp.").  Brady, a nonprofit organization dedicated to reducing gun violence, filed a motion for leave to appear as amicus curiae and to file an amicus brief in support of Defendant's motion to dismiss.  *See* ECF Nos. 99 (Brady Motion for Leave), 99-1 (Brief of Brady in Support of Defendants' MTD ("Brady Br.")).  No party has opposed the motion.  The Court GRANTS Brady's motion for leave to appear as amicus curiae and to file an amicus brief.

## II.    LEGAL STANDARD

### A.    Lack of Subject Matter Jurisdiction

A party may challenge the Court's subject matter jurisdiction by bringing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1).  "A Rule 12(b)(1) jurisdictional attack may be facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial attack, the movant asserts that the lack of subject matter jurisdiction is apparent from the face of the complaint.  *Id.*  In a factual attack, the movant disputes the truth of allegations that otherwise would give rise to federal jurisdiction.  *Id.*  "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."  *Id.*  "The court need not presume the truthfulness of the plaintiff's allegations."  *Id.*  If the moving party presents evidence demonstrating the lack of subject matter jurisdiction, the party opposing the motion must present affidavits or other evidence sufficient to establish subject matter jurisdiction.  *Id.*

### B.    Failure to State a Claim

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'"  *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is

facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178, 83 S. Ct. 227 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

## III. DISCUSSION

Defendants move to dismiss all claims. *See* MTD. The Court will discuss each in turn.

### A. Claim 1: Second Amendment

The first claim, brought by NAGR Plaintiffs, alleges that the Insurance Requirement and Fee Provision both violate the Second Amendment . SAC ¶¶ 84-92. As to the Insurance Requirement, the City moves to dismiss the claim on Rule 12(b)(6) grounds under the *Bruen* framework. MTD at 10-16. As to the Fee Provision, the City moves to dismiss the claim on ripeness grounds or, in the alternative, on Rule 12(b)(6) grounds. MTD at 16-21.

#### 1. Insurance Requirement

NAGR Plaintiffs allege that the Insurance Requirement violates the Second Amendment. SAC ¶¶ 84-92. In June 2022, the U.S. Supreme Court issued its opinion in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, holding that New York State's "may-issue" licensing regime—*i.e.*, where officials have discretion and *may issue*, rather than *shall issue*, concealed-carry licenses upon proof of proper cause—was unconstitutional. 142 S. Ct. 2111 (2022). In striking down the New York statute, the Supreme Court acknowledged and expressly rejected the "two-step" means-

7

end scrutiny framework that Circuit Courts of Appeals (and the parties) have used to analyze Second Amendment challenges. *See id.* at 2127. In its place, *Bruen* pronounced a constitutional test adhering to the principles in *D.C. v. Heller*, that is, "a test rooted in the Second Amendment's text, as informed by history." *Id.* at 2127 (citing *D.C. v. Heller*, 554 U.S. 570, 576-77 (2008)). The present standard as pronounced in *Bruen* is as follows: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2129-30.

To determine whether the Second Amendment's plain text covers an individual's conduct, courts must first identify and delineate the specific course of conduct at issue, which in *Bruen* was "carrying handguns publicly for self-defense." *Id.* at 2134. *Bruen* conducted a textual analysis of the words "bear" and "keep" to determine whether the conduct of publicly carrying a firearm fell within the language of the Second Amendment. *Id.* at 2134-35.

If the conduct at issue is covered by the text of the Second Amendment, the burden then shifts to the government to show why the regulation is consistent with the Nation's historical tradition of firearm regulation, specifically the periods closest to the adoption of the Second Amendment (1791) and the Fourteenth Amendment (1868). *Id.* at 2135-36. Courts need not themselves engage in "searching historical surveys" for potential regulatory analogues—they are "entitled to decide a case based on the historical record compiled by the parties." *Id.* at 2130 n.6. If the parties are able to identify instances of historical firearm regulations, courts must reason by analogy to determine whether the two regulations are "relevantly similar." *Id.* at 2132 (quoting Cass R. Sunstein, *On Analogical Reasoning Commentary*, 106 Harv. L. Rev. 741, 773 (1993)). Two relevant metrics for this comparison are "how and why the regulations burden a law-abiding citizen's right to armed self-defense"; in other words, "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 2132-33.

With this framework in mind to evaluate the Insurance Requirement's constitutionality under the Second Amendment, the Court turns to the parties' arguments.

United States District Court
Northern District of California

a. Plain Text

The Court must first identify Plaintiffs' "proposed course of conduct" and assess whether that conduct is covered by the Second Amendment's plain text. *Bruen*, 142 S. Ct. at 2134. Defendants argue that the Insurance Requirement does not infringe on conduct that falls within the plain text of the Second Amendment. MTD at 11-13. NAGR Plaintiffs argue that the regulated conduct is "owning or possessing firearms in the home for self-defense." NAGR Opp. at 4. They further argue that the Insurance Requirement "impos[es] a burden on gun ownership and possession" and "seeks to regulate the keeping and bearing of arms." *Id.* at 5. Defendants argue that NAGR Plaintiffs have failed to state a claim "because 'choosing to keep and bear arms in the home' is not a course of conduct that is affected by the Insurance Requirement." MTD at 12. The City asserts that "[h]olding insurance for an activity is not the same as participating in that activity." *Id.* at 13. Brady argues that the Insurance Requirement does not implicate the Second Amendment because the conduct at issue is "insuring liability," which is outside the scope of the Second Amendment. Brady Br. at 11-12.

The Supreme Court provided limited guidance on how to define the proposed course of conduct—*Bruen* identified the conduct at issue with New York's statute as "carrying handguns publicly for self-defense." *Bruen*, 142 S. Ct at 2134. In the Preliminary Injunction Order, the Court defined the conduct at issue here as "owning or possessing a firearm without firearm liability insurance." PI Order at 15. But the Court noted there that it "may reevaluate this description of the proposed conduct" on a more developed record and that it would "revisit this issue as the case proceeds." *Id.* at 15 n.4. The Court does so here. As Defendants note, "the closest the NAGR Plaintiffs come to pleading the required course of conduct at issue is 'choosing to keep and bear arms in the home.'" MTD at 12 (quoting SAC ¶ 87). If that were the "course of conduct" then the Court would agree with Defendants that "'choosing to keep and bear arms in the home' is not a course of conduct that is affected by the Insurance requirement," which simply requires gun owners to maintain insurance for accidental shootings. *Id.* The Court has gleaned more generally from the SAC the following course of conduct: "choosing to keep and bear arms at home without the burden of insuring liability for firearm-related accidents." As noted by Brady,

United States District Court
Northern District of California

9

the purchase of insurance does not restrict firearm possession or use. *See* Brady Br. at 11. And the Ordinance does not condition ownership on complying with the Insurance Requirement, as non-compliance with the Ordinance can only result in an administrative citation or fine; the City has no authority to seize a person's gun under the Ordinance's impoundment provision. MTD at 12; SAC ¶ 51; Ordinance §§ 10.32.240, 10.32.245.

The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., Amend. II. The Court finds that the plain text of the Second Amendment does not cover the course of conduct at issue here: "choosing to keep and bear arms at home without the burden of insuring liability for firearm-related accidents." But the Court will also address whether the Insurance Requirement is consistent with the Nation's historical tradition of firearm regulation.

b.   Historical Tradition

If the proposed conduct is covered by the Second Amendment's plain text, the burden shifts to the City to "demonstrate[e] that [the Insurance Requirement] is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct at 2130. While the Court determines that NAGR Plaintiffs have not alleged a course of conduct that implicates the Second Amendment, the Court will address historical tradition for the sake of completeness. As discussed in the Preliminary Injunction Order, the Court finds that the City has presented a "relevantly similar" historical regulation such that NAGR Plaintiffs have not adequately alleged a claim based on *Bruen*'s historical tradition prong.

*Bruen* described the analogical reasoning of the historical tradition prong as "neither a regulatory straightjacket nor a regulatory blank check. . . . [C]ourts should not 'uphold every modern law that remotely resembles a historical analogue' [but] analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*." *Bruen*, 142 S. Ct. at 2133 (emphasis in original). "[E]ven if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* As one example, *Bruen* noted that "[a]lthough the historical record yields relatively few 18th- and 19th-century 'sensitive places' where weapons were altogether

10

prohibited—*e.g.*, legislative assemblies, polling places, and courthouses—we are also aware of no disputes regarding the lawfulness of such prohibitions. We therefore can assume it settled that these locations were 'sensitive places' where arms carrying could be prohibited consistent with the Second Amendment." *Id.* (internal citation omitted).

The City has pointed to several historical analogues with varying degrees of similarity to the Insurance Requirement. *See* MTD at 13-16. As explained in the Preliminary Injunction Order, the Court finds that the mid-19th century surety statutes, cited by the City and discussed at length in *Bruen*, bear striking analogical resemblances to the Insurance Requirement. 142 S. Ct. at 2148; *see* MTD at 14. These statutes typically required certain individuals to post bond before carrying weapons in public if there was "reasonable cause" to fear these individuals would cause injury or breach of the peace, with the bond forfeited if the wielder did in fact injure another or breach the peace. *Bruen*, 142 S. Ct. at 2148.

The history of reallocating costs of firearm-related accidents—from which the Insurance Requirement descends—can be traced back to the early American practice of imposing strict liability for such accidents. *See* Brady Br. at 5-6. As early as 1814, the Supreme Judicial Court of Massachusetts noted that "[i]t is immaterial . . . whether the act of the defendant [causing a firearm injury] was by his intention and purpose injurious to the plaintiff, or the mischief which ensued was accidental," a legal principle that had "never been questioned" at the time. *Cole v. Fisher*, 11 Mass. (1 Tyng) 137, 138 (1814); *see also Moody v. Ward*, 13 Mass. (1 Tyng) 299, 301 (1816) (noting that militia commanders whose soldiers fire "guns in and near the highways on days of military musters . . . are legally responsible for all damage sustained by a citizen in consequence of such neglect."). Strict liability for gun accidents eventually transitioned to a negligence standard in the mid-1800s, which in turn gave rise to liability insurance to "insure against the consequences of negligence." Brady Br. at 6-8 (citing *Morgan v. Cox*, 22 Mo. 373, 376-77 (1856) (commenting on the transition of firearm strict liability to negligence)). However, whether the standard was strict liability or negligence, the Nation nonetheless maintained a "historical tradition" of shifting the costs of firearm accidents from the victims to the owners of the implicated firearms.

With this historical backdrop in mind, the Court considers whether 19th century surety

statutes are sufficiently analogous to the Insurance Requirement. Both regulations share similar, albeit not identical, deterrent purposes: surety laws were "intended merely for prevention" of future harm, *Bruen*, 142 S. Ct. at 2149, while the Insurance Requirement is intended to "reduce the number of gun incidents by encouraging safer behavior," Ordinance § 10.32.200(B)(12). Both schemes also achieve their purposes through similar means, namely the threat of financial consequences (either through a peace bond or higher premiums) for individuals deemed to be high-risk (either by a judge or an underwriter). *See Bruen*, 142 S. Ct. at 2151 ("[A]lthough surety statutes did not directly restrict public carry, they did provide financial incentives for responsible arms carrying."). The Supreme Court also highlighted the fact that surety laws were not complete bans on public carry, much like the Insurance Requirement. *Id.* 2148 (noting that surety laws were "not *bans* on public carry") (italics in original). Accordingly, the Court finds that surety laws and the Insurance Requirement share substantial overlap as to the "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Bruen*, 142 S. Ct. at 2133.

NAGR Plaintiffs argue that surety laws are distinguishable because these laws imposed a financial burden "only *after* an individual was reasonably accused on intending to injure another or breach the peace." NAGR Opp. at 6-7 (emphasis in original) (quoting *Bruen*, 142 S. Ct. at 2148-49). The Court rejected this argument in its Preliminary Injunction Order, stating that while NAGR Plaintiffs have identified a fair distinction between surety laws and the Insurance Requirement, the distinction ultimately does not bear upon the metrics identified in *Bruen*. 142 S. Ct at 2133 ("how and why the regulations burden a law-abiding citizen's right to armed self-defense"). The Court explained that while the Insurance Requirement applies to all gun owners, the actual amount of the burden involves a risk evaluation tailored to the individual and analogous to "reasonable cause" determinations under surety statutes. *See* Stephen G. Gilles & Nelson Lund, *Mandatory Liability Insurance for Firearm Owners: Design Choices and Second Amendment Limits*, 14 Engage 18 (2013) ("Competitive pressures would lead insurance carriers to keep the premiums for low-risk gun owners low, while charging higher premiums to those who are more likely to cause injuries to other people."). Second, the Court stated that at this stage in both the litigation and the Ordinance's implementation, there is no evidence on how low gun liability

insurance premiums may be for low-risk gun owners.[2]  *But see id.* at 22 n.34 (estimating a baseline premium of about $20 per year for an average firearm owner).  A *de minimis* low-risk premium could retain analogical resemblance to the *de minimis* (but nonetheless discernible) burdens that surety laws imposed on low-risk gun owners in the 19th century.  *Cf. Bruen*, 142 S. Ct. at 2149 (acknowledging that "the hypothetical possibility of posting a bond" may be a burden but "the burden these surety statutes may have had on the right to public carry was likely too insignificant").  *Bruen* does not demand a "historical twin," and neither will this Court.

The Court also notes the *Bruen* Court's general approval of the regulations attendant to "shall-issue" regimes.  *Id.* at 2138 n.9 (noting with approval that "shall-issue" regimes often require licensing applicants to "undergo a background check or pass a firearms safety course"); *see also id.* at 2162 (Kavanaugh, J., concurring) (noting additional "shall issue" requirements such as fingerprinting, mental health records checks, and training in laws regarding the use of force).

The City has demonstrated that the Insurance Requirement is consistent with the Nation's historical traditions.  Although the Insurance Regulation is not a "dead ringer" for 19th century surety laws, the other similarities between the two laws would render the Ordinance "analogous enough to pass constitutional muster."  *Id.* at 2133.

### c.  Conclusion

The Court will DISMISS NAGR Plaintiffs' Second Amendment claim as to the Insurance Requirement for failure to state a claim.  NAGR Plaintiffs already had an opportunity to amend, and the Court determines that further amendment would be futile, so this dismissal is WITHOUT LEAVE TO AMEND.

### 2.  Fee Provision

NAGR Plaintiffs also allege that the Fee Provision violates the Second Amendment.  SAC ¶¶ 84-92.  Defendants argue that this claim should be dismissed because (1) it is not ripe for

---

[2] The Insurance Requirement may not even impose any financial burden, as Plaintiffs have not produced any evidence that ordinary homeowners' and renters' insurance would not already satisfy the Requirement.  *See* MTD at 10-11.

United States District Court
Northern District of California

review and (2) it fails to state a claim under Rule 12(b)(6). MTD at 16-21. The Court previously determined that NAGR Plaintiffs' Second Amendment challenge to the Fee Provision was not ripe because the City Council had not yet confirmed the Fee's final amount nor had the City Manager promulgated the "financial hardship" criteria by which a gun owner may be exempt from paying the Fee. PI Order at 11-12, MTD Order at 9. The preliminary Fee amount has been set. SAC ¶ 31; ECF No. 78 at 2. And the City Manager has defined the criteria for a hardship exemption. ECF No. 82 at 1. NAGR Plaintiffs argue that the fee requirement is now ripe for review. NAGR Opp. at 8-9. And Defendants acknowledge that "because the Fee amount has at least been preliminarily set, the Fee requirement can be evaluated under the Second Amendment framework." MTD at 19. The fact that the fee amount is subject to change does not affect ripeness. All fees are subject to change over time. If the fee is increased in the future, then Plaintiffs may have a new claim under the Second Amendment. The Court will therefore address this claim on the merits.

Defendants argue that the Fee does not violate the Second Amendment under the Supreme Court's decision in *Bruen*. MTD at 20-21. NAGR Plaintiffs counter that the government cannot "impose a charge for the enjoyment of a right granted by the federal constitution." NAGR Opp. at 7-8 (quoting *Murdock v. Pennsylvania*, 319 U.S. 105, 113 (1943)). The Supreme Court in *Bruen* expressly contemplated regulations that may permissibly include fee payments, so long as the fees were not so "exorbitant [so as to] deny ordinary citizens their right to public carry." *Bruen*, 142 S. Ct. at 2138 n.9. The Fee amount has been set at $25. SAC ¶ 31. As Defendants argued, several courts that analyzed the constitutionality of fee requirements prior to *Bruen* upheld fees of amounts much larger than $25. *Heller v. Dist. of Columbia*, 801 F.3d 264, 278 (D.C. Cir. 2015) (upholding registration fee of $13 per firearm and $35 for fingerprinting); *Kwong v. Bloomberg*, 723 F.3d 160, 165-69 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2696 (2014) (upholding $340 handgun licensing fee); *O'Connell v. Gross*, No. 19-11654-FDS, 2020 WL 1821832, at *9 (D. Mass. Apr. 10, 2020) (upholding $100 fee of which $25 went to licensing authority, $50 went to general fund, which allocated at least $50,000 annually to the Firearm Licensing Review Board, and $25 went to Firearms Fingerprint Identity Verification Trust Fund). The Court determines

1    that the Fee is constitutional.  The $25 amount is by no means "exorbitant."  And the Court notes

2    that there is a financial hardship exemption under which individual for whom compliance would

3    create financial hardship are exempted from the Ordinance.  *See* SAC, Ex. H § 4-3.  This is not a

4    situation where "exorbitant fees deny ordinary citizens their right to public carry."  *Bruen*, 142 S.

5    Ct. at 2138 n.9.  Accordingly, the Court will DISMISS NAGR Plaintiffs' Second Amendment

6    claim as to the Fee Provision.  The Court finds that amendment would be futile, so this dismissal

7    is WITHOUT LEAVE TO AMEND.

8            **B.    Claim 2:  First Amendment**

9            The SAC's First Amendment claim, brought by all Plaintiffs, is asserted only against the

10   Ordinance's Fee Provision.  SAC ¶¶ 93-99.  It alleges that the Ordinance, by requiring gun owners

11   to pay the Fee to a private nonprofit organization designated by the City Manager, "forces San

12   Jose gun owners to associate with or support that private group and to fund their message" in

13   violation of those individuals' First Amendment rights.  *Id.* ¶ 96.  Defendants move to dismiss this

14   claim as unripe.  MTD at 16-20.

15           In the Preliminary Injunction Order and Motion to Dismiss Order, the Court found that the

16   Plaintiffs' First Amendment challenges to the Fee Provision were unripe because the Court had no

17   information as to what activities—and more critically what speech or expression, if any—the

18   proceeds from the Fee would fund.  *See* PI Order at 7-11; MTD Order at 7-9, 18-19.  This

19   reasoning still applies to the Plaintiffs' First Amendment claim.  Because the City Manager has

20   not promulgated regulations identifying the Nonprofit's activities, the Court cannot determine if

21   the Fee would fund any expressive activities and thereby remains unfit for judicial determination.

22   Additionally, Plaintiffs still have not highlighted any hardship they would suffer from the Court

23   withholding consideration at this time.  *See Wolfson*, 616 F.3d at 1060; *see also Bishop Paiute

24   Tribe v. Inyo Cnty.*, 863 F.3d 1144, 1154 (9th Cir. 2017).

25           Plaintiffs argue that the claim is ripe for review because it presents a facial challenge and

26   there is no constitutional way to enforce the requirement, regardless of what Nonprofit is chosen.

27   NAGR Opp. at 8-9; HJTA Opp. at 8-9.  But the Court already rejected the argument that a

28   mandatory Fee to *any* nonprofit would violate the First Amendment.  MTD Order at 8 (citing

United States District Court
Northern District of California

15

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448 (2018)). HJTA Plaintiffs cite to *Janus* in support of their argument. HJTA Opp. at 9. As the Court explained in the Motion to Dismiss Order, *Janus* is distinguishable because there the recipient of the compulsory fees (*i.e.*, the union) and the activities the fees would fund were known and well-defined for First Amendment scrutiny. *See* 138 S. Ct. at 2461 (noting that nonmembers' agency fees paid for the "cost of collective bargaining," as well as lobbying, social and recreational activities, advertising, membership meetings and conventions, and litigation). Here, by contrast, there are no such concrete activities that the Court can consider in applying any level of First Amendment scrutiny or the Supreme Court's reasoning in *Janus*. HJTA Plaintiffs also cite to *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1994). HJTA Opp. at 8. In that case, the Supreme Court recognized that "[f]reedom of association . . . plainly presupposes a freedom not to associate." 468 U.S. at 623. But again, there, the factual circumstances were well-defined for First Amendment scrutiny. *See generally id.* The Supreme Court analyzed whether application of the Minnesota Human Rights Act to United States Jaycees to require the group to accept women as members violated the male members' freedom of association. *Id.* Again, here, the facts are not sufficiently concrete for the Court to apply the First Amendment.

For the reasons set forth above, the City's motion to dismiss the First Amendment claim is GRANTED. Based on Plaintiffs' arguments, it is quite likely they will be able to plead this First Amendment claim once the City designates the Nonprofit. "In the Ninth Circuit, it is proper to liberally allow amendment of a complaint to cure jurisdictional defects." *Nat. Res. Def. Couns. v. Winter*, No. 2:05-cv-07513-FMC-FMOx, 2008 WL 11338646, at *3 (C.D. Cal. Apr. 10, 2008) (internal quotation marks omitted). Accordingly, the Court will DISMISS the SAC's First Amendment claim for lack of ripeness with LEAVE TO AMEND.

**C. Claim 3: Declaratory Judgment Relief**

The SAC asserts a claim under the Declaratory Judgment Act, seeking declaratory relief "[t]o the extent that each of the claims above have not already established a remedy." SAC ¶ 101. The City argues that this claim is derivate of the First and Second Amendment claims, and it should therefore be dismissed on the same basis. MTD at 22. NAGR Plaintiffs argue that this

claim requests relief "to the extent that each of the claims above have not already established a remedy." NAGR Opp. at 10. This claim is based on violations of the Second and First Amendments. SAC ¶¶ 100-02. For the same reasons as discussed for the first and second claims, above, this claim is DISMISSED. This dismissal is WITHOUT LEAVE TO AMEND as to the Second Amendment claim. The dismissal is WITH LEAVE TO AMEND as to the First Amendment claim.

### D. Claim 4: California Rights of Speech and Association

The fourth claim, brought by HJTA Plaintiffs, alleges violation of Sections 2 and 3 of Article I of the California Constitution. SAC ¶¶ 103-06. Section 2 of Article I provides: "A law may not restrain or abridge liberty of speech or press." Cal. Const., art. I, § 2(a). And Section 3 of Article I provides: "The people have the right to . . . assemble freely to consult for the common good." Cal. Const., art. I, § 3. HJTA Plaintiffs allege that the Fee Provision "forces San Jose gun owners to associate or support th[e] private group [designated by the City] and to fund their message" and that this violates their rights under the California Constitution. SAC ¶ 106.

Defendants argue this claim is not ripe for review. MTD at 16-20. For the reasons discussed above with regard to Claim 2, the Court agrees. Therefore, this claim is DISMISSED WITH LEAVE TO AMEND.

### E. Claim 5: Unconstitutional Condition (Second Amendment)

The fifth claim, brought by HJTA Plaintiffs, is titled "Violation of Doctrine of Unconstitutional Conditions." SAC ¶¶ 107-13. HJTA Plaintiffs allege that they "wish to continue exercising their rights under the United States and California [C]onstitutions to protect their property and personal safety by bearing arms" but "the Ordinance has placed a condition on the continued exercise of those rights: any gun owner who fails to pay the required fee to the designated private organization may be forced to surrender his firearms to the City. (Muni. Code § 10.32.245)." Id. ¶ 109.

Defendants argue that the claim should be dismissed because the Fee Provision does not condition the exercise of Second Amendment rights because there are no means by which a gun owner can be deprived of their firearm. MTD at 21-22. The Court previously granted the motion

United States District Court
Northern District of California

United States District Court
Northern District of California

to dismiss this claim, noting that the Ordinance as drafted does not "condition" the exercise of Second Amendment rights because there are no means by which a San Jose gun owner may be deprived of his or her firearm. MTD Order at 20. The Court explained that the Ordinance expressly states that its impoundment provision may only apply "[to] the extent allowed by law" (Ordinance § 10.32.245), and the City openly admits that there is no state or federal law that would presently permit impoundment. MTD Order at 20. The Court found that HJTA Plaintiffs' allegation that "any gun owner who fails to pay the required fee to the designated private organization may be forced to surrender his firearms" was a misinterpretation of the Ordinance. *Id.* (quoting HJTA ECF No. 1). The Court granted leave to amend to the extent the claim was based on the Second Amendment and without leave to amend to the extent it was based on the California Constitution. *Id.* at 21.

HJTA Plaintiffs add allegations in the SAC that they argue are sufficient to state a claim for unconstitutional conditions. HJTA Opp. at 10-12. HJTA Plaintiffs now allege that "City police are authorized by law to, and often do, confiscate firearms when carried or used in violation of the law," alleging that "[i]f a student brings a firearm to school, if someone is carrying a firearm in public without a CCW permit, if someone with a CCW permit is carrying a firearm while intoxicated, if someone purchases a firearm on the street without going through a federally licensed dealer, if someone discharges a firearm in the air on New Year's Eve, and for a host of other reasons, city police are authorized to, and often do, confiscate firearms when carried or used in violation of the law." SAC ¶ 111. They allege that the Ordinance makes it a violation of law to own a gun unless an individual pays the Fee. *Id.* ¶ 112. They further allege that the Municipal Code provides as follows:

> No person shall violate any provision or fail to comply with any of the requirements of this Code or of any other ordinance of the city. Any person violating any of the provisions or failing to comply with any of the mandatory requirements of this Code or of any city ordinance, other than administrative provisions thereof, shall be guilty of a misdemeanor, unless the violation of such provision is designated as an infraction or is a parking violation. The Code provisions for which a violation is an infraction are set forth in Section 1.08.020. The Code provisions for which a violation is a parking violation are set forth in Section 1.08.025.

*Id.* (quoting Ordinance § 1.08.010). HJTA Plaintiffs allege that, under this provision, possessing the gun without paying the fee is a misdemeanor violation of law, and City police can confiscate a gun that is kept or carried in violation of the law. *Id.*

Defendants argue that HJTA Plaintiffs' new allegations are insufficient to state a claim. MTD at 21-22. They argue that the allegation that police may confiscate firearms involved in some violations of the law is "vague and unsupported." *Id.* at 21. They further assert that these "vague and speculative allegations about what the law *might be* or how different combinations of law and conduct *could* apply are insufficient to state claim under Rule 12(b)(6)." *Id.* at 22 (emphasis in original). Defendants also argue that because more specific provisions of law control over more general ones, the Ordinance's provision that firearms may be "impounded" for violations of the law only if authorized by another law controls over HJTA Plaintiffs' argument that the City may use Section 1.08.010 to override the Ordinance's impoundment provisions. *Id.*

The Court agrees with Defendants. As provided above, the Ordinance expressly states that its impoundment provision may only apply "[to] the extent allowed by law." Ordinance § 10.32.245. The City and Plaintiffs have admitted that there is no other law that would allow it. MTD at 6; SAC ¶ 51. This specific provision governs over any more general provision, such as Ordinance § 1.08.010. Cal. Code Civ. Proc. § 1859. Further, HJTA Plaintiffs' new allegations that the City police confiscate guns for violations of the law are vague and insufficient to allow HJTA Plaintiffs to state a claim.

The Court has already granted leave to amend this claim, and it determines that further amendment would be futile, unless state or federal law changes such that impoundment would be possible under Ordinance § 10.32.245. The claim is DISMISSED WITHOUT LEAVE TO AMEND.

## F. Claim 6: State Tax Requirements

The sixth claim, brought by HJTA Plaintiffs, asserts a violation of article XIII C of the California Constitution, specifically that the Fee Provision constitutes a tax that has not been submitted to the electorate for a vote. SAC ¶¶ 114-21. The Court previously dismissed this claim with leave to amend. MTD Order at 21-22. Defendants move to dismiss this claim, arguing that

United States District Court
Northern District of California

1   HJTA Plaintiffs bring the same claim as in the FAC, and only added the following sentence at the

2   end: "The fee is therefore invalid." MTD at 23. The City argues that the claim should be

3   dismissed because (1) it has limited factual allegations, (2) the Fee is not a tax, and (3) even if the

4   Fee was a tax, it would fall under the "specific benefits exception." MTD at 23-24. The Court

5   previously decided that the Fee was not a tax under *Schmeer v. County of Los Angeles*, 213 Cal.

6   App. 4th 1310, 1328-29 (2013), as modified (Mar. 11, 2013), in which the California Court of

7   Appeal held that the language in article XIII C is "limited to charges payable to, or for the benefit

8   of, a local government." MTD Order at 13-15, 21-22.

9           As an initial matter, the Court notes that, although it has dismissed all of the claims over

10  which it has original jurisdiction, the Court nonetheless has discretion to continue exercising

11  supplemental jurisdiction over the remaining state claims under 28 U.S.C. § 1367(a). Because the

12  remaining state claims contain significant overlap with the other claims, the Court finds that

13  judicial economy favors exercising supplemental jurisdiction over the remaining claims. *See*

14  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (noting that supplemental

15  jurisdiction is a "doctrine of discretion" rooted in "considerations of judicial economy,

16  convenience and fairness to litigants").

17          HJTA Plaintiffs provide the same allegations as in their prior complaint, but they argue

18  that the claim is adequately pled because (1) the fee is not currently being paid to a private entity,

19  as the City has not yet designated a nonprofit; (2) *Schmeer* does not apply; and (3) the Court

20  should not extend *Schmeer*. HJTA Opp. at 12-18.

21          The Court determines that, for the reasons provided in the previous Motion to Dismiss

22  Order, the claim should be dismissed. As the Court previously explained, HJTA Plaintiffs have

23  provided very limited factual allegations in support of this claim, *see* SAC ¶¶ 114-21, and thus fall

24  short of the federal standard required by *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has

25  facial plausibility when the plaintiff pleads factual content that allows the court to draw the

26  reasonable inference that the defendant is liable for the misconduct alleged.").

27          HJTA Plaintiffs argue that the fee is not currently being paid to a private entity. HJTA

28  Opp. at 13-14. They argue that the SAC alleges that a Fee of $25 was imposed for the current year

United States District Court
Northern District of California

despite the fact that the Nonprofit has not been selected and that the Fee was included in the City Police Department's annual budget. *Id.* at 13. But Plaintiffs allege that the Fee will be paid to a designated nonprofit organization. SAC ¶ 31. They further allege that the City is not enforcing proof of payment and that the 2022/2023 Fee "apparently will be due and payable once a nonprofit has been designated." *Id.* ¶ 48. While HJTA Plaintiffs are correct that the fee is not *currently* being paid to a private entity, they neither allege nor argue that the fee is being paid to the City. Therefore, the Court's previous determination that the Fee is not a tax under *Schmeer* still stands because the Fee is not "payable to, or for the benefit of, a local government." *See* MTD Order at 13-15, 21-22; *Schmeer*, 213 Cal. App. 4th at 1328-29.

The Court will GRANT the City's motion to dismiss the sixth claim regarding a tax lacking voter approval. The Court already granted leave to amend, and HJTA Plaintiffs did not provide any new allegations. The Court determines that leave to amend would be futile. The claim is DISMISSED WITHOUT LEAVE TO AMEND.

### G.    Claim 7:  Unconstitutional Delegation of Taxing Power

The final claim, brought by HJTA Plaintiffs, alleges that the City unconstitutionally delegated its municipal power to collect taxes and appropriate tax revenues by requiring the Fee be paid to the Nonprofit designated by the City Manager. SAC ¶¶ 122-27.

The Court previously determined that the claim was unripe because there is no current grant or contract with a nonprofit that the Court can evaluate to determine if the City has "surrendered or suspended" its power to tax. MTD Order at 22-23; *see* Cal. Const., art. XIII, § 31 ("The power to tax may not be surrendered or suspended by grant or contract."). But the City argues that the claim is actually ripe for review. Reply at 8-9. HJTA Plaintiffs acknowledge that this claim must fail if the Court finds that the Fee is not a "tax." HJTA Opp. at 19. And the Court has determined that the City's fee is not a "tax" under *Schmeer*. This claim must therefore fail, regardless of whether the City enters any "contract or grant" with a nonprofit.

The Court will GRANT the City's motion to dismiss the seventh claim regarding a tax lacking voter approval. Because the Court did not grant leave to amend the sixth claim, finding it would be futile for HJTA Plaintiffs to try to allege that the Fee is a tax, the Court also determines

that amending this claim would be futile.  The claim is DISMISSED WITHOUT LEAVE TO AMEND.

## IV.     ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' motions to dismiss are GRANTED IN PART and DENIED IN PART, as follows:

1. Defendants' motion to dismiss Claim 1 is GRANTED WITHOUT LEAVE TO AMEND;

2. Defendants' motion to dismiss Claim 2 is GRANTED, and the claim is DISMISSED WITH LEAVE TO AMEND;

3. Defendants' motion to dismiss Claim 3 is GRANTED, and the claim is DISMISSED WITHOUT LEAVE TO AMEND as to the Second Amendment claim, and it is dismissed WITH LEAVE TO AMEND as to the First Amendment claim;

4. Defendants' motion to dismiss Claim 4 is GRANTED, and the claim is DISMISSED WITH LEAVE TO AMEND;

5. Defendants' motion to dismiss Claim 5 is GRANTED, and the claim is DISMISSED WITHOUT LEAVE TO AMEND;

6. Defendants' motion to dismiss Claim 6 is GRANTED, and the claim is DISMISSED WITHOUT LEAVE TO AMEND; and

7. Defendants' motion to dismiss Claim 7 is GRANTED, and the claim is DISMISSED WITHOUT LEAVE TO AMEND.

//

//

//

//

//

//

//

//

United States District Court
Northern District of California

1        NAGR Plaintiffs and HJTA Plaintiffs shall file an amended consolidated complaint within

2   14 days of final implementation of the Fee Provision, and shall set forth whether each claim is

3   brought by only certain plaintiffs or all plaintiffs.  The lengthy time for amendment is granted so

4   that Plaintiffs' claims may become ripe upon the City's enactment of further implementing

5   regulations as contemplated by the Ordinance's express terms.  The City of San Jose shall file a

6   status report on the implementation of the Fee Provision in 60 days or within seven days of

7   enactment, whichever is sooner.

8

9   Dated:  July 13, 2023

10  _____

11  BETH LABSON FREEMAN
    United States District Judge