**No. 23-16091**

## UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

HOWARD JARVIS TAXPAYERS ASSOCIATION, et al.,

*Plaintiffs-Appellants*,

v.

CITY OF SAN JOSE, et al.

*Defendant-Appellee*.

On Appeal from the United States District Court, Northern District of California
Consolidated Case Nos. 5:22-cv-00501-BLF and 5:22-cv-02365-BLF
(Hon. Beth Labson Freeman)

## APPELLEE'S SUPPLEMENTAL EXCERPTS OF RECORD
## VOLUME 1 OF 2

JOSEPH W. COTCHETT (SBN 36324)
jcotchett@cpmlegal.com
TAMARAH P. PREVOST (SBN 313422)
tprevost@cpmlegal.com
ANDREW F. KIRTLEY (SBN 328023)
akirtley@cpmlegal.com
COTCHETT, PITRE & McCARTHY, LLP
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Fax: (650) 697-0577

*Attorneys for Defendant-Appellee.*

JOSEPH W. COTCHETT (SBN 36324)
jcotchett@cpmlegal.com
TAMARAH P. PREVOST (SBN 313422)
tprevost@cpmlegal.com
ANDREW F. KIRTLEY (SBN 328023)
akirtley@cpmlegal.com
MELISSA MONTENEGRO (SBN 329099)
mmontenegro@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA  94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| **NATIONAL ASSOCIATION FOR GUN RIGHTS, INC.**, a non-profit corporation, and **MARK SIKES**, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>**CITY OF SAN JOSE**, a public entity, **JENNIFER MAGUIRE**, in her official capacity as City Manager of the City of San Jose, and the **CITY OF SAN JOSE CITY COUNCIL**,<br><br>Defendants. | Case No. 5:22-cv-00501-BLF<br><br>**DEFENDANTS' STATUS REPORT ON IMPLEMENTATION OF THE GUN HARM REDUCTION ORDINANCE** |
| **HOWARD JARVIS TAXPAYERS ASSOCIATION**; Silicon Valley Taxpayers Association; Silicon Valley Public Accountability Foundation; James Barry; and George Arrington,<br><br>Plaintiffs,<br><br>v.<br><br>**CITY OF SAN JOSE**, and all persons interested in the matter of San Jose Ordinance No. 30716, establishing an Annual Gun Harm Reduction Fee,<br><br>Defendants. | |

Defendants' Status Report on Implementation of the Gun Harm Reduction Ordinance
Case No. 5:22-cv-00501-BLF

Defendants City of San Jose, City Manager Jennifer Maguire, and the City of San Jose City Council (collectively, the "City") provide the following Status Report to the Court and the parties concerning the City's ongoing efforts to implement the San Jose Gun Harm Reduction Ordinance ("Ordinance") at issue in these cases.

Since the Ordinance was approved by the City Council on February 8, 2022, the City has been working diligently to develop regulations and administrative procedures, and take other actions necessary to ensure the Ordinance, when fully implemented, will have the administrative infrastructure it needs to function effectively.

In its August Status Report, the City informed the Court that it had not set a date for when enforcement of the Gun Harm Reduction Fee ("Fee") requirement will begin and that the liability insurance mandate required finalization. *NAGR* Action, ECF 78, at 1. The City referred the Court to the *Memorandum from Sarah Zárate to San Jose Mayor and City Council Re: Gun Harm Reduction Ordinance Update* (July 1, 2022), *available at* https://www.sanjoseca.gov/home/showpublisheddocument/87508 ("July Memorandum"). *Id*. The July Memorandum contains a table titled "Implementation Timeline," which lists the tasks the City needs to complete to implement the Ordinance, notes which tasks have already been completed, and provides estimated completion dates for those yet to be accomplished. July Memorandum at 3-5.

The July Memorandum continues to provide an accurate list of the anticipated work the City will, or has, undertaken to implement the Ordinance. Since the August Status Report, the City has achieved certain milestones necessary to implement the Ordinance as detailed below.

## I.   Revised City Manager's Office Regulations and Insurance Attestation Form

The City Manager's Office ("CMO") published revised regulations necessary to implement the Ordinance on October 21, 2022 ("Revised Regulations"). The Revised Regulations, (consistent with the July Memorandum) set January 1, 2023 as the implementation date for the Ordinance's insurance requirement, establish the insurance attestation form, define the criteria for a hardship exemption, and describe the peace officer and concealed weapon license exemptions. *See City Manager Regulations for the Gun Harm Reduction Ordinance* (October 21, 2022), *available at* https://www.sanjoseca.gov/home/showpublisheddocument/90815.

City staff will begin a public outreach campaign to inform resident gun owners of the January 1, 2023 implementation date for the insurance requirement and provide instructions on how to comply with the insurance requirement through the attestation form. The insurance attestation form has been translated to Spanish and Vietnamese. Public outreach materials will also be available in these languages.

**II.   The City's Other Progress in Implementing the Ordinance's Terms**

The City has engaged in other related efforts to progress towards full implementation of the Ordinance's terms.

**A.   RFI Process**

First, the City has begun outreach efforts to ultimately secure a contract with a non-profit organization who will administer the programs funded by the Fee. Ordinance §§ 10.32.215, 10.32.220. To that end, the City recently issued a Request for Information ("RFI") as part of its outreach effort to any non-profit organization potentially interested in contracting with the City to provide programs and initiatives consistent with the Ordinance's terms. *Id*. The City posted its RFI on a website entitled "Biddingo.com," a governmental contract portal the City uses to solicit interest from a variety of vendors and organizations that it contracts with. The RFI was posted on October 11, 2022 and 3,131 entities have since been directly notified of the City's RFI. These agencies were selected for the services they provide. The RFI will close on November 1, 2022. Numerous City websites also contain information for entities to express interest in this contract. The City's Finance Department webpage, for example, also posts detailed information about Biddingo.com, and directs the public to the City's current procurement opportunities. *See City of San Jose Finance Department: Bid Opportunities,* https://www.sanjoseca.gov/your-government/departments/finance/purchasing/bid-opportunities (last visited Oct. 25, 2022).

**B.   Administrative Citation Schedule of Fines**

Second, the Ordinance provides that failure to comply with its terms could result in an administrative citation. Ordinance § 10.32.240. During the public meeting held on October 18, 2022, the City amended its Administrative Citation Schedule of Fines, which lists all fines the City cites for violations of any City law, to list fines for violations of the Ordinance. Escalating fine amounts were

1   set for first, second, and third or subsequent violations of the Ordinance ($250, $500, and $1000

2   respectively), which are proportional to the violation type and severity with amounts set for other

3   municipal code violations. *See Memorandum from Sarah Zárate to San Jose Mayor and City Council*

4   *Re: Amendment to the Administrative Citation Schedule of Fines Resolution* (October 5, 2022),

5   *available at* https://sanjose.legistar.com/View.ashx?M=F&ID=11295898&GUID=C73A3D41-72E6-

6   4F64-8DE2-650873A3C04E. The fines are also included in the City Manager's Regulations for the

7   Ordinance, which can be found on the City of San Jose Police Department's website under Documents

8   & Policies: Gun Harm Reduction Ordinance. *See San Jose Police Department: Gun Harm Reduction*

9   *Ordinance* (October 20, 2022), *available at* https://www.sjpd.org/records/documents-policies/gun-

10  harm-reduction-ordinance.

### C.    Implementation of the Gun Harm Reduction Fee

12      Third, the Revised Regulations do not establish a date upon which gunowners must comply

13  with the Fee requirement. Resident gun owners are not required to pay the Fee until a payment

14  implementation date is set through future amended regulations.

15      The City will provide additional updates to the Court as appropriate of any further material

16  developments in the City's ongoing effort to implement the Ordinance.

18   Dated:  October 25, 2022                    Respectfully submitted,

19                                              **COTCHETT, PITRE & McCARTHY, LLP**

21                                              By:    */s/ Tamarah P. Prevost*
                                                       Joseph W. Cotchett
22                                                     Tamarah P. Prevost
                                                       Andrew F. Kirtley
23                                                     Melissa Montenegro

24                                              *Attorneys for Defendants City of San Jose, et al.*

---

Defendants' Status Report on Implementation of the Gun Harm Reduction Ordinance
Case Nos. 5:22-cv-00501-BLF                                                              3

1

2

3 **UNITED STATES DISTRICT COURT**

4 **NORTHERN DISTRICT OF CALIFORNIA**

5 **SAN JOSE DIVISION**

6

| | |
|---|---|
| 7  NATIONAL ASSOCIATION FOR GUN RIGHTS, INC., et al., | Case No.  22-cv-00501-BLF |
| 8 | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS** |
| 9  Plaintiffs, | |
| v. | |
| 10  CITY OF SAN JOSE, et al., | [Re:  ECF No. 36] |
| 11  Defendants. | |
| 12 | |
| 13  HOWARD JARVIS TAXPAYERS ASSOCIATION, et al., | Case No.  22-cv-02365-BLF |
| 14  Plaintiffs, | |
| 15  v. | [Re:  ECF No.  9] |
| 16  CITY OF SAN JOSE, | |
| 17  Defendant. | |

18

19    On February 8, 2022, the City of San Jose City Council voted to approve the Reduction of

20  Gun Harm – Liability Insurance Requirement and Gun Harm Reduction Fee (the "Ordinance"),

21  requiring San Jose gun owners to maintain gun liability insurance and pay a mandatory annual fee

22  to a designated gun harm reduction nonprofit.  This ordinance has been challenged by two sets of

23  plaintiffs, one led by the National Association for Gun Rights, Inc. ("NAGR Plaintiffs") and the

24  other by the Howard Jarvis Taxpayers Association ("HJTA Plaintiffs").

25    The Court previously denied NAGR Plaintiffs' motion for preliminary injunction ("August

26  3 Order").  Now before the Court are Defendants' motions to dismiss both Plaintiffs' respective

27  complaints.  For the following reasons, the Court GRANTS IN PART and DENIES IN PART

28  Defendants' motions.

United States District Court
Northern District of California

## I.     BACKGROUND

### A.     The Ordinance

The San Jose Ordinance at issue here is comprised of two primary obligations: the requirement for gunowners to maintain liability insurance (the "Insurance Requirement") and the payment of an annual fee to a nonprofit of the City's designation (the "Fee Provision").

The Insurance Requirement obligates San Jose residents who own or possess a firearm to obtain a homeowner's, renter's, or gun liability insurance policy "covering losses or damages resulting from any accidental use of the Firearm." First Am. Compl. Injunctive Relief, Declaratory Judgment, and Nominal Damages ("NAGR FAC"), Ex. K ("Ordinance") § 10.32.210 (the "Insurance Requirement"), NAGR ECF No. 19.[1]

The Fee Provision requires San Jose gun owners to pay an Annual Gun Harm Reduction Fee (the "Fee") to a Designated Nonprofit Organization (the "Nonprofit"), selected by the City Manager. *Id.* § 10.32.215, 10.32.235. The Fee amount will be established by City Council, and every dollar generated must be used by the Nonprofit to provide "services to residents of the City that own or possess a [f]irearm in the City, to members of their household, or to those with whom they have a close familial or intimate relationship." *Id.* § 10.32.220(A). The Ordinance instructs the Nonprofit to spend the funds generated from the Fee exclusively for programs and initiatives designed to "(a) reduce the risk or likelihood of harm from the use of firearms in the City of San Jose, and (b) mitigate the risk of physical harm or financial, civil, or criminal liability that a San Jose firearm owner or her family will incur through her possession of firearms." *Id.* § 10.32.220(C). Proceeds generated by the Fee may not be used for litigation, political advocacy, or lobbying activities nor may the City "specifically direct how the monies from the Gun Harm Reduction Fee are expended." *Id.* §§ 10.32.220(B) – (C).

In addition to obtaining gun liability insurance and paying the annual Fee, San Jose

---

[1] ECF entries in the NAGR Plaintiffs' docket, *i.e.*, Case No. 22-cv-00501-BLF, will be referred to as "NAGR ECF No." Likewise, ECF entries in the HJTA Plaintiffs' docket will be referred to as "HJTA ECF No."

2

1    residents must also maintain City-designated proof of compliance. *Id.* § 10.32.230. The

2    Ordinance sets out a limited number of exemptions from its obligations, including a "financial

3    hardship" exemption, the criteria for which will be promulgated by the City Manager. *Id.* §§

4    10.32.225, 10.32.235(A)(4).

5        Violations of the Ordinance are punishable by administrative citation with fines to be

6    established by City Council. *Id.* § 10.32.240. Although the Ordinance would permit the

7    impoundment of any non-compliant person's firearm to the extent allowed by law (*id.* §

8    10.32.245), the City admitted in its briefing that the section is inoperable because "[t]here is

9    currently no lawful basis to impound firearms under state or federal law." Mot. Dismiss [NAGR]

10   Pls.' First Am. Compl. ("Mot. NAGR"), at 5-6, NAGR ECF No. 36; *see also* Mot. Dismiss

11   [HJTA] Pls.' Compl. ("Mot. HJTA"), at 6, HJTA ECF No. 9.

12       The Ordinance authorizes the City Manager to promulgate certain implementing

13   regulations, including the designation of the Nonprofit, additional guidelines on and audits of the

14   use of the Fee, and establishing the criteria for the "financial hardship" exemption. *Id.* §

15   10.32.235. At the time the NAGR and HJTA complaints were filed and as of the date of this

16   Order, the City Council and City Manager have not yet established the amount of the Fee, the

17   amount of any administrative fines, or the identity of the Nonprofit. Mot. NAGR 8-9; *see also*

18   Defs.' Corrected Status Report 1-2, NAGR ECF No. 78, Aug. 17, 2022 ("[T]he City has not yet

19   set a date for when enforcement of the Fee requirements will begin, nor has it designated the

20   nonprofit organization to which the Fee must be paid.").

21   **B.    Procedural History**

22   **i.    National Association for Gun Rights, Inc. ("NAGR"), et al.**

23       Plaintiff National Association for Gun Rights, Inc. ("NAGR") describes itself as a

24   nonprofit grassroots organization dedicated to defending the Second Amendment right to keep and

25   bear arms. NAGR FAC ¶ 13. Its members include San Jose residents, such as Plaintiff Mark

26   Sikes, who legally own guns and would be subject to the Ordinance if it were to go into effect. *Id.*

27   ¶ 14. NAGR Plaintiffs name the City of San Jose, Jennifer Maguire in her official capacity as City

28   Manager, and the City of San Jose City Council (collectively, the "City") as defendants to their

United States District Court
Northern District of California

3

1     suit. *Id.* ¶¶ 15-17.

2          NAGR Plaintiffs filed their original complaint on January 25, 2022, the same day the City

3     passed the first reading of the Ordinance. *See* NAGR ECF No. 1. They challenge both the

4     Insurance Requirement and the Fee Provision in five claims for violations of the First and Second

5     Amendment to the U.S. Constitution, the California Constitution, and the City of San Jose's City

6     Charter, as well as a sixth claim under the Declaratory Judgment Act. NAGR FAC ¶¶ 82-148.

7          On March 8, 2022, NAGR Plaintiffs moved for a preliminary injunction against the

8     enforcement of the Ordinance, which both parties fully briefed by March 29, 2022. NAGR ECF

9     Nos. 25, 28, 32. Shortly thereafter, the City filed the instant motion to dismiss NAGR Plaintiffs'

10    First Amended Complaint on April 8, 2022, which was fully briefed by April 29, 2022. NAGR

11    ECF Nos. 36, 46, 50.

12         On June 23, 2022 (after both motions were briefed but before hearing on either), the

13    United States Supreme Court issued its opinion in *New York State Rifle & Pistol Ass'n., Inc. v.*

14    *Bruen*, 142 S. Ct. 2111 (2022), expressly rejecting the "two-step" means-end scrutiny framework that

15    Circuit Courts of Appeals and the parties had used to analyze Second Amendment challenges. After

16    requesting and receiving the parties' supplemental briefings on the application of *Bruen* (NAGR ECF

17    Nos. 64-65) and hearing oral arguments, the Court denied NAGR Plaintiffs' motion for preliminary

18    injunction on August 3, 2022. NAGR ECF No. 72.

19         **ii.    Howard Jarvis Taxpayers Association ("HJTA"), et al.**

20         Plaintiff Howard Jarvis Taxpayers Association ("HJTA") is a nonprofit public benefit

21    corporation that engages in civil litigation to ensure constitutional taxation in California. Notice

22    of Removal, Ex. A ("HJTA Compl."), HJTA ECF No. 1. Plaintiffs Silicon Valley Taxpayers

23    Association, Inc. ("SVTA") and Silicon Valley Public Accountability Foundation ("SVPAF") are

24    also nonprofit public benefit corporations comprised of Santa Clara County residents, seeking to

25    reduce taxes and monitor Santa Clara County public officials, respectively. *Id.* ¶¶ 2-3. All three

26    associations' members include San Jose gun owners who would be subject to the Fee Provision.

27    *Id.* ¶¶ 1-3. In addition to the associational plaintiffs, the suit is also brought by individual

28    plaintiffs, James Barry and George Arrington (collectively with HJTA, SVTA, and SVPAF, the

United States District Court
Northern District of California

4

"HJTA Plaintiffs"), both of whom are San Jose residents who legally own firearms. *Id.* ¶¶ 4-5.

On March 7, 2022, the HJTA Plaintiffs filed their "Complaint to Invalidate §§ 10.32.215 and 10.32.230(B) of Chapter 10.32 of the Title 10 of the San Jose Municipal Code" in the Santa Clara County Superior Court. Notice of Removal ¶ 1, HJTA ECF No. 1. The HJTA Complaint is styled as a validation action pursuant to Cal. Civ. Proc. Code §§ 860, *et seq.*, and asserts four causes of action: (1) violation of constitutional rights of speech and association under both the U.S. and California Constitution; (2) "unconstitutional condition" of the Second Amendment and California Constitution; (3) "special tax lacking voter approval" under the California Constitution, and (4) "unconstitutional delegation of power to tax" under the California Constitution. HJTA Compl. ¶¶ 8-37. Notably, HJTA Plaintiffs only challenge the Fee Provision and not the Insurance Requirement. *See* Opp. Pls. Mot. Dismiss Compl. ("HJTA Opp.") 13, HJTA ECF No. 16.

On April 15, 2022, the City removed the HJTA Complaint to the Northern District of California based on the First and Second Amendment claims. Notice of Removal ¶¶ 4-6. Shortly thereafter, the Court granted the City's motion to relate the HJTA Plaintiffs' case with the NAGR Plaintiffs' case. NAGR ECF No. 41; HJTA ECF No. 5. On September 30, 2022, the Court consolidated both cases for all purposes. NAGR ECF No. 80.

On April 22, 2022, the City moved to dismiss the HJTA Complaint on Rule 12(b)(1) and (b)(6) grounds. Mot. HJTA 1. The City and HJTA Plaintiffs completed their briefing by May 13, 2022, and the Court heard oral arguments on August 18, 2022.

## II.   LEGAL STANDARD

### A.   Lack of Subject Matter Jurisdiction

A party may challenge the Court's subject matter jurisdiction by bringing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the movant asserts that the lack of subject matter jurisdiction is apparent from the face of the complaint. *Id.* In a factual attack, the movant disputes the truth of allegations that otherwise would give rise to federal jurisdiction. *Id.* "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to

*United States District Court*
*Northern District of California*

5

dismiss into a motion for summary judgment." *Id.* "The court need not presume the truthfulness of the plaintiff's allegations." *Id.* If the moving party presents evidence demonstrating the lack of subject matter jurisdiction, the party opposing the motion must present affidavits or other evidence sufficient to establish subject matter jurisdiction. *Id.*

**B.   Failure to State a Claim**

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178, 83 S. Ct. 227 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

United States District Court
Northern District of California

6

### III.   DISCUSSION

Although the NAGR and HJTA Complaints contain overlapping claims, there are several differences in the approach each set of Plaintiffs has elected to challenge the City's Ordinance, as well as in the City's respective motions to dismiss. Accordingly, the Court will address each complaint separately.

#### A.   NAGR FAC

The City moves to dismiss each of the NAGR FAC's claims for failure to state a claim. Mot. NAGR 10-23. Additionally, the City argues that the NAGR FAC is unripe and fails to state a proper facial constitutional challenge, though these arguments appear only to apply to NAGR Plaintiffs' Fee Provision challenges. *Id.* at 7-10. For the following reasons, the Court will GRANT IN PART and DENY IN PART the City's motion as to the NAGR FAC.

##### i.   First Amendment

The NAGR FAC's First Amendment claim is only asserted against the Ordinance's Fee Provision and alleges that the City "may not require Plaintiffs to pay fees to nonprofits when those fees are going to be used to fund activities of ideological or political nature, such as endorsing gun control." NAGR FAC ¶ 112. The City moves to dismiss this claim on three grounds: it is unripe, it fails to state a proper facial challenge, and it fails to state a claim under Rule 12(b)(6). Mot. NAGR 7-9, 16-17. Because "jurisdiction generally must precede merits in dispositional order," the Court first addresses the City's ripeness challenges. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999).

In the August 3 Order, the Court found that NAGR Plaintiffs' First Amendment challenge to the Fee Provision was unripe because the Court had no information as to what activities—and more critically what speech or expression, if any—the proceeds from the Fee would fund. *See* Aug. 3 Order 9-11. Today, the Court finds that this reasoning applies equally to NAGR Plaintiffs' First Amendment claim, now reviewed on a motion to dismiss. Because the City Manager has not promulgated regulations identifying the Nonprofit's activities, the Court cannot determine if the Fee would fund any expressive activities and thereby remains unfit for judicial determination. Additionally, NAGR Plaintiffs still have not highlighted any hardship they would suffer from the

7

1    Court withholding consideration at this time.  *Id.*; *see also Bishop Paiute Tribe v. Inyo Cnty.*, 863

2    F.3d 1144, 1154 (9th Cir. 2017).

3         Neither the NAGR FAC nor NAGR Plaintiffs' opposition contains any allegations that

4    would reassure the Court of the First Amendment claim's ripeness.  For example, the FAC alleges

5    that the City "may not require Plaintiffs to pay fees to nonprofits when those fees are going to be

6    used to fund activities of ideological or political nature" (NAGR FAC ¶ 112) but does not allege

7    that the Nonprofit would be engaging in ideological or political activities.  The NAGR FAC

8    provides only speculation on what the Nonprofit's activities are *likely* to be.  *See id.* ¶ 62 ("The

9    one thing that is clear is that the organization will *likely* be dedicated to exclusively preaching the

10    negative risks of gun ownership. . . .") (emphasis added).  Plaintiffs' inability to specify these facts

11    is not surprising, as the Ordinance itself only sets broad directives for the Nonprofit (*e.g.*, "reduce

12    the risk or likelihood of harm from the use of firearms") and a non-exhaustive and non-mandatory

13    list of potential activities.  Ordinance § 10.32.220.

14         To the extent NAGR Plaintiffs argue that—regardless of the Nonprofit's actual activities—

15    the Supreme Court's decision in *Janus* instructs that a mandatory Fee to *any* nonprofit would

16    violate the First Amendment, this argument is unavailing.  *See* Hearing Tr. 18:20-24, Aug. 4,

17    2022, NAGR ECF No. 76 ("NAGR Hearing Tr.") (citing *Janus v. Am. Fed'n of State, Cnty., &*

18    *Mun. Emps., Council 31*, 138 S. Ct. 2448 (2018)).  In *Janus*, the recipient of the compulsory fees

19    (*i.e.*, the union) and the activities the fees would fund were known and well-defined for First

20    Amendment scrutiny.  *See* 138 S. Ct. at 2461 (noting that nonmembers' agency fees paid for the

21    "cost of collective bargaining," as well as lobbying, social and recreational activities, advertising,

22    membership meetings and conventions, and litigation).  Here, by contrast, there are no such

23    concrete activities that the Court can consider in applying any level of First Amendment scrutiny

24    or the Supreme Court's reasoning in *Janus*.

25         For the reasons set forth above, the City's motion to dismiss the First Amendment claim

26    for lack of ripeness is GRANTED.  "In the Ninth Circuit, it is proper to liberally allow amendment

27    of a complaint to cure jurisdictional defects."  *Nat. Res. Def. Couns. v. Winter*, 2008 WL

28    11338646, at *3 (C.D. Cal. Apr. 10, 2008) (internal quotation marks omitted).  Accordingly, the

United States District Court
Northern District of California

8

1    Court will DISMISS the NAGR FAC's First Amendment claim with LEAVE TO AMEND.

2         **ii.    Second Amendment**

3         The NAGR FAC asserts Second Amendment violations against both the Ordinance's Fee

4    Provision and the Insurance Requirement (NAGR FAC ¶ 88), pled under the pre-*Bruen* "two-step"

5    framework of Second Amendment analysis.  *See id.* ¶¶ 88-102.

6         The City moves to dismiss NAGR Plaintiffs' Second Amendment claim on ripeness

7    grounds with respect to the Fee Provision (Mot. NAGR 8-10) and on Rule 12(b)(6) grounds under

8    the former "two-step" framework for the Insurance Requirement.  Mot. NAGR 10-16.  NAGR

9    Plaintiffs' Opposition similarly presents now legally incognizable arguments, such as the proper

10   level of scrutiny and the Ordinance's "reasonable fit," as does the City's Reply.  *See* NAGR Pls.'

11   Resp. ("NAGR Opp.") 12-16, NAGR ECF No. 46; Defs.' Reply ("Reply NAGR") 5-8.  The Court

12   has not requested—and the parties have not provided—supplemental briefs to update this motion's

13   Second Amendment briefing in accordance with *Bruen*, though the Court did request such briefs

14   on a different procedural posture.  *See* NAGR ECF Nos. 64-65.

15        The Court previously held that NAGR Plaintiffs' Second Amendment challenge to the Fee

16   Provision was not ripe because the City Council had not yet confirmed the Fee's final amount nor

17   had the City Manager promulgated the "financial hardship" criteria by which a gun owner may be

18   exempt from paying the Fee.  Aug. 3 Order 11-13.  Once again, the Court sees no reason to depart

19   from its prior ripeness reasoning, especially given that the NAGR FAC itself alleges the

20   uncertainty of the Ordinance's financial burden.  *See* NAGR FAC ¶ 90 ("The City's fees, too, are

21   left unstated and deferred to future, unscheduled determinations of the City Council.").  As with

22   their First Amendment claim, NAGR Plaintiffs also have not demonstrated any hardship of

23   withholding judicial consideration on their Second Amendment claim, such as serious penalties

24   requiring them to make immediate and significant changes to their regular conduct.  *See Wolfson*

25   *v. Brammer*, 616 F.3d 1045, 1060 (9th Cir. 2010).  Accordingly, the Court will DISMISS NAGR

26   Plaintiffs' Second Amendment claim as to the Fee Provision for lack of ripeness.

27        Regarding the Second Amendment challenges to the Insurance Requirement, the NAGR

28   FAC's allegations—irrespective of their sufficiency under a prior framework—do not track the

9

current legal standard.  As noted above, the Supreme Court expressly rejected the previous two-

step framework that the Circuit Courts of Appeals—and the parties—had used to evaluate Second

Amendment constitutional challenges.  *See Bruen*, 142 S. Ct. at 2126-30.  The present standard as

pronounced in *Bruen* is, as follows: "When the Second Amendment's plain text covers an

individual's conduct, the Constitution presumptively protects that conduct.  The government must

then justify its regulation by demonstrating that it is consistent with the Nation's historical

tradition of firearm regulation."  *Id.* at 2129-30.  As currently drafted, the NAGR FAC does not

provide the necessary allegations to support a Second Amendment claim under this new standard.

For instance, the NAGR FAC does not define a proposed course of conduct for the Court to

determine whether it is covered by the Second Amendment's plain text.  *See Bruen*, 145 S. Ct at

2134-36.  The only post-*Bruen* arguments the Court received were presented under a different

procedural posture and did not directly address the sufficiency of the NAGR FAC.[2]  *See* NAGR

ECF Nos. 64-65.

Under these circumstances, the Court finds that the NAGR FAC—drafted under a now

obsolete Second Amendment landscape—does not state a claim under the current post-*Bruen*

framework.  The NAGR FAC's Second Amendment challenge to the Insurance Requirement will

be DISMISSED with LEAVE TO AMEND its allegations consistent with the Supreme Court's

decision in *Bruen*.

### iii.    State Preemption

The NAGR FAC's Third Claim asserts that the Ordinance's requirements are preempted

by California law, primarily as interpreted by *Fiscal v. City & Cnty. of San Francisco*, 158 Cal.

App. 4th 895, 909 (2008) ("[I]t can be readily infer[red] . . . that the Legislature intended to

---

[2] In its August 3 Order, the Court inferred a proposed course of conduct from the parties' post-

*Bruen* supplemental briefing for the limited purpose of evaluating NAGR Plaintiffs' likelihood of

success.  Aug. 3 Order 14-16.  The Court, however, is unable to do so here on a Rule 12(b)(6)

motion to dismiss where the operative pleading makes no reference to the plaintiffs' proposed

conduct and provides no basis for such inference.

10

occupy the field of residential handgun possession to the exclusion of local governmental

entities.") (internal quotation marks omitted).  *See* NAGR FAC ¶¶ 117-119.

The NAGR FAC correctly states that the City of San Jose may "make and enforce within

its limits all . . . ordinances and regulations not in conflict with general laws." *Id.* ¶ 117 (quoting

Cal. Const. art. XI, § 7).  A local ordinance conflicts with general laws if it "duplicates,

contradicts, or enters an area fully occupied by general law, either expressly or by legislative

implication." *O'Connell v. City of Stockton*, 41 Cal. 4th 1061, 1067 (2007) (emphasis added).

Here, the NAGR FAC asserts that the Ordinance is entering a field fully occupied by the state

Legislature, specifically the "field of regulating residential handgun possession."  NAGR FAC ¶¶

118-19.  The City responds, in part, that the Ordinance does not implicate handgun *possession*, nor

does it encroach upon any of the discrete areas of firearm regulation that the California Legislature

has preempted (*e.g.*, permitting, licensing, and registration).  Reply NAGR 4-5.

The Court begins with the observation that the California Legislature has "chosen not to

broadly preempt local control of firearms but has targeted certain specific areas for preemption."

*Great W. Shows, Inc. v. Cnty. of Los Angeles*, 27 Cal. 4th 853, 864 (2002).  This observation is

reinforced by *Fiscal*—NAGR Plaintiffs' central case authority—which acknowledges that "state

law tends to concentrate on specific areas, leaving unregulated other substantial areas relating to

the control of firearms . . . to permit local governments to tailor firearms legislation to the

particular needs of their communities."  158 Cal. App. 4th at 905.  The Court, therefore, is mindful

that the relevant "fields" the California Legislature has occupied on firearm regulation are discrete

and specific, rather than broad or sweeping.[3]

In their opposition, NAGR Plaintiffs primarily argue that the California Legislature has

_____

[3] The NAGR FAC alleges that "local governments are excluded from *further regulation of guns*,"

though NAGR Plaintiffs appear to have pulled back somewhat from this position.  NAGR FAC ¶

119 (emphasis added).  In any event, this assertion is plainly at odds with the findings in *Great W.*

*Shows* and *Fiscal* that "the Legislature has never expressed an intent to preempt the entire field of

firearm regulation to the exclusion of local control."  *Fiscal*, 158 Cal. App. 4th at 905.

11

1    preempted the field of "residential handgun possession."  NAGR Opp. 11 (citing *Fiscal*, 158 Cal.

2    App. 4th at 908).  Their emphasis on *Fiscal* and the scope of "residential handgun possession,"

3    however, is ultimately misplaced because the Ordinance does not confer any authority to

4    dispossess a San Jose resident of his or her firearm.  The City has acknowledged that "[t]here is

5    currently no lawful basis to impound firearms under state or federal law" and, therefore, violations

6    of the Ordinance are only punishable by an administrative citation and fine.[4]  Mot. NAGR, at 5-6;

7    *see also* Ordinance §§ 10.32.240; 10.32.245.  To the extent NAGR Plaintiffs argue that

8    "residential handgun possession" should be broadly interpreted to preclude any local regulation

9    that would merely *affect* handgun owners as a group—*i.e.*, by virtue of the sole fact that they

10   possess a firearm—such an interpretation is not supported by *Fiscal*.  *See* 158 Cal. App. 4th at 905

11   ("[T]he Legislature has never expressed an intent to preempt the entire field of firearm regulation

12   to the exclusion of local control."); *see also id.* at 919 ("[C]ourts have tolerated subtle local

13   encroachment into the field of firearms regulation").  Without any means by which handgun

14   possession can be revoked, the Ordinance cannot be interpreted to be entering the field of

15   residential handgun *possession*, as alleged in NAGR FAC ¶ 119.

16        In addition to their reliance on *Fiscal*, NAGR Plaintiffs also argue that the Insurance

17   Requirement and Fee Provision are akin to a permitting or licensing scheme, which is expressly

18   precluded by Penal Code § 25605.  NAGR Opp. 11; *see also* Cal. Gov. Code § 53071 ("It is the

19   intention of the Legislature to occupy the whole field of regulation of the registration or licensing

20   of commercially manufactured firearms. . . .").  This analogy is unpersuasive.  First, the Ordinance

21   expressly exempts "persons who have a license to carry a concealed weapon issued pursuant to

22   California Penal Code § 26150 or § 26155," Ordinance § 10.32.225(B), evidencing the City's

23   intent to avoid encroaching upon the preempted field of licensing or permitting.  Second, unlike

24   _____

25   [4] By contrast, the ordinance that gave rise to the holding in *Fiscal* purported to "ban[] the

26   *possession* of handguns by San Francisco residents," 158 Cal. 4th at 906 (emphasis in

27   original), and was titled "Limiting Handgun *Possession* in the City and County of San Francisco."

28   *Id.* (emphasis added).

12

1    permitting or licensing regimes, compliance with the Ordinance does not signify that gun owners

2    must obtain the City's permission or authorization to possess firearms in the first instance; and

3    unlike registration programs, the Ordinance does not entail formalized and specific recordkeeping

4    by the City.  *See Great W. Shows, Inc. v. Cnty. of Los Angeles*, 27 Cal. 4th 853, 861 (2002) (noting

5    that "licensing" is understood to signify "permission or authorization" and "registration" to mean

6    "recording formally and exactly") (internal quotation marks omitted).  Accordingly, the

7    Ordinance's compliance requirement is dissimilar to a gun licensing or registration scheme and,

8    therefore, is not preempted by California general laws on firearm licensing or registration.

9         Although leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P.

10   15(a), dismissal without leave may be proper "if the amendment would be futile."  *California ex*

11   *rel. California Dep't of Toxic Substances Control v. Neville Chem. Co.*, 358 F.3d 661, 673 (9th

12   Cir. 2004).  Here, the question of whether the Ordinance's requirements are preempted by

13   California state law is a pure question of law.  As a result, there are no factual amendments that

14   could salvage NAGR Plaintiffs' state preemption claim.  *See, e.g.*, *N.L.R.B. v. Vista Del Sol*

15   *Health Servs., Inc.*, 40 F. Supp. 3d 1238, 1255 (C.D. Cal. 2014) ("Because the question of its

16   jurisdiction to hear the case is a pure question of law, the court concludes that allowing

17   [declaratory relief plaintiff] to amend its complaint would be futile, it therefore dismisses the

18   action with prejudice.").  The Court will therefore DISMISS NAGR Plaintiffs' Third Claim for

19   Relief WITHOUT LEAVE TO AMEND.

20            **iv.    State Tax Requirements**

21        The NAGR FAC's Fourth Claim for Relief asserts violations of article XIII C of the

22   California Constitution, specifically that the Insurance Requirement and Fee Provision constitute

23   taxes that have not been submitted to the electorate for a vote.  NAGR FAC ¶¶ 123-131.

24        The City moves to dismiss this claim on two grounds.  First, neither the insurance

25   premiums nor the Fee proceeds will be payable to the City and, therefore, they are not taxes; and

26   second, in any event, both the insurance and the Fee would fall under the "specific benefit"

27   exception in the California Constitution.  Mot. NAGR 19-20.  With respect to the first point, the

28   City relies on *Schmeer v. Cnty. of Los Angeles*, 213 Cal. App. 4th 1310, 1328-29 (2013), as

13

1    modified (Mar. 11, 2013), in which the California Court of Appeal held that the language in article

2    XIII C is "limited to charges payable to, or for the benefit of, a local government."

3          In the absence of contrary California authority or the California Supreme Court's

4    interpretation of article XIII C, the Court finds persuasive the thorough analysis conducted in

5    *Schmeer*.  There, the Court of Appeal had considered the historical foundations behind the voter

6    initiative that gave rise to article XIII C, including two prior initiatives adopted in 1978 and 1992,

7    as well as a 1997 decision from the California Supreme Court.  *See Schmeer*, 213 Cal. App. 4th at

8    1326-23; *see also id.* at 1323-30 (analyzing the voters' interpretation of the ballot initiative and the

9    definition of a "tax").  Although NAGR Plaintiffs attempt to distinguish *Schmeer* on its facts, the

10   Court notes that *Schmeer*'s reasoning and interpretation of article XIII C does not rely or turn on

11   the specific ordinance in that case, which was a paper carryout bag charge.  *See id.* at 1326-30.

12         With *Schmeer* as the touchstone for its article XIII C analysis, the Court finds that NAGR

13   Plaintiffs have all but pled their Fourth Claim out of court.  The NAGR FAC expressly alleges that

14   "the insurance is allocated to for-profit corporations and the fee is allocated to an unnamed

15   nonprofit rather than the City."  NAGR FAC ¶ 130 (emphasis added).  To use the specific

16   language from *Schmeer*, NAGR Plaintiffs have alleged that the Insurance Requirement and Fee

17   are not "payable to, or for the benefit of, a local government."  213 Cal. App. 4th at 1328-29.

18   With this allegation in the NAGR FAC, NAGR Plaintiffs are unable to state an article XIII C

19   taxing claim against the Ordinance's Insurance Requirement and Fee Provision, and their Fourth

20   Claim is thereby subject to dismissal under Rule 12(b)(6).

21         The Court, however, will grant NAGR Plaintiffs leave to amend this claim, as amendment

22   may not be futile.  *See, e.g.*, *Eminence Capital*, 316 F.3d at 1052.  As it remarked at the hearing on

23   the City's motion, the Court finds merit in NAGR Plaintiffs' argument that the City could

24   effectively end-run the California Constitution's voter approval requirements by simply directing

25   residents to pay an organization that is in fact the "City in nonprofit clothing."  NAGR Hearing Tr.

26   6:18-7:8.  This risk would be heightened if the designated Nonprofit will be specially created by

27   the City (as opposed to a currently existing nonprofit organization) or—as the City has argued

28   elsewhere—if the Nonprofit will express government speech and policies.  *See* Def. Reply 6

14

1   ("[T]he purpose of the Fee is not to support private speech but to fund government speech and

2   policy as set forth in the Ordinance."), HJTA ECF No. 17.  Given these reservations, the Court

3   cannot say that the Fee Provision and the recipient Nonprofit could never violate article XIII C of

4   the California Constitution as interpreted by *Schmeer*.  But, as currently pled, the NAGR FAC

5   fails to state a valid claim on this point.

6        The Court will GRANT the City's motion to dismiss the NAGR FAC's Fourth Claim for

7   Relief with LEAVE TO AMEND.

8          **v.  San Jose City Charter**

9        The NAGR Plaintiffs' Fifth Claim for Relief asserts violations of the San Jose City

10  Charter.  NAGR FAC ¶¶ 135-144; *see also id.*, Ex. A ("City Charter").  The NAGR FAC alleges

11  that the Ordinance (1) violates the City Charter's requirement that all "revenues and receipts" be

12  placed into the City's General Fund by directing the Fee to a third-party Nonprofit (City Charter §

13  1211); (2) infringes upon City Council's budgeting and appropriation powers by prohibiting the

14  City from directing how the Fee is expended (*id.* §§ 1204-1207); and (3) infringes upon the City

15  Manager's executive functions for the same reason (*id.* § 701).

16       On their City Charter claim, as with their taxing claim, NAGR Plaintiffs seem to have pled

17  themselves beyond the scope of most of their cited City Charter provisions.  By alleging that the

18  insurance premiums and Fee are allocated to other entities and not to the City (NAGR FAC ¶

19  130), the NAGR FAC has put those proceeds beyond any reasonable definition of "revenues and

20  receipts" for the purpose of City Charter § 1211 ("All revenues and receipts which are not required

21  . . . to be placed in special funds shall be credited to the General Fund.").  Furthermore, because

22  the NAGR FAC alleges that the Fee and Insurance Requirement "are not for government activity"

23  (NAGR FAC ¶ 42), those provisions do not impact the City Council's budget, which is a

24  "complete financial plan of all City *funds and activities*."  City Charter § 1205 (emphasis added).

25  The City Charter appropriations claim falls for the same reasons, as City Council's appropriation

26  power only pertains to "monies for the operation of each of the *offices, departments and agencies*

27  *of the City*."  *Id.* § 1207 (emphasis added); *see also* Aug. 3 Order 28-29.  Accordingly, the NAGR

28  FAC, as drafted, does not state a violation of City Charter §§ 1204-1207, 1211.

That said, the Court will note its concerns regarding the ripeness of NAGR Plaintiffs' remaining claim for violation of City Charter § 701(d), *i.e.*, that the Ordinance undermines the City Manager's responsibility for the "faithful execution of all laws." City Charter § 701(d); *see also* Aug. 3 Order 29. The Court cannot fully evaluate this claim until the City Manager develops implementing regulations on the guidance and auditing of the Nonprofit. *See* Ordinance § 10.32.235(A)(2). And to the extent those regulations result in such governmental oversight that the City would effectively control all but the choice of the Nonprofit's expenditures, that possibility would dovetail with the Court's concerns that the Nonprofit may be used as a vehicle for the City to circumvent the California Constitution's voter-tax requirements. *See supra* Section III(A)(iv). Such developments could also affect the Court's analysis regarding whether the Nonprofit's activities could properly be considered as City's activities for the purposes of City Charter's budgeting and appropriations delegation to City Council. City Charter §§ 1204-1207.

In sum, the NAGR FAC has made affirmative allegations that would place the Ordinance's provisions beyond the scope of most of their City Charter claims. Although those deficiencies do not directly impact the NAGR Plaintiffs' City Charter § 701(d) claim, the Court's evaluation of that claim may not be complete without the City Manager's to-be-determined regulations regarding the Nonprofit. Given the interwoven nature of NAGR Plaintiffs' various City Charter challenges, the Court will DISMISS the entirety of NAGR Plaintiffs' Fifth Claim for Relief with LEAVE TO AMEND following the promulgation of implementing regulations.

### vi.   Declaratory Judgment Relief

Finally, the NAGR FAC asserts a claim under the Declaratory Judgment Act, seeking declaratory relief "to the extent that each of the claims above have not already established a remedy." NAGR FAC ¶ 148. The City moved to dismiss this claim as duplicative of NAGR Plaintiffs' other five claims and also renewed its ripeness argument with respect to this claim. Mot. NAGR 23; Reply NAGR 14-15.

Addressing the City's ripeness argument first, the Court is satisfied that subject matter jurisdiction exists over the request for declaratory relief, because at minimum there is an actual case or controversy over NAGR Plaintiffs' Second Amendment § 1983 claim against the

16

United States District Court
Northern District of California

1    Insurance Requirement.  First, "when the threat of prosecution under a challenged statute is real, a

2    declaratory judgment on the constitutionality of the statute is appropriate."  10B Charles A.

3    Wright, Arthur R. Miller, & Mary K. Kane, *Federal Practice and Procedure* § 2757 (4th ed.).

4    Here, the City has made no indication that it does not intend to enforce the Insurance Requirement

5    against San Jose residents, a population that includes individual Plaintiff Mark Sikes.  *See*

6    *generally* NAGR ECF No. 78; *see also* NAGR Opp. 10.  Second, the City's ripeness arguments—

7    which largely target NAGR Plaintiffs' attacks on the Fee Provision—barely address and certainly

8    do not establish that NAGR Plaintiffs' Second Amendment challenges to the Insurance

9    Requirement are unripe.  *See* Mot. NAGR 7-9; Reply NAGR 2-3.  Accordingly, the Court is

10   satisfied that some "actual case or controversy" exists with respect to NAGR Plaintiffs' request for

11   declaratory relief.

12          As to the City's duplication argument, "[t]he existence of another adequate remedy does

13   not preclude a declaratory judgment that is otherwise appropriate."  Fed. R. Civ. P. 57; *see also* 28

14   U.S.C. § 2201(a) (providing that declaratory relief may be sought "whether or not further relief is

15   or could be sought"); 10B Wright, Miller, & Kane, § 2758 ("[T]he general principle is, as stated in

16   the rule, that the existence of another adequate remedy does not bar a declaratory judgment.").

17   That said, the Court may, in the exercise of its sound discretion, deny declaratory relief where

18   another remedy is "more appropriate."  *Rodriguez v. Bank of Am.*, 2011 WL 5864108, at *4 (N.D.

19   Cal. Nov. 22, 2011); *see also, e.g.*, *Shin v. ICON Found.*, 2021 WL 6117508, at *6 (N.D. Cal.

20   Dec. 27, 2021) (noting that "declaratory relief that is 'needlessly duplicative' of the damages or

21   relief requested under the substantive claims" may be inappropriate).  Here, the NAGR Plaintiffs

22   have requested declaratory judgment to the extent their other claims have not already established a

23   remedy (NAGR FAC ¶ 148), and the Court finds at this early stage that the scope of the requested

24   declaratory relief is not inappropriately duplicative of NAGR Plaintiffs' injunctive relief.  *Cf.*

25   *Steffel v. Thompson*, 415 U.S. 452, 472 (1974) (holding that declaratory relief may be available

26   where injunctive relief is not, such as in the absence of irreparable injury).

27          Accordingly, the Court DENIES the City's motion to dismiss NAGR Plaintiffs' sixth claim

28   for declaratory relief.

**B.    HJTA Complaint**

The City moves to dismiss all four counts of the HJTA Complaint, all of which only target the Ordinance's Fee Provision.  Mot. HJTA 3.  The City seeks dismissal pursuant to Rule 12(b)(1) for lack of ripeness and standing, as well as Rule 12(b)(6) for failure to state a claim.  For the following reasons, the Court will GRANT the City's motion to dismiss the HJTA Complaint and permit HJTA Plaintiffs LEAVE TO AMEND.

**i.    First Amendment**

The HJTA's First Amendment claim contains significant overlap with the NAGR Plaintiffs' First Amendment challenges.  *Compare* HJTA Compl. ¶¶ 17-19 *with* NAGR FAC ¶¶ 107-112.  As one example, both HJTA and NAGR Plaintiffs rely on *Janus* for the proposition that compelled subsidies violate the First Amendment right not to associate.  *See* HJTA Opp. 10-11.

For largely the same reasons discussed above at Section III(A)(i), the Court finds that HJTA Plaintiffs' First Amendment claim against the Fee Provision is not ripe.  The Nonprofit and, more critically, its activities have not yet been determined, including whether the Nonprofit would be engaging in any speech or expressive activities in the first instance.  *See supra* Section III(A)(i).

HJTA Plaintiffs' arguments to the contrary are inapposite.  As an initial matter, their argument that this claim will be ripe by the time of the motion hearing is not well-taken.  HJTA Opp. 6-7.  "Ripeness is assessed based on the facts as they exist at the present moment," *W. Radio Servs. Co. v. Qwest Corp.*, 530 F.3d 1186, 1205 (9th Cir. 2008), and, to date, the City has not yet promulgated regulations regarding the Nonprofit's activities.  *See*, *e.g.*, HJTA ECF No. 25.  Moreover, with the benefit of hindsight, this argument turned out to be inaccurate, as the City had delayed implementation of the Ordinance pending this Court's order on preliminary injunctive relief.  *See* NAGR ECF No. 64, at 7.

HJTA Plaintiffs also appear to argue that, because the HJTA Complaint was originally filed in state court pursuant to California's validation statutes, Cal. Civ. Proc. Code §§ 860, *et seq.*, this alone rebuts the City's justiciability arguments.  HJTA Opp. 7; HJTA Compl. ¶ 8.  To the extent HJTA Plaintiffs suggest that validation actions are not subject to typical justiciability requirements, this position has been rejected by California courts.  *See*, *e.g.*, *Wilson & Wilson v.*

18

1   *City Council of Redwood City*, 191 Cal. App. 4th 1559, 1579-81 (2011) ("To the extent that

2   [plaintiff] appears to argue that validation actions are somehow exempt from ordinary rules of

3   justiciability, it is incorrect.  Like all other actions, validation actions must be justiciable."); *City of*

4   *Santa Monica v. Stewart*, 126 Cal. App. 4th 43, 66–69 (2005) ("Even validation actions are not

5   exempt from the traditional principle that a justiciable action must satisfy the requirements of both

6   ripeness and standing."), as modified on denial of reh'g (Feb. 28, 2005).

7          Finally, HJTA Plaintiffs argue that their claims are ripe because they face an "actual and

8   well-founded fear that the challenged statute will be enforced."  HJTA Opp. 8 (quoting

9   *Libertarian Party of Los Angeles Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013)).  Although

10  this may be a valid basis to argue HJTA Plaintiffs' standing, the fear of enforcement does not

11  respond to the City's prudential ripeness arguments, which target the HJTA Complaint's

12  speculation regarding the Fee Provisions.  Mot. HJTA 8-9; *see also* Aug. 3 Order 9-11

13  (distinguishing constitutional ripeness from prudential ripeness).  HJTA Plaintiffs take the position

14  that it does not matter "whether the private payee is Moms For Gun Sense or the National Rifle

15  Association" (HJTA Opp. 8); however, it is unclear whether the designated Nonprofit would be

16  engaging in *any* speech or expressive activities, as opposed to simply providing non-expressive

17  services.  *See* HJTA Compl. ¶ 19 ("[T]he Ordinance forces San Jose gun owners . . . to fund [the

18  Nonprofit's] *message*. . . .") (emphasis added); *see also* Aug. 3 Order 9-10.  Without the critical

19  facts regarding the Nonprofit's activities, the Court would be asked to speculate on the unknown

20  activities of a faceless nonprofit to determine if such activities would involve compelled speech.

21  The Court declines to prematurely adjudicate such "abstract disagreements."  *Thomas v.*

22  *Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000).

23         Accordingly, the Court GRANTS the City's motion as to HJTA Plaintiffs' First

24  Amendment claim.  The HJTA Complaint's First Cause of Action will be DISMISSED for lack of

25  ripeness with LEAVE TO AMEND.

26         **ii.   Unconstitutional Condition (Second Amendment)**

27         The second claim in the HJTA Complaint is titled, "Unconstitutional Condition," asserting

28  that the Fee "has placed a condition on the continued exercise of [federal and state constitutional]

United States District Court
Northern District of California

19

1    rights." HJTA Compl. ¶¶ 21-23; *see also* HJTA Opp. 14 (citing *Koontz v. St. Johns River Water*

2    *Mgmt. Dist.*, 570 U.S. 595, 612 (2013)).

3            The Ordinance as drafted does not "condition" the exercise of Second Amendment rights

4    because there are no means by which a San Jose gun owner may be deprived of his or her firearm.

5    *See* Mot. HJTA 6.  As a result, the HJTA Complaint's allegation that "any gun owner who fails to

6    pay the required fee to the designated private organization may be forced to surrender his

7    firearms" is a misinterpretation of the Ordinance.  HJTA Compl. ¶ 22; *see also* HJTA Opp. 15

8    ("And if the price is not paid, the City will take that right away by confiscating the owner's

9    firearms.").  The Ordinance expressly states that its impoundment provision may only apply "[to]

10   the extent allowed by law (Ordinance § 10.32.245), and the City openly admits that there is no

11   state or federal law that would presently permit impoundment.  Mot. HJTA 6.  HJTA Plaintiffs

12   have not provided any authority that the unconstitutional conditions doctrine can apply in the

13   Second Amendment context where possession is not at risk.[5]  They instead rely primarily on

14   *Koontz*, a case involving a "special application" of the unconstitutional conditions doctrine in the

15   Fifth Amendment Takings Clause context.  570 U.S. at 604.  On these allegations, the HJTA

16   Complaint fails to state a claim for unconstitutional conditioning of Second Amendment rights.

17           In addition to Second Amendment rights, HJTA Plaintiffs also alleges the unconstitutional

18   conditioning of rights under the California Constitution, specifically the rights of "protecting

19   property, and pursuing and obtaining safety."  HJTA Compl. ¶ 21 (citing Cal. Const. art. I, § 1).

20   However, the California Supreme Court has already expressly declined to interpret a right to bear

21   arms into the state constitution's language regarding protection and safety.  *Kasler v. Lockyer*, 23

22   Cal. 4th 472, 481 (2000) ("If plaintiffs are implying that a right to bear arms is one of the rights

23   recognized in the California Constitution's declaration of rights, they are simply wrong.  No

24   mention is made in it of a right to bear arms.").  To the extent HJTA Plaintiffs attempt to leverage

25   _____

26   [5] Indeed, the U.S. Supreme Court had tacitly acknowledged that reasonable and non-exorbitant

27   fees are permissible in firearm permit schemes, which much more directly implicate firearm

28   possession.  *See Bruen*, 142 S. Ct. at 2138 n.9.

                                                20

United States District Court
Northern District of California

1    *Bruen* to somehow limit the holding in *Kasler* (*see* Hearing Tr. 21:16-23, HJTA ECF No. 28), the

2    U.S. Supreme Court's interpretation of the Second Amendment is not binding on the California

3    Supreme Court's interpretation of the California Constitution.  *See, e.g.*, *People v. Buza*, 4 Cal. 5th

4    658, 684 (2018) ("[T]he California Constitution is, and has always been, a document of

5    independent force that sets forth rights that are in no way dependent on those guaranteed by the

6    United States Constitution.") (internal citation and quotation marks omitted).  The Court,

7    therefore, declines to adopt an interpretation of California constitutional rights that conflicts with

8    the California Supreme Court's holding in *Kasler*.  23 Cal. 4th at 481.

9        Accordingly, the Court GRANTS the City's motion to dismiss HJTA Plaintiff's

10   unconstitutional conditions claim.  To the extent the claim relies on unconstitutional conditioning

11   of Second Amendment rights, the claim is dismissed WITH LEAVE TO AMEND.  However, to

12   the extent HJTA Plaintiffs assert the unconstitutional condition of a California right, amendment

13   would be futile, as the California Supreme Court has expressed that there is no right to bear arms

14   in the California Constitution.  Accordingly, this claim is dismissed WITHOUT LEAVE TO

15   AMEND insofar as it refers to unconstitutional conditioning of a California right.

16              **iii.    Tax Lacking Voter Approval**

17       HJTA Plaintiffs' third claim asserts a violation of the California Constitution's voter

18   approval requirement for taxes and contains significant similarities to the corresponding claim in

19   the NAGR FAC.  HJTA Compl. ¶¶ 25-31.  The City moves to dismiss this claim on the same two

20   grounds it sought to dismiss the NAGR Plaintiffs' claim: (1) the Fee at issue is not payable to the

21   City; and (2) the Fee falls under the "specific benefit" exception.  Mot. HJTA 18-19.

22       As an initial matter, the Court notes that, although it has dismissed all of HJTA Plaintiffs'

23   claims over which it has original jurisdiction (*i.e.*, HJTA Plaintiffs' first and second claims), the

24   Court nonetheless has discretion to continue exercising supplemental jurisdiction over the

25   remaining state claims under 28 U.S.C. § 1367(a).  Because HJTA Plaintiffs' remaining state

26   claims contain significant overlap with NAGR Plaintiffs' voter-tax claim, the Court finds that

27   judicial economy favors exercising supplemental jurisdiction over HJTA Plaintiffs' remaining

28   claims.  *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (noting that

United States District Court
Northern District of California

21

1    supplemental jurisdiction is a "doctrine of discretion" rooted in "considerations of judicial

2    economy, convenience and fairness to litigants").  However, to the extent that HJTA Plaintiffs

3    continue to couch its claims as a state validation action, the Court is likely to decline supplemental

4    jurisdiction over that uniquely California law procedure.

5         Turning to the merits of the voter-tax claim, the HJTA Complaint contains very limited

6    factual allegations in support.  The only fact alleged is that the City of San Jose imposed the Fee;

7    the remaining allegations are largely legal conclusions couched in the language of article XIII C.

8    *See* HJTA Compl. ¶¶ 25-30.  Based on just the quantum of facts asserted, the HJTA Complaint

9    falls short of the federal standard required by *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A

10   claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

11   the reasonable inference that the defendant is liable for the misconduct alleged.").  Although

12   HJTA Plaintiffs speculate in their opposition that the "City plans to form its own nonprofit

13   organization, run by hand-picked people it will install, to carry out an agenda that the City codified

14   in its ordinance" (HJTA Opp. 16), none of these facts are alleged in their operative pleading.

15        Furthermore, the most relevant interpretation of article XIII C is *Schmeer*, which held that,

16   to be a tax under the California Constitution, a charge must be "payable to, or for the benefit of, a

17   local government."  213 Cal. App. 4th at 1329; *see also supra* Section III(A)(iv).  As the HJTA

18   Complaint alleges, the Fee is to be paid to a Designated Nonprofit Organization instead of to the

19   local government.  HJTA Compl. ¶ 11.  This allegation on its face would seem to place the Fee

20   beyond the scope of article XIII C per *Schmeer*, especially in the absence of factual allegations to

21   the contrary.

22        Because the HJTA Complaint has failed to plead facts sufficient to state a claim under

23   federal standards, the Court will GRANT the City's motion to dismiss HJTA Plaintiffs' third

24   claim regarding a tax lacking voter approval.  As the Court discussed *supra* at Section III(A)(iv),

25   the Court cannot determine that leave to amend would be futile.  Accordingly, this claim will be

26   DISMISSED WITH LEAVE TO AMEND.

27         **iv.    Unconstitutional Delegation of Taxing Power**

28        HJTA Plaintiffs' final claim asserts that the City unconstitutionally delegated its municipal

United States District Court
Northern District of California

22

1    power to collect taxes and appropriate tax revenues by requiring the Fee be paid to the Nonprofit

2    designated by the City Manager.  HJTA Compl. ¶¶ 33-35.  HJTA Plaintiffs acknowledge,

3    however, that this claim could only prevail if their third claim—whether the Fee constitutes a tax

4    lacking voter approval—also prevails.  HJTA Opp. 17-18.

5         The relevant portion of the California Constitution is article XIII, section 31, which simply

6    states in full, "The power to tax may not be surrendered or suspended by grant or contract."  Cal.

7    Const., art. XIII, § 31.  Here, the HJTA Complaint contains no allegations that the City has entered

8    into any grant or contract with the Nonprofit to collect the Fee revenues.  *See* HJTA Compl. ¶¶ 35-

9    37.  HJTA Plaintiffs' opposition also admits that "no specific contract or grant exists yet" and that

10   "Plaintiffs cannot be faulted for not specifically identifying something that doesn't yet exist."

11   HJTA Opp. 19.  These acknowledgments indicate to the Court that HJTA Plaintiffs'

12   unconstitutional delegation claim is unripe, which is an issue of subject matter jurisdiction that the

13   Court's must resolve *sua sponte* before reaching the merits of the claim.  *See, e.g.*, *Ruhrgas AG*,

14   526 U.S. at 577 ("[J]urisdiction generally must precede merits in dispositional order.").

15        A claim is not ripe if the issues are not fit for judicial decision and there would not be any

16   hardship to the parties for withholding court consideration.  *See Bishop Paiute*, 863 F.3d at 1153-

17   54.  Here, because section 31 includes the specific language of "surrendered or suspended *by grant*

18   *or contract*," the absence of any grant or contract would significantly hamper the Court's ability to

19   evaluate whether the power to tax has been "surrendered or suspended."  This is precisely the type

20   of "abstract disagreements" and "premature adjudication" that courts are often advised to avoid.

21   *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000).  Furthermore,

22   there would be no hardship to HJTA Plaintiffs for withholding consideration, as the Fee would not

23   impose an "immediate and significant change in plaintiffs' conduct of their affairs with serious

24   penalties attached to noncompliance."  *Wolfson*, 616 F.3d at 1060; *see also* Aug. 3 Order 11.

25        Because there is no current grant or contract that the Court can evaluate to determine if the

26   City has "surrendered or suspended" its power to tax, the Court finds that HJTA Plaintiffs' fourth

27   claim for unconstitutional delegation is not ripe for adjudication.  Accordingly, the Court will

28   GRANT the City's motion to dismiss this claim with LEAVE TO AMEND.

23

**IV.    ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' motions to dismiss are GRANTED IN PART and DENIED IN PART, as follows:

1. Defendants' motion to dismiss Claims 1, 2, 4, and 5 of the NAGR FAC is GRANTED, and the claims are DISMISSED with LEAVE TO AMEND;

2. Defendants' motion to dismiss Claim 3 of the NAGR FAC is GRANTED, and the claim is DISMISSED WITHOUT LEAVE TO AMEND;

3. Defendants' motion to dismiss Claim 6 of the NAGR FAC is DENIED;

4. Defendants' motion to dismiss Claims 1, 3, and 4 of the HJTA Complaint is GRANTED, and the claims are DISMISSED with LEAVE TO AMEND;

5. Defendants' motion to dismiss Claim 2 of the HJTA Complaint is GRANTED, and the claim is DISMISSED with LEAVE TO AMEND to the extent it relies on Second Amendment rights and DISMISSED WITHOUT LEAVE TO AMEND to the extent it relies on California Constitution rights.

6. To the extent any of HJTA Plaintiffs' claims are denominated as validation actions pursuant to Cal. Civ. Proc. Code §§ 860, *et seq.*, in an amended complaint, the Court may decline to exercise supplemental jurisdiction over those claims.

NAGR Plaintiffs and HJTA Plaintiffs shall file an amended consolidated complaint by February 2, 2023, and shall set forth whether each claim is brought by only certain plaintiffs or all plaintiffs. The lengthy time for amendment is granted so that Plaintiffs' claims may become ripe upon the City's enactment of further implementing regulations as contemplated by the Ordinance's express terms.

IT IS SO ORDERED.

Dated:  September 30, 2022

BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

24

1

2

3 **UNITED STATES DISTRICT COURT**

4 **NORTHERN DISTRICT OF CALIFORNIA**

5 **SAN JOSE DIVISION**

6

7 NATIONAL ASSOCIATION FOR GUN          Case No.  22-cv-00501-BLF
RIGHTS, INC., et al.,

8                                                                  **ORDER CONSOLIDATING RELATED**
                   Plaintiffs,                                    **CASES**
9
           v.
10
CITY OF SAN JOSE, et al.,
11
                   Defendants.
12
HOWARD JARVIS TAXPAYERS                  Case No.  22-cv-02365-BLF
13 ASSOCIATION, et al.,

14                 Plaintiffs,

15          v.

16 CITY OF SAN JOSE,

17                 Defendant.

18

19          On April 20, 2022, the Court issued Orders to Show Cause Why Cases Should Not Be

20 Consolidated in both of the above referenced cases.  Order to Show Cause, No. 22-cv-00501-BLF,

21 ECF No. 52; Order to Show Cause, No. 22-cv-02365-BLF, ECF No. 6.

22          Plaintiffs National Association for Gun Rights, Inc. and Mark Sikes (collectively, "NAGR

23 Plaintiffs") have not opposed consolidation, so long as it does not delay the Court's decision on

24 their motion for preliminary injunction, which the Court has already issued.  *See* NAGR Pls.'

25 Response to Order to Show Cause, No. 22-cv-00501, ECF No. 54.  Plaintiffs in Case No. 22-cv-

26 02365 ("HJTA Plaintiffs") have objected to consolidation to the extent it would add delay and

27 expense to their case by requiring an evidentiary trial.  *See* HJTA Pls.' Response to Order to Show

28 Cause, No. 22-cv-02365, ECF No. 15.  Defendants in both cases have not opposed consolidation

United States District Court
Northern District of California

1    and take the position that the cases should be consolidated for all purposes.  *See* Defs.' Response

2    to Order to Show Cause, No. 22-cv-00501, ECF No. 53; Response to Order to Show Cause, No.

3    22-cv-02365, ECF No. 14.

4         "If actions before the court involve a common question of law or fact, the court may . . .

5    consolidate the actions."  Fed. R. Civ. P. 42(a).  The "district court has broad discretion under this

6    rule to consolidate cases pending in the same district."  *Investors Research Co. v. U.S. Dist. Court*

7    *for Cent. Dist. of California*, 877 F.2d 777, 777 (9th Cir. 1989).  Here, these two cases share

8    several common questions of both law and fact.  Both NAGR Plaintiffs and HJTA Plaintiffs assert

9    claims arising under the First Amendment and article XIII C of the California Constitution.  *See*

10   First Amended Complaint ("NAGR Compl.") ¶¶ 106-115, 122-133, No. 22-cv-00501, ECF No.

11   19; Complaint ("HJTA Compl.") ¶¶ 9-19, 24-31, No. 22-cv-02365, ECF No. 1.  More broadly,

12   both sets of plaintiffs seek to enjoin or invalidate portions of the City of San Jose's recent gun

13   harm ordinance.  *See* NAGR Compl., at 25; HJTA Compl., at 8.  Regarding HJTA Plaintiffs'

14   concerns of delays from an evidentiary trial, they are free to seek relief and accommodation under

15   a consolidated case should the need arise; however, these concerns do not outweigh the substantial

16   administrative benefits from consolidation at the present stage in the proceedings, given these

17   cases' significant overlap.

18        Accordingly, the Court CONSOLIDATES Case Nos. 22-cv-00501 and 22-cv-02365 for all

19   purposes.  For administrative purposes, the docket in the later-filed case, No. 22-cv-02365, shall

20   be closed.

21        **IT IS SO ORDERED.**

22   Dated:  September 30, 2022

23   _____

24   BETH LABSON FREEMAN
     United States District Judge

25

26

27

28

2

1  JOSEPH W. COTCHETT (SBN 36324)
   jcotchett@cpmlegal.com
2  TAMARAH P. PREVOST (SBN 313422)
   tprevost@cpmlegal.com
3  ANDREW F. KIRTLEY (SBN 328023)
   akirtley@cpmlegal.com
4  MELISSA MONTENEGRO (SBN 329099)
   mmontenegro@cpmlegal.com
5  **COTCHETT, PITRE & McCARTHY, LLP**
6  San Francisco Airport Office Center
   840 Malcolm Road, Suite 200
7  Burlingame, CA  94010
   Telephone: (650) 697-6000
8  Facsimile: (650) 697-0577

9  *Attorneys for Defendants*

10

11                  **UNITED STATES DISTRICT COURT**

12          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

13                       **SAN JOSE DIVISION**

| | |
|---|---|
| **NATIONAL ASSOCIATION FOR GUN RIGHTS, INC.**, a non-profit corporation, and **MARK SIKES**, an individual, | Case No. 5:22-cv-00501-BLF |
| Plaintiffs, | **DEFENDANTS' CORRECTED STATUS REPORT ON IMPLEMENTATION OF THE GUN HARM REDUCTION ORDINANCE** |
| v. | [Replacing Version of Status Report Inadvertently Filed on August 16, 2022, at ECF 77] |
| **CITY OF SAN JOSE**, a public entity, **JENNIFER MAGUIRE**, in her official capacity as City Manager of the City of San Jose, and the **CITY OF SAN JOSE CITY COUNCIL**, | |
| Defendants. | |
| **HOWARD JARVIS TAXPAYERS ASSOCIATION**; Silicon Valley Taxpayers Association; Silicon Valley Public Accountability Foundation; James Barry; and George Arrington, | Case No. 5:22-cv-02365-BLF [Replacing Version of Status Report Inadvertently Filed on August 16, 2022, at ECF 24] |
| Plaintiffs, | |
| v. | |

Defendants' Corrected Status Report on Implementation of the Gun Harm Reduction Ordinance
Case Nos. 5:22-cv-00501-BLF, 5:22-cv-02365-BLF, 5:22-cv-02533-BLF

| | |
|---|---|
| 1 | **CITY OF SAN JOSE**, and all persons interested in the matter of San Jose Ordinance No. 30716, establishing an Annual Gun Harm Reduction Fee, |
| 2 | |
| 3 | Defendants. |
| 4 | **CHRISTOPHER GLASS** and  Case No. 5:22-cv-02533-BLF |
| 5 | **FIREARMS POLICY COALITION, INC.**, |
| 6 | Plaintiffs, |
| 7 | v. |
| 8 | **CITY OF SAN JOSE**; |
| 9 | **ANTHONY MATA**, in his official capacity as Chief of Police of the City of San Jose; and |
| 10 | **JENNIFER MAGUIRE**, in her official capacity as City Manager of the City of San Jose, |
| 11 | |
| 12 | Defendants. |

1    **CITY OF SAN JOSE**, and all persons interested in the matter of San Jose Ordinance No. 30716, establishing an Annual Gun Harm Reduction Fee,

Defendants.

**CHRISTOPHER GLASS** and
**FIREARMS POLICY COALITION, INC.**,

Plaintiffs,

v.

**CITY OF SAN JOSE**;
**ANTHONY MATA**, in his official capacity as Chief of Police of the City of San Jose; and
**JENNIFER MAGUIRE**, in her official capacity as City Manager of the City of San Jose,

Defendants.

Case No. 5:22-cv-02533-BLF

[Replacing Version of Status Report Inadvertently Filed on August 16, 2022, at ECF 35]

Defendants' Corrected Status Report on Implementation of the Gun Harm Reduction Ordinance
Case Nos. 5:22-cv-00501-BLF, 5:22-cv-02365-BLF, 5:22-cv-02533-BLF

1    Defendants City of San Jose, City Manager Jennifer Maguire, and the City of San Jose City

2    Council (collectively, the "City") provide the following Status Report to the Court and the parties in

3    these three related actions, concerning the City's ongoing efforts to implement the San Jose Gun Harm

4    Reduction Ordinance ("Ordinance") at issue in these cases.

5    Since the Ordinance was approved by the City Council on February 8, 2022, the City has been

6    working diligently to develop regulations and administrative procedures, and take other actions

7    necessary to ensure the Ordinance, when fully implemented, will have the administrative infrastructure

8    it needs to function effectively. On July 8, 2022, the City updated the Court that, notwithstanding the

9    Ordinance's effective date of August 8, 2022, the City Manager's Office ("CMO") announced it was

10   delaying implementation of the Ordinance's insurance and fee requirements while it continued to work

11   diligently to effectuate the Ordinance's terms. *See NAGR* Action, ECF 64, at 7. In that update, the City

12   referred the Court to the *Memorandum from Sarah Zárate to San Jose Mayor and City Council Re:*

13   *Gun Harm Reduction Ordinance Update* (July 1, 2022), available at https://www.sanjoseca.gov/home

14   /showpublisheddocument/87508 ("July Memorandum"). *NAGR* Action, ECF 64, at 7. The July

15   Memorandum contains a table titled "Implementation Timeline," which lists the tasks the City needs to

16   complete to implement the Ordinance, notes which tasks have already been completed, and provides

17   estimated completion dates for those yet to be accomplished. July Memorandum at 3-5.

18   The July Memorandum continues to provide an accurate list of the anticipated work the City

19   will, or has, undertaken to implement the Ordinance. Defendants now provide an update on the City's

20   progress in completing each relevant task.

21   The Gun Harm Reduction Fee

22   As the City has previously informed the Court, the City has not set a date for when enforcement

23   of the Fee requirement will begin, nor has it designated the nonprofit organization to which the Fee

24   must be paid. *See* July Memorandum at 2; Ordinance § 10.32.215. The CMO estimates that the contract

25   with the yet-to-be-designated nonprofit organization will be finalized in December 2022, which is a

26   prerequisite to the City beginning to enforce the Fee requirement. *See* July Memorandum at 2, 5.

27   On June 14, 2022, however, the City Council did take an initial step toward establishing the

28   Fee, as noted in the July Memorandum. *Id.* at 1 (¶ 2), 3, 5. The Ordinance requires the Fee "be set forth

in the schedule of fees and charges established by resolution of the City Council." § 10.32.215. By way of the City's customary annual budget process, the schedule of fees and charges is presented to the City Council for approval in June, immediately prior to the beginning of the City's fiscal year on July 1. Each of those fees and charges must be associated with the budget of a particular City department in order to properly pass through the City's budgetary process and be approved.

With these requirements in mind, the City Council, after a public hearing, voted in June 2022 to approve the City's "Fee and Charges Report" for the 2022-2023 fiscal year, which included the Fee as part of the City Police Department's annual budget and set a placeholder Fee amount of $25 per gun-owning household, along with the express caveat that the $25 Fee would not be enforced at this time. *See* July Memorandum at 1, 3, 6; San Jose City Council Resolution No. 80571 § 29 (June 14, 2022), *available at* https://records.sanjoseca.gov/Resolutions/RES80571.pdf; San Jose Office of the City Manager, *Proposed 2022-2023 Fees & Charges Report*, at pp. xiv, C-26, 119 (May 2022), *available at* https://www.sanjoseca.gov/home/showpublisheddocument/85569/637877133876630000; *see also* *Memorandum from Jim Shannon to San Jose Mayor and City Council Re: 2022-2023 Adopted Fees and Charges* (July 7, 2022), *available at* https://www.sanjoseca.gov/home/showpublisheddocument /87810/637932316704370000 (indicating the Proposed 2022-2023 Fees & Charges Report was approved by the City Council). This action was undertaken as a first step for the City to retain the possibility of enforcing the Fee requirement at any time during the City's 2022-2023 fiscal year. The $25 amount was chosen because it is consistent with the Mayor's public direction, made before the Ordinance was adopted and before any litigation was initiated, that the City Council establish the Fee at "$25 per gun-owning household." *See Memorandum from Mayor Licardo to San Jose City Council* (Jan. 21, 2022), *available at* https://sanjose.legistar.com/View.ashx?M=F&ID=10421783&GUID =133AE89A-69E1-45E9-BE91-145F9DD29089. The Police Department was selected as the most logical City Department to assign the Fee to for budgetary purposes because that is the Department that will ultimately be responsible for enforcing the Ordinance via administrative citation. *See* Ordinance § 10.32.240.

However, this action by the City Council did not permanently set the Fee; it merely completed the first of two steps necessary to enforce the Fee requirement by ensuring the Fee is listed on the

Defendants' Corrected Status Report on Implementation of the Gun Harm Reduction Ordinance
Case Nos. 5:22-cv-00501-BLF, 5:22-cv-02365-BLF, 5:22-cv-02533-BLF                    2

City's Fee and Charges Report. The second step required to set the Fee is that the CMO, after it has completed all necessary prerequisites to enforcing the Fee (i.e., after the nonprofit organization has been designated and the City has secured a contract with the nonprofit), will have to re-appear before the City Council and ask it to vote on and approve the CMO's authority to begin requiring payment of the Fee. As part of this same process and vote, the City Council has the power to change the Fee to whatever amount it deems appropriate. In other words, when this second vote on the Fee occurs, the City Council may choose the keep the Fee at the current $25 placeholder amount, or it may set another amount.[1]

In sum, while a placeholder Fee amount of $25 was used for the first step of including the Fee in the City's annual budgetary process, the nonprofit organization to which the Fee must be paid has not yet been designated, additional City Council action is required before the CMO can begin enforcing the Fee requirement, and the amount of the Fee is still subject to change. Because of this, the fact that the City included the Fee on the 2022-2023 Fee and Charges Report with a placeholder amount of $25 does not materially affect the ripeness analysis, or indeed any other issue that has been briefed by the parties in these related actions. Indeed, it is the evolving nature of the implementation process and underdeveloped factual record that makes judicial review of the Ordinance difficult and inappropriate at this time.

The Liability Insurance Mandate

As noted in the July Memorandum, the CMO has issued regulations suspending implementation of the Ordinance's liability insurance mandate, while it finalizes the procedures and attestation form necessary to implement it, including regulations necessary to flesh out the criteria for the Ordinance's "financial hardship" exemption. July Memorandum at 3. The City is also developing a robust outreach

---

[1] The City's undersigned counsel did not become aware that the Fee was listed on the City's Fees and Charges Report and was voted on by the City Council in June until after the most recent hearing in these matters, on August 4, 2022. Counsel regrets and apologizes to the Court for not being able to inform it of this update earlier and will ensure any future material development in the implementation of the Ordinance will be promptly brought to the Court's attention.

Defendants' Corrected Status Report on Implementation of the Gun Harm Reduction Ordinance
Case Nos. 5:22-cv-00501-BLF, 5:22-cv-02365-BLF, 5:22-cv-02533-BLF                3

SER-036

1   plan to ensure gunowners understand their responsibilities and have sufficient time to connect with

2   their current and (if necessary) potential new insurance providers. Enforcement of the insurance

3   mandate is estimated to begin in January 2023 at the earliest. *Id*. at 2.

4           The City's Ongoing Implementation Activities

5           The City is actively working to complete additional tasks necessary to implement the

6   Ordinance. By way of non-exhaustive examples, the City still must prepare a self-attestation form for

7   gunowners to certify compliance with the Ordinance's insurance requirement, revise the CMO's

8   regulations to establish the form and procedure necessary to implement the insurance requirement

9   (including criteria and procedures for implementing the financial hardship exemption), return to the

10  City Council with proposed fine amounts for violation of the Ordinance, and finalize the enforcement

11  and appeal procedure for administrative citations for violations of the Ordinance. *See, e.g.*, July

12  Memorandum at 3-5. The City must also designate the nonprofit organization that will collect the Fee

13  and, to that end, will engage in outreach and a Request For Information process, to solicit proposals

14  from any appropriate organizations qualified to effectuate the Ordinance's purposes. *Id*.[2]

15          On July 1, 2022, in an effort to be fully transparent with the public about the work it is doing to

16  implement the Ordinance and the anticipated schedule, the City launched a website to provide ready

17  access to the CMO's implementing regulations and provide information on the current implementation

---

19  [2] References in the July Memorandum to "implementation delays due to litigation" and "[a]ssess[ing]

20  litigation status" (July Memorandum at 2, 4) referred only to awaiting the outcome of the preliminary

21  injunction motion in the *NAGR* Action, which has now been decided by the Court. *See NAGR* Action,

22  ECF 72, Order Denying Mot. for Prelim. Inj. (Aug. 3, 2022). The City is not slowing or pausing its

23  implementation activities pending any further proceedings in this Court. *See Memorandum from Sarah*

24  *Zárate to San Jose Mayor and City Council Re: Gun Violence Study Session* at 4 (Aug. 11, 2022),

25  *available at* https://sanjose.legistar.com/View.ashx?M=F&ID=11130885&GUID=60097F28-A405-

26  4B25-BBF3-4829035BE295 ("Legal challenges against the ordinance are still pending, but with the

27  recent denial of preliminary injunctions in those cases, staff will proceed to implement the ordinance as

28  outlined in the work plan.").

---

Defendants' Corrected Status Report on Implementation of the Gun Harm Reduction Ordinance
Case Nos. 5:22-cv-00501-BLF, 5:22-cv-02365-BLF, 5:22-cv-02533-BLF                          4

status of the Ordinance. This information can be found on the City of San Jose Police Department's website under Documents & Policies: Gun Ordinances FAQ. *See* https://www.sjpd.org/records /documents-policies/gun-ordinances-faq. The City Council also held a public Gun Violence Prevention Study Session on August 15, 2022, for which the CMO provided a memorandum with further updates about the anticipated schedule for implementing the Ordinance. *See Memorandum from Sarah Zárate to San Jose City Council Re: Gun Violence Prevention Study Session* (Aug. 11, 2022), *available at* https://sanjose.legistar.com/View.ashx?M=F&ID=11130885&GUID=60097F28-A405-4B25-BBF3-4829035BE295.

The City will provide additional updates to the Court as appropriate, within ten days of any further material development in the City's ongoing effort to implement the Ordinance.

Dated:  August 17, 2022                              Respectfully submitted,

                                                     **COTCHETT, PITRE & McCARTHY, LLP**

                                                     By:   */s/ Tamarah P. Prevost*
                                                           Joseph W. Cotchett
                                                           Tamarah P. Prevost
                                                           Andrew F. Kirtley
                                                           Melissa Montenegro

                                                     *Attorneys for Defendants City of San Jose, et al.*

Defendants' Corrected Status Report on Implementation of the Gun Harm Reduction Ordinance
Case Nos. 5:22-cv-00501-BLF, 5:22-cv-02365-BLF, 5:22-cv-02533-BLF                            5

**SER-038**

1

2

3        **UNITED STATES DISTRICT COURT**

4        **NORTHERN DISTRICT OF CALIFORNIA**

5        **SAN JOSE DIVISION**

6

7    NATIONAL ASSOCIATION FOR GUN              Case No.  22-cv-00501-BLF
     RIGHTS, INC., et al.,
8
                    Plaintiffs,                **ORDER DENYING MOTION FOR**
9                                              **PRELIMINARY INJUNCTION**
            v.
10                                             [Re:  ECF No. 25]
     CITY OF SAN JOSE, et al.,
11
                    Defendants.
12

13        The City of San Jose passed the Reduction of Gun Harm – Liability Insurance

14   Requirement and Gun Harm Reduction Fee ordinance on January 25, 2022.[1]  In the preamble, the

15   City determined that the Ordinance was an exercise of its police powers "for the protection of the

16   welfare, peace and comfort of the residents of the City of San Jose."  This suit was filed the same

17   day.

18        Plaintiffs National Association for Gun Rights, Inc. ("NAGR") and Mark Sikes

19   (collectively "Plaintiffs") bring suit against Defendants City of San Jose (the "City"), the City

20   Manager Jennifer Maguire, and City of San Jose City Council (collectively "Defendants") to

21   challenge Part 6 of Chapter 10.32 of Title 10 (§§ 10.32.200- 10.32.250) of the City of San Jose's

22   local ordinances (the "Ordinance").  *See* First Amended Complaint ("FAC"), ECF No. 19.  The

23   Ordinance at issue purports "to reduce gun harm by: (a) requiring gun owners to obtain and

24   maintain liability insurance; and (b) authorizing a fee to apply to gun harm reduction programs."

25   *Id.* ¶ 19.  Plaintiffs assert that the Ordinance violates their Second Amendment and First

26   Amendment rights (First and Second Claims), the California Constitution (Third and Fourth

27   ───────────────

28   [1] The Ordinance's second reading and enactment occurred on February 8, 2022.

1   Claims), and the City of San Jose's City Charter (Fifth Claim).  *Id.* ¶¶ 82-146.

2        Shortly after commencing suit, Plaintiffs filed the present Motion for Preliminary

3   Injunction ("Motion") to enjoin enforcement of the Ordinance, which was initially scheduled to go

4   into effect on August 8, 2022 but the implementation of which has since been delayed past

5   December 2022.  Pls.' Mot. Prelim. Inj. 9, ECF No. 25; Defs.' Suppl. Br. 7, ECF No. 64.  On June

6   23, 2022—after the Motion was briefed but before the hearing—the Supreme Court of the United

7   States issued its opinion in *New York State Rifle & Pistol Ass'n., Inc. v. Bruen*, 142 S. Ct. 2111

8   (2022), altering the framework under which both parties briefed the Motion.  This Court

9   subsequently ordered the parties to file supplemental briefs addressing *Bruen* and the proper legal

10  standard for evaluating the Second Amendment issues in the Motion.  ECF No. 62.  The Court has

11  considered the parties' initial and supplemental briefing, the *amicus curiae* brief and response, and

12  the oral arguments presented on July 14, 2022.  For the reasons discussed below, Plaintiffs'

13  Motion is DENIED.

14  **I.    BACKGROUND**

15       On June 29, 2021, the San Jose City Council directed City Attorney Nora Frimann to

16  return to Council with an ordinance requiring San Jose gun owners to "obtain and maintain a City-

17  issued document evincing payment of an annual fee, and attestation of insurance coverage for

18  unintentional firearm-related death, injury, or property damage."  FAC ¶ 18.  On January 14, 2022,

19  the City Attorney returned with a recommendation for an ordinance "(a) requiring gun owners to

20  obtain and maintain liability insurance; and (b) authorizing a fee to apply to gun harm reduction

21  programs."  *Id.* ¶ 19.  On January 25, 2022, the City Council initially approved the Ordinance,

22  and, on February 8, 2022, the Council voted to finally approve Ordinance No. 30716.  *Id.* ¶ 26.

23       Plaintiff NAGR describes itself as a nonprofit grassroots organization dedicated to

24  defending the Second Amendment right to keep and bear arms.  *Id.* ¶ 13.  Its members include San

25  Jose residents who would be subject to the Ordinance.  Plaintiff Sikes is a San Jose resident, who

26  legally owns a gun and would be subject to the Ordinance if it were to go into effect.  *Id.* ¶ 14.

27       **A.    The Ordinance**

28       Ordinance No. 30716 is comprised of four sections, with the first section containing the

*United States District Court*
*Northern District of California*

2

operative provisions of Part 6 to Title 10 of the San Jose Municipal Code. *See* FAC, Ex. K. Part 6 contains sections §§ 10.32.200-10.32.250 and is titled, "Reduction of Gun Harm – Liability Insurance Requirement and Gun Harm Reduction Fee" (the "Ordinance"). *Id.* at 5-12. The second, third, and fourth sections establish the Ordinance's effective date, its severability, and the bases for the City Council's action in passing the Ordinance, respectively.

### i. Insurance Requirement

The Ordinance itself begins with a recitation of the City's authority to adopt the Ordinance, its purpose, and specific factual findings propelling the City's action. Ordinance § 10.32.200. The first operative provision requires San Jose residents who own or possess a firearm to obtain a homeowner's, renter's, or gun liability insurance policy "covering losses or damages resulting from any accidental use of the Firearm." *Id.* § 10.32.210 (the "Insurance Requirement").

### ii. Gun Harm Reduction Fee

The second main provision is the requirement for San Jose gun owners to pay an Annual Gun Harm Reduction Fee (the "Fee") to a Designated Nonprofit Organization (the "Nonprofit"), selected by the City Manager. *Id.* § 10.32.215, 10.32.235. The Fee amount will be established by City Council, and every dollar generated must be used by the Nonprofit to provide "services to residents of the City that own or possess a [f]irearm in the City, to members of their household, or to those with whom they have a close familial or intimate relationship." *Id.* § 10.32.220(A). The Ordinance instructs the Nonprofit to spend the funds generated from the Fee exclusively for programs and initiatives designed to "(a) reduce the risk or likelihood of harm from the use of firearms in the City of San Jose, and (b) mitigate the risk of physical harm or financial, civil, or criminal liability that a San Jose firearm owner or her family will incur through her possession of firearms." *Id.* § 10.32.220(C). The Ordinance also provides a non-exhaustive list of services the Nonprofit may provide, which include suicide prevention, violence reduction, addiction intervention, substance abuse, mental health services relating to gun violence, and firearms safety education. *Id.* § 10.32.220(A)(1)-(5). Proceeds generated by the Fee may not be used for litigation, political advocacy, or lobbying activities nor may the City "specifically direct how the monies from the Gun Harm Reduction Fee are expended." *Id.* §§ 10.32.220(B)-(C).

United States District Court
Northern District of California

3

### iii.    Compliance and Implementation

San Jose residents who are required to obtain and maintain insurance must maintain a City-designated attestation form, to which they must also affix proof of payment of the Fee.  Ordinance § 10.32.230.  The Ordinance exempts peace officers, persons with concealed carry licenses, and persons for whom compliance would create a "financial hardship" from complying with its provisions.  *Id.* § 10.32.225.

Any violation of the Ordinance is punishable by an administrative citation with fines to be established by City Council.  *Id.* § 10.32.240.  Additionally, the Ordinance prospectively would permit the impoundment of any non-compliant person's firearm, subject to a due process hearing and to the extent allowed by law.  *Id.* § 10.32.245.  That said, the City confirmed in its briefing and in oral arguments that there is currently no federal or state law authorizing the City to impound firearms under the Ordinance, and therefore, the impoundment provision is inoperable absent some future change in the applicable law.  *See* Defs.' Opp. Mot. Prelim. Inj. ("Opp."), at 3.

The Ordinance authorizes the City Manager to promulgate all regulations necessary to implement the requirements and fulfill the policies of the Ordinance, including designating the Nonprofit, providing guidelines on and auditing the use of the Fee, and establishing the criteria for the "financial hardship" exemption.  *Id.* § 10.32.235.  The Ordinance also authorizes the City Manager to collect any cost recovery fees associated with fulfilling the policies of the Ordinance. *Id.* § 10.32.250.

To date, the City Council and City Manager have not yet established the amount of the Fee, the amount of any administrative citation fines, or the identity of the Nonprofit.  Opp. 3-4.

### B.    Procedural History

On January 25, 2022, the same day as the City Council's meeting to consider approving the Ordinance, Plaintiffs filed the original Complaint, seeking declaratory and injunctive relief from the Ordinance.  *See* Compl. ¶ 16, ECF No. 1.

The First Amended Complaint asserts six claims for relief, including a claim under the Declaratory Judgment Act.  First, Plaintiffs allege that the Ordinance violates their Second Amendment rights by requiring gun owners to purchase insurance and pay annual fees (First

4

1    Claim).  FAC ¶¶ 82-105.  Plaintiffs also claim the Fee constitutes a compelled subsidy in violation

2    of their First Amendment freedoms of speech and association (Second Claim).  *Id.* ¶¶ 106-115.

3    The FAC asserts violations of the California Constitution, specifically that the State of California

4    has occupied the field of residential handgun possession to the exclusion of local governments

5    (Third Claim) and the Ordinance imposes fees that are in fact taxes subject to voter approval

6    (Fourth Claim).  *Id.* ¶¶ 116-133.  Finally, Plaintiffs allege that the Ordinance violates the San Jose

7    City Charter's budgeting and appropriation provisions, the delegation of executive functions, and

8    the requirement that all City revenues and receipts be deposited in the City's accounts (Fifth

9    Claim).  *Id.* ¶¶134-146; *see also* FAC, Ex. A ("City Charter").

10         On March 8, 2022, Plaintiffs moved to enjoin the enforcement of the Ordinance, currently

11   scheduled to go into effect on August 8, 2022, though later postponed.  Mot. 4; Defs.' Suppl. Br.

12   7.  The City opposed, asserting ripeness objections in addition to substantive arguments.  Opp. 4-

13   6.  The Motion was fully briefed by March 29, 2022, with a hearing scheduled for July 14, 2022.

14   ECF Nos. 32 ("Reply"), 60.

15         On June 23, 2022, the Supreme Court of the United States issued its opinion in *New York*

16   *State Rifle & Pistol Ass'n., Inc. v. Bruen*, 142 S. Ct. 2111 (2022), which struck down New York

17   State's "may-issue" licensing regime and altered the Ninth Circuit's Second Amendment

18   framework.  *See, e.g.*, *Young v. Hawaii*, 992 F.3d 765, 783 (9th Cir. 2021), abrogated by *Bruen*,

19   142 S. Ct. 2111.

20         On June 27, 2022, this Court ordered the parties to file supplemental briefs, addressing

21   *Bruen* and the proper legal standard for Plaintiffs' Second Amendment challenge.  ECF No. 62.

22   On July 11, 2022, the Court received a request to file an *amicus* brief from Brady, a nonprofit

23   organization dedicated to reducing gun violence, which the Court granted.  ECF No. 66, 69.

24   **II.    LEGAL STANDARD**

25        **A.    Ripeness**

26         "Ripeness is an Article III doctrine designed to ensure that courts adjudicate live cases or

27   controversies and do not issue advisory opinions or declare rights in hypothetical cases."  *Bishop*

28   *Paiute Tribe v. Inyo Cnty.*, 863 F.3d 1144, 1153 (9th Cir. 2017) (internal quotation marks and

*United States District Court*
*Northern District of California*

5

1    brackets omitted).  As an Article III doctrine of justiciability, ripeness must be established

2    separately for each claim of relief sought.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332,

3    352-53 (2006); *cf. City of Rialto v. W. Coast Loading Corp.*, 581 F.3d 865, 875 n.8 (9th Cir. 2009)

4    ("[I]t is beyond question that every claim before us must meet minimum constitutional

5    requirements for jurisdiction, such as ripeness.").  The ripeness inquiry contains both a

6    constitutional and a prudential component.  *See Bishop Paiute*, 863 F.3d at 1153.  Constitutional

7    ripeness is analyzed "under the rubric of standing because ripeness coincides squarely with

8    standing's injury in fact prong," while prudential ripeness considers two overarching factors: "[1]

9    the fitness of the issues for judicial decision and [2] the hardship to the parties of withholding

10   court consideration." *Id.* 1153-54.

11       "A claim is fit for decision if the issues raised are primarily legal, do not require further

12   factual development, and the challenged action is final."  *Wolfson v. Brammer*, 616 F.3d 1045,

13   1060 (9th Cir. 2010) (quoting *US W. Commc'ns v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1118 (9th

14   Cir. 1999).  In considering the hardship to the parties, courts consider whether "withholding

15   review would result in direct and immediate hardship and would entail more than possible

16   financial loss," as well as "whether the regulation requires an immediate and significant change in

17   plaintiffs' conduct of their affairs with serious penalties attached to noncompliance."  *Wolfson*,

18   616 F.3d at 1060 (quoting *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009)).

19       **B.    Preliminary Injunction**

20       "A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter*

21   *v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  A plaintiff seeking a preliminary injunction

22   must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer

23   irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his

24   favor, and [4] that an injunction is in the public interest."  *Id.* at 20.  Alternatively, an injunction

25   may issue where "the likelihood of success is such that serious questions going to the merits were

26   raised and the balance of hardships tips sharply in plaintiff's favor," provided that the plaintiff can

27   also demonstrate the other two *Winter* factors.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d

28   1127, 1131-32 (9th Cir. 2011) (citation and internal quotation marks omitted).

*United States District Court*
*Northern District of California*

6

1   A preliminary injunction should not be granted, "unless the movant, *by a clear showing*,

2   carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (italics in

3   original).  That said, "the burdens at the preliminary injunction stage track the burdens at trial."

4   *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006).  In cases

5   where the government bears the burden as to the ultimate question of the challenged law's

6   constitutionality, the moving party must "mak[e] a colorable claim that its [constitutional] rights

7   have been infringed, or are threatened with infringement, at which point the burden shifts to the

8   government to justify the restriction." *Cal. Chamber of Com. v. Council for Educ. & Rsch. on

9   Toxics*, 29 F.4th 468, 478 (9th Cir. 2022).

10   **III.    DISCUSSION**

11   Because the City's ripeness challenges directly bear upon the Court's jurisdiction and

12   ability to reach the merits in this case, the Court first addresses the City's ripeness arguments.

13   **A.    Ripeness**

14   The City's ripeness argument, although broadly asserted against the entire lawsuit, appears

15   to focus only on the First and Second Amendment challenges to the Fee.  The City asserts that

16   Plaintiffs' First Amendment challenge to the Fee is not ripe because Plaintiffs assume that the yet-

17   to-be-designated Nonprofit's activities will inevitably violate the First Amendment.  Opp. 4-5.

18   The City also argues that, because the City Council has not established the Fee amount yet, the

19   Fee's burden on Plaintiffs' Second Amendment rights is uncertain, and thereby their Second

20   Amendment challenge is also unripe.  *Id.* at 6.  The City does not argue that Plaintiffs' challenges

21   to the Insurance Requirement are unripe, nor does the City dispute constitutional ripeness, *i.e.*, the

22   existence of an injury-in-fact.  Rather, the City primarily argues the lack of prudential ripeness by

23   disputing the fitness of the Fee for judicial determination at this time.  *Id.* at 5.

24   Plaintiffs respond that pre-enforcement challenges to an ordinance are ripe where there is

25   an "actual and well-founded fear that the challenged statute will be enforced."  Reply 3 (quoting

26   *Libertarian Party of Los Angeles Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013)).  They argue

27   that there is nothing to suggest that the City will not enforce the Ordinance, and it is sufficient that

28   the Ordinance would condition lawful gun ownership on making a financial donation and

1    acquiring liability insurance.  *Id.*

2            i.    **Ripeness of First Amendment Claim**

3        Plaintiffs' Complaint asserts that the mandatory Fee would infringe their First Amendment

4    rights to free speech and free association.  FAC ¶ 62.  Because gunowners must pay the Fee

5    regardless of whether they want to associate with or donate to the Nonprofit, the required Fee

6    would be "[c]ompelling [them] to subsidize the speech of other private speakers."  Mot. 15

7    (quoting *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2464

8    (2018)).  Plaintiffs compare the mandatory Fee to the mandatory union agency fees struck down in

9    *Janus*, which were imposed on all relevant employees regardless of whether they were union

10   members or agreed with the union's tactics.  138 S. Ct. at 2460.

11       The City responds that, as a threshold matter, Plaintiffs' challenges are unripe.  The

12   Nonprofit, the City argues, has not yet been designated nor have its activities been confirmed, so

13   Plaintiffs are merely speculating that the Nonprofit will "inevitably hold the City's anti-gun

14   biases" and be "hostile to gun ownership."  Opp. 5, 16 (quoting Mot. 5, 8, 17).

15       In assessing whether this question is fit for judicial decision, the Court begins with the

16   observation that the First Amendment freedom of association is closely, if not inextricably, tied to

17   speech and expression.  *See, e.g.*, *Janus*, 138 S. Ct. at 2463 ("The right to eschew *association for*

18   *expressive purposes* is likewise protected.") (emphasis added); *Knox v. Serv. Emps. Int'l Union,*

19   *Loc. 1000*, 567 U.S. 298, 309 (2012) ("[T]he ability of like-minded individuals to *associate for the*

20   *purpose of expressing* commonly held views may not be curtailed.") (emphasis added); *NAACP v.*

21   *State of Ala. ex rel. Patterson*, 357 U.S. 449, 460–61 (1958) ("It is beyond debate that freedom to

22   engage in *association for the advancement of beliefs and ideas* is an inseparable aspect of the . . .

23   freedom of speech.") (emphasis added).

24       The Supreme Court further defined the relationship between speech and association in

25   *Keller v. State Bar of California*, which involved a state bar's mandatory membership dues.  496

26   U.S. 1 (1990).  There, the Supreme Court held that the compelled fee was justified by the State's

27   interest in regulating the legal profession and, therefore, the state bar may use proceeds from the

28   mandatory dues to constitutionally fund "activities germane to those goals" or "expenditures . . .

United States District Court
Northern District of California

8

1    necessarily or reasonably incurred" for those goals. *Id.* at 14. However, *Keller* held that the state

2    bar could not use the mandatory dues to fund "activities of an ideological nature," drawing a

3    distinction between activities that implicated speech and those that were "germane" to the

4    association's legitimate functions. *Id.*

5           Turning to the Nonprofit at issue, as yet, the Ordinance does not specify what the

6    Nonprofit's activities will be. Although the Ordinance lists five possible services that the

7    Nonprofit may fund, that list is neither mandatory nor exhaustive. Ordinance § 10.32.220(A)

8    ("Such expenditures may include, but are not necessarily limited to the following. . . ."). The only

9    other indication of the Nonprofit's activities is the Ordinance's directive that the Nonprofit's

10   programs and initiatives be designed to "(a) reduce the risk or likelihood of harm from the use of

11   firearms in the City of San Jose, and (b) mitigate the risk of physical harm or financial, civil, or

12   criminal liability that a San Jose firearm owner or her family will incur through her possession of

13   firearms." Ordinance § 10.32.220(C). However, this broad mission statement does not inform the

14   Court as to whether the Nonprofit's activities will be permissibly "germane" to a justifiable state

15   interest or impermissibly "ideological" in nature. *Keller*, 496 U.S. at 13-14.

16          It is also unclear whether the Fee would fund *any* kind of speech or expressive activities,

17   much less anti-gun sentiments. *See* Ordinance § 10.32.220(A)-(C) (mentioning "services,"

18   "programs," and "initiatives"). For instance, one can readily envision a regulatory scheme in

19   which the Nonprofit adopts a program that violates the First (and Second) Amendment, perhaps by

20   undertaking a public service advertising campaign to reduce gun ownership. *Cf. United States v.*

21   *United Foods, Inc.*, 533 U.S. 405 (2001) (holding that compelled subsidies used to fund industry

22   advertisements unconstitutional under the First Amendment); *but cf. Glickman v. Wileman Bros.*

23   *& Elliott*, 521 U.S. 457, 472–73 (1997) ("[O]ur cases provide affirmative support for the

24   proposition that assessments to fund a lawful collective program may sometimes be used to pay

25   for speech over the objection of some members of the group."). However, one can also just as

26   readily conceive of a program that may reduce gun harm without involving speech or other

27   expressive activity, such as offering optional firearm safety training to first-time gun owners. *Cf.*

28   *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 707 (1986) (finding no First Amendment violation

9

United States District Court
Northern District of California

1   where closure sanction of a bookstore was targeting non-expressive activity). Absent speculation

2   on the Nonprofit's activities, Plaintiffs' First Amendment claim "rests upon contingent future

3   events that may not occur as anticipated." *Texas v. U.S.*, 523 U.S. 296, 300 (1998). Because

4   "further factual development would significantly advance [the Court's] ability to deal with the

5   legal issues presented," the Court cannot say that the First Amendment claim is fit for judicial

6   decision. *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 812 (2003) (internal

7   quotation marks omitted).

8          Plaintiffs' arguments to the contrary are mostly inapposite. To start, although the City

9   argues that Plaintiffs' Fee challenges are *prudentially* unripe, Plaintiffs' response and cited

10  authorities only bear upon *constitutional* ripeness, with one case only summarily addressing

11  prudential ripeness in a footnote and another finding the case to be prudentially unripe. *Compare*

12  Opp. 4-5 *with* Reply 3; *see also Libertarian Party of Los Angeles Cnty. v. Bowen*, 709 F.3d 867,

13  872 n.5 (9th Cir. 2013); *Nichols v. Brown*, 859 F. Supp. 2d 1118, 1135 (C.D. Cal. 2012)

14  ("Furthermore, this case is not ripe for review for prudential reasons as well."). As a result, the

15  generally undisputed allegation that the City intends to enforce the Ordinance does not rebut or

16  respond to the City's prudential ripeness argument where the Court does not know what the City

17  will be enforcing.

18         Plaintiffs also submit that the Nonprofit will "inevitably hold the City's anti-gun biases,"

19  will be "hostile to gun ownership," and will be "inherently political." Mot. 8; Reply 10. Such

20  viewpoints, however, are not apparent from the face of the Ordinance. True, the Ordinance

21  proposes five non-exhaustive examples of services the Nonprofit *may* (but not shall) provide.

22  Ordinance § 10.32.220(A)(1)-(5). However, Plaintiffs do not explain how suicide prevention,

23  violence reduction, addiction intervention, mental health services, or firearm safety training

24  necessarily evidence viewpoints that are "hostile" to gun ownership or are "inherently political."

25  And, as noted above, these programs may or may not even involve any speech or expressive

26  activities in the first instance. Without a concrete idea of the Nonprofit's actual programs and

27  activities, the Court is left "entangling [itself] in abstract disagreements." *Thomas v. Anchorage

28  Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000).

1    With respect to the "hardship to the parties of withholding court consideration," the Fee

2    does not require an "immediate and significant change in plaintiffs' conduct of their affairs with

3    serious penalties attached to noncompliance." *Wolfson*, 616 F.3d at 1060.  Here, the only change

4    in Plaintiffs' conduct would be the preparation (if any) to potentially pay a fee, an obligation that

5    arises only if they do not qualify for the "financial hardship" exemption and is only punishable by

6    an administrative citation.  Ordinance §§ 10.32.225, 10.32.240.  Furthermore, the City does not

7    expect to finalize its contract with any non-profit before December 2022, Defs.' Suppl. Br. 7, and

8    even so, there has been no indication as to the City Manager's regulations establishing the "date

9    by which payment shall be made annually."  Ordinance § 10.32.215.  Given that the Ordinance's

10   Fee provision would not force an immediate change to Plaintiffs' current conduct, the Court does

11   not find any hardship for withholding court consideration on Plaintiffs' First Amendment

12   challenge to the Fee.

13       Because the Nonprofit has not yet been identified nor have its activities been determined,

14   the Court finds that Plaintiffs' First Amendment challenge to the Fee is prudentially unripe.[2]

15       ###      ii.      Ripeness of Second Amendment Claim

16       In response to Plaintiffs' Second Amendment challenge to the Fee, the City argues that,

17   because the Fee's amount has not yet been determined, whether the Fee would infringe upon

18   Plaintiffs' Second Amendment rights beyond a *de minimis* burden is not fit for judicial

19   determination.  Opp. 6.  Plaintiffs respond that it is sufficient that "the Ordinance will condition

20   lawful gun ownership on the making of a financial donation to a nonprofit that the Ordinance

21   characterizes as a city 'fee.'"  Reply 3.

22       Whether an annual mandatory fee on gun owners violates the right to "keep and bear

23   Arms" will turn on the Fee amount and the City's criteria for determining "financial hardship."

24   _____

25   [2] Notwithstanding its assessment of the claim's ripeness, the Court notes that the substance of

26   Plaintiffs' First Amendment argument contains compelling points, especially regarding the

27   Supreme Court's holding in *Janus*, 138 S. Ct. 2448.  As the City Manager develops the regulations

28   applicable to the Fee, close attention to Plaintiffs' arguments may be wise.

United States District Court
Northern District of California

1    Ordinance §§ 10.32.215, 10.32.225.  In and of itself, a fee that is merely associated with owning a

2    firearm—and for which the failure to pay does not result in that ownership being revoked, Opp.

3    3—would not necessarily be inconsistent with the "historical tradition of firearm regulation."

4    Indeed, the Supreme Court in *Bruen* expressly contemplated regulations that may permissibly

5    include fee payments, so long as the fees were not so "exorbitant [so as to] deny ordinary citizens

6    their right to public carry."  *Bruen*, 142 S. Ct. at 2138 n.9.  Here, the Court cannot assess whether

7    such a Fee would be so "exorbitant" as to infringe upon Plaintiffs' rights without additional

8    information on the Fee amount or the as-yet-to-be-determined "criteria by which a person can

9    claim a financial hardship exemption."  Ordinance § 10.32.235(A)(4).  Absent the promulgation of

10   regulations on these two points, the Court would be left to issue an impermissible advisory

11   opinion on the Ordinance's constitutionality under the Second Amendment.

12          The hardships of withholding judicial consideration of Plaintiffs' Second Amendment

13   challenge to the Fee are identical to those arising from withholding consideration of Plaintiffs'

14   First Amendment challenge.  *See supra* Section III(A)(i).  Plaintiffs are not threatened by "serious

15   penalties attached to noncompliance" that would force them to make "an immediate and

16   significant change" to their regular conduct.  *Wolfson*, 616 F.3d at 1060.  Even if the preparation

17   to pay a fee could be considered significant, the obligation would certainly not be immediate, as

18   the City has postponed the implementation and designation of the Nonprofit to at least December

19   2022.  Defs.' Suppl. Br. 7.  As a result, the Court's decision to withhold judicial consideration

20   would not impose any immediate or significant hardships to the parties.

21          Accordingly, both Plaintiffs' First and Second Amendment challenges to the Fee provision

22   are prudentially unripe, and the Court does not proceed to address those claims in its preliminary

23   injunction analysis.  Plaintiffs' other challenges to the Fee provision—*i.e.*, that the Fee infringes

24   upon a preempted field, violates the California voter approval tax requirement, and violates the

25   City Charter—will be analyzed on their merits, as the City does not specifically dispute the

26   ripeness of those claims.  Opp. 4-6.  Plaintiffs' challenges to the Insurance Requirement will

27   likewise also be considered.

28          The Court DENIES as unripe Plaintiff's motion for preliminary injunction to the extent it

12

United States District Court
Northern District of California

seeks to enjoin the Fee provision on First and Second Amendment grounds.

**B.    Likelihood of Success**

Having addressed the threshold ripeness issues, the Court proceeds to whether Plaintiffs have shown that they are likely to succeed on the merits of their remaining claims.  *See Winter*, 555 U.S. at 20.

**i.    Second Amendment**

Plaintiffs challenge both the Fee and Insurance Requirement under the Second Amendment (Claim 1), though only the Insurance Requirement is ripe for review.  After the FAC was filed, the U.S. Supreme Court issued its opinion in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, holding that New York State's "may-issue" licensing regime—*i.e.*, where officials have discretion and *may issue*, rather than *shall issue*, concealed-carry licenses upon proof of proper cause—was unconstitutional.  142 S. Ct. 2111 (2022).  In striking down the New York statute, the Supreme Court acknowledged and expressly rejected the "two-step" means-end scrutiny framework that Circuit Courts of Appeals (and the parties) have used to analyze Second Amendment challenges. *See id.* at 2127.  In its place, *Bruen* pronounced a constitutional test adhering to the principles in *D.C. v. Heller*, that is, "a test rooted in the Second Amendment's text, as informed by history."  *Id.* at 2127 (citing *D.C. v. Heller*, 554 U.S. 570, 576-77 (2008)).  This motion for preliminary injunction is considered under the *Bruen* standard.

a.  The *Bruen* Framework

*Bruen* articulates the Second Amendment constitutional standard as follows: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."  *Id.* at 2129–30.  The Supreme Court further emphasized that "[t]o justify its regulation, the government may not simply posit that the regulation promotes an important interest."  *Id.* at 2126.

To determine whether the Second Amendment's plain text covers an individual's conduct, courts must first identify and delineate the specific course of conduct at issue, which in *Bruen* was "carrying handguns publicly for self-defense."  *Id.* at 2134.  *Bruen* conducted a textual analysis of

United States District Court
Northern District of California

13

the words "bear" and "keep" to determine whether the conduct of publicly carrying a firearm fell within the language of the Second Amendment. *Id.* at 2134-35.

If the conduct at issue is covered by the text of the Second Amendment, the burden then shifts to the government to show why the regulation is consistent with the Nation's historical tradition of firearm regulation, specifically the periods closest to the adoption of the Second Amendment (1791) and the Fourteenth Amendment (1868). *Id.* at 2135-36. Courts need not themselves engage in "searching historical surveys" for potential regulatory analogues—they are "entitled to decide a case based on the historical record compiled by the parties." *Id.* at 2130 n.6. If the parties are able to identify instances of historical firearm regulations, courts must reason by analogy to determine whether the two regulations are "relevantly similar." *Id.* at 2132 (quoting Cass R. Sunstein, *On Analogical Reasoning Commentary*, 106 Harv. L. Rev. 741, 773 (1993)). Two relevant metrics for this comparison are "how and why the regulations burden a law-abiding citizen's right to armed self-defense"; in other words, "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 2132-33.

With this updated framework in mind to evaluate the Insurance Requirement's constitutionality under the Second Amendment, the Court turns to the parties' arguments.

      b. Plain Text

The Court must first identify Plaintiffs' "proposed course of conduct" and assess whether that conduct is covered by the Second Amendment's plain text.[3] *Bruen*, 142 S. Ct. at 2134.

_____

[3] As an initial note, Plaintiffs rely on the City's prior concession that "[f]or the purposes of opposing the Motion, [the City] concede that the Ordinance imposes some minimal or slight burden." Opp. 7. The City has since withdrawn that concession as not "constitutionally relevant" and argues that the Ordinance does not infringe upon conduct protected by the Second Amendment's text. Defs.' Suppl. Br. 3 n.1. The Court recognizes that both parties' Second Amendment analysis likely changed in the wake of *Bruen* and will consider the City's arguments, notwithstanding their prior concession made under a now-obsolete legal framework.

14

United States District Court
Northern District of California

1    Neither Plaintiffs' nor the City's supplemental briefing specifies a course of conduct for

2  the Court to analyze.  *See* Pls.' Suppl. Br. 3, ECF No. 65; Defs.' Suppl. Br. 3-4.  When prompted

3  at oral arguments, Plaintiffs initially articulated the relevant conduct as requiring citizens to

4  purchase insurance to avoid a penalty, but they later argue that the conduct is "the mere ownership

5  of a gun."  Pls.' Resp. Br. Brady Amicus Curiae 2, ECF No. 70.  On the other hand, *amicus curiae*

6  defined the conduct as "insuring liability that might arise from a firearm-related accident."  Br.

7  Brady Amicus Curiae ("Brady Br.") 3-4, ECF No. 66-1.

8    The Supreme Court provided limited guidance on how to define the proposed course of

9  conduct—*Bruen* simply stated the conduct at issue with New York's "may-issue" permitting

10  scheme as "carrying handguns publicly for self-defense."  *Bruen*, 142 S. Ct at 2134.  Extrapolating

11  from the Supreme Court's example and for purposes of evaluating this motion only, the Court

12  defines the conduct at issue here as "owning or possessing a firearm without firearm liability

13  insurance."[4]  This definition closely tracks Plaintiffs' initial articulation of the conduct in question.

14    The Court recognizes that, because the impound provision is not operable under

15  current law, the Insurance Requirement would not imperil the ownership or possession of

16  anyone's firearms.  *See* Defs.' Suppl. Br. 3-4; Brady Br. 3-4.  However, even if ownership or

17  possession is not threatened by impoundment, the requirement to obtain insurance is nonetheless

18  triggered by the conduct of "own[ing] or possess[ing] a Firearm in the City."  Ordinance §

19  10.32.210(A).  Under the "plain text" prong of the *Bruen* analysis, the Court only reviews

20  Plaintiffs' proposed conduct and the plain text of the Second Amendment.  *Bruen*, 142 S. Ct at

21  2134.  To the extent *Bruen* accounts for the degree to which Plaintiffs' Second Amendment rights

22  have been burdened, that analysis would occur under the "historical tradition" prong of the *Bruen*

23  framework.  *Id.* at 2149 (evaluating "the burden these surety statutes may have had on the right to

24  _____

25  [4] On a more developed record, the Court may reevaluate this description of the proposed conduct

26  for purposes of the *Bruen* analysis.  The Court also notes the strong arguments offered by *amicus*

27  that the Second Amendment is not implicated by the Insurance Requirement or Fee provisions.

28  Brady Br. 3-6.  The Court will revisit this issue as the case proceeds.

15

1  public carry" and determining that the burden was "likely too insignificant to shed light on New

2  York's proper-cause standard").

3        Having defined the conduct at issue as "owning or possessing a firearm without firearm

4  liability insurance," the Court finds that Plaintiffs are likely to prevail on a finding that this

5  conduct is covered by the plain text of the Second Amendment.  And, as *Bruen* teaches, the

6  Constitution thus "presumptively protects that conduct."  142 S. Ct. at 2130.

7             c.  Historical Tradition

8        Because Plaintiffs' proposed conduct is likely covered by the Second Amendment's plain

9  text, the burden shifts to the City to "demonstrate[e] that [the Insurance Requirement] is consistent

10  with the Nation's historical tradition of firearm regulation."  *Bruen*, 142 S. Ct at 2130; *see also*

11  *Gonzales*, 546 U.S. at 429 ("[T]he burdens at the preliminary injunction stage track the burdens at

12  trial.").  The Court finds that the City has presented a sufficiently "relevantly similar" historical

13  regulation to defeat Plaintiffs' likelihood of success on *Bruen*'s historical tradition prong.

14        *Bruen* described the analogical reasoning of the historical tradition prong as "neither a

15  regulatory straightjacket nor a regulatory blank check. . . . [C]ourts should not 'uphold every

16  modern law that remotely resembles a historical analogue' [but] analogical reasoning requires only

17  that the government identify a well-established and representative historical *analogue*, not a

18  historical *twin*."  *Bruen*, 142 S. Ct. at 2133 (emphasis in original).  "[E]ven if a modern-day

19  regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass

20  constitutional muster."  *Id.*  As one example, *Bruen* noted that "[a]lthough the historical record

21  yields relatively few 18th- and 19th-century 'sensitive places' where weapons were altogether

22  prohibited—*e.g.*, legislative assemblies, polling places, and courthouses—we are also aware of no

23  disputes regarding the lawfulness of such prohibitions.  We therefore can assume it settled that

24  these locations were 'sensitive places' where arms carrying could be prohibited consistent with the

25  Second Amendment."  *Id.* (internal citation omitted).

26        Here, the City has cited several potential historical analogues with varying degrees of

27  similarity to the Insurance Requirement.  *See* Defs.' Suppl. Br. 6-7 (citing 18th and 19th century

28  laws regarding safe gunpowder storage, requiring loyalty oaths as conditions of gun ownership,

16

1  prohibiting firing guns in certain circumstances, imposing surety bonds, and taxing dangerous

2  animals).  Several of these are readily distinguishable.  For instance, "dangerous animal" laws

3  address a different societal problem than the Insurance Requirement, one that was not subject to

4  constitutional protection.  *See Mitchell v. Williams*, 27 Ind. 62, 62 (1866) (reviewing "an act to

5  discourage the keeping of useless and sheep-killing dogs").  Eighteenth century loyalty oaths are

6  similarly distinguishable, as the purpose behind those was to "deal with the potential threat

7  coming from armed citizens who remained loyal to Great Britain."  Saul Cornell & Nathan

8  DeDino, *A Well Regulated Right: The Early American Origins of Gun Control*, 74 Fordham L.R.

9  487, 506 (2004).  Gunpowder storage laws had a somewhat analogous purpose to the Ordinance's,

10  in that they were intended to protect communities from accidental fire and explosion.  *Id.* at 512.

11  However, the regulations themselves were often specific to gunpowder and not easily translatable

12  to firearm regulations.  *See id.* at 511 (citing regulations that powder must be kept in the "highest

13  story of the house" or in "four stone jugs or tin cannisters").

14  However, the Court finds that the mid-19th century surety statutes, cited by the City and

15  discussed at length in *Bruen*, bear striking analogical resemblances to the Insurance Requirement.

16  142 S. Ct. at 2148; *see* Defs.' Suppl. Br. 6.  These statutes typically required certain individuals to

17  post bond before carrying weapons in public if there was "reasonable cause" to fear these

18  individuals would cause injury or breach of the peace, with the bond forfeited if the wielder did in

19  fact injure another or breach the peace.  *Bruen*, 142 S. Ct. at 2148.

20  As an initial point, the Court notes that the history of reallocating costs of firearm-related

21  accidents—from which the Insurance Requirement descends—can be traced back to the early

22  American practice of imposing strict liability for such accidents.  *See* Brady Br. 8-10.  As early as

23  1814, the Supreme Judicial Court of Massachusetts noted that "[i]t is immaterial . . . whether the

24  act of the defendant [causing a firearm injury] was by his intention and purpose injurious to the

25  plaintiff, or the mischief which ensued was accidental," a legal principle that had "never been

26  questioned" at the time.  *Cole v. Fisher*, 11 Mass. (1 Tyng) 137, 138 (1814); *see also Moody v.

27  Ward*, 13 Mass. (1 Tyng) 299, 301 (1816) (noting that militia commanders whose soldiers fire

28  "guns in and near the highways on days of military musters . . . are legally responsible for all

United States District Court
Northern District of California

1  damage sustained by a citizen in consequence of such neglect.").  Strict liability for gun accidents

2  eventually transitioned to a negligence standard in the mid-1800s, which in turn gave rise to

3  liability insurance to "insure against the consequences of negligence."  Brady Br. 9-10 (citing

4  *Morgan v. Cox*, 22 Mo. 373, 376-77 (1856) (commenting on the transition of firearm strict

5  liability to negligence)).  However, whether the standard was strict liability or negligence, the

6  Nation nonetheless maintained a "historical tradition" of shifting the costs of firearm accidents

7  from the victims to the owners of the implicated firearms.

8       With this historical backdrop in mind, the Court considers whether 19th century surety

9  statutes are sufficiently analogous to the Insurance Requirement.  Both regulations share similar,

10  albeit not identical, deterrent purposes: surety laws were "intended merely for prevention" of

11  future harm, *Bruen*, 142 S. Ct. at 2149, while the Insurance Requirement is intended to "reduce the

12  number of gun incidents by encouraging safer behavior."  Ordinance § 10.32.200(B)(12).  Both

13  schemes also achieve their purposes through similar means, namely the threat of financial

14  consequences (either through a peace bond or higher premiums) for individuals deemed to be

15  high-risk (either by a judge or an underwriter).  *See Bruen*, 142 S. Ct. at 2151 ("[A]lthough surety

16  statutes did not directly restrict public carry, they did provide financial incentives for responsible

17  arms carrying.").  The Supreme Court also highlighted the fact that surety laws were not complete

18  bans on public carry, much like the Insurance Requirement.  *Id.* 2148 (noting that surety laws were

19  "not *bans* on public carry") (italics in original).  Accordingly, the Court finds that surety laws and

20  the Insurance Requirement share substantial overlap as to the "how and why the regulations

21  burden a law-abiding citizen's right to armed self-defense."  *Bruen*, 142 S. Ct. at 2133.

22       Plaintiffs argue that surety laws are distinguishable because these laws imposed a financial

23  burden only *after* "cause has been shown *specific to the individual*."  Pls.' Suppl. Br. 4 (emphasis

24  in original).  The Insurance Requirement, they argue, would assume "every person is a danger"

25  and apply to all San Jose gun owners, regardless of whether they have shown themselves to be

26  high-risk.  Pls.' Suppl. Br. 4-5.  This is certainly a fair distinction between surety laws and the

27  Insurance Requirement but ultimately one that does not bear upon the metrics identified in *Bruen*.

28  142 S. Ct at 2133 ("how and why the regulations burden a law-abiding citizen's right to armed

United States District Court
Northern District of California

1    self-defense").  First, although the Insurance Requirement applies to all gun owners, the actual

2    amount of the financial burden (*i.e.*, insurance premiums) involves a risk evaluation that *is* tailored

3    to the individual and analogous to "reasonable cause" determinations under surety statutes.  *See*

4    Stephen G. Gilles & Nelson Lund, *Mandatory Liability Insurance for Firearm Owners: Design*

5    *Choices and Second Amendment Limits*, 14 Engage 18 (2013) ("Competitive pressures would lead

6    insurance carriers to keep the premiums for low-risk gun owners low, while charging higher

7    premiums to those who are more likely to cause injuries to other people.").  Second, at this stage

8    in both the litigation and the Ordinance's implementation, there is no evidence on how low gun

9    liability insurance premiums may be for low-risk gun owners.[5]  *But see id.* at 22 n.34 (estimating a

10   baseline premium of about $20 per year for an average firearm owner).  A *de minimis* low-risk

11   premium could retain analogical resemblance to the *de minimis* (but nonetheless discernible)

12   burdens that surety laws imposed on low-risk gun owners in the 19th century.  *Cf. Bruen*, 142 S.

13   Ct. at 2149 (acknowledging that "the hypothetical possibility of posting a bond" may be a burden

14   but "the burden these surety statutes may have had on the right to public carry was likely too

15   insignificant").  *Bruen* does not demand a "historical twin," and neither will this Court.

16        The Court also notes the *Bruen* Court's general approval of the regulations attendant to

17   "shall-issue" regimes.  *Id.* at 2138 n.9 (noting with approval that "shall-issue" regimes often

18   require licensing applicants to "undergo a background check or pass a firearms safety course");

19   *see also id.* at 2162 (Kavanaugh, J., concurring) (noting additional "shall issue" requirements such

20   as fingerprinting, mental health records checks, and training in laws regarding the use of force).

21        Plaintiffs' proposed conduct can be interpreted to be covered by the Second Amendment's

22   plain text, but the City has sufficiently demonstrated at this preliminary stage that the Insurance

23   Requirement is likely to be consistent with the Nation's historical traditions.  Although the

24   Insurance Regulation is not a "dead ringer" for 19th century surety laws, the other similarities

---

26   [5] The Insurance Requirement may not even impose any financial burden, as Plaintiffs have not

27   produced any evidence that ordinary homeowners' and renters' insurance would not already

28   satisfy the Requirement.  *See* Brady Br. 15-16.

between the two laws would render the Ordinance "analogous enough to pass constitutional muster."[6]  *Id.* at 2133.

Accordingly, the Court finds that Plaintiffs have not shown a likelihood of success as to their Second Amendment challenge to the Ordinance's Insurance Requirement.  Furthermore, as discussed at Section III(A)(ii), Plaintiffs' Second Amendment challenge to the Ordinance's Fee provision is not presently ripe for review, and the Court issues no opinion as to the Fee's constitutionality under the Second Amendment.

### ii.    First Amendment

The FAC's Second Claim for Relief for violations of the First and Fourteenth Amendments is limited to contesting the Ordinance's Fee provision and, thus, is not ripe for review.  FAC ¶¶ 106-115; *see also supra* Section III(A)(i).

### iii.    California State Preemption

In addition to their allegations that the Ordinance violates the U.S. Constitution, Plaintiffs also assert that the Ordinance is preempted by California general law (Claim 3).

Pursuant to article XI, Section 7 of the California Constitution, the City of San Jose may "make and enforce within its limits all local, police, sanitary, and other ordinances and regulations *not in conflict with general laws*."  Cal. Const. art. XI, § 7 (emphasis added).  The Supreme Court of California considers a local ordinance to be "in conflict" if it "duplicates, contradicts, or *enters an area fully occupied by general law*, either expressly or by legislative implication."  *O'Connell v. City of Stockton*, 41 Cal. 4th 1061, 1067, 162 P.3d 583, 587 (2007) (emphasis added).  "The party claiming that general state law preempts a local ordinance has the burden of demonstrating preemption."  *Big Creek Lumber Co. v. Cnty. of Santa Cruz*, 38 Cal. 4th 1139, 1149 (2006), as

---

[6] The Court briefly addresses the public comments made by San José Mayor Sam Liccardo regarding the Ordinance as the first of its kind.  *See, e.g.*, FAC ¶ 23; *see also* Mot. 3.  To the extent the mayor's comments characterize the Ordinance as something different from what the parties have briefed in this case, the Court accords no weight to those comments.  The Court is charged with reviewing the constitutionality of the Ordinance as drafted, not as described by the mayor.

20

United States District Court
Northern District of California

1    modified (Aug. 30, 2006).

2         Plaintiffs only argue that the Ordinance violates the California Constitution by entering an

3    "area fully occupied by general law," rather than duplicating or contradicting state law.  Mot. 18.

4    Because the State of California has already enacted legislation on several topics relating to firearm

5    regulations—*see* Mot. 18 (citing Cal. Pen. Code sections on firearm safety, appearance, storage,

6    carrying and possession, sale and transfers, registration, background checks, equipment, etc.)—the

7    City of San Jose, Plaintiffs argue, is preempted from regulating the field of "residential handgun

8    possession."  Mot. 18 (citing *Fiscal v. City & Cnty. of San Francisco*, 158 Cal. App. 4th 895, 909

9    (2008)).  Here, Plaintiffs have largely focused on Cal. Pen. Code § 25605 and Cal. Gov. Code §

10   53071 as evidence of the California Legislature's intent, as well as *Fiscal*, 158 Cal. App. 4th 895.

11        The City acknowledges that the State of California has occupied some areas of gun

12   regulation but disputes that the entire field of gun regulation has been preempted.  Opp. 17-18

13   (citing *Great W. Shows, Inc. v. Cnty. of Los Angeles*, 27 Cal. 4th 853, 861 (2002) ("A review of

14   the gun law preemption cases indicates that the Legislature has preempted discrete areas of gun

15   regulation rather than the entire field of gun control.")).  The City also argues that *Fiscal*'s remark

16   that California has preempted the entire field of "residential handgun possession" is non-

17   controlling dicta, as the San Francisco ordinance in *Fiscal* involved a near total handgun ban.

18   Opp. 18-19 (citing *Fiscal*, 158 Cal. App. 4th at 915, 919).  Finally, the City argues that the specific

19   language of the allegedly preempting California statutes' only extends to permitting and

20   registration requirements.  Opp. 19 (citing Cal. Pen. Code § 25605; Cal. Gov. Code § 53071).[7]

21        The Court first considers whether Plaintiffs' cited statutes evidence an "express

22   manifest[ation]" of the California Legislature's intent to occupy the field to the exclusion of the

23   City's Ordinance.  Here, Penal Code § 25605 does not purport to advance legislative intent of any

_____

25   [7] The City does not raise (nor can it) any ripeness challenge specific to Plaintiffs' preemption

26   claim, as the key preemption issue is "primarily legal and does not require substantial further

27   factual development," such as the subsequent promulgation of the City Manager's regulations.

28   *Wolfson*, 616 F.3d at 1060.

21

1    kind, a conclusion *Fiscal* implicitly acknowledged.  158 Cal. App. 4th at 908 ("[W]e *infer* from

2    [Section 25605] that the Legislature intended to occupy the field of residential handgun

3    possession.") (emphasis added).  The Government Code § 53071, on the other hand, does contain

4    an express manifestation of intent; however, its language is explicitly limited to "the intention of

5    the Legislature to occupy the whole field of *regulation of the registration or licensing* of

6    commercially manufactured firearms."  Cal. Gov. Code § 53071 (emphasis added).  Although

7    these statutes may manifest an intent to occupy the field of firearm permitting and registration,

8    neither can be fairly read to contain a legislative intent to occupy the *entire* field of gun regulation.

9    Nor can the Ordinance's insurance and fee regulations be transmuted into a permitting scheme to

10   fall within this intent, as violations do not imperil one's possession of a firearm.  Ordinance §

11   10.32.240; *see also* Opp. 3.

12          Having determined that Plaintiffs' cited statutes do not expressly preempt the Ordinance,

13   the Court proceeds to the issue of whether the California Legislature has nonetheless *implicitly*

14   occupied the field.  In *Great Western Shows*, the California Supreme Court surveyed the body of

15   California gun law preemption cases and concluded that "the Legislature has chosen not to broadly

16   preempt local control of firearms but has targeted certain specific areas for preemption."  27 Cal.

17   4th at 861-64; *see also Am. Fin. Servs. Assn. v. City of Oakland*, 34 Cal. 4th 1239, 1255 (2005)

18   (remarking that "rather than intending to deprive municipalities of their police power to regulate

19   handgun sales, [the Legislature] has been cautious about depriving local municipalities of aspects

20   of their constitutional police power to deal with local conditions.'"); *Calguns Found., Inc. v. Cnty.*

21   *of San Mateo*, 218 Cal. App. 4th 661, 676 (2013) ("[T]he cases uniformly construe state regulation

22   of firearms narrowly, finding no preemption of areas not specifically addressed by state law.").

23          Plaintiffs' reliance on *Fiscal* to establish preemption is misplaced for multiple reasons.

24   Where the California Supreme Court has not squarely addressed an issue of California law, this

25   Court must predict how the state high court would decide the issue using, *inter alia*, intermediate

26   appellate court decisions.  *See All. for Prop. Rts. & Fiscal Resp. v. City of Idaho Falls*, 742 F.3d

27   1100, 1102 (9th Cir. 2013) ("When the state's highest court has not squarely addressed an issue,

28   we must predict how the highest state court would decide the issue using intermediate appellate

22

court decisions. . .").  Here, not only has it not squarely addressed the issue of *Fiscal*'s scope of California gun law preemption, the California Supreme Court had remarked in *Great Western Shows* that the "Legislature has chosen not to broadly preempt local control of firearms but has targeted certain specific areas for preemption." 27 Cal. 4th at 864.  Furthermore, another Court of Appeal had addressed *Fiscal* at length and expressly declined to construe Government Code § 53071 as a broad "expression of intent to occupy the whole field of firearm regulation." *Calguns*, 218 Cal. App. 4th at 673-74, 677 (limiting *Fiscal* to its facts and the "extreme breadth of the ordinance being challenged [in *Fiscal*]").  Given the absence of the final word from the state high court and the lack of uniformity among the intermediate state appellate courts on the scope of preemption Plaintiffs advance, this Court is not persuaded that the California Supreme Court would interpret Penal Code § 25605 and Government Code § 53071 to occupy the entire field of "residential handgun possession."

Furthermore, even if the Court were to adopt *Fiscal*'s implied preemptive scope of all "residential handgun possession," Plaintiffs have not established that the Ordinance's provisions would fall within that field of preemption, *i.e.*, that the Insurance and Fee provisions necessarily implicate handgun possession.  In *Fiscal*, the challenged ordinance purported to (1) prohibit the sale and transfers of all firearms without exception and (2) limit handgun possession to governmental and professional purposes with an option for residents to surrender their handguns to law enforcement.  *Fiscal*, 158 Cal. App. 4th at 901.  Accordingly, the ordinance in *Fiscal*, by its own language, directly implicated the possession of handguns.[8] *Id.* ("Section 3 is entitled 'Limiting Handgun Possession in the City and County of San Francisco.'").  By contrast, there is no operation of San Jose's Ordinance that would result in a firearm being removed from its

---

[8] At the hearing, Plaintiffs argued that *Fiscal* should be interpreted to preempt any ordinance that merely *impacts* residents possessing guns.  However, this unrestricted interpretation would in effect preempt *all* local gun regulation, a result expressly rejected by *Fiscal* itself.  158 Cal. App. 4th at 905 ("[T]he Legislature has never expressed an intent to preempt the entire field of firearm regulation to the exclusion of local control.").

23

United States District Court
Northern District of California

United States District Court
Northern District of California

1    owner's possession.  Opp. 3.  Without a means by which possession could be revoked, the Court

2    does not consider the Ordinance to be entering the field of residential handgun *possession*.

3            Given the state high court's interpretation on state gun law preemption, the Court holds

4    that Plaintiffs are not likely to succeed on their claim that the California Legislature has impliedly

5    preempted the Ordinance's Insurance and Fee Provisions.

6            **iv.    California Tax Requirement**

7            Plaintiffs also argue that, under the California Constitution, the Ordinance's provisions are

8    treated as taxes (Claim 4) and, therefore, should have been submitted to the voters for approval.

9            Specifically, the California Constitution article XIII C prohibits local governments from

10   imposing, extending, or increasing any general tax unless that tax is approved by a majority vote

11   to the electorate.  Cal. Const. art. XIII C, § 2(b).  A "tax" is defined as "any levy, charge, or

12   exaction of any kind imposed by a local government," subject to certain exceptions for charges

13   that do not exceed the "reasonable costs to the local government" of providing a service or benefit.

14   Cal. Const. art. XIII C, § 1(e).  Notably, article XIII C "does not expressly require that any levy,

15   charge or exaction must be payable to a local government" to qualify as a tax.  *Schmeer v. Cnty. of*

16   *Los Angeles*, 213 Cal. App. 4th 1310, 1326 (2013), as modified (Mar. 11, 2013) (internal

17   quotation marks omitted).

18           Plaintiffs argue that both the Insurance Requirement and the Fee are taxes that were not

19   "submitted to the electorate and approved by a majority vote," as required by the California

20   Constitution.  Mot. 19 (quoting Cal. Const. art. XIII C, § 2(b)).  The required insurance and Fee,

21   Plaintiffs assert, do not fall under any exception to the definition of a "tax" because none of the

22   charges purport to pay for government activities and, therefore, by definition "exceed the

23   reasonable costs to the local government."  Mot. 19-20; *see also* Cal. Const., art. XIII C, § 1(e).

24           The City responds that neither the required insurance nor the Fee can qualify as a tax,

25   because California courts have interpreted the California Constitution's voter approval

26   requirement to apply to a fee only if the resulting proceeds would pass into government hands.

27   Opp. 19-20 (citing *Schmeer*, 213 Cal. App. 4th at 1326-29).  The City also argues that,

28   alternatively, both the required insurance and the Fee would qualify for an exception to the voter

24

1    approval requirement because they confer a "specific benefit" directly to the payor and not

2    conferred on those not charged.  Opp. 20 (citing Cal. Const., art. XIII C, § 1).

3         Because the question of whether fees not payable to the government are considered taxes is

4    a legal question of state constitutional interpretation and does not rely on further factual

5    development, it would be ripe for review.  *See Wolfson*, 616 F.3d at 1060.  On this particular

6    question of state law, *Schmeer* is the only California appellate court opinion on point.  In *Schmeer*,

7    a Los Angeles ordinance required that all retail stores provide only recyclable or reusable bags for

8    their customers' use, and all retail customers must pay 10 cents to the retail store for each

9    recyclable bag used.  *Schmeer*, 213 Cal. App. 4th at 1314.  The collected proceeds were retained

10   by the store and could only be used for the store's costs of compliance, the recyclable bags, and

11   any educational materials promoting the use of reusable bags.  *Id.*  After conducting a lengthy

12   interpretative analysis on whether a government-imposed fee that was not payable or remitted to

13   the government would qualify as a "tax," the *Schmeer* court concluded that the California

14   Constitution's voter approval requirements were "limited to charges payable to, or for the benefit

15   of, a local government."  *Schmeer*, 213 Cal. App. 4th at 1326-31 (emphasis added); *see also*

16   *Howard Jarvis Taxpayers Ass'n v. Bay Area Toll Auth.*, 51 Cal. App. 5th 435, 453 (2020)

17   (distinguishing *Schmeer* on the basis that the toll increases at issue were remitted to a

18   governmental entity), reh'g denied (July 13, 2020).

19        Although the Ordinance's Insurance Requirement and Fee are imposed by the City in an

20   admittedly different context from a retail bag fee, *Schmeer*'s analysis nonetheless provides useful

21   guidance for this Court to predict how the California Supreme Court may consider the issue.  For

22   instance, *Schmeer* found that "[t]axes ordinarily are imposed to raise revenue for the government."

23   *Schmeer*, 213 Cal. App. 4th at 1326 (citing *California Farm v. State Water Res. Control Bd.*, 51

24   Cal. 4th 421, 437 (2011), as modified (Apr. 20, 2011); *Sinclair Paint Co. v. State Bd. of*

25   *Equalization*, 15 Cal. 4th 866, 874 (1997)).  Here, no provision of the Ordinance would generate

26   revenue for the City, as insurance premiums are paid to insurance companies and the Fee is paid

27

28

United States District Court
Northern District of California

25

1     directly to the Nonprofit.[9]  The *Schmeer* opinion also independently addressed Plaintiffs'

2     argument that—because the City would not be engaged in any activity under the Ordinance—the

3     Ordinance's charges would necessarily exceed "reasonable costs of the government activity".

4     Mot. 19 (quoting Cal. Const., art. XIII C, § 1).  However, rather than adopting a tautological

5     interpretation of article XIII C's exceptions, *Schmeer* considered the exceptions' reference to costs

6     of *government activity* as support that the exceptions "do not contemplate the situation where a

7     charge is paid to an entity or person other than a local government or where such an entity or

8     person incurs reasonable costs."  *Schmeer*, 213 Cal. App. 4th at 1327.  This analysis, though

9     applied in the context of a retail bag fee, nonetheless translates effectively to assist the Court's

10    present analysis of the California Constitution.

11         In any event, Plaintiffs do not offer a conflicting or alternative interpretation of article XIII

12    C other than noting the California Constitution does not define a "tax" by where the funds are

13    deposited.  Reply 11.  This response, however, simply disagrees with *Schmeer*'s interpretation and

14    holding without providing supporting authority to the contrary.  Plaintiffs' citation to *Nat'l Fed'n*

15    *of Indep. Bus. v. Sebelius* is inapposite, as article XIII C in the California Constitution bears no

16    similarity to and need not be interpreted consistently with the Taxing Clause in the U.S.

17    Constitution.  *See* Mot. 19; Reply 11 (citing *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519,

18    564-66 (2012)).

19         Plaintiffs also note that *Schmeer* held that article XIII C's voter approval requirements

20    apply to "charges payable to, *or for the benefit of, a local government*."  Reply 11 (emphasis in

21    original) (quoting *Schmeer*, 213 Cal. App. 4th at 1328-29).  Accordingly, "[i]f, as Defendants have

22    argued elsewhere, the Ordinance benefits San Jose, article XIII C applies."  Reply 11.  This

23    interpretation, however, conflates a benefit to the local government with a benefit to the public at

24    large.  There is little dispute that the Ordinance is intended to provide a benefit to the *public*—

25    _____

26    [9] Section 10.32.250 of the Ordinance does permit the City Manager to charge and collect "cost

27    recovery fees associated with fulfilling" the Ordinance directives, but Plaintiffs do not challenge

28    this portion of the Ordinance.

26

*United States District Court*
*Northern District of California*

1    indeed, one would hope and expect that everything the City of San Jose enacts (tax or no tax) is

2    for the public benefit of its citizenry.  Ordinance § 10.32.200.  However, *Schmeer*'s "for the

3    benefit of" language only contemplated benefits inuring to the *local government* itself, such as a

4    "charge payable to a third party creditor to extinguish a debt owed by a local government."

5    *Schmeer*, 213 Cal. App. 4th at 1329 n.7.  Additionally, given that the Los Angeles bag fee was

6    almost certainly a charge intended to provide public environmental benefits*, Schmeer* could not

7    have intended that article XIII C's voter approval requirement applied to every charge for the

8    *public*'s benefit.  *See id.* at 1314.

9         Because the Ordinance's Insurance Requirement and Fee are not payable to the City and

10   do not provide a specific benefit to the City itself, the Court is persuaded by *Schmeer*'s

11   interpretation that such charges are not a "tax" requiring voter approval and, therefore, does not

12   reach the City's alternate argument invoking the "specific benefits" exception to article XIII C.

13   Opp. 20.  Accordingly, Plaintiffs have not shown that they are likely to succeed on their claim that

14   the Ordinance violates article XIII C of the California Constitution.

15        **v.    San Jose City Charter**

16        Finally, Plaintiffs argue that the Ordinance's Fee provisions violate San Jose's City Charter

17   (Claim 5).  Mot. 20-21.  They argue that, because the Fee is paid directly to the Nonprofit, the

18   Ordinance violates the City Charter's requirement for all "revenues and receipts" to be placed in a

19   special fund or the General Fund.  *Id.* at 21 (citing City Charter § 1211).  The Ordinance also

20   allegedly violates the delegation of budgeting and appropriation powers to the City Council by

21   prohibiting City Council from directing how the Fee proceeds are expended.  *Id.* (citing City

22   Charter §§ 1204, 1206-07).  The same prohibition, Plaintiffs argue, violates the delegation of

23   executive functions to the City Manager.  *Id.* at 20-21 (citing City Charter §§ 502, 701).

24        The City responds that most of the cited City Charter provisions do not apply to the Fee

25   because it is not "paid into the City Treasury" and does not pay for any City operations.  Opp. 21-

26   22 (citing City Charter §§ 1204, 1206, 1207, 1211).  Additionally, the City asserts that the

27   Ordinance properly confers on the City Manager administrative oversight and audit authority over

28   how the Nonprofit expends the Fee's proceeds.  Opp. 22 (citing Ordinance § 10.32.235).

United States District Court
Northern District of California

27

1        As an initial point, although Plaintiffs' claims relating to the City Charter's "revenues and

2    receipts," budgeting, and appropriation sections primarily present legal and interpretative

3    questions and are likely ripe, Plaintiffs' claim regarding the City Manager's executive and

4    administrative functions would likely "require further factual development." *See* Ordinance §

5    10.32.235(A); *see also Wolfson*, 616 F.3d at 1060.  At this stage of the proceedings, the Court will

6    review Plaintiffs' City Charter challenges to the extent they do not rely on subsequent regulations

7    and yet-to-be-determined facts—however, the Court's discussion is correspondingly and

8    necessarily limited to the Ordinance's broad outline of the Fee structure and implementation.

9        The Court first addresses Plaintiffs' argument that payment of the Fee to the Nonprofit

10    violates § 1211 of the City Charter, which reads in its entirety:

11           All monies paid into the City Treasury shall be credited to and kept in separate
              funds in accordance with provisions of this Charter or ordinance.  A fund, to be
12           known as the "General Fund," is hereby created as a medium of control and
              accounting for all City activities excepting activities for which special funds are
13           established and maintained.  All revenues and receipts which are not required by
              this Charter, State law or ordinances to be placed in special funds shall be credited
14           to the General Fund.

15    City Charter § 1211.  This section addresses two potentially overlapping categories of funds: "All

16    monies paid into the City Treasury" and "All revenues and receipts."  The Ordinance, however,

17    directs "every dollar generated" from the Fee to be spent by the Nonprofit and used exclusively for

18    the Nonprofit's programs and initiatives.  Ordinance § 10.32.220(C).  Accordingly, because the

19    Fee is neither "paid into the City Treasury" nor is it received by the City as revenue, Plaintiffs

20    have not shown likelihood of success in proving that the Fee's proceeds would fall under § 1211

21    of the City Charter.  *See also supra* Section III(B)(iv).

22        Plaintiffs' claims that the Ordinance violates the City Charter's budgeting and

23    appropriations provisions rely on a similarly faulty premise, namely that the Nonprofit's

24    operations are City activities.  Mot. 20.  Plaintiffs are correct that the City Council retains the

25    power to adopt a budget, *see* City Charter § 1206; however, the City Charter defines the budget as

26    "a complete financial plan of *all City funds and activities*."  *Id.* § 1205 (emphasis added).  Because

27    the Fee's proceeds are not "revenues or receipts" and the Nonprofit is not a City department or

28    entity, the Nonprofit's funds and operations would not fall under the City's budgeting obligations.

United States District Court
Northern District of California

28

**SER-066**

United States District Court
Northern District of California

1    For the same reason, Plaintiffs have not shown likelihood of success in proving that the

2    Nonprofit's expenditures are subject to the City Charter's appropriations section, which delegates

3    to the City Council the authority to "appropriate monies for the operation of *each of the offices,*

4    *departments and agencies of the City*." *Id.* § 1207 (emphasis added).  Especially as Plaintiffs

5    themselves have asserted the Fee does not pay for government activity, *see* Mot. 19, the

6    Nonprofit's operations and expenditures cannot be reasonably interpreted to violate the City

7    Charter's budgeting and appropriation sections.

8         Finally, Plaintiffs argue that, by permitting the City to direct fees to a non-governmental

9    entity whose expenditures are expressly insulated from City control, the Ordinance undermines the

10   City Manager's responsibility for the "faithful execution of all laws," as well as the purpose of the

11   General Fund as a medium of control on "the City government's ability to hide, or avoid oversight

12   of, how City fee revenues are spent."  Reply 12-13 (citing City Charter §§ 701(d), 1211).

13   However, the Ordinance authorizes the City Manager to "promulgate all regulations necessary to

14   implement" the Ordinance, including any guidelines for and auditing how the Nonprofit expends

15   its funds.  Ordinance § 10.32.235.  As a result, the fact that the City may not specifically direct the

16   Nonprofit's activities does not *necessarily* violate the City Charter § 701 or abdicate the City

17   Manager's executive and administrative functions.  That said, as the Court noted, the City's

18   involvement with the Fee is difficult to assess in the abstract.  Plaintiffs may revisit this issue once

19   the City Manager promulgates the relevant implementing regulations, but for purposes of this

20   motion, Plaintiffs have not met their burden.

21        In summary, Plaintiffs' City Charter claims rely on the mistaken premises that the Fee is

22   characterized as City revenue and the Nonprofit is included in the City budget, neither of which is

23   supported by the City Charter's text or the Ordinance's language.  *See* Reply 11-12 (referring to

24   the Fee as "revenue").  Furthermore, Plaintiffs' claim regarding the City Manager's authority and

25   oversight over the Nonprofit would turn on the actual regulations promulgated by the City

26   Manager.  Accordingly, the Court finds that Plaintiffs have not shown that they are likely to

27   succeed on the merits of their City Charter challenges.

28        Because the Court finds that Plaintiffs have not established that they are likely to succeed

29

1    on the merits on their Second Amendment, California Constitution, and City Charter claims, it

2    does not reach the remaining *Winter* factors.  *See* 555 U.S. at 20.

3    **IV.    ORDER**

4          For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiffs' motion for a

5    preliminary injunction to restrain and enjoin Defendants from enforcing any provision of the

6    Ordinance is DENIED.

7

8    Dated: August 3, 2022

9    _____

10   BETH LABSON FREEMAN
     United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

30

JOSEPH W. COTCHETT (SBN 36324)
jcotchett@cpmlegal.com
TAMARAH P. PREVOST (SBN 313422)
tprevost@cpmlegal.com
ANDREW F. KIRTLEY (SBN 328023)
akirtley@cpmlegal.com
MELISSA MONTENEGRO (SBN 329099)
mmontenegro@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA  94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| **NATIONAL ASSOCIATION FOR GUN RIGHTS, INC.**, a non-profit corporation, and **MARK SIKES**, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>**CITY OF SAN JOSE**, a public entity, **JENNIFER MAGUIRE**, in her official capacity as City Manager of the City of San Jose, and the **CITY OF SAN JOSE CITY COUNCIL**,<br><br>Defendants. | Case No. 5:22-cv-00501-BLF<br><br>**[~~PROPOSED~~] ORDER GRANTING ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED UNDER CIVIL LOCAL RULES 3-12 AND 7-11** |

[~~Proposed~~] Order Granting Administrative Motion to Relate Cases
Case No. 5:22-cv-00501-BLF                                                      1

Having considered the Defendant City of San Jose's administrative motion to consider whether cases should be related pursuant to Civil Local Rules 3-12 and 7-11, all papers filed in support of or opposition to the motion, and the entire record herein, the Court hereby:

**ORDERS**, that *Howard Jarvis Taxpayers Association, et al. v. City of San Jose,* Case No. 5:22-cv-02365-NC, is related to *National Association for Gun Rights, Inc., et al. v. City of San Jose, et al.*, Case No. 5:22-cv-00501-BLF. Pursuant to Civil Local Rule 3-12(f)(3), the Clerk shall reassign the above case to the undersigned judge for all future purposes.

**FURTHER ORDERS**, that the parties are instructed that all future filings in any reassigned case are to bear the initials of the newly assigned judge immediately after the case number. Any case management conference in any reassigned case will be rescheduled by the Court. The parties shall adjust the dates for the conference, disclosures, and report required by Fed. R. Civ. P. 16 and 26 accordingly. Unless otherwise ordered, any upcoming dates for hearing noticed motions in the re-assigned case are vacated and must be re-noticed by the moving party before the newly assigned judge; any deadlines set by the ADR Local Rules remain in effect.

**IT IS SO ORDERED.**

Dated: _____April 20_____, 2022

_____
HON. BETH LABSON FREEMAN
UNITED STATES DISTRICT COURT JUDGE

[~~Proposed~~] Order Granting Administrative Motion to Relate Cases
Case No. 5:22-cv-00501-BLF                                                      1

1  JOSEPH W. COTCHETT (SBN 36324)
2  jcotchett@cpmlegal.com
   TAMARAH P. PREVOST (SBN 313422)
3  tprevost@cpmlegal.com
   ANDREW F. KIRTLEY (SBN 328023)
4  akirtley@cpmlegal.com
   MELISSA MONTENEGRO (SBN 329099)
5  mmontenegro@cpmlegal.com
6  **COTCHETT, PITRE & McCARTHY, LLP**
   San Francisco Airport Office Center
7  840 Malcolm Road, Suite 200
   Burlingame, CA  94010
8  Telephone: (650) 697-6000
   Facsimile: (650) 697-0577
9
10 *Attorneys for Defendants*

11

12                **UNITED STATES DISTRICT COURT**

13          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

14                     **SAN JOSE DIVISION**

15

16 **NATIONAL ASSOCIATION FOR GUN**        Case No. 5:22-cv-00501-BLF
   **RIGHTS, INC.**, a non-profit corporation, and
17 **MARK SIKES**, an individual,            **ADMINISTRATIVE MOTION TO**
                                             **CONSIDER WHETHER CASES**
18                     Plaintiffs,           **SHOULD BE RELATED UNDER CIVIL**
                                             **LOCAL RULES 3-12 AND 7-11**
19        v.

20 **CITY OF SAN JOSE**, a public entity,
   **JENNIFER MAGUIRE**, in her official capacity
21 as City Manager of the City of San Jose, and the
   **CITY OF SAN JOSE CITY COUNCIL**,
22
                       Defendants.
23

24

25

26

27

28

---

Administrative Motion to Relate Cases under Civil Local Rules 3-12 and 7-11
Case No. 5:22-cv-00501-BLF                                                    1

Pursuant to Civil Local Rules 3-12(b) and 7-11, Defendant City of San Jose ("City") files this Administrative Motion to Consider Whether Cases Should Be Related. The City submits that the action entitled *Howard Jarvis Taxpayers Association, et al. v. City of San Jose*, Case No. 5:22-cv-02365-NC ("*HJTA*") (Notice of Removal filed April 15, 2022) is related to the instant action, *National Association for Gun Rights, Inc., et al. v. City of San Jose, et al.* ("*NAGR*"), Case No. 5:22-cv-00501-BLF (Complaint filed January 25, 2022). *See* Decl. of Tamarah P. Prevost ("Prevost Decl."), Ex. 1 (copy of the operative First Amended Complaint in the *NAGR* action); *id.*, Ex. 2 (copy of the Notice of Removal in the *HJTA* action, which includes a copy of the underlying complaint).

Civil Local Rule 3-12(a) provides that an action is related to another when: "(1) The allegations concern substantially the same parties, property, transaction or event; and (2) It appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges." These criteria are met here. The two actions involve substantially the same parties (i.e., the City is the lead defendant in both actions), as well as the same transaction or events. Specifically, the plaintiffs in both the above-referenced actions similarly bring a pre-enforcement challenge to the same firearm-related San Jose ordinance, San Jose Municipal Code Section 10.32.200 *et seq.* ("Ordinance"), under the First, Second, and Fourteenth Amendments to the U.S. Constitution, Article XIII C § 1 of the California Constitution, and other state laws.

Given that both actions concern substantially the same parties, the same Ordinance, and substantially the same legal arguments and claims, there will be an unduly burdensome duplication of labor and expense, judicial resources, and potentially inconsistent results, if the two actions were to be conducted before different Judges. Accordingly, relating the *HJTA* and *NAGR* actions will serve the interests of judicial economy and avoid the potential for conflicting results, consistent with Civil Local Rules 3-12(a). Plaintiffs in the NAGR action do not dispute, and have agreed to stipulate, that these cases are related. Counsel for HJTA "decline [Defendants'] invitation to stipulate" that the two cases should be related. Prevost Decl. ¶ 4.

For these reasons, San Jose respectfully requests that this Court enter an order relating *Howard Jarvis Taxpayers Association, et al. v. City of San Jose*, Case No. 5:22-cv-02365-NC, with *National Association for Gun Rights, Inc., et al. v. City of San Jose, et al.*, Case No. 5:22-cv-00501-BLF.

Dated:  April 19, 2022

Respectfully submitted,

**COTCHETT, PITRE & McCARTHY, LLP**

By:   _/s/ Tamarah P. Prevost_
   Joseph W. Cotchett
   Tamarah P. Prevost
   Andrew F. Kirtley
   Melissa Montenegro

*Attorneys for Defendant City of San Jose*

**SER-073**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I am employed in San Mateo County, California, and I am over the age of 18 years and not a party to this action. My business address is the Law Offices of Cotchett, Pitre & McCarthy, LLP, 840 Malcolm Road, Burlingame, California, 94010. On this day, I served the following document(s) in the manner described below:

**ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASE SHOULD BE RELATED PURSUANT TO CIVIL LOCAL RULES 3-12 AND 7-11**

√   **BY MAIL**: I am readily familiar with this firm's practice for collection and processing of correspondence for mailing. Following that practice, I placed a true copy of the aforementioned document(s) in a sealed envelope, addressed to each addressee, respectively, as specified below. The envelope was placed in the mail at my business address, with postage thereon fully prepaid, for deposit with the United States Postal Service on that same day in the ordinary course of business.

√   **BY E-MAIL**: My e-mail address is kdelia@cpmlegal.com and service of this document(s) occurred on the date shown below. This document is being served electronically and the transmission was reported as complete and without error.

| | |
|---|---|
| Harmeet K. Dhillon<br>Michael A. Columbo<br>Mark P.Meuser<br>**Dhillon Law Group Inc.**<br>177 Post Street, Suite 700<br>San Francisco, CA 94108<br>Telephone: (415) 433-1700<br>harmeet@dhillonlaw.com<br>mcolumbo@dhillonlaw.com<br>mmeuser@dhillonlaw.com<br><br>David A. Warrington<br>Curtis M. Schube<br>**Dhillon Law Group Inc.**<br>2121 Eisenhower Avenue, Suite 402<br>Alexandria, VA 22314<br>Telephone: (571) 400-2121<br>dwarrington@dhillonlaw.com<br>cschube@dhillonlaw.com | Attorneys for Plaintiffs: National Association for Gun Rights, Inc., and Mark Sikes<br>(*NAGR* Action, Case No. 5:22-cv-00501-BLF) |

Administrative Motion to Relate Cases under Civil Local Rules 3-12 and 7-11
Case No. 5:22-cv-00501-BLF                                                                                    3

| | |
|---|---|
| Jonathan M. Coupal<br>Timothy A. Bittle<br>Laura E. Dougherty<br>**Howard Jarvis Taxpayers Foundation**<br>921 Eleventh Street, Suite 1201<br>Sacramento, CA  95814<br>Telephone: (916) 444-9950<br>Email: tim@hjta.org | Attorneys for Plaintiffs: Howard Jarvis<br>Taxpayers Association; Silicon Valley<br>Taxpayers Association; Silicon Valley Public<br>Accountability Foundation; James Barry; and<br>George Arrington<br>(*HJTA* Action, Case No. 5:22-cv-02365-NC) |

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct. Executed at Burlingame, California, on April 19, 2022.

*/s/ Kathleen D'Elia*
Kathleen D'Elia

1  JOSEPH W. COTCHETT (SBN 36324)
2  jcotchett@cpmlegal.com
   TAMARAH P. PREVOST (SBN 313422)
3  tprevost@cpmlegal.com
   ANDREW F. KIRTLEY (SBN 328023)
4  akirtley@cpmlegal.com
   MELISSA MONTENEGRO (SBN 329099)
5  mmontenegro@cpmlegal.com
6  **COTCHETT, PITRE & McCARTHY, LLP**
   San Francisco Airport Office Center
7  840 Malcolm Road, Suite 200
   Burlingame, CA  94010
8  Telephone: (650) 697-6000
   Facsimile: (650) 697-0577
9
10 *Attorneys for Defendants*

11

12              **UNITED STATES DISTRICT COURT**

13        **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

14                  **SAN JOSE DIVISION**

15

16  **NATIONAL ASSOCIATION FOR GUN**        Case No. 5:22-cv-00501-BLF
    **RIGHTS, INC.**, a non-profit corporation, and
17  **MARK SIKES**, an individual,            **DECLARATION OF TAMARAH P.**
                                              **PREVOST IN SUPPORT OF**
18                  Plaintiffs,               **ADMINISTRATIVE MOTION TO**
                                              **CONSIDER WHETHER CASES SHOULD**
19                                            **BE RELATED UNDER CIVIL LOCAL**
         v.                                   **RULES 3-12 AND 7-11**
20
21  **CITY OF SAN JOSE**, a public entity,
    **JENNIFER MAGUIRE**, in her official
22  capacity as City Manager of the City of San
    Jose, and the **CITY OF SAN JOSE CITY**
23  **COUNCIL**,

24                  Defendants.

25

26

27

28

Decl. of Tamarah P. Prevost ISO Administrative Motion to Relate Cases
Case No. 5:22-cv-00501-BLF                                              1

I, Tamarah P. Prevost, hereby declare as follows:

1.      I am an attorney duly admitted to practice in the State of California and before this Court. I am a partner with the law firm Cotchett, Pitre & McCarthy, LLP, attorneys for Defendant City of San Jose ("City") in *Howard Jarvis Taxpayers Association, et al. v. City of San Jose*, Case No. 5:22-cv-02365-NC ("*HJTA*") (Notice of Removal filed April 15, 2022), and in *National Association for Gun Rights, Inc., et al. v. City of San Jose, et al.* ("*NAGR*"), Case No. 5:22-cv-00501-BLF (Complaint filed January 25, 2022). Pursuant to Civil Local Rule 7-11, I submit this declaration in support of the City's Administrative Motion to Consider Whether Cases Should Be Related Under Civil Local Rules 3-12 and 7-11 ("Motion"). If called as a witness, I could and would testify competently to the matters stated herein.

2.      Attached here as **Exhibit 1** is a true and correct copy of the operative First Amended Complaint (excluding exhibits), filed on February 14, 2022, in the *NAGR* action. ECF 19.

3.      Attached here as **Exhibit 2** is a true and correct copy of the Notice of Removal in the *HJTA* action, filed on April 15, 2022, which includes a copy of the underlying complaint filed in Santa Clara County Superior Court on March 7, 2022. ECF 1.

4.      On April 18, 2022, I conferred by email with plaintiffs' counsel in the *NAGR* and *HJTA* actions. Counsel in *NAGR* does not oppose relation. Counsel in *HJTA* did not agree to stipulate that the *HJTA* and *NAGR* cases should be related.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 19th day of April 2022 at Burlingame, California.

                                        */s/ Tamarah P. Prevost*_____
                                        TAMARAH P. PREVOST

Decl. of Tamarah P. Prevost ISO Administrative Motion to Relate Cases
Case No. 5:22-cv-00501-BLF                                                          1

## CERTIFICATE OF SERVICE

I am employed in San Mateo County, California, and I am over the age of 18 years and not a party to this action. My business address is the Law Offices of Cotchett, Pitre & McCarthy, LLP, 840 Malcolm Road, Burlingame, California, 94010. On this day, I served the following document(s) in the manner described below:

**DECLARATION OF TAMARAH P. PREVOST IN SUPPORT OF ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED UNDER CIVIL LOCAL RULES 3-12 AND 7-11**

√   **BY MAIL**: I am familiar with this firm's practice for collection and processing of correspondence for mailing. Following that practice, I placed a true copy of the aforementioned document(s) in a sealed envelope, addressed to each addressee, respectively, as specified below. The envelope was placed in the mail at my business address, with postage thereon fully prepaid, for deposit with the United States Postal Service on that same day in the ordinary course of business.

√   **BY E-MAIL**: My e-mail address is kdelia@cpmlegal.com and service of this document(s) occurred on the date shown below. This document is being served electronically and the transmission was reported as complete and without error.

| | |
|---|---|
| Harmeet K. Dhillon<br>Michael A. Columbo<br>Mark P.Meuser<br>**Dhillon Law Group Inc.**<br>177 Post Street, Suite 700<br>San Francisco, CA 94108<br>Telephone: (415) 433-1700<br>harmeet@dhillonlaw.com<br>mcolumbo@dhillonlaw.com<br>mmeuser@dhillonlaw.com<br><br>David A. Warrington<br>Curtis M. Schube<br>**Dhillon Law Group Inc.**<br>2121 Eisenhower Avenue, Suite 402<br>Alexandria, VA 22314<br>Telephone: (571) 400-2121<br>dwarrington@dhillonlaw.com<br>cschube@dhillonlaw.com | Attorneys for Plaintiffs: National Association for Gun Rights, Inc., and Mark Sikes<br>(*NAGR* Action, Case No. 5:22-cv-00501-BLF) |

Decl. of Tamarah P. Prevost ISO Administrative Motion to Relate Cases
Case No. 5:22-cv-00501-BLF                                                                                          2

| | |
|---|---|
| Jonathan M. Coupal<br>Timothy A. Bittle<br>Laura E. Dougherty<br>**Howard Jarvis Taxpayers**<br>**Foundation**<br>921 Eleventh Street, Suite 1201<br>Sacramento, CA  95814<br>Telephone: (916) 444-9950<br>Email: tim@hjta.org | Attorneys for Plaintiffs: Howard Jarvis<br>Taxpayers Association; Silicon Valley<br>Taxpayers Association; Silicon Valley Public<br>Accountability Foundation; James Barry; and<br>George Arrington<br>(*HJTA* Action, Case No. 5:22-cv-02365-NC) |

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct. Executed at Burlingame, California, on April 19, 2022.

*/s/ Kathleen D'Elia*
Kathleen D'Elia

Decl. of Tamarah P. Prevost ISO Administrative Motion to Relate Cases
Case No. 5:22-cv-00501-BLF                                                                 3

# Exhibit 1

HARMEET K. DHILLON (SBN: 207873)
harmeet@dhillonlaw.com
MICHAEL A. COLUMBO (SBN: 271283)
mcolumbo@dhillonlaw.com
MARK P. MEUSER (SBN: 231335)
mmeuser@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700

DAVID A. WARRINGTON*
dwarrington@dhillonlaw.com
CURTIS M. SCHUBE*
cschube@dhillonlaw.com
DHILLON LAW GROUP INC.
2121 Eisenhower Avenue, Suite 402
Alexandria, VA 22314
Telephone: (571) 400-2121

*Admission *Pro Hac Vice* forthcoming

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| **NATIONAL ASSOCIATION FOR GUN RIGHTS, INC.,** a nonprofit corporation, and **MARK SIKES,** an individual,<br><br>Plaintiffs,<br><br>v.<br><br>**CITY OF SAN JOSE, a public entity, JENNIFER MAGUIRE**, in her official capacity as City Manager of the City of San Jose, and the **CITY OF SAN JOSE CITY COUNCIL,**<br><br>Defendants. | Case Number: 5:22-cv-00501-BLF<br><br>**FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, AND NOMINAL DAMAGES**<br><br>Judge: Hon. Beth Labson Freeman |



First Amended Complaint

No: 5:22-cv-00501-BLF

*"That the power to tax involves the power to destroy; that the power to destroy may defeat and render useless the power to create…."* Justice John Marshall, *M'Culloch v. Maryland*, 17 U.S. 316, 431 (1819). *"A tax that burdens rights protected by the [Constitution] cannot stand unless the burden is necessary to achieve an overriding governmental interest."* Justice Sandra Day O'Connor, *Minneapolis Star and Tribune Co. v. Minnesota Comm'r of Rev.*, 460 U.S. 575, 582 (1983).

Plaintiffs National Association for Gun Rights, Inc. ("NAGR"), and Mark Sikes ("Sikes"), by and through the undersigned counsel, hereby bring this action for injunctive relief, a declaratory judgment, and nominal damages as a result of the City of San Jose's unconstitutional and unlawful ordinance, specifically Part 6 of Chapter 10.32 of Title 10 of the San Jose Municipal Code (the "Ordinance"). In support of these requests, Plaintiffs state as follows:

## INTRODUCTION

1.      The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation," *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008), and the government "may not impose a charge for the enjoyment of a right granted by the federal constitution." *Murdock v. Pennsylvania*, 319 U.S. 105, 113 (1943). And yet, the City of San Jose has taken the unprecedented step of requiring virtually all gun owners within its city limits to pay unspecified sums of money to private insurance companies and an unspecified fee to an unidentified government-chosen nonprofit simply to exercise their constitutional right to own a gun, as well as an unspecified fee to the City for the costs of administering the unlawful Ordinance. Just as a tax on the fundamental right for the press to circulate its content "suggests that the goal of the regulation is not unrelated to suppression of expression," *Minneapolis Star and Tribune Co. v. Minnesota Comm'r of Rev.*, 460 U.S. 575, 586 (1983), San Jose's imposition of a tax, fee, or other arbitrary cost on gun ownership is intended to suppress gun ownership without furthering any government interest. In fact, the stated penalties for nonpayment of the insurance and fees include seizure of the citizen's gun. The Ordinance is, therefore, patently unconstitutional.

2.      Moreover, it is at home "where the need for defense of self, family, and property is most acute." *Heller*, 554 U.S. at 628. Because California and the City of San Jose have already made it exceedingly difficult to lawfully carry a weapon outside the home, and the Ordinance only affects

---

First Amended Complaint                                    5:22-cv-00501-BLF

1   owners of lawfully owned guns, the Ordinance's true impact is solely on guns kept in the home by

2   law-abiding citizens. If left intact, the City of San Jose's Ordinance would strike at the very core of

3   the fundamental constitutional right to keep and bear arms and defend one's home.

4          3.      While threatening the seizure of firearms for failure to fund the city's chosen

5   nonprofits in violation of the Second Amendment, the Ordinance does *nothing* to deter the scourge of

6   unlawful ownership and use of guns by criminals or to recoup from them compensation for the

7   extensive injuries and costs they cause. According to the City's own statistics in support of the

8   Ordinance, "Injuries from unintentional shootings" nationally only comprise about a third of all gun-

9   related injuries, Ordinance §10.32.200.B.10, and in the period from 2010 to 2014, only "thirty-one

10  percent (31%) of emergency department visits and sixteen percent (16%) of hospitalizations from

11  firearms injuries were due to unintentional shootings." *Id*. at §10.32.200.B.4. Consequently, this

12  Ordinance—largely directed as it is at gun safety and liability protection for *unintentional* acts—does

13  virtually *nothing* to impose its costs on the primary source of gun violence and its associated harms

14  in San Jose: criminals committing intentional acts of violence with guns.

15         4.      Further, the Ordinance calculates the cost to San Jose "per-firearm owning household"

16  based on all of the costs ($39.7M) arising from responses to "gun violence," including "incident

17  investigation," "perpetrator adjudication" and "judicial sanctioning"—i.e., responses to intentional

18  criminal activity. *Id*. at §10.32.200.B.8. And yet, the Ordinance does not impose these costs on

19  criminals but rather on lawfully gun-owning households. The Ordinance seeks to impose financial

20  pressure ("incentivizing" or "encouraging" in the words of the Ordinance at sections 10.32.200.B.11-

21  12) on gun owners.  But the Ordinance applies its pressure to lawful gun owners exercising their

22  constitutional right to keep arms in the home for self-defense against the violent criminals who are

23  actually causing the harm and costs the Ordinance claims it is trying to reduce.

24         5.      By compelling gun owners to directly pay and therefore subsidize the advocacy of an

25  unnamed government-chosen nonprofit for the purpose of preaching the harms of gun ownership

26  back at them, as appears to be the intent and function of the Gun Harm Reduction Fee, the Ordinance

27  also violates the First Amendment rights of gun owners.

28  //

---

2

First Amended Complaint                                        5:22-cv-00501-BLF

6.      Additionally, the Ordinance violates Article XIII C of the California Constitution because the Gun Harm Reduction Fee and penalty-backed insurance mandate constitute taxes within the meaning of the California Constitution which were not approved by the voters. Finally, the Ordinance violates the San Jose City Charter because, by commanding gun owners to directly pay one nonprofit for unspecified programs not controlled by the City Council, it unlawfully deprives the City Council of its budget and appropriations powers and the City Manager of their powers as the City's chief administrative officer, and violates a Charter requirement that City funds only be deposited into City accounts.

7.      To preserve the safety and core rights under the Constitution of the law-abiding citizens of the City of San Jose, as well as their rights under the California Constitution and the City Charter, this Court must prevent Defendants from enforcing the unconstitutional and unlawful Ordinance.

**JURISDICTION AND VENUE**

8.      This Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331 because it arises under the First, Second, and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C § 1983. This Court has authority under 28 U.S.C. §§ 2201 and 2202 to grant declaratory relief and other relief, including preliminary and permanent injunctive relief, pursuant to Rule 65 of the Federal Rules of Civil Procedure.

9.      This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over the state law claims regarding the City of San Jose's lack of authority to pass the Ordinance because the federal claims and this state claim are so related that they form part of the same case or controversy.

10.      Venue is proper in the Northern District of California under 28 U.S.C. § 1391(b)(1) because Defendants are officials of the City of San Jose, which is within the geographical boundaries of the Northern District of California. Defendants are also residents of this State within the meaning of 28 U.S.C. § 1391(c).

11.      The Court has personal jurisdiction over the Defendants because the City of San Jose is within the State of California.

//

3

First Amended Complaint                                          5:22-cv-00501-BLF

**INTRADISTRICT ASSIGNMENT**

12.     This action is properly assigned to the San Jose Division, pursuant to Civil L.R. 3-2(e). A substantial part of the events giving rise to the claims occurred in Santa Clara County, California.

**PARTIES**

13.     Plaintiff NAGR is a non-stock, nonprofit corporation incorporated under the laws of the Commonwealth of Virginia and has its principal place of business in Loveland, Colorado. NAGR is a grassroots organization whose mission is to defend the right to keep and bear arms under the Second Amendment and advance the constitutional right by educating the American people and urging them to action in public policy.  NAGR has members who would be subject to the Ordinance within the City of San Jose.

14.     Plaintiff Mark Sikes resides in San Jose, California. Sikes legally owns a gun, is not a peace officer, does not have a concealed carry permit, and does not meet the qualifications of CAL. GOV. CODE § 68632 (a) and (b) and, therefore, would be subject to the Ordinance if it were to go into effect.

15.     Defendant City of San Jose is a municipal corporation within the County of Santa Clara, California. A true and correct copy of the City of San Jose's City Charter is attached as Exhibit "A."

16.     Defendant Jennifer Maguire ("Maguire") is the current and active City Manager for the City of San Jose. San Jose's Charter states that the City Manager is the "Chief Administrative Officer and head of the administrative branch of the City government." San Jose City Charter §§ 502, 701. "The City Manager shall be responsible for the faithful execution of all laws, provisions of this Charter, and acts of the Council which are subject to enforcement by the City Manager or by the officers who are under the City Manager's direction and supervision." *Id.*, § 701(d). Additionally, the City Manager is directly identified with enforcement authority throughout the Ordinance. Ordinance §§ 10.32.205, 210, 215, 235, & 250.

17.     Defendant San Jose City Council (the "City Council") is vested with authority under Article IV of the City of San Jose's City Charter (Ex. A). The Ordinance vests the City Council with authority to "set forth the schedule of fees and charges established by resolution of the City Council"

First Amended Complaint                                5:22-cv-00501-BLF

1  and to "set forth…the schedule of fines" for those who violate the ordinance. *Id.,* § 10.32.215;

2  10.32.250; 10.32.240.

### STATEMENT OF FACTS

#### Enactment of the Ordinance

5  18.    On June 29, 2021, the City Council directed San Jose City Attorney Nora Frimann "to

6  return to Council with an ordinance for Council consideration that would require every gun owner

7  residing in the City of San José, with certain exceptions, to obtain and maintain a City-issued

8  document evincing payment of an annual fee, and attestation of insurance coverage for unintentional

9  firearm-related death, injury, or property damage." Frimann Mem. re Gun Harm Reduction Ord., Jan.

10  14, 2022, 1 ("City Attorney Mem.") (a true and correct copy is attached as Exhibit "B"). Plaintiff

11  National Association for Gun Rights immediately sent the City a cease and desist letter warning that

12  the proposed ordinance was unconstitutional. Ltr. from H. Dhillon and D. Warrington to San Jose City

13  Council, July 14, 2021 (a true and correct copy is attached as Exhibit "C").

14  19.    On January 14, 2022, in advance of the City Council's January 25 meeting, the City

15  Attorney issued a memorandum in compliance with the City Council's directions that recommended

16  the Council "[c]onsider approving an ordinance amending Title 10 of the San José Municipal Code to

17  add Part 6 to Chapter 10.32 to reduce gun harm by: (a) requiring gun owners to obtain and maintain

18  liability insurance; and (b) authorizing a fee to apply to gun harm reduction programs." City Attorney

19  Mem. at 1 (Ex. B). Under a section addressing penalties for noncompliance, the City Attorney stated

20  that "[f]ailure to comply shall constitute a civil violation subjecting the owner to the temporary or

21  permanent seizure of the gun, and under specified circumstances, a fine." *Id*. at 2.

22  The City Attorney concluded:

23  If *approved*, the proposed ordinance will require, with certain exceptions, that San José

24  residents who own firearms: (a) obtain and maintain liability insurance; (b) pay an annual gun

25  harm reduction fee to a designated nonprofit organization that will use the fee proceeds to

26  provide gun harm reduction services to residents of the City who own or possess a gun or to

27  members of their household; and (c) pay any City cost recovery fees associated with program

28  implementation, including any associated third-party costs.

---

First Amended Complaint                                    5:22-cv-00501-BLF

*Id.* at 2 (emphasis added).

20.     In an op-ed published on January 19 in the Los Angeles Times, San Jose Mayor Sam Liccardo wrote "[l]ast June our City Council unanimously approved my proposals that will mitigate gun harm in our community — and *a final vote* on Jan. 25 should turn them into law." Mayor Sam Liccardo, *Op-Ed*: *My City's New Gun Control Laws Will Help More Than Waiting On Congress To Do Something*, LOS ANGELES TIMES, Jan. 19, 2022, https://www.latimes.com/opinion/story/2022-01-19/op-ed-new-gun-control-laws-help-congress (emphasis added)(a true and correct copy is attached as Exhibit "D").

21.     On January 21, 2022, Mayor Liccardo, Vice Mayor Jones, Councilmember Cohen, and Councilmember Carrasco issued "Directions" to the City Council, including to "[a]pprove the proposed ordinance," with certain modifications. Mayor's Mem. to City Council, Jan. 21, 2022, 2 (a true and correct copy is attached as Exhibit "E"). The Mayor's Memorandum also noted that "Members of the California legislature are exploring bills to have law enforcement agencies seize guns *as a sanction for violations of local gun regulations*, with subsequent restoration of ownership as required by constitutional due process." *Id.* at 4 (emphasis added).

22.     The Agenda for the City Council's January 25, 2022, meeting further stated that the recommendation before the Council was to "[c]onsider approving" the Ordinance.  Agenda for Jan. 25, 2022 City Council Meeting (a true and correct copy is attached as Exhibit "F"). The City's Synopsis for what occurred at its January 25, 2022, City Council Meeting also states that the action before the Council was to "[c]onsider approving" the Ordinance and the Synopsis records that the Ordinance was indeed "approved" through two votes regarding various changes.  Tuesday, January 25, 2022 City Council Meeting Synopsis at 13 (a true and correct copy is attached as Exhibit "G").

23.     The Mayor immediately issued a press release the night of the vote, in which he boasted that "Tonight San José *became* the first city in the United States *to enact* an ordinance to require gun owners to purchase liability insurance, and to invest funds generated by fees paid by gun owners into evidence-based initiatives to reduce gun violence and gun harm." Liccardo Press Release, Jan. 25, 2022 (emphasis added) (a true and correct copy is attached as Exhibit "H").

24.     Within 24 hours, articles were published about San Jose enacting an unprecedented

First Amended Complaint                                                5:22-cv-00501-BLF

1    regulation of gun ownership, including in the San Francisco Chronicle and the Los Angeles Times.

2    *See* Lauren Hernández, *Gun Owners In San Jose Must Buy Liability Insurance Under Newly Passed*

3    *First-In-The-Nation Law,* SAN FRANCISCO CHRONICLE, Jan. 25, 2022 (updated Jan. 26, 2022)

4    https://www.sfchronicle.com/bayarea/article/Gun-owners-in-San-Jose-must-buy-liability-

5    16804951.php  (a true and correct copy is attached as Exhibit "I") ("The San Jose City Council

6    adopted a measure Tuesday night requiring gun owners in the South Bay city to buy liability

7    insurance for their firearms, city officials said."); Olga R. Rodriguez and Juliet Williams, *San Jose*

8    *Approves First Law In U.S. Requiring Gun Owners To Have Insurance*, LOS ANGELES TIMES, Jan. 25,

9    2022, https://www.latimes.com/california/story/2022-01-25/san-jose-gun-liability-insurance (a true

10   and correct copy is attached as Exhibit "J") ("The city of San Jose voted Tuesday night to require gun

11   owners to carry liability insurance in what's believed to be the first measure of its kind in the United

12   States. The San Jose City Council overwhelmingly approved the measure despite opposition from

13   some gun owners who said it would violate their 2nd Amendment rights.").

14        25.    Consistent with the Mayor's pre- and post-meeting statements, and the interpretations

15   of reputable journalists reporting on the Council's action, Plaintiffs considered the City Council's vote

16   to potentially constitute the "final approval" or enactment of the Ordinance and immediately filed suit

17   to protect their rights and those of the citizens of San Jose.

18        26.    The City's new position, first taken in this litigation, is that contrary to the Mayor's and

19   City Council's pronouncements before and after the January 25, 2022, City Council meeting, the City

20   Council did not actually "enact" or provide the "final approval" for the Ordinance on January 25

21   because it would have violated the City Charter for them to do so. The City now states the ordinance

22   could only have ever been truly enacted at the City Council's February 8, 2022, meeting on its

23   "second reading," (Mem. Supp. Mot. Dismiss 3), notwithstanding the Mayor's statements to the

24   contrary before and after the January 25 Council meeting. The Ordinance was placed on the Council's

25   consent calendar for its February 8, 2022, meeting and on that day the Council voted a second time to

26   approve the Ordinance.

27        27.    In any event, regardless of whether the Mayor's statements about the enactment of

28   the Ordinance or the City's published records about its approval were incorrect or misleading, a

_____

7

First Amended Complaint                                    5:22-cv-00501-BLF

true and correct copy of the now-indisputably enacted Ordinance, as shown on the City's website, is attached as Exhibit "K."

**The Burdens of the Ordinance**

28.    The Ordinance will require an estimated 50,000-55,000 gun-owning San Jose Citizens, minus a few exceptions, to obtain an insurance policy and pay annual fees simply to exercise the same constitutional right to own a gun that existed prior to this ordinance. Liccardo Mem. re Gun Harm Reduction Ord., Jan., 19, 2022 (a true and accurate copy is attached as Exhibit "L").

29.    The Ordinance states that "[t]o the extent allowed by law, the Firearm or Firearms of a person that [*sic*] is not in compliance with [the Ordinance] may be impounded subject to a due process hearing." Ordinance § 10.32.245.  Further, "[a]ny violation" of the Ordinance is "punishable by an administrative citation," "fines for violations," and "all other civil and administrative remedies available to the City." *Id.*, § 10.32.240; *see also* Mayor's Mem. to City Council, Jan. 21, 2022 (Ex. E) ("Members of the California legislature are exploring bills to have law enforcement agencies seize guns as a sanction for violations of local gun regulations . . ."); City Attorney Frimann Memo. at 2 (Ex. B)("Failure to comply [with the Ordinance] shall constitute a civil violation subjecting the owner to the temporary or permanent seizure of the gun, and under specified circumstances, a fine.").

30.    The Ordinance targets guns in the home. It does not apply to people who have a license to carry a concealed weapon. *Id.*, § 10.32.225. Additionally, absent a concealed carry permit, there is no other way to carry a firearm in San Jose. *See* CAL. PENAL CODE §§ 25850, 26150, 26155, 26350, 26400. The Ordinance thus would charge all law-abiding owners of guns for home and self-defense to pay for the harms caused by criminals who use unregistered guns to commit acts of violence. Ordinance § 10.32.200.B.8 (identifying costs the Ordinance seeks to recoup to include those arising from homicides and all firearm-related injuries).

***Insurance Requirement***

31.    The Ordinance conditions the constitutional right to own a gun on the payment of an unstated amount for insurance.  It states that "A person who resides in the City of San Jose and owns or possesses a Firearm in the City shall obtain and continuously maintain in full force and effect a homeowner's, renter's or gun liability insurance policy…specifically covering losses or damages

---

8

First Amended Complaint                                              5:22-cv-00501-BLF

1  resulting from any accidental use of the Firearm, including but not limited to death, injury, or property

2  damage." Ordinance § 10.32.210.A.

3      32.    This requirement does not contain any information about minimum insurance coverage

4  thresholds or premiums. Thus, the City of San Jose has conditioned the constitutional right of its law-

5  abiding citizens to own a gun on an unstated, unregulated price to be set by an industry of for-profit

6  private sector corporations.

7      33.    Moreover, the City's findings did not include any evidence that there are available

8  insurance policies "specifically covering losses or damages resulting from any accidental use of"

9  firearms, or what any such policy will cost. *See* Ordinance § 10.32.200.B.10 ("[i]njuries from

10  unintentional shootings . . . are *generally* insurable" (emphasis added)).

11      34.    The Ordinance does nothing to ensure that insurance companies will provide policies

12  "specifically covering" losses arising from accidental firearm use for any and every citizen who is

13  subject to the Ordinance, which means the City's insurance mandate would establish a precondition to

14  gun ownership that empowers for-profit insurance companies (with or without government pressure)

15  to prohibit persons from exercising their Second Amendment rights.

16      35.    Further, the Ordinance does not indicate there is any way for taxpayers to file claims

17  against insurers to recover the city's expenses. *See id.* §10.32.210 (stating only that policies must

18  cover "death, injury, or property damage").

19                           ***Fee Requirement***

20      36.    The second primary component of the Ordinance is the creation of a "fee" for owning a

21  gun. The Ordinance states that "A person who resides in the City and owns or possesses a Firearm in

22  the City shall pay an Annual Gun Harm Reduction Fee to the Designated Nonprofit Organization each

23  year." Ordinance § 10.32.215. No fee amount is specified, nor is there criteria for how to calculate the

24  fee. *Id*. Rather, Defendant City Council reserved the right for itself to determine the fee amount at a

25  later date. *Id*.

26      37.    The destination of the money is to an undetermined nonprofit. That determination is

27  delegated to Defendant Maguire. *Id.*, §§ 10.32.205.B; 10.32.220.

28      38.    The nonprofit fee in the Ordinance is not to defray the City's administrative costs.

First Amended Complaint                         5:22-cv-00501-BLF

1     Rather, "all monies…shall be expended by the Designated Nonprofit Organization…." *Id.*,

2     § 10.32.220.A.

3         39.     The only selection criteria for the Designated Nonprofit Organization is that it

4     "provid[e] services to residents of the City that own or possess a Firearm in the City or to members of

5     their household, or to those with whom they have a close familial or intimate relationship." These

6     services "include, *but are not necessarily limited to*" suicide prevention services or programs, violence

7     reduction or gender based violence services or programs, mental health services related to gun

8     violence, firearms safety education or training, or addiction intervention and substance abuse

9     treatment. *Id.*, § 10.32.220.A (emphasis added).

10         40.     "[T]he City shall not specifically direct how the monies from the Gun Harm Reduction

11     Fee are expended" by the nonprofit. *Id.*, § 10.32.220.C.

12         41.     The fee thus functions to compel gun owners to give their money to a government-

13     approved nonprofit to spend on unspecified programs at the nonprofit's discretion, none of which are

14     services that the City is obligated to perform. This compelled donation by gun owners to one City-

15     favored nonprofit to advocate about the dangers of gun ownership with little to no municipal oversight

16     is not only obnoxious to the Constitution, it is an invitation to corruption and waste.

17         42.     By its plain terms, this fee and insurance requirement do not compensate the City to

18     cover reasonable costs of governmental activity, because they are not for government activity. Further,

19     the manner in which those costs are allocated to gun owners do not bear a fair or reasonable

20     relationship to the gun owner's burdens on, or benefits received from, the City's governmental

21     activity.

22         43.     Indeed, the Ordinance also authorizes a separate fee just to recoup the costs associated

23     in administering the Ordinance. *Id.* § 10.32.250.

24         44.     Accordingly, as discussed further below, the "Annual Gun Harm Reduction Fee"—

25     unconnected to the cost of City services and for unspecified programs outside of the City's control—

26     and the mandatory insurance requirement backed by the threat of fines and seizure are nothing more

27     than exactions, or *taxes* within the meaning of the California Constitution, that the City is imposing on

28     the exercise of a constitutional right.

---

10

First Amended Complaint                                         5:22-cv-00501-BLF

**The Second Amendment**

45.     The Second Amendment to the United States Constitution states that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II.

46.     "[I]t is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty." *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 778 (2010).

47.     Even in the face of "the problem of handgun violence in this country,…the enshrinement of constitutional rights necessarily takes certain policy choices off the table." *Heller*, 554 U.S. at 636.

48.     "The upshot of [*Heller* and *McDonald*] is that there now exists a clearly-defined fundamental right to possess firearms for self-defense within the home." *United States v. Masciandaro*, 638 F.3d 458, 467 (4th Cir. 2011).

49.     Local governments, including the City of San Jose, are bound by the Second Amendment. *McDonald*, 561 U.S. at 790; *Nordyke v. King*, 681 F.3d 1041, 1044 (9th Cir. 2012).

50.     Imposing an insurance mandate and fees (or taxes) on gun owners in the City of San Jose burdens Plaintiff NAGR's members and Plaintiff Sikes by creating an indefinite cost on their ability to exercise their basic and fundamental right to possess a gun. "A tax that burdens rights protected by the [Constitution] cannot stand unless the burden is necessary to achieve an overriding governmental interest." *Minneapolis Star and Tribune*, 460 U.S. at 582.

51.     Both the insurance mandate and the fees created by the Ordinance are costs subject to the whims of the City Council and private insurance companies and, thus, bear a significant risk of making gun ownership far more expensive, if not cost prohibitive. As a form of fixed tax disconnected from a person's income or the monetary value of a person's firearms, it is an especially regressive one.

52.     The Ordinance cites a number of statistics about gun violence, but provides no studies or statistics that gun liability insurance will reduce gun violence. Rather, it in conclusory fashion states that "Liability insurance can reduce the number of gun incidents by encouraging safer

First Amended Complaint                                                    5:22-cv-00501-BLF

behavior…." Ordinance § 10.32.200.B.12.  It is not apparent how liability insurance will meaningfully add to the extant incentives for safe behavior, such as the fear of potentially killing another human being (intentionally or by accident), being prosecuted, or being sued.

53.     The Ordinance does not include any studies or statistics showing that the yet-to-be-determined nonprofit will accomplish the stated aim of reducing gun violence. Rather, in conclusory fashion, it states that "Programs and services to gun owners and their households can also encourage safer behavior, and provide education and resources to those residents." *Id.*, § 10.32.200.B.13.

54.     The Ordinance cites a figure that "San Jose taxpayers annually spend approximately $39.7 million, or approximately $151 per firearm-owning household, to respond to gun violence with such public services as emergency police and medical response, victim assistance, incident investigation, acute and long-term care, and perpetrator adjudication and judicial sanctioning." It cites figure of $442 million in gun-related costs if the calculation includes "private costs to individuals and families." *Id.*, § 10.32.200.B.8-.9. But the Ordinance does not distinguish how much of these costs are due to intentional violent criminal conduct that the Ordinance will hardly address as opposed to the types of unintentional conduct it is largely focused on.

55.     Despite the per-household fee being based on the City's assessment of the overall cost of guns to San Jose, the fee will not reimburse the City, taxpayers, or private individuals because the fee will be distributed entirely to a nonprofit. Likewise, the insurance will not reimburse the City, taxpayers, or private individuals for any intentional gun violence committed by criminals and most costs incurred by the City/taxpayers, such as ambulance, police, and judicial costs, would not be the type of costs covered by an insurance carrier.

56.     Therefore, neither the insurance mandate nor the nonprofit fee fit any stated, or unstated, government objective.

57.     Additionally, governments "may not impose a charge for the enjoyment of a right granted by the federal constitution." *Murdock*, 319 U.S. at 113.

58.     The only exception is to "meet the expense incident to the administration of the act and to the maintenance of public order in the matter licensed." *Cox v. New Hampshire*, 312 U.S. 569, 577 (1941). Applied to the Second Amendment, "imposing fees on the exercise of constitutional rights is

permissible when the fees are designed to defray (and do not exceed) the administrative costs of regulating the protected activity." *Kwong v. Bloomberg*, 723 F.3d 160, 165 (2nd Cir. 2013).

59.     Neither the insurance premium nor the fee to be paid to the City's chosen nonprofit are designed to defray the City's administrative costs and, therefore, they are unconstitutional.

**The First Amendment**

60.     The First Amendment, applied to the states through the Fourteenth Amendment, protects the freedom of speech, including both the right to speak freely and the right to refrain from speaking at all, and to avoid associating with others for expressive purposes. The First Amendment thus prohibits government officials from forcing individuals to support views that they find objectionable.

61.     Thomas Jefferson famously said that "to compel a man to furnish contributions of money for the propagation of opinions which he disbelieves and abhor[s] is sinful and tyrannical." *Janus v. AFSCME*, 138 S.Ct. 2448, 2464 (2018) (quoting *A Bill for Establishing Religious Freedom*, in 2 Papers of Thomas Jefferson 545 (J. Boyd ed. 1950)).

62.     The Ordinance directs gun owners to subsidize one unidentified nonprofit by paying the city's fee directly to that organization. Ordinance § 10.32.215. The Ordinance even prohibits the city from directing how the nonprofit would use the funds. *Id.* at § 10.32.220.C. The one thing that is clear is that the organization will likely be dedicated to exclusively preaching the negative risks of gun ownership, and the Ordinance does not prohibit the nonprofit from using the City's fee revenues for other messages and programs.

63.     The Defendants may not force Plaintiffs to pay fees to nonprofits when those fees are going to be used to fund activities of ideological or political nature with which Plaintiffs disagree, *see Keller v. State Bar of California*, 496 U.S. 1, 13 (1990), or in fact are left unstated.

64.     The Ordinance therefore unconstitutionally compels Plaintiffs to subsidize speech and associate against their will and this Court should therefore preliminarily and permanently enjoin Defendant from enforcing the Ordinance and award Plaintiffs nominal damages.

**California Constitution-Preemption**

65.     Article XI, section 7 of the California Constitution states that "A county or city may

---

13

First Amended Complaint                                                    5:22-cv-00501-BLF

make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws."

66.     Article XI, section 7 of the California Constitution preempts any local law that "duplicates, contradicts, or *enters an area fully occupied by general law*, either expressly or by legislative implication." *Fiscal v. City and County of San Francisco* 158 Cal.App.4th 895, 903 (Cal. Ct. App. 2008)(quotation omitted)(emphasis added).

67.     "[T]he Legislature intended to occupy the field of residential handgun possession to the exclusion of local government entities." *Id*. at 909.

68.     Gun regulation is already fully occupied by the state of California. Indeed, California already comprehensively regulates firearms, including firearm safety, CAL. PENAL CODE §§ 23500-23520, the appearance of firearms, *id*., §§ 23800-24790, storage of firearms, *id*., §§ 25000-25225, how to handle lost or stolen firearms, *id*., §§ 25250-25225, carrying firearms, *id*., §§ 25300-26406, the sale, lease, or transfer of firearms, *id*., §§ 26500-28490, the registration and assignment of firearms, *id*., §§ 28010-28024, how to transfer firearms between private persons, *id*., §§ 28050-28070, recordkeeping, background checks, and fees related to transfer, *id*., §§ 28100-28490, the manufacture of firearms, *id*., §§ 29010-29184, who may not possess a firearm, *id*., §§ 29610-30165, rules pertaining to "firearm equipment," *id*., §§ 30150-30165, and, in some cases, firearm registration, *id*., §§ 30900-30965. This is but a sample of all of the separate statutes regulating firearms in California. *See generally* CAL. PENAL CODE §§ 23500-34370.

69.     Thus, the City of San Jose's Ordinance violates the California Constitution because it is preempted by California state law.

**California's Local Tax Requirements**

70.     All taxes imposed by local governments in California must be approved by voters of the local government. CAL. CONST. art. XIII C. A "tax" in California, with exceptions that do not apply here, is defined as "any levy, charge, or *exaction of any kind* imposed by a local government." Article XIII C, § 1(e) (emphasis added).

71.     The Ordinance's insurance mandate and Gun Harm Reduction Fee do not pay for City services and do not correspond to any benefit received from City services by those who pay for them.

First Amended Complaint                                                                 5:22-cv-00501-BLF

72.     The insurance mandate and the Gun Harm Reduction fee are thus taxes which were not submitted to the electorate for approval and, therefore, violate the California Constitution.

**The San Jose City Charter**

73.     The San Jose City Charter vests in the City Council "[a]ll powers of the City and the determination of all matters of policy." San Jose City Charter § 400. These powers include the exclusive authority to impose taxes. *Id.*, § 602(c).  With regard to the expenditure of City funds, only the City Council has the power to establish a budget. *Id.* §§ 1204, 1206.  The Council also has the sole power to appropriate the expenditure of City funds. *Id.*, § 1207.

74.     The City Manager is the "Chief Administrative Officer and head of the administrative branch of the City government." *Id.*, §§ 502; 701.

75.     "All revenues and receipts which are not required by [the] Charter, State law or ordinances to be placed in special funds shall be credited to the [City's] General Fund." *Id.*, § 1211. The General Fund is "a medium of control and accounting for all City activities excepting activities for which special funds are established and maintained." *Id.*

76.     The Ordinance, by prohibiting the City from directing how "monies from the Gun Harm Reduction fee are expended" by the chosen nonprofit, Ordinance § 10.32.220.C, violates the San Jose City Charter's reservation of budgeting and appropriation power to the City Council.

77.     The Ordinance also violates the City Charter's delegation of executive functions to the "administrative" branch of the City Government under the leadership and control of the City Manager because the Ordinance says "the City shall not specifically direct how the monies from the Gun Harm Reduction Fee are expended" other than vague directions to the nonprofit to "reduce the risk" of harm from using firearms, "mitigate the risk" of harm or liability from possessing firearms, and to spend the City's funds in ways including, *but not limited to*, various services. *Id.,* § 10.32.220.A, C.

78.     The Ordinance, by requiring gun owners to pay the City-required, City-determined fee directly to a nonprofit organization, *id.*, § 10.32.215, thereby diverts a City fee to a nonprofit rather than the City's General Fund, and thus violates the City Charter's requirement that all City revenues and receipts be deposited into City accounts as an essential means of City "control and accounting." This too is an invitation to corruption, waste, and fraud.

79.     The Ordinance also violates California Government Code § 43400 that requires all "money received from licenses, street poll taxes, fines, penalties, and forfeitures shall be paid into the general fund."

*       *       *       *

80.     In sum, the Ordinance violates the Second Amendment by infringing upon the right to keep and bear arms, violates the First Amendment by forcing gun owners to associate with and pay a donation subsidizing the virtually unrestricted speech of a private non-governmental nonprofit organization, violates article XI, §7 of the California Constitution because state law thoroughly occupies and preempts the field of gun regulation, violates article XIII C of the California Constitution by failing to submit a local tax to the voters for approval, violates the San Jose City Charter's budget,  appropriations, and separation of powers provisions, and violates controls on the handling of city receipts under the City Charter.

81.     Accordingly, Plaintiffs request that this court issue preliminary and permanent injunctions preventing Defendants from enforcing the Ordinance in its entirety pursuant to 42 U.S.C. § 1983, declare the Ordinance unconstitutional in its entirety under both the United States and California Constitutions, declare that the Ordinance violates the San Jose City Charter and the California Government Code, issue nominal damages, and order any other relief this Court deems necessary and proper.

**FIRST CLAIM FOR RELIEF**
**Violation of the Second and Fourteenth Amendments (42 U.S.C. § 1983)**
*The Ordinance requiring owners of guns to purchase insurance and pay annual fees*
*violates the Second and Fourteenth Amendments to the United States Constitution.*

82.     Plaintiffs incorporate by reference and re-allege each of the Paragraphs set forth above.

83.     The Second Amendment of the United States Constitution guarantees "the right of the people to keep and bear arms" and that right "shall not be infringed." U.S. CONST., amend. II.

84.     In a Second Amendment inquiry, a Court asks "whether the challenged law burdens conduct protected by the Second Amendment[.]" *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013).

85.     Government "may not impose a charge for the enjoyment of a right granted by the

First Amended Complaint                                                          5:22-cv-00501-BLF

1   federal constitution." *Murdock*, 319 U.S. at 113. For example, in 1973 the Minnesota legislature

2   passed a use tax on paper and ink. The Supreme Court struck down this special use tax because it

3   singled out the press for special treatment and the Court found that a "tax that burdens rights

4   protected by the [Constitution] cannot stand unless the burden is necessary to achieve an overriding

5   governmental interest." *Minneapolis Star and Tribune Co.*, 460 U.S. at 581.

6       86.     This is particularly true because the exercise of a constitutional right cannot be

7   conditioned upon a fee unless it is to defray an administrative expense. *Cox*, 312 U.S. at 577; *Kwong*,

8   723 F.3d at 165.

9       87.     The Ninth Circuit has adopted the *Murdock*/*Cox* standards for Second Amendment fee

10  cases. *Bauer v. Becerra*, 858 F.3d 1216 (9th Cir. 2017).

11                      ***The Ordinance Violates the Second Amendment***

12      88.     Both the Ordinance's Gun Harm Reduction Fee and insurance mandate impose costs

13  on gun owners in the City of San Jose just for exercising their Second Amendment rights.

14      89.     If the City has the power to impose these arbitrary burdens on gun ownership, there

15  would be no limiting principle to the amount of the fees and costs the City could mandate and

16  nothing to prevent the City from extinguishing the Second Amendment within its borders entirely.

17      90.     Though the Ordinance threatens the confiscation of guns and an unspecified fine for

18  noncompliance with its insurance and Gun Harm Reduction Fee, it does not specify a sum certain or

19  articulate standards that will determine the cost of the insurance requirement or either fee that the

20  Ordinance creates. Therefore, the as yet unknown financial burden of the Ordinance's insurance

21  requirement will be left to the whims of for-profit insurance companies without a clear standard for

22  what their policies must cover.  The City's fees, too, are left unstated and deferred to future,

23  unscheduled determinations of the City Council in an exercise of unfettered discretion. Any

24  statement by the City now regarding a minimal cost or burden rings hollow because there are no

25  constraints on the City's authority to increase the costs and burdens tomorrow.

26      91.     The City's dictate that the right to gun ownership will depend on citizens having an

27  unspecified insurance policy and payment of as-yet undetermined fee to a third party who has yet to

28  be chosen to fund unspecified programs beyond the City's control will chill and infringe upon on

---

17

First Amended Complaint                                          5:22-cv-00501-BLF

those citizens' Second Amendment rights.

92.     It is plausible, if not probable, that the Ordinance will discourage gun ownership, if not make it cost prohibitive, for at least some San Jose residents, particularly in light of the view of gun ownership reflected in the Ordinance's findings.

93.     Where, as here, taxes and fees are not anchored to value or income, they are also inherently regressive; their burden on citizens' rights will be inversely proportional to those citizens' ability to pay the taxes and fees.

94.     At the very least, any such a cost "infringe[s]" upon the constitutional right to keep and bear arms.

### The Ordinance Does Not Serve Its Claimed Purpose or Any Other Valid Purpose

95.     The Ordinance's "Purpose and Findings" recites facts about homicide, suicide, accidental injury and death, hospitalizations, probabilities of incidents as they correlate to gun ownership, and statistics from automobile insurance. Ordinance § 10.32.200.B. Accordingly, the City of San Jose appears to claim a stated objective of reducing gun violence.

96.     However, requiring gun owners to purchase an insurance policy and pay an annual fee to an unnamed nonprofit are not a reasonable fit to the asserted objective of reducing gun violence insofar as the violence to be reduced is committed by persons who do not register their guns and use their guns to commit crimes, or the injuries are inflicted by persons other than the guns' owners.

97.     The City makes no findings, other than conclusory statements, that insurance or funding nonprofits will impact gun violence, particularly gun violence by those who lawfully possess and register their firearms to be kept in the home as opposed to others who possess guns either unlawfully or outside the home. *See generally id.*, § 10.32.200.B. That the Ordinance does not in fact control how the chosen nonprofit would spend the City's fees, and specifically forbids the City from directing the spending of its own funds, further undermines the contention that payment of the fee would achieve the Ordinance's aims.

98.     The Ordinance cites a figure that "San Jose taxpayers annually spend approximately $39.7 million, or approximately $151 per firearm-owning household, to respond to gun violence with such public services as emergency police and medical response, victim assistance, incident

---

1  investigation, acute and long-term care, and perpetrator adjudication and judicial sanctioning."

2  Ordinance § 10.32.200.B.8. It includes a sum of $442 million if the calculation includes "private costs

3  to individuals and families." *Id.*, § 10.32.200.B.9.  But more than $328,355,500 (or 74%) of these

4  alleged costs are for the impact of guns on "quality of life" and a further $78,272,000 (or 18%) of the

5  asserted $442 million is for "lost work." Liccardo Mem. re Gun Harm Reduction Ord., Jan., 19, 2022

6  (Ex. L).

7        99.     However, the Gun Harm Reduction Fee will not reimburse the City, taxpayers, or

8  private individuals because the fee will be distributed entirely to a nonprofit. Likewise, the insurance

9  will not likely reimburse the City, taxpayers or private individuals for any intentional gun violence

10  committed by gun owners or injuries inflicted by uninsured persons or premises and, even if the gun

11  owner is insured, costs incurred by the City/taxpayers, such as ambulance, police, and judicial costs,

12  would not be reimbursed by an insurance carrier. Thus, the insurance and fee requirements do not fit

13  the government interest in reimbursing the costs incurred by the City/taxpayers or most private

14  individuals or their families who are injured through criminal gun violence (the majority of gun

15  injuries).

16        100.    To the extent that Defendants will assert a separate government interest, said

17  government interest would not be significant, substantial, or important.

18        101.    To the extent that Defendant will assert a separate government interest, requiring gun

19  owners to pay insurance and an annual fee to an unnamed nonprofit does not constitute a reasonable

20  fit for any other government interest.

21        102.    Neither the insurance requirement nor the fee requirement is historically or

22  presumptively lawful, in that, the Ordinance is a first-of-its-kind regulation of firearms.

23            *     *     *     *

24        103.    Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm

25  to their constitutional rights unless Defendants are enjoined from implementing and enforcing the

26  Ordinance.

27        104.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled preliminary and

28  permanent injunctive relief invalidating and restraining enforcement of the Ordinance as well as

---

19

First Amended Complaint                            5:22-cv-00501-BLF

1   declaratory relief.

2       105.    Plaintiffs found it necessary to engage the services of private counsel to vindicate their

3   rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42

4   U.S.C. § 1988.

5                            **SECOND CLAIM FOR RELIEF**

6           **Violation of the First and Fourteenth Amendments (42 U.S.C. § 1983)**
        *The payment of a fee to a nonprofit violates the free speech rights of gun owners by*
7       *compelling them to subsidize private speech on matters of substantial public concern.*

8       106.    Plaintiffs incorporate by reference and re-allege herein each of the Paragraphs set forth

9   above.

10      107.    The First Amendment protects Plaintiffs' freedom of speech which includes both the

11  right to speak freely and the right to refrain from speaking at all.

12      108.    The First Amendment protects the right of Plaintiffs to eschew association for

13  expressive purposes.

14      109.    The First Amendment prohibits government officials from forcing individuals to

15  support views that they find objectionable.

16      110.    Thomas Jefferson famously said that "to compel a man to furnish contributions of

17  money for the propagation of opinions which he disbelieves and abhor[s] is sinful and tyrannical."

18  *Janus*, 138 S.Ct. at 2464 (quoting *A Bill for Establishing Religious Freedom*, in 2 Papers of Thomas

19  Jefferson 545 (J. Boyd ed. 1950)).

20      111.    In *Janus*, the Supreme Court examined the case of compelled subsidization of private

21  speech. The Court never determined if the courts are to use strict scrutiny or exacting scrutiny

22  because in *Janus* the Court concluded that the "Illinois scheme cannot survive under even the more

23  permissive standard." *Id.* at 2465.

24      112.    Furthermore, the Defendants may not require Plaintiffs to pay fees to nonprofits when

25  those fees are going to be used to fund activities of ideological or political nature, such as endorsing

26  gun control. *See Keller*, 496 U.S. at 13.

27      113.    Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm

28  to their constitutional rights unless Defendants are enjoined from implementing and enforcing the

---

20

First Amended Complaint                                    5:22-cv-00501-BLF

Ordinance.

114.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled preliminary and permanent injunctive relief invalidating and restraining enforcement of the Ordinance, as well as declaratory relief.

115.     Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

### THIRD CLAIM FOR RELIEF
**Violation of article XI, §7 of the California Constitution-Field Preemption**
*The Ordinance occupies a field already occupied by California law.*

116.     Plaintiffs incorporate by reference and re-allege herein each of the Paragraphs set forth above.

117.     Article XI, section 7 of the California Constitution states that "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws."

118.     The State of California has voluminous statutes comprehensively regulating firearm ownership in California. *See generally* CAL. PENAL CODE §§ 23500-34370. California courts have already determined that "the Legislature intended to occupy the field of residential handgun possession to the exclusion of local government entities." *Fiscal*, 158 Cal.App.4th at 909 (citing Cal. Penal Code § 12026).[1]

119.     Accordingly, because the state legislature has already occupied the field of regulating residential handgun possession, as well as all conceivable fields of gun possession, local governments are excluded from further regulation of guns, particularly guns in the home.

120.     Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Ordinance.

---

[1] The state laws cited in *Fiscal* have since been repealed. However, they have been continued into other statutes with no substantive change.

---

21

First Amended Complaint                                    5:22-cv-00501-BLF

121.    Plaintiffs have found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

**FOURTH CLAIM FOR RELIEF**

**Violation of article XIII C, §1 of the California Constitution-Local Tax Elections**
***The Ordinance imposes new taxes, but was not submitted to the electorate for vote.***

122.    Plaintiffs incorporate by reference and re-allege herein each of the Paragraphs set forth above.

123.    The California Constitution requires that "No local government may impose, extend, or increase any general tax unless and until that tax is submitted to the electorate and approved by a majority vote." Article XIII C, §2(b).

124.    It also requires that "No local government may impose, extend, or increase any special tax unless and until that tax is submitted to the electorate and approved by a two-thirds vote." Article XIII C, §2(d).

125.    A "tax" is "any levy, charge, or exaction of any kind imposed by a local government," with exceptions that do not apply here. Article XIII C, §1(e).

126.    Thus, both of the fees in the Ordinance and the insurance requirement constitute a "tax."

127.    The Ordinance, whether it is a general or a special tax, was never submitted to the electorate for a vote.

128.    We note that, if the City disputes that the Ordinance is a tax, "the [City] bears the burden of proving by a preponderance of the evidence that a levy, charge, or other exaction is not a tax, that the amount is no more than necessary to cover the reasonable costs of the governmental activity, and that the manner in which those costs are allocated to a payor bear a fair or reasonable relationship to the payor's burdens on, or benefits received from, the governmental activity." Article XIII C, §1.

129.    The City cannot meet this burden because the fees imposed are a levy, charge, or exaction imposed by the city that does not meet any exception, and the amount of the fees are "more

22

First Amended Complaint                                                    5:22-cv-00501-BLF

than necessary to cover the reasonable costs of the governmental activity" because they are not for government activity, and "the manner in which those costs are allocated to" gun owners do not "bear a fair or reasonable relationship to the payor's burdens on, or benefits received from" the City's "governmental activity." Article XIII C, §1.

130. As stated previously, the insurance requirement and the fee allocated to a nonprofit do not cover "costs of a governmental activity" as the insurance is allocated to for-profit corporations and the fee is allocated to an unnamed nonprofit rather than the City.

131. Neither the insurance requirement nor the nonprofit fees bear a fair or reasonable relationship to the payor's burdens on, or benefits received from, a governmental activity.

132. Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Ordinance.

133. Plaintiffs have found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

**FIFTH CLAIM FOR RELIEF**
**San Jose City Charter, Art. IV, §§ 400, 502, 602, 701, 1204, 1206, 1207, 1211**
***The Ordinance Violates the Separation of Powers Within the City of San Jose's Government, its Budget and Appropriations Procedures, and Controls on the City's Receipts.***

134. Plaintiffs incorporate by reference and re-allege herein each of the Paragraphs set forth above.

135. The San Jose City Charter ("Charter") establishes the powers of the City of San Jose's government. San Jose City Charter § 200 (Ex. A).

136. The Charter divides the legislative power of the City's government from its executive power. "All powers of the City and the determination of all matters of policy shall be vested in the Council, subject to the provisions of this Charter and the Constitution of the State of California." *Id.*, § 400.

137. The Charter grants the City Council the power to impose taxes by ordinance. *Id.*, §

First Amended Complaint                                    5:22-cv-00501-BLF

1    602(c).

2         138.    Only the City Council has the power to establish a budget. *Id.* §§ 1204, 1206.  The

3    Council also has the sole power to appropriate the expenditure of City funds. *Id.*, § 1207.

4         139.    The City Manager is the "Chief Administrative Officer and head of the administrative

5    branch of the City government." *Id.*, § 502; *see also id.,* § 701.

6         140.    Finally, "[a]ll revenues and receipts which are not required by [the] Charter, State law

7    or ordinances to be placed in special funds shall be credited to the [City's] General Fund." *Id.*, § 1211.

8    The General Fund is "a medium of control and accounting for all City activities excepting activities

9    for which special funds are established and maintained." *Id.* CAL. GOV'T. CODE § 43400 also requires

10   monies received "from licenses, street poll taxes, fines, penalties, and forfeitures" to be put into the

11   general fund.

12        141.    Here, the Ordinance states that "[t]he City shall not specifically direct how the monies

13   from the Gun Harm Reduction Fee are expended" by its chosen nonprofit.  Ordinance, § 10.32.220.C.

14        142.    The Ordinance, by prohibiting the City from directing how "monies from the Gun

15   Harm Reduction Fee are expended" violates the San Jose City Charter's reservation of budgeting and

16   appropriation power to the City Council.

17        143.    The Ordinance also violates the City Charter's delegation of executive functions to the

18   "administrative" branch of the City Government under the leadership and control of the City Manager

19   because the Ordinance says "the City shall not specifically direct how the monies from the Gun Harm

20   Reduction Fee are expended" other than a vague directions to the nonprofit to "reduce the risk" of

21   harm from using firearms, "mitigate the risk" of harm or liability from possessing firearms, and to

22   spend the city's funds in ways including, *but not limited to*, various services. *Id.,* § 10.32.220.A, C.

23        144.    The Ordinance states that gun owners must pay the City-required, City-determined fee

24   directly to a nonprofit organization. *Id.*, § 10.32.215. By diverting the payment of the City's

25   mandatory fee directly to a nonprofit rather than the City's General Fund, the Ordinance violates the

26   City Charter's requirement that all City revenues and receipts be deposited into City accounts as an

27   essential means of City "control and accounting."

28        145.    Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm

---

24

First Amended Complaint                                          5:22-cv-00501-BLF

to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Ordinance.

146.    Plaintiffs have found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

**SIXTH CLAIM FOR RELIEF**
**Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202**
*Plaintiffs are entitled to declaratory relief.*

147.    Plaintiffs incorporate by reference and re-allege herein each of the Paragraphs set forth above.

148.    To the extent that each of the claims above have not already established a remedy, Plaintiffs are entitled to declaratory relief holding that the Ordinance violates Plaintiffs' individual rights under the United States and California constitutions and San Jose's City Charter, and is otherwise invalid, are entitled to preliminary and permanent injunctions preventing the enforcement of the Ordinance, nominal damages, and further relief that this Court deems necessary or proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray, on behalf of themselves and all of NAGR's members, for the following:

A.    Preliminary and permanent injunctions enjoining Defendants and all successors in office from enforcing the Ordinance, including those authorized by 42 U.S.C. § 1983 and Cal. Civil Code §52.1;

B.    A declaratory judgment that the Ordinance violates the First, Second, and Fourteenth Amendments of the United States Constitution and article XI, section 7 and article XIII C of the California Constitution, San Jose's City Charter, and granting the necessary and proper relief this Court deems appropriate, including relief authorized by 28 U.S.C. §§ 2201, 2202;

C.    Nominal damages;

D.    Costs and attorneys' fees, including those authorized by 42 U.S.C. § 1988 and California Code of Civil Procedure Section 1021.5; and

25

First Amended Complaint                                                  5:22-cv-00501-BLF

E.      Any other relief as this Court, in its discretion, deems just and appropriate.


Dated: February 14, 2022                    DHILLON LAW GROUP INC.


                                            By:  _/s/ Harmeet K. Dhillon_____
                                            Harmeet K. Dhillon
                                            Michael A. Columbo
                                            Mark P. Meuser
                                            DHILLON LAW GROUP INC.
                                            177 Post Street, Suite 700
                                            San Francisco, California 94108
                                            (415) 433-1700

                                            David A. Warrington*
                                            Curtis M. Schube*
                                            DHILLON LAW GROUP INC.
                                            2121 Eisenhower Avenue, Suite 402
                                            Alexandria, VA 22314
                                            (571) 400-2121

                                            *Admission *pro hac vice* forthcoming

                                            *Attorneys for Plaintiffs*

26

First Amended Complaint                                     5:22-cv-00501-BLF

# Exhibit 2

Joseph W. Cotchett (SBN 36324)
jcotchett@cpmlegal.com
Tamarah P. Prevost (SBN 313422)
tprevost@cpmlegal.com
Andrew F. Kirtley (SBN 328023)
akirtley@cpmlegal.com
Melissa Montenegro (SBN 329099)
mmontenegro@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Attorneys for Defendant City of San Jose*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| **Howard Jarvis Taxpayers Association**; Silicon Valley Taxpayers Association, Inc.; Silicon Valley Public Accountability Foundation; James Barry; and George Arrington, <br><br> Plaintiffs, <br><br> v. <br><br> **City of San Jose**, and all persons interested in the matter of San Jose Ordinance No. 30716, establishing an Annual Gun Harm Reduction Fee, <br><br> Defendants. | Case No. _____ <br><br> **NOTICE OF REMOVAL** <br><br> [28 U.S.C. §§ 1331, 1367, 1441, 1446] <br><br> Complaint filed: March 7, 2022 <br> Complaint served: March 16, 2022 <br> Removal date: April 15, 2022 |

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C §§ 1331, 1367, 1441, and 1446, Defendant City of San Jose ("City") hereby removes the above-captioned action from the Santa Clara County Superior Court to the United States District Court for the Northern District of California. In support of this Notice of Removal, the City states as follows.

## I.   INTRODUCTION

1.      On March 7, 2022, Plaintiffs Howard Jarvis Taxpayers Association, Silicon Valley Taxpayers Association, Silicon Valley Public Accountability Foundation, James Barry, and George Arrington (collectively, "Plaintiffs") commenced this action against the City in the Santa Clara County Superior Court, assigned Case No. 22CV395596, with the filing of a complaint titled "Complaint to Invalidate §§ 10.32.215 and 10.32.230(B) of Chapter 10.32 of the Title 10 of the San Jose Municipal Code" ("Complaint"), a copy of which is attached here as **Exhibit A**.

2.      A copy of the state court docket sheet for this action, downloaded from the Santa Clara County Superior Court within 24 hours of the date and time this Notice of Removal is being filed, is attached here as **Exhibit B**.

3.      The Complaint brings four causes of action: **(1)** "Violation of Constitutional Rights of Speech and Association" (under the First and Fourteenth Amendments to the U.S. Constitution and Article I, Sections 2 and 3 of the California Constitution, *see* Compl. ¶ 17); **(2)** "Unconstitutional Condition" (under the Second Amendment to the U.S. Constitution and Article I, Section 1 of the California Constitution, *see id.* ¶ 21); **(3)** "Special Tax Lacking Voter Approval" (under Article XIII C, Sections 1 and 2 of the California Constitution, *see id.* ¶¶ 27, 29-30); and **(4)** "Unconstitutional Delegation of Power to Tax" (under Article XI, Section 11, and Article XIII, Section 31 of the California Constitution, *see id.* ¶ 36).

## II.   JURISDICTION AND BASIS FOR REMOVAL

4.      Removal jurisdiction exists in this matter under 28 U.S.C. §§ 1441(a) and 1446(a) because this case is a "civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a).

5.      This Court has original jurisdiction under 28 U.S.C. § 1331 with respect to Plaintiffs' claims that certain provisions of a City Ordinance violate their rights arising under federal law—namely, the First and Second Amendments to the U.S. Constitution, as applied to the City through the Fourteenth Amendment. *See* Compl. ¶¶ 17, 19, 21.

6.      This Court has supplemental jurisdiction under 28 U.S.C § 1367 with respect to Plaintiffs' other claims, which arise under California state law, because those other claims regard the same provisions of the same City Ordinance and are otherwise "so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367.

## III.   VENUE AND INTRADISTRICT ASSIGNMENT

7.      Removal to this Court is proper under 28 U.S.C. §§ 84(a), 1441(a), and 1446(a) because Santa Clara County Superior Court, where the Complaint was filed, is a state court within the Northern District of California.

8.      Pursuant to Northern District of California Civil Local Civil Rule 3-2(c) and (e), this case should be assigned to the San Jose Division, as the alleged events giving rise to the action occurred in San Jose and concern the City of San Jose and its residents. *See* Compl. ¶¶ 4-6, 9, 19.

## IV.   PROCEDURAL REQUIREMENTS

9.      Plaintiffs served the City on March 16, 2022. *See* **Exhibit C** (Proof of Service). This Notice of Removal is being filed within 30 days of service, in accordance with 28 U.S.C § 1446(b).

10.     "[A] copy of all process, pleadings, and orders" served upon the removing defendant (i.e., the City) in this action are attached here as **Exhibit D**, in accordance with 28 U.S.C § 1446(a).

11.     A copy of this Notice of Removal is being filed with the Clerk of the Santa Clara County Superior Court and is being served on all adverse parties, through their counsel of record, in accordance with 28 U.S.C. § 1446(d).

12.     "[A]ll defendants who have been properly joined and served" have joined or consented to the removal of this action, in accordance with 28 U.S.C. § 1446(b)(2)(A). The City is the only defendant that has been "properly joined and served" in this action for purposes of Section

1446(b)(2)(A). While the Complaint also names as defendants "all persons interested in the matter of San Jose Ordinance No. 30716" (Compl. ¶ 7), all such persons are nominal or unknown, and none of them are "defendants who have been properly joined and served" for purposes of the federal removal statute. *See Baker v. Wells Fargo Bank, N.A.*, No. 1:16-cv-01943, 2017 WL 931879, at *3 (E.D. Cal. Mar. 9, 2017) ("the general requirement of consent does not apply to 'nominal, unknown, or fraudulently joined parties'").

**V.    CONCLUSION**

WHEREFORE, pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446, Defendant City of San Jose hereby removes this action from the Santa Clara County Superior Court to the United States District Court for the Northern District of California.

Respectfully submitted,

Dated:  April 15, 2022                    **COTCHETT, PITRE & McCARTHY, LLP**

By:    */s/ Tamarah P. Prevost*
                    Joseph W. Cotchett
                    Tamarah P. Prevost
                    Andrew F. Kirtley
                    Melissa Montenegro

*Attorneys for Defendant City of San Jose*

# Exhibit A

1    JONATHAN M. COUPAL, State Bar No. 107815
     TIMOTHY A. BITTLE, State Bar No. 112300
2    LAURA E. DOUGHERTY, State Bar No. 255855
     Howard Jarvis Taxpayers Foundation
3    921 Eleventh Street, Suite 1201
     Sacramento, CA 95814
4    (916) 444-9950
     Email: tim@hjta.org
5
6    Attorneys for Plaintiffs

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA
                    FOR THE COUNTY OF SANTA CLARA
9

10   HOWARD JARVIS TAXPAYERS ASSN.,      )   No.   22CV395596
     SILICON VALLEY TAXPAYERS ASSN.,     )
11   SILICON VALLEY PUBLIC ACCOUNTA-     )
     BILITY FOUNDATION, JAMES BARRY,     )
12   and GEORGE ARRINGTON,               )   **COMPLAINT TO INVALIDATE
                                         )   §§ 10.32.215 AND 10.32.230(B) OF
13              Plaintiffs               )   CHAPTER 10.32 OF TITLE 10 OF THE
                                         )   SAN JOSE MUNICIPAL CODE**
14        v.                             )
                                         )
15   CITY OF SAN JOSE, and ALL PERSONS   )   **Calendar preference per CCP § 867**
     INTERESTED in the matter of San Jose )
16   Ordinance No. 30716, establishing an )
     Annual Gun Harm Reduction Fee,      )
17                                       )
                Defendants               )
18   _____)

19

20

21

22

23

24

25

26

27

**PARTIES**

1.     Plaintiff Howard Jarvis Taxpayers Association ("HJTA") is a nonprofit public benefit corporation, comprised of over 200,000 California members, organized and existing under the laws of California for the purpose, among others, of engaging in civil litigation on behalf of its members and all California taxpayers to ensure constitutionality in taxation.  HJTA has members who reside in the City of San Jose, who legally own firearms, and who are subject to the Annual Gun Harm Reduction Fee that is the subject of this action.

2.     Plaintiff Silicon Valley Taxpayers Association, Inc. ("SVTA") is a nonprofit public benefit corporation, comprised of members who reside in Santa Clara County, organized and existing under the laws of California for the purpose of advocating the reduction of taxes and acting on behalf of its members to achieve its tax reduction goals.  SVTA has members who reside in the City of San Jose, who legally own firearms, and who are subject to the Annual Gun Harm Reduction Fee that is the subject of this action.

3.     Plaintiff Silicon Valley Public Accountability Foundation ("SVPAF") is a nonprofit public benefit corporation, comprised of members who reside in Santa Clara County, organized and existing under the laws of California for the purpose of monitoring the policies and political actions of public officials in Santa Clara County to keep voters informed and residents represented in local decision-making.  SVPAF has members who reside in the City of San Jose, who legally own firearms, and who are subject to the Annual Gun Harm Reduction Fee that is the subject of this action.

4.     Plaintiff James Barry is a resident of San Jose who legally owns a firearm and is subject to the Annual Gun Harm Reduction Fee that is the subject of this action.

5.     Plaintiff George Arrington is a resident of San Jose who legally owns a firearm and is subject to the Annual Gun Harm Reduction Fee that is the subject of this action.

2

*HJTA v. City of San Jose*, No. _____, Complaint

6.     Defendant City of San Jose ("City") is a charter city located in Santa Clara County.  The Annual Gun Harm Reduction Fee that is the subject of this action is a law of the City, which the City is responsible for enforcing.  The City can sue and be sued under Government Code § 34501.

7.     The remaining defendants are all persons interested in the matter of San Jose Ordinance No. 30716, establishing an Annual Gun Harm Reduction Fee.

### JURISDICTION AND CALENDAR PREFERENCE

8.     Plaintiffs bring this action under the validation statutes (Code of Civ. Proc. §§ 860, et seq.) because plaintiffs allege that the challenged Gun Harm Reduction Fee is a special tax, albeit not voter approved (see Gov. Code § 50077.5), and because defendant City may have already entered into a contract with a designated nonprofit organization (see Gov. Code § 53511).  Jurisdiction will be established by personal service upon the City's representative and publication of the summons in a newspaper of general circulation within the City of San Jose as required by the validation statutes. The action is entitled to calendar preference over all other civil matters under Code of Civil Procedure section 867.

### FIRST CAUSE OF ACTION

### (Violation of Constitutional Rights of Speech and Association)

9.     Ordinance No. 30716 was passed into law by the City Council of the City of San Jose on or about February 8, 2022.  Ordinance No. 30716 added Part 6 to Chapter 10.32 of Title 10 of the San Jose Municipal Code, entitled "Reduction of Gun Harm – Liability Insurance Requirement and Gun Harm Reduction Fee" (hereafter "the Ordinance").

10.   The Ordinance requires any San Jose resident who owns a firearm to "obtain and continuously maintain in full force and effect a homeowner's, renter's or gun liability insurance policy ... specifically covering losses or damages resulting from any accidental use of the Firearm."  (San Jose Muni. Code § 10.32.210(A).)  This

*HJTA v. City of San Jose*, No. _____, Complaint

3

1  requirement of the Ordinance is not challenged herein.

2      11.  The Ordinance also requires San Jose gun owners to pay an "Annual Gun

3  Harm Reduction Fee" to a "Designated Nonprofit Organization" that the City Manager

4  will designate from time to time.  The amount of the annual fee "will be set forth in the

5  schedule of fees and charges established by resolution of the City Council."  (Muni.

6  Code § 10.32.215.)  It is this fee that plaintiffs challenge herein.

7      12.  "Designated Nonprofit Organization" is defined in the Ordinance as "an

8  entity that qualifies as a nonprofit corporation under the federal internal revenue code

9  and is designated pursuant to the City Manager's authority under Section 10.32.235,"

10  provided that "[n]o City official or employee shall sit on the board of directors of the

11  Designated Nonprofit Organization."  (Muni. Code § 10.32.205(B).)  Section 10.32.235,

12  in subdivision (A)(2), delegates authority to the City Manager for "[d]esignation of the

13  nonprofit organization that will receive the Gun Harm Reduction Fee."

14      13.  The Ordinance provides basic guidelines for expenditure of the fee by the

15  nonprofit organization.  It says, "expenditures may include, but are not necessarily

16  limited to the following: (1) Suicide prevention services or programs; (2) Violence

17  reduction or gender based violence services or programs; (3) Addiction intervention and

18  substance abuse treatment; (4) Mental health services related to gun violence; or (5)

19  Firearms safety education or training."  (Muni. Code § 10.32.220(A).)

20      14.  The Ordinance further states, "The Designated Nonprofit Organization shall

21  spend every dollar generated from the Gun Harm Reduction Fee, minus administrative

22  expenses, exclusively for programs and initiatives designed to (a) reduce the risk or

23  likelihood of harm from the use of firearms in the City of San Jose, and (b) mitigate the

24  risk of physical harm or financial, civil, or criminal liability that a San Jose firearm owner

25  or her family will incur through her possession of firearms."  (Muni. Code §

26  10.32.220(C).)

27      15.  Except for these basic guidelines, the Ordinance provides that "the City

4

*HJTA v. City of San Jose*, No. _____, Complaint

shall not specifically direct how the monies from the Gun Harm Reduction Fee are expended." (Muni. Code § 10.32.220(C).)

16. A gun owner's failure to pay the required fee to the designated private organization is punishable by a fine (Muni. Code § 10.32.240(A)) and confiscation of the owner's firearms (Muni. Code § 10.32.245).

17. The First Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides, "Congress shall make no law ... abridging the freedom of speech ... or the right of the people peaceably to assemble." Article I, sections 2 and 3 of the California Constitution provide, "A law may not restrain or abridge liberty of speech," and "The people have the right to ... assemble freely to consult for the common good."

18. Liberty of speech includes the right to not speak and the right to not be forced by the government to support someone else's speech, particularly when you disagree with their message. The right to assemble freely includes the right to associate with others around a common cause and the right to not be forced by the government to associate with or support someone else's organization, particularly a group with which you would not voluntarily assemble.

19. By requiring San Jose gun owners to pay an Annual Gun Harm Reduction Fee to a private nonprofit organization that the City Manager will designate, the Ordinance forces San Jose gun owners to associate with or support that private group and to fund their message, in violation of the gun owners' rights of free speech and association under the United States and California constitutions.

WHEREFORE, plaintiffs pray for judgment as hereinafter set forth.

**SECOND CAUSE OF ACTION**

**(Unconstitutional Condition)**

20. Plaintiffs repeat the allegations contained in Paragraphs 1 through 19 above as though fully set forth herein.

5

*HJTA v. City of San Jose*, No. _____, Complaint

21.   The Second Amendment of the United States Constitution provides, "the right of the people to keep and bear arms, shall not be infringed."  Article I, section 1 of the California Constitution provides that "All people ... have inalienable rights" among which are the rights of "protecting property, and pursuing and obtaining safety."

22.   Plaintiff gun owners wish to continue exercising their rights under the United States and California constitutions to protect their property and personal safety by keeping and bearing arms.  However, the Ordinance has placed a condition on the continued exercise of those rights: any gun owner who fails to pay the required fee to the designated private organization may be forced to surrender his firearms to the City. (Muni. Code § 10.32.245.)

23.   Plaintiff gun owners' constitutional rights are "inalienable."  They are not rights granted by the City of San Jose that can be withheld or revoked by the City if gun owners do not comply with conditions contrived by the City.

WHEREFORE, plaintiffs pray for judgment as hereinafter set forth.

### THIRD CAUSE OF ACTION

### (Special Tax Lacking Voter Approval)

24.   Plaintiffs repeat the allegations contained in Paragraphs 1 through 23 above as though fully set forth herein.

25.   The Annual Gun Harm Reduction Fee is imposed by the City of San Jose.

26.   The Annual Gun Harm Reduction Fee is a compulsory exaction.

27.   Article XIII C, section 1(e) of the California Constitution defines a "tax" as "any levy, charge, or exaction of any kind imposed by a local government" unless it fits one of seven limited exceptions.

28.   Although labeled a "fee" by the City, the Annual Gun Harm Reduction Fee does not qualify for any exception from the definition of a "tax" enumerated in article XIII C, section 1(e).  Therefore it is a tax.

29.   Taxes are either "general taxes" or "special taxes."  A "special tax" is "any

6

*HJTA v. City of San Jose*, No. _____, Complaint

1    tax imposed for specific purposes."  (Cal. Const., art. XIII C, § 1(d).)  The Annual Gun

2    Harm Reduction Fee is imposed ostensibly for the purpose of reducing gun harm.

3    Therefore, it is a special tax.

4        30.   Article XIII C, section 2(d) of the California Constitution provides, "No local

5    government may impose, extend, or increase any special tax unless and until that tax is

6    submitted to the electorate and approved by a two-thirds vote."

7        31.   The Annual Gun Harm Reduction Fee was not submitted to the electorate

8    or approved by a two-thirds vote.

9        WHEREFORE, plaintiffs pray for judgment as hereinafter set forth.

10   **FOURTH CAUSE OF ACTION**

11   **(Unconstitutional Delegation of Power to Tax)**

12       32.   Plaintiffs repeat the allegations contained in Paragraphs 1 through 31

13   above as though fully set forth herein.

14       33.   Only the government possesses the power to tax.

15       34.   The power to tax includes the power to collect taxes and appropriate tax

16   revenues.

17       35.   Under the Ordinance, the Annual Gun Harm Reduction Fee will be collected

18   by the private nonprofit organization that the City Manager will designate.  That revenue

19   will not be remitted to the City, but will be appropriated by the private organization.  San

20   Jose Municipal Code section 10.32.220(C) states, "The Designated Nonprofit

21   Organization shall spend every dollar generated from the Gun Harm Reduction Fee,"

22   and "the City shall not specifically direct how the monies from the Gun Harm Reduction

23   Fee are expended."

24       36.   Under article XIII, section 31 of the California Constitution, the power to tax

25   may not be granted to a private entity.  It provides, "The power to tax may not be

26   surrendered or suspended by grant or contract."  Similarly, article XI, section 11

27   prohibits the delegation of local powers to private entities.  It prohibits "delegat[ing] to a

7

*HJTA v. City of San Jose*, No. _____, Complaint

1  private person or body power to make, control, appropriate, supervise, or interfere with

2  county or municipal corporation improvements, money, or property, or to levy taxes or

3  assessments, or perform municipal functions."

4      37.  The Ordinance unconstitutionally delegates some of the City's power to tax

5  and appropriate tax revenues to a private organization, not answerable to the voters,

6  that the City Manager will designate.

7      WHEREFORE, plaintiffs pray for judgment as set forth below:

8                      **PRAYER**

9      Based on the foregoing allegations, plaintiffs pray for judgment against

10  defendants as follows:

11      1.  For an Order invalidating sections 10.32.215 and 10.32.230(B) of chapter

12  10.32 of title 10 of the San Jose Municipal Code;

13      2.  For costs of suit including reasonable attorney fees; and

14      3.  For such other or further relief as the Court deems just and proper.

15      DATED: March 7, 2022.

16                      Respectfully submitted,

17                      JONATHAN M. COUPAL
                      TIMOTHY A. BITTLE

18                      LAURA E. DOUGHERTY

19

20                      TIMOTHY A. BITTLE
                    Attorneys for Plaintiffs

21

22

23

24

25

26

27

                                8

*HJTA v. City of San Jose*, No. _____, Complaint

**VERIFICATION**

I, Timothy A. Bittle, am the Director of Legal Affairs for the Howard Jarvis Taxpayers Association, one of the plaintiffs in this action, and authorized to sign this Verification on the Association's behalf. The other plaintiffs are absent from the County of Sacramento where I have my office, and I make this verification for that reason as well.

I have read the attached complaint. Except as to matters stated on information and belief, the allegations contained in the complaint are true of my own knowledge and, with regard to those matters stated on information and belief, I believe them to be true.

I declare, upon penalty of perjury under the laws of the State of California, that the foregoing is true and correct and that this verification was executed on the date shown below in the City of Sacramento, California.

DATED: March 7, 2022.

TIMOTHY A. BITTLE

*HJTA v. City of San Jose*, No. _____, Complaint

# Exhibit B

SER-123

# 22CV395596

`Print`

## Howard Jarvis Taxpayers Association et al vs All Persons Interested in the matter of San Jose Ordinance No. 30716, et al

**Case Information**

**Case Type:** Other Complaint (Not Spec)
Unlimited (42)
**Case Number:** 22CV395596
**Filing Date:** 3/7/2022
**Case Status:** Active
**Court Location:** Civil

PARTIES

EVENTS

HEARINGS

Show All entries                                                    Search:

| ▲ Type | First Name | Middle Name | Last Name |
|---|---|---|---|
| Defendant | | | All Persons Interested in the matter of San Jose Ordinance No. 30716, |
| Defendant | | | City of San Jose |
| Plaintiff | | | Howard Jarvis Taxpayers Association |
| Plaintiff | James | | Barry |
| Plaintiff | George | | Arrington |
| Plaintiff | | | Silicon Valley Taxpayers Association |
| Plaintiff | | | Silicon Valley Public Accountability Foundation |

Showing 1 to 7 of 7 entries                                    Previous  1  Next

## Attorneys

Show All entries                                                    Search:

| ▲ Representing | First Name | Middle Name | Last Name |
|---|---|---|---|
| Howard Jarvis Taxpayers Association | Timothy | Arthur | Bittle |
| Silicon Valley Public Accountability Foundation | Timothy | Arthur | Bittle |
| Silicon Valley Taxpayers Association | Timothy | Arthur | Bittle |
| George Arrington | Timothy | Arthur | Bittle |
| James Barry | Timothy | Arthur | Bittle |

Showing 1 to 5 of 5 entries                                    Previous  1  Next

Show All entries                                                    Search:

| ▲ File Date | File Type | Filed By | Comment | Documents |
|---|---|---|---|---|
| 4/14/2022 | Proof of Service: Summons DLR (Civil) | Howard Jarvis Taxpayers Association, James Barry, George Arrington, Silicon Valley Taxpayers Association, Silicon Valley Public Accountability Foundation, | Proof of Published Service of Summons on "All Persons Interested" | 📄 |
| 3/25/2022 | Order: Ex Parte | Timothy Bittle, Howard Jarvis Taxpayers Association, James Barry, George Arrington, Silicon Valley Taxpayers Association, Silicon Valley Public Accountability Foundation, | GRANTED Order Approving Publication of Summons | 📄 |
| 3/24/2022 | Proof of Service | Timothy Bittle, Howard Jarvis Taxpayers Association, James Barry, George Arrington, Silicon Valley Taxpayers Association, Silicon Valley Public Accountability Foundation, | | 📄 |

| File Date | File Type | Filed By | Comment | Documents |
|---|---|---|---|---|
| 3/24/2022 | Ex Parte Application - Notice Required | Timothy Bittle, Howard Jarvis Taxpayers Association, James Barry, George Arrington, Silicon Valley Taxpayers Association, Silicon Valley Public Accountability Foundation, | for Order Approving Publication of Summons; Declaration of Timothy Bittle; Memorandum of Points and Authorities | 📄 |
| 3/22/2022 | Opposition/Objections | City of San Jose, | to Ex Parte Application for Order Approving Publication of Summons | 📄 |
| 3/22/2022 | Request: Judicial Notice | City of San Jose, | In Support of Opposition to Ex Parte Application for Order Approving Publication of Summons | 📄 |
| 3/18/2022 | Proof of Service: Summons DLR (Civil) | Howard Jarvis Taxpayers Association, James Barry, George Arrington, Silicon Valley Taxpayers Association, Silicon Valley Public Accountability Foundation, | Proof of Service of Summons | 📄 |
| 3/7/2022 | New Filed Case | | | |
| 3/7/2022 | Complaint (Unlimited) (Fee Applies) | Howard Jarvis Taxpayers Association, James Barry, George Arrington, Silicon Valley Taxpayers Association, Silicon Valley Public Accountability Foundation, | Complaint to Invalidate Sections 10.32.215 and 10.32.230(B) of Chapter 10.32 of Title 10 of the San Jose Municipal Code | 📄 |
| 3/7/2022 | Civil Case Cover Sheet | Howard Jarvis Taxpayers Association, James Barry, George Arrington, Silicon Valley Taxpayers Association, Silicon Valley Public Accountability Foundation, | Civil Case Cover Sheet | 📄 |
| 3/7/2022 | Summons: Issued/Filed | Howard Jarvis Taxpayers Association, James Barry, George Arrington, Silicon Valley Taxpayers Association, Silicon Valley Public Accountability Foundation, | Summons | 📄 |

Showing 1 to 11 of 11 entries

Previous **1** Next

Show All entries                    Search: _____

| Department | Type | Date | Time | Result |
|---|---|---|---|---|
| Department 20 | Conference: Case Management | 8/2/2022 | 3:00PM | |

Showing 1 to 1 of 1 entries

Previous **1** Next

# Exhibit C

R. Fleming

**POS-010**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Timothy Bittle, 112300<br>Howard Jarvis Taxpayers Foundation<br>921 11th Street, Suite 1201<br>Sacramento, CA 95814<br>**TELEPHONE NO.:** (916) 444-9950<br>ATTORNEY FOR *(Name):* Plaintiff | *FOR COURT USE ONLY*<br><br>**Electronically Filed<br>by Superior Court of CA,<br>County of Santa Clara,<br>on 3/18/2022 11:25 AM<br>Reviewed By: R. Fleming<br>Case #22CV395596<br>Envelope: 8543660** |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF

Superior Court of California, Santa Clara County
191 N. First Street
San Jose, CA 95113-1090

| | |
|---|---|
| PLAINTIFF/PETITIONER: Howard Jarvis Taxpayers Assn., et al.<br><br>DEFENDANT/RESPONDENT: City of San Jose, et al. | CASE NUMBER:<br><br>22CV395596 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

1. At the time of service I was a citizen of the United States, at least 18 years of age and not a party to this action.
2. I served copies of: Summons, Complaint, Alternative Dispute Information Sheet

3. a. Party served: City of San Jose

   b. Person Served: Office of the City Clerk - Person Authorized to Accept Service of Process
4. Address where the party was served: 200 E Santa Clara St, Tower 14th Floor
   San Jose, CA 95113
5. I served the party
   b. **by substituted service.** On (date): 03/16/2022    at (time): 1:58PM    I left the documents listed in item 2 with or
   in the presence of: Toni Taber - Deputy City Clerk - Person In Charge Of Office
        (1) (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the
        person to be served. I informed him or her of the general nature of the papers.
        (4) A declaration of mailing is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   d. on behalf of:
   City of San Jose

   under:    CCP 416.50 (public entity)
7. **Person who served papers**
   a. Name:    Joseph Hussey
   b. Address:    One Legal - P-000618-Sonoma
          1400 North McDowell Blvd, Ste 300
          Petaluma, CA 94954
   c. Telephone number: 415-491-0606
   d. The fee for service was: $   153.00
   e. I am:
        (3) registered California process server.
          (i) Employee or independent contractor.
          (ii) Registration No. ps1611
          (iii) County Santa Clara

8. I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Date: 03/16/2022

Joseph Hussey
_____
(NAME OF PERSON WHO SERVED PAPERS)                    (SIGNATURE)

| | |
|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California POS-010<br>[Rev. Jan 1, 2007] | Code of Civil Procedure, § 417.10 |

**PROOF OF SERVICE OF SUMMONS**

OL# 17868464

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address): | | TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|---|---|
| Timothy Bittle, 112300<br>Howard Jarvis Taxpayers Foundation<br>921 11th Street, Suite 1201<br>Sacramento, CA 95814 | | (916) 444-9950 | |
| ATTORNEY FOR (Name): Plaintiff | Ref. No. or File No. | | |

Insert name of court, judicial district or branch court, if any:

Santa Clara - First Street
191 N. First Street
San Jose, CA 95113-1090

PLAINTIFF:

Howard Jarvis Taxpayers Assn., et al.

DEFENDANT:

City of San Jose, et al.

| **PROOF OF SERVICE BY MAIL** | | | CASE NUMBER:<br>22CV395596 |
|---|---|---|---|

I am a citizen of the United States, over the age of 18 and not a party to the within action. My business address is 1400 N. McDowell Blvd, Petaluma, CA 94954.

On 03/17/2022, after substituted service under section CCP 415.20(a) or 415.20(b) or FRCP 4(e)(2)(B) or FRCP 4(h)(1)(B) was made (if applicable), I mailed copies of the:

Summons, Complaint, Alternative Dispute Information Sheet

to the person to be served at the place where the copies were left by placing a true copy thereof enclosed in a sealed envelope, with First Class postage thereon fully prepaid, in the United States Mail at Petaluma, California, addressed as follows:

City of San Jose

Office of the City Clerk (or authorized staff)

200 E Santa Clara St, Tower 14th Floor

San Jose, CA 95113

I am readily familiar with the firm's practice for collection and processing of documents for mailing. Under that practice, it would be deposited within the United States Postal Service, on that same day, with postage thereon fully prepaid, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

Fee for Service: $ 153.00

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct and that this declaration was executed on 03/17/2022 at Petaluma, California.

One Legal - P-000618-Sonoma

1400 North McDowell Blvd, Ste 300

Petaluma, CA 94954

Melissa Berry

OL# 17868464

# Exhibit D

1    JONATHAN M. COUPAL, State Bar No. 107815
     TIMOTHY A. BITTLE, State Bar No. 112300
2    LAURA E. DOUGHERTY, State Bar No. 255855
     Howard Jarvis Taxpayers Foundation
3    921 Eleventh Street, Suite 1201
     Sacramento, CA 95814
4    (916) 444-9950
     Email: tim@hjta.org
5
     Attorneys for Plaintiffs
6

**F I L E D**

MAR 23 2022

Clerk of the Court
Superior Court of CA County of Santa Clara
BY _R. Sandoval_ DEPUTY

7

8            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
              **FOR THE COUNTY OF SANTA CLARA**
9

10    HOWARD JARVIS TAXPAYERS ASSN.,  )   No. 22CV395596
     SILICON VALLEY TAXPAYERS ASSN.,  )
11    SILICON VALLEY PUBLIC ACCOUNTA-  )
     BILITY FOUNDATION, JIM BARRY, and  )
12    GEORGE ARRINGTON,  )   **EX PARTE APPLICATION FOR ORDER**
                                  )   **APPROVING PUBLICATION OF**
13             Plaintiffs  )   **SUMMONS; DECLARATION OF**
                                  )   **TIMOTHY BITTLE; MEMORANDUM OF**
14           v.  )   **POINTS AND AUTHORITIES**
                                  )
15    CITY OF SAN JOSE, and ALL PERSONS  )
     INTERESTED in the matter of San Jose  )
16    Ordinance No. 30716, establishing an  )   Department:     20
     Annual Gun Harm Reduction Fee,  )   Case Filed:     March 7, 2022
17                                     )   Trial Date:      Not Set
             Defendants  )
18    _____  )   Calendar preference per CCP § 867
19
20                  **TELEPHONE APPEARANCE**
21
22
23
24
25
26
27

1

## EX PARTE APPLICATION

2      Plaintiffs Howard Jarvis Taxpayers Association *et al.* hereby apply *ex parte* for

3  an Order approving the form of, and the publication of, summons upon all persons

4  interested in the matter of City of San Jose Ordinance No. 30716, establishing an

5  Annual Gun Harm Reduction Fee.

6      Plaintiffs have sued the City of San Jose ("City") to invalidate the new gun fee on

7  the grounds that it violates their constitutional rights of free speech and association,

8  places an unconstitutional condition on their right to bear arms, is a special tax which

9  needed 2/3 voter approval, unlawfully delegates governmental taxing power to a private

10  organization, and for these reasons is invalid.

11      This application is made on the grounds that Government Code sections

12  50077.5 and 53511 require plaintiffs' lawsuit to be brought as a reverse-validation

13  action against "all persons" under Code of Civil Procedure sections 860 *et seq.*

14  Pursuant to Code of Civil Procedure sections 861, 861.1, and 863, all persons

15  interested must be specially notified through published summons.  The proposed form

16  of published summons is attached to the accompanying proposed Order as Exhibit 1.

17  Supporting this Application are the attached (1) Declaration of Timothy Bittle and (2)

18  Memorandum of Points and Authorities.

19      DATED: March 17, 2022.

20                              Respectfully submitted,

21                              JONATHAN M. COUPAL
                                TIMOTHY A. BITTLE
22                              LAURA E. DOUGHERTY

23

24                              TIMOTHY A. BITTLE
                                Attorneys for Plaintiffs

25

26

27

2

*HJTA v. City of San Jose*, No.22CV395596, App. to Publish Summons

## DECLARATION OF TIMOTHY BITTLE

I, Timothy Bittle, declare:

1.     I am an attorney duly licensed by the State of California, admitted to practice before this Court, and counsel for plaintiffs in this action.  I have personal knowledge of the facts to follow and if called as a witness, my testimony would be the same.

2.     On March 17,  2022, at approximately 10:00 a.m., I called the San Jose City Attorney's Office, explained that I was calling to give notice of this ex parte application, and asked to speak with the deputy assigned to this case.  I was informed that no deputy had yet been assigned, but that I could leave my message with Vada Burrow for City Attorney Nora Frimann.  I was connected to Ms. Burrow's voicemail and I left a message that plaintiffs would be depositing this application in the Court's drop box on Monday, March 21, 2022, hoping for a hearing on Thursday, March 24, 2022. Shortly after hanging up, I sent the same message to the City Attorney's email address, cao.main@sanjoseca.gov, attaching a copy of the ex parte papers we would be filing.

3.     Absent immediate approval of this ex parte application, plaintiffs will be unable to satisfy the publication and proof of service requirements of the validation statutes (Code of Civ. Proc. §§ 860 *et seq.*).  To comply with these statutes, plaintiffs must: (1) arrange to have summons published once a week for three weeks in a newspaper of general circulation for the City of San Jose (Code of Civ. Proc. § 861; Gov. Code § 6063); then (2) obtain proof of publication from the newspaper; and (3) file the proof of publication as proof of service in this court – all within 60 days of the commencement of the action (Code of Civ. Proc. § 863; CRC Rule  Rule 3-110(b)).

4.     My office consulted the Court's list of newspapers of general circulation available on the Court's website and found that the Mercury News is a newspaper which has been adjudicated as a newspaper of general circulation in the City of San Jose. According to its website, it is the newspaper with the most print and online

3

*HJTA v. City of San Jose*, No.22CV395596, App. to Publish Summons

1   subscribers in the City of San Jose.

2       I declare upon penalty of perjury under the laws of the State of California that the

3   foregoing is true and correct and that this declaration was executed this 17th day of

4   March, 2022, in Sacramento, California.

5

6                               TIMOTHY A. BITTLE

7

8       **MEMORANDUM OF POINTS AND AUTHORITIES**

9               STATEMENT OF FACTS

10      This is a "reverse-validation action" brought under the validation statutes (Code

11  of Civ. Proc. §§ 860, *et seq.*), which authorize an action to validate or invalidate acts of

12  local governments.  Plaintiffs assert that certain sections of Ordinance No. 30716,

13  recently enacted by the San Jose City Council, are invalid.

14      The ordinance imposes a new Gun Harm Reduction Fee that all San Jose gun

15  owners must pay annually to a private nonprofit organization to be designated by the

16  City Manager.  Plaintiffs' complaint alleges that the new fee violates their constitutional

17  rights of free speech and association, places an unconstitutional condition on the right

18  to bear arms, is a special tax which needed 2/3 voter approval, unlawfully delegates

19  governmental taxing power to a private organization, and for these reasons is invalid.

20      Because this action is brought under the validation statutes, plaintiffs' complaint

21  names as defendants: (1) the City of San Jose, and (2) "all persons interested in the matter

22  of San Jose Ordinance No. 30716, establishing an Annual Gun Harm Reduction Fee."

23      Plaintiffs submitted their complaint for filing on March 7, 2022.  It was processed

24  for filing and given a case number on March 15, 2022, at which time the clerk also

25  issued summons for the City.

26      Plaintiffs personally served the complaint and summons on the City via process

27  server on March 16, 2022.  This application to publish summons applies only to

                                4

1 | unknown potential defendants named as "all persons interested."

2 |     Code of Civil Procedure section 861 requires "all persons interested" to be

3 | served via summons published once a week for three weeks in the Legal Notices

4 | section of a newspaper of general circulation in the City of San Jose.  Before plaintiffs

5 | can publish summons, however, this Court must approve the form and wording of the

6 | summons, and the proposed newspaper in which it will be published.

7 |     Because CRC Rule 3-110(b) and Code of Civil Procedure section 863 require

8 | plaintiffs to serve all defendants "within 60 days after the filing of the complaint," time is

9 | of the essence.

10 |              ARGUMENT

11 | A.    *Seeking This Order Ex Parte is Appropriate*

12 |     Government Code section 50077.5 provides that the validation statutes apply "to

13 | any judicial action or proceeding to validate, attack, review, set aside, void, or annul an

14 | ordinance or resolution ... that levies a special tax."  Since plaintiffs' complaint alleges

15 | that the Annual Gun Harm Reduction Fee constitutes a special tax (albeit not approved

16 | by the voters), Code of Civil Procedure sections 860 *et seq.* apply to this action.

17 |     Moreover, Government Code section 53511 provides that the validation statutes

18 | apply "to determine the validity of [an agency's] bonds, warrants, contracts, obligations

19 | or evidences of indebtedness."  The City's ordinance directs the City Manager to

20 | designate a private nonprofit organization to collect and spend the Annual Gun Harm

21 | Reduction Fee.  Because plaintiffs are informed and believe that the City may have

22 | already entered into a contract with a nonprofit organization for this purpose, Code of

23 | Civil Procedure sections 860 *et seq.* apply to this action.

24 |     Section 861 provides that, "[j]urisdiction of all interested parties may be had by

25 | publication of summons pursuant to Section 6063 of the Government Code in a

26 | newspaper of general circulation designated by the court, published in the county where

27 | the action is pending and whenever possible within the boundaries of the public

*HJTA v. City of San Jose*, No.22CV395596, App. to Publish Summons

agency."  Section 861.1 requires that "[t]he summons shall be directed to 'all persons interested in the matter of [specifying the matter].'"  Government Code section 6063 requires publication once a week for three weeks.

Section 863 provides that, "[i]n any such action the summons shall be in the form prescribed in Section 861.1 except that in addition to being directed to 'all persons interested in the matter of [specifying the matter],' it shall also be directed to the public agency. *If the interested person bringing such action fails to complete the publication and such other notice as may be prescribed by the court in accordance with Section 861 and to file proof thereof in the action within 60 days from the filing of his complaint, the action shall be forthwith dismissed.*"

By statute, then, there is insufficient time to request approval of the form of summons and place of publication using a regular noticed motion.  Plaintiffs must have time to schedule publication of the summons in the "legal notices" section of the newspaper, allow three weeks for publication, then obtain from the newspaper a "proof of publication" and file it with this court, all within the 60-day time limitation.  Otherwise, absent an extension of time, the case will be dismissed.

B.      *The Proposed Form of Publication Satisfies the Statute*

Code of Civil Procedure section 861 requires publication in "a newspaper of general circulation ... published in the county where the action is pending and whenever possible within the boundaries of the public agency."

In this case, the Mercury News has been adjudicated as a newspaper of general circulation within the boundaries of the City of San Jose and is also the newspaper with the largest number of online and print subscribers.

Section 861.1 requires that, "the summons shall be in the form prescribed in Section 412.20."  In a nutshell, section 412.20 requires the summons to include the following:

(1) The title of the court in which the action is pending.

(2) The names of the parties to the action.

6

*HJTA v. City of San Jose*, No.22CV395596, App. to Publish Summons

1    (3) A direction that, to be heard, the defendant must file a written response to the

2  complaint within the time specified.  (Section 861.1, in turn, provides that the time to

3  respond "shall be 10 or more days after the completion of publication of the summons.")

4    (4) A notice that, unless the defendant so responds, plaintiff may apply for entry

5  of default and the relief sought by the complaint.

6    (5) The following statement in boldface type: "You may seek the advice of an

7  attorney in any matter connected with the complaint or this summons.  Such attorney

8  should be consulted promptly so that your pleading may be filed or entered within the

9  time required by this summons."

10    (6) The following introductory legend at the top of the summons above all other

11  matter, in boldface type, in English and Spanish: "Notice!  You have been sued.  The

12  court may decide against you without your being heard unless you respond within [the

13  time specified].  Read the information below."

14    The proposed form of summons attached as Exhibit 1 to the proposed Order

15  contains all of the information required by section 412.20.

16                          CONCLUSION

17    Due to the time constraints associated with a reverse-validation action, this ex

18  parte application is appropriate.  The proposed form of summons (attached to the

19  proposed Order filed herewith), and the proposed newspaper (Mercury News) comply

20  with the requirements of the applicable statutes.  For these reasons, plaintiffs' ex parte

21  application for approval should be granted.

22    DATED: March 17, 2022          Respectfully submitted,

23                                JONATHAN M. COUPAL
                                  TIMOTHY A. BITTLE
24                                LAURA E. DOUGHERTY

25

26                                TIMOTHY A. BITTLE
                                  Attorneys for Plaintiffs

27

7

*HJTA v. City of San Jose*, No.22CV395596, App. to Publish Summons

JONATHAN M. COUPAL, State Bar No. 107815
TIMOTHY A. BITTLE, State Bar No. 112300
LAURA E. DOUGHERTY, State Bar No. 255855
Howard Jarvis Taxpayers Foundation
921 Eleventh Street, Suite 1201
Sacramento, CA 95814
Tel: (916) 444-9950
Fax:(916) 444-9823
Email: tim@hjta.org
Attorneys for Plaintiffs

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
### FOR THE COUNTY OF SANTA CLARA

| | |
|---|---|
| HOWARD JARVIS TAXPAYERS ASSN., SILICON VALLEY TAXPAYERS ASSN., SILICON VALLEY PUBLIC ACCOUNTA-BILITY FOUNDATION, JIM BARRY, and GEORGE ARRINGTON, | ) No. 22CV395596 ) ) ) ) ) |
| Plaintiffs | ) **[PROPOSED] ORDER APPROVING** ) **PUBLICATION OF SUMMONS** |
| v. | ) |
| CITY OF SAN JOSE, and ALL PERSONS INTERESTED in the matter of San Jose Ordinance No. 30716, establishing an Annual Gun Harm Reduction Fee, | ) ) Department: 20 ) Case Filed: March 7, 2022 ) Trial Date: Not Set |
| Defendants | ) ) Calendar preference per CCP § 867 |

**ORDER**

On the application of plaintiffs, which was considered _____, 2022, in Department 20 with notice to counsel for defendant City of San Jose, the Court having considered the authorities cited and good cause appearing therefor:

IT IS HEREBY ORDERED that plaintiffs' application for approval to publish summons as to All Persons Interested in the matter of San Jose Ordinance No. 30716 is GRANTED AS FOLLOWS:

1.      Plaintiffs shall use the form of Summons attached hereto as Exhibit 1.

2.      Plaintiffs shall cause the Summons to be published once a week for three consecutive weeks, with at least five days intervening between publication dates, in the Legal Notices section of the San Jose Mercury News.

3.      Plaintiffs shall obtain Proof of Publication from said newspaper and file it with this Court immediately thereafter, or show good cause for their failure to do so.

DATED:   _____, 2022.


_____

HON. _____
JUDGE OF THE SUPERIOR COURT

2

*HJTA v. City of San Jose*, No. 22CV395596, Order Approving Publication of Summons

1

2

3

4

5

6

7

8

9

10

11

12          **EXHIBIT 1**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

3

*HJTA v. City of San Jose*, No. 22CV395596, Order Approving Publication of Summons

1                                    **SUMMONS**

2

3        **NOTICE!  YOU HAVE BEEN SUED.  THE COURT MAY DECIDE AGAINST YOU**

4   **WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND NOT LATER THAN  [A date**

5   **to be determined that is 10 or more days after the completion of publication of the**

6   **summons in the newspaper].   READ THE INFORMATION BELOW.**

7

8        **AVISO!  USTED HA SIDO DEMANDADO.  EL TRIBUNAL PUEDE DECIDIR**

9   **CONTRA USTED SIN AUDIENCIA A MENOS QUE USTED RESPONDA NO MÁS**

10  **TARDE QUE EL DÍA   [The date from above that is 10 or more days after the**

11  **completion of publication of the summons in the newspaper].   LEA LA**

12  **INFORMACIÓN QUE SIGUE.**

13

14       **TO ALL PERSONS INTERESTED IN THE MATTER OF CITY OF SAN JOSE**

15  **ORDINANCE NO. 30716**, ESTABLISHING AN ANNUAL GUN HARM REDUCTION FEE.

16

17       A civil complaint has been filed in California Superior Court for the County of Santa

18  Clara by Howard Jarvis Taxpayers Association and other plaintiffs against defendant City

19  of San Jose for the purpose of determining the validity of the City's Annual Gun Harm

20  Reduction Fee.

21

22       Plaintiffs allege that the new fee violates their constitutional rights of free speech

23  and association, places an unconstitutional condition on the right to bear arms, is a special

24  tax which needed 2/3 voter approval, unlawfully delegates governmental taxing power to

25  a private organization, and for these reasons is invalid.

26

27       To be heard regarding this matter, you must file with the court a written response

1  to the complaint by  [the date from above that is 10 or more days after the completion of
2  publication of the summons in all newspapers].   If you do not file a timely written response
3  with the court, plaintiffs may apply for entry of default and the relief sought by their
4  complaint.  You may obtain a copy of the complaint by contacting plaintiffs' counsel using
5  the address or telephone number shown below.  If you respond to defend the legality or
6  validity of the matter, you will not be subject to punitive action such as wage garnishment
7  or seizure of real or personal property.

8

9  **YOU MAY SEEK THE ADVICE OF AN ATTORNEY IN ANY MATTER**
10 **CONNECTED WITH THE COMPLAINT OR THIS SUMMONS. SUCH ATTORNEY**
11 **SHOULD BE CONSULTED PROMPTLY SO THAT YOUR PLEADING MAY BE FILED**
12 **OR ENTERED WITHIN THE TIME REQUIRED BY THIS SUMMONS.**

13

14 **PUEDE SOLICITAR EL CONSEJO DE UN ABOGADO EN CUALQUIER ASUNTO**
15 **RELACIONADO CON LA DENUNCIA O CON ESTA CITACIÓN. DICHO ABOGADO**
16 **DEBERÁ CONSULTARSE INMEDIATAMENTE PARA QUE SU ALEGATO PUEDA SER**
17 **PRESENTADO O ENTRADO EN EL MOMENTO REQUERIDO POR ESTA CITACIÓN**
18 **JUDICIAL.**

19

20 The name and address of the Court is (El nombre y dirección del Tribunal es):

21

22      Superior Court, County of Santa Clara

23      191 North First Street

24      San Jose, CA 95113

25      CASE NUMBER (Numero del Caso): 22CV395596

26

27

The name, address, and telephone number of plaintiffs' attorney is (El nombre, dirección y número de teléfono de los abogados del demandante es):

Timothy A. Bittle

Howard Jarvis Taxpayers Foundation

921 11th Street, Ste. 1201

Sacramento, CA 95814

Tel: 916-444-9950

1  JONATHAN M. COUPAL, State Bar No. 107815
   TIMOTHY A. BITTLE, State Bar No. 112300
2  LAURA E. DOUGHERTY, State Bar No. 255855
   Howard Jarvis Taxpayers Foundation
3  921 Eleventh Street, Suite 1201
   Sacramento, CA 95814
4  (916) 444-9950
   Email: tim@hjta.org
5
   Attorneys for Plaintiffs
6

7

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA
                  FOR THE COUNTY OF SANTA CLARA
9

10  HOWARD JARVIS TAXPAYERS ASSN.,      )  No. 22CV395596
    SILICON VALLEY TAXPAYERS ASSN.,     )
11  SILICON VALLEY PUBLIC ACCOUNTA-     )
    BILITY FOUNDATION, JIM BARRY, and   )
12  GEORGE ARRINGTON,                   )  PROOF OF SERVICE
                                        )
13            Plaintiffs                )
                                        )
14        v.                            )
                                        )
15  CITY OF SAN JOSE, and ALL PERSONS   )
    INTERESTED in the matter of San Jose )
16  Ordinance No. 30716, establishing an )  Department:    20
    Annual Gun Harm Reduction Fee,      )  Case Filed:    March 7, 2022
17                                      )  Trial Date:    Not Set
              Defendants                )
18  _____  )  Calendar preference per CCP § 867

19

20

21

22

23

24

25

26

27

**SER-143**

FILED

MAR 23 2022

Clerk of the Court
Superior Court of CA County of Santa Clara
BY _R. Brandoval_ DEPUTY

**PROOF OF SERVICE**

I, Kiaya Algea, declare:

I am employed in the County of Sacramento, California. I am over the age of 18 years, and not a party to the within action. My business address is: 921 11th Street, Suite 1201, Sacramento, California 95814. On March 17, 2022, I served:

- **EX PARTE APPLICATION FOR ORDER APPROVING PUBLICATION OF SUMMONS; DECLARATION OF TIMOTHY BITTLE; MEMORANDUM OF POINTS AND AUTHORITIES**

- **[PROPOSED] ORDER APPROVING PUBLICATION OF SUMMONS**

- **PROOF OF SERVICE**

on the interested parties below, using the following means:

**SEE ATTACHED SERVICE LIST**

<u>X</u>     **BY U.S. MAIL** On the date listed above, I enclosed the documents in a sealed envelope or package addressed to the interested parties at their respective addresses listed below and deposited the sealed envelopes with the United States Postal Service, with the postage fully prepaid. The envelope or package was placed in the mail at Vacaville, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on March 17, 2022, at Vacaville, California.

Kiaya R. Algea

2

*HJTA v. City of San Jose, No.22CV395596, Proof of Service*



## SERVICE LIST

| | |
|---|---|
| Nora Frimann<br>Office of the City Attorney<br>200 E. Santa Clara Street, 16th Floor<br>San Jose, CA 95113<br>Phone: (408) 535-1900<br><br>*Attorneys for Defendant City of San Jose* | |

3

*HJTA v. City of San Jose*, No.22CV395596, Proof of Service

Joseph W. Cotchett (SBN 36324)
Tamarah P. Prevost (SBN 313422)
Melissa Montenegro (SBN 329099)
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
jcotchett@cpmlegal.com
tprevost@cpmlegal.com
mmontenegro@cpmlegal.com

Attorneys for CITY OF SAN JOSE

**F I L E D**

MAR 22 2022

Clerk of the Court
Superior Court of CA County of Santa Clara
BY _R. Sandoval_ DEPUTY

**SUPERIOR COURT OF CALIFORNIA**

**IN AND FOR THE COUNTY OF SANTA CLARA**

**UNLIMITED JURISDICTION**

| | |
|---|---|
| HOWARD JARVIS TAXPAYERS ASSN., SILICON VALLEY TAXPAYERS ASSN., SILICON VALLEY PUBLIC ACCOUNTABILTY FOUNDATION, JIM BARRY, and GEORGE ARRINGTON, <br><br> Plaintiff(s), <br><br> v. <br><br> CITY OF SAN JOSE, and ALL PERSONS INTERESTED in the matter of San Jose Ordinance No. 30716, establishing an Annual Gun Har Reduction Fee, <br><br> Defendant(s). | Case Number: 22CV395596 <br><br> **CITY OF SAN JOSE'S OPPOSITION TO EX PARTE APPLICATION FOR ORDER APPROVING PUBLICATION OF SUMMONS** <br><br> Date: TBD <br> Time: TBD <br> Dept. 20 <br> Judge: Hon. Socrates P. Manoukian <br><br> Trial Date: Not Assigned <br><br> **TELEPHONE APPEARANCE** |

1

| CITY OF SAN JOSE'S OPPOSITION TO EX PARTE APPLICATION FOR ORDER APPROVING PUBLICATION OF SUMMONS | Case Number: 22CV395596 |
|---|---|

## I.    **INTRODUCTION**

Defendant CITY OF SAN JOSE ("City") opposes Plaintiffs' *Ex Parte* Application for an Order Approving Publication of Summons and requests a hearing. The City's request is made on the basis that Plaintiffs' application fails to make the necessary affirmative factual showing of a statutory basis of granting relief *ex parte* under California Rule of Court 3.1202(c). Plaintiffs fail to articulate the necessary statutory basis for the court's invocation of *in rem* jurisdiction, an obligatory precursor to the court ordering service by publication under California Code of Civil Procedure section 860. That is because Ordinance No. 30716, the San Jose Gun Harm Reduction Ordinance ("Ordinance"), is not the appropriate subject of a reverse validation action. Plaintiff's citations to Government Code sections 50077.5 and 53511 are inapposite as the Ordinance contains no "special tax" as approved by the voters as required by section 50077.5, nor a "bond, warrant, contract, obligation or evidence of indebtedness" as enumerated in section 53511. For these reasons, and for those set out in further detail below, Plaintiff's *ex parte* application must be denied.

## II.    **FACTUAL HISTORY**

On February 8, 2022, the San Jose City Council adopted a first in the nation law requiring gun owners to purchase liability insurance and to invest funds generated from fees paid by owners into evidence-based initiatives to reduce gun violence and gun harm. (City of San Jose's Request for Judicial Notice ("RJN"), Ex. 1.)

The Ordinance was based on findings of the impact of firearm injuries on the community. These findings included but were not limited to the following: that firearm injuries have a significant adverse public health and safety impact nationally; in the State of California, and locally, that between 2010-2014 in Santa Clara County, thirty-one percent of emergency department visits and sixteen percent of hospitalizations from firearms injuries were due to unintentional shootings; that access to firearms within the home doubles the risk that family members will become a victim of homicide, and triples the risk of suicide, and more. (RJN, Ex. 1, pp. 5-7, § 10.32.200.)

2

| CITY OF SAN JOSE'S OPPOSITION TO EX PARTE APPLICATION FOR ORDER APPROVING PUBLICATION OF SUMMONS | Case Number: 22CV395596 |
| --- | --- |

The Ordinance requires that gun owners who reside in the City or possess a firearm in the City purchase and maintain a renter's or homeowners' gun liability insurance policy. (See *Id.* at p. 7.) The Ordinance contains an Annual Gun Harm Reduction Fee ("Fee"). (*Id.* at p. 8.) The Fee requires that gun owners who reside or possess a firearm in the City pay an annual Fee to a to-be-designated nonprofit each year which will be used by the nonprofit to provide services to residents of the City that own or possess a firearm in the City or to members of their household. (*Id.* at pp. 8-9.) These expenditures may include suicide prevention programs, violence reduction or domestic violence services or programs, mental health services related to gun violence, or firearms safety education and training. (*Id.* at p. 9.) The Fee will be set forth in the schedule of fees and charges established by resolution of the City Council. (*Id.* at p. 8.) Neither the amount of the annual Fee nor the date by which payment will be required has been set. (*Id.*)

The Ordinance additionally grants the City Manager the authority to promulgate all regulations necessary to implement the requirements of the Ordinance, including but not limited to, the eventual designation of the nonprofit organization that will receive the Fee. (*Id.* at p. 11, § 10.32.235.) The Ordinance shall become effective at the expiration of one hundred eighty days after its adoption. (*Id.* at p. 13.) The Ordinance also contains a severability clause. (*Id.*).

### III.   LEGAL STANDARD

A validation action is a lawsuit filed and prosecuted for the purpose of securing a judgment determining the validity of a particular government action or act. (See *Blue v. City of Los Angeles* (2006) 137 Cal. App. 4th 1131, 1135, fn. 4.) California Code of Civil Procedure sections 860 through 870.5 govern validation actions. Section 860 states the following:

> A public agency may upon the existence of any matter which under any other laws authorized to be determined pursuant to this chapter, and for 60 days thereafter, bring an action in the superior court of the county in which the principal office of the public agency is located to determine the validity of such matter. The action shall be in the nature of a proceeding in rem. (Cal. Proc. Code § 860.)

3

| CITY OF SAN JOSE'S OPPOSITION TO EX PARTE APPLICATION FOR ORDER APPROVING PUBLICATION OF SUMMONS | Case Number:  22CV395596 |
|---|---|

1    Section 863 authorizes "interested parties", in a so called "reverse validation action", to determine

2    the validity of a particular agency decision or action. (Cal. Proc. Code § 863.) The validation statutes

3    require an interested party to bring a reverse validation action within 60-days of the particular agency

4    decision or action. (See *Id.*; see also Cal. Proc. Code § 860.) A central theme in the validation procedures

5    is the speedy determination of the validity of the public agency's decision or act in a single dispositive

6    final judgment, to promptly settle all questions about the validity of the agency's decision or act. (See

7    *Davis v. Fresno Unified School District* (2020), 57 Cal. App. 5th 911, 928.)

8    However, not all acts or transactions of a public agency are subject to validation. (*Id.*) Section 860

9    does not specifically enumerate the actions which are subject to the validation process. Rather, courts

10   must examine other statutes, and cases examining those statutes, to determine the scope of agency

11   decisions and acts that are subject to validation under the validation statute. (*Id.*) California has over 200

12   statutes that provide validation proceedings, most of which are found in the Government Code and the

13   Water Code. (See *Kaatz v. City of Seaside* (2006), 143 Cal. App. 4th 13, 19.) As such, an interested party

14   in a reverse validation suit is required to articulate the specific statutory provision authorizing the use of

15   validation proceedings over the agency decision or action.

16                          **IV.    ARGUMENT**

17   **A.    PLAINTIFFS' *EX PARTE* APPLICATION FOR PUBLICATION FAILS TO ESTABLISH
          THE NECESSARY STATUTORY BASIS FOR THE COURT'S INVOCATION OF *IN
18        REM* JURISDICTION OVER THE ORDINANCE**

19   Validation actions are in rem proceedings. (See Cal. Proc. Code § 860). The California Supreme

20   Court has held that *in rem* jurisdiction only attaches if: (1) the court "has the authority to determine the

21   subject matter of the controversy"; and (2) the court "has jurisdiction over the thing proceeding against

22   as a defendant." (*Santa Clarita Organization for Planning & Environment v. Castaic Lake Water Agency*

23   (2016), 1 Cal. App. 5th 1084, 1100-1101 citing *Kearney v. Kearney* (1887) 72 Cal. 591, 594 (emphasis

24   added).) This framework applies to validation actions as well. (See *Id.*) As such, there is subject matter

25   jurisdiction to entertain a validation proceeding only if there is a statutory basis for that jurisdiction and

26   if the party seeking to invoke the validation procedures subsequently perfects that jurisdiction by

27                                                                4

| CITY OF SAN JOSE'S OPPOSITION TO EX PARTE APPLICATION FOR ORDER APPROVING PUBLICATION OF SUMMONS | Case Number:  22CV395596 |
|---|---|

1   providing the proper type of constructive notice. (See *Id.*, citing *San Diegans for Open Government v.*

2   *City of San Diego* (2015) 242 Cal. App. 4th 416, 428 [failure to publish summons in accordance with

3   statutory procedures deprives the court of jurisdiction, which deprives the court of the power to rule upon

4   the matter.].)

5          Constructive notice alone is not enough to confer subject matter jurisdiction. (See *Id.* at 1101.)

6   As the appeals court stated in *Santa Clarita Org. for Planning & Environment*:

7              If [constructive notice alone] were [enough], a party could compel a court to issue

8              validation ruling merely by giving constructive notice of its complaint, even if its

9              complaint fell outside of any validation statute; such rogue validation actions would

10             eviscerate the legislature's careful effort to specifically delimit when these proceedings

11             are applicable.

12   (See *Id.*)[1]

13   **B.    GOVERNMENT CODE SECTION 50077.5 DOES NOT APPLY**

14          Plaintiff cites to Government Code section 50077.5 in support of their argument that the ordinance

15   contains a "special tax" requiring the Plaintiffs to bring their action via the validation statute. (See

16   Plaintiffs' *Ex Parte* Application and Memorandum of Points and Authorities (hereinafter "Plaintiffs' *Ex*

17   *Parte* MPA"), p. 5, ln. 12-16). Disturbingly, in citing the statute, Plaintiffs omit key language. The

18   language of section 50077.5 subsection (a) is reproduced here in full without recourse to misleading

19   ellipses. It states the following:

20             Chapter 9 (commencing with Section 860) of Title 10 of Part 2 of the Code of Civil

21             Procedure applies to any judicial action or proceeding to validate, attack, review,

22             set aside, void, or annul an ordinance or resolution **approved by the voters**

23

24   [1] That is exactly what Plaintiffs attempt to do here. Plaintiffs' articulation of Government Code sections
25   53511 and 50077.5 fails to confer subject matter jurisdiction on this Court as the Ordinance does not
     contain a "special tax" under section 50077.5 nor a "contract" as required under section 53511. As
26   such, this Court has no authority to rule on this matter subject to the validation procedures, nor the
     authority to order service by publication under section 863.
27
                                                                        5
     | CITY OF SAN JOSE'S OPPOSITION TO EX | Case Number: 22CV395596 |
     | PARTE APPLICATION FOR ORDER |  |
     | APPROVING PUBLICATION OF SUMMONS |  |

1       **pursuant to this article** on or after January 1, 1986, that leaves a special tax, or

2       modifies or amends an existing ordinance or resolution that levies a special tax.

3 (Gov't Code § 50077.5(a)).

4      Section 50077.5 requires further context. This section is a provision in Article 3.5 of Chapter 1,

5 Part 1, Division 1, Title 5 of the Government Code. Article 3.5 is comprised of Government Code sections

6 50075 through 50077.5, *i.e.*, the provision cited by Plaintiffs. Section 50077 addresses the content of the

7 special tax ordinance to be put to voters envisioned by Article 3.5.

8      Section 50077(a) states the following:

9       "[T]he legislative body of any city, county, or district may, following notice and

10       public hearing, propose by ordinance or resolution the adoption of a special tax.

11       The ordinance or resolution shall include the type of tax and rate of tax to be levied,

12       the method of collection, and the date upon which an election shall be held to

13       approve the levy of the tax."

14 (Cal. Gov. Code § 50077(a); (b); (c) addressing the collection of the special tax and incorporation,

15 formation and reorganization issues related to special taxes).

16      It is within this statutory context that section 50077.5 addresses the Validation Statute. For section

17 50077.5 to apply, the "special tax" must have been adopted pursuant to Government Code sections 50075

18 through 50077.5. Here, as Plaintiffs concede in a parenthetical aside, the Ordinance's proposed fee was

19 not undertaken, adopted, or implemented pursuant to those sections. Accordingly, section 50077.5 cannot

20 confer subject matter jurisdiction for validation proceedings over the Ordinance on this court. (See

21 *generally* RFJN, Exhibit 1.)

22     **C.**     **GOVERNMENT CODE SECTION 53511 DOES NOT APPLY**

23     Section 53511 specifically enumerates the actions subject to validation: "bonds, warrants, contracts,

24 obligations or evidences of indebtedness." (See Gov't Code § 53511). Plaintiffs claim that the

25 Ordinance's direction that the City Manager designate a private nonprofit organization to collect and

26

27

<table>
<tr><td colspan="2" align="center">6</td></tr>
<tr><td>CITY OF SAN JOSE'S OPPOSITION TO EX PARTE APPLICATION FOR ORDER APPROVING PUBLICATION OF SUMMONS</td><td>Case Number: 22CV395596</td></tr>
</table>

1  spend the Annual Gun Harm Reduction Fee falls under the terms of section 53511, thus requiring

2  validation. (*See* Plaintiffs' *Ex Parte* MPA, p. 5, ln. 17-23).

3          The Ordinance, only recently adopted on February 8, 2022, directs the City Manager to

4  promulgate regulations to *designate* a nonprofit to perform these tasks. This direction is in plain contrast

5  to Plaintiffs' baseless belief that a nonprofit has already been designated to perform these tasks.

6          Nevertheless, even were that not the case, the contract itself would not fall under the terms of the

7  statute. Section 53511's enumerated list is construed narrowly by the courts (*e.g.*, only contracts

8  involving an agency's financing and financial obligations fall within the statute). (See *Davis v. Fresno*

9  *Unified School Dist.* (2020) 57 Cal. App. 5th 911.)

10          *Davis* is instructive. *Davis* involved, in part, construction contracts between Fresno Unified and

11  a contractor to build new school facilities. (*Id.* at 918.) In these contracts, the school district paid for the

12  construction of buildings as they were completed (as opposed to progress payments, etc.), an alternate

13  approach which the court held could not be characterized as a method of financing the construction of

14  new school facilities. (*Id.* at 940-41). The court explained that an "ordinary construction contract" did

15  not fall under the terms of section 53511 as it did not provide the school district with any financing nor

16  spread the district's obligation to pay for the new construction over a significant period of time. (*Id.* at

17  941.) Even though the school district would pay the contractor with proceeds obtained from the sale of

18  bonds, the Contractor was not a source of financing for the project. (*Id.*) As such, the use of bond funds

19  did not support the plaintiff's conclusion that the contracts were in the nature or directly related to a

20  public agency's bonds or other evidences of indebtedness. (*Id.*)

21          Accordingly, for section 53511 to apply to confer subject matter jurisdiction for a validation

22  action, the statute requires that the contracts be more than just simple service agreements. Rather, they

23  must be "directly related to a public agency's bonds or other evidences of indebtedness" for the statute

24  to apply. (See generally, *Id.*)

25          Here, the Ordinance authorizes the City Manager to promulgate regulations necessary to

26  implement the "designation of the nonprofit organization that will receive the Gun Harm Reduction Fee,

27

7

| CITY OF SAN JOSE'S OPPOSITION TO EX PARTE APPLICATION FOR ORDER APPROVING PUBLICATION OF SUMMONS | Case Number:  22CV395596 |
|---|---|

1   any processes and procedures related to the payment of thee fee, and any additional guidelines or auditing

2   the use of the monies from the fee." (RFJN, Exhibit 1, § 10.32.235(A)(2).) There is no indication in the

3   language of the Ordinance, nor have Plaintiffs advanced any argument thereon, that this designation

4   constitutes a contract directly related to a public agency's bonds or other evidences of indebtedness.

5   Consequently, section 53511 cannot confer subject matter jurisdiction for validation proceedings over

6   the Ordinance on this court.

7   **V.   CONCLUSION**

8       Plaintiffs fail to make the necessary showing under California Rule of Court 3.1202(c) of an initial

9   statutory basis for invoking the validation procedures entitling them to proceed with service by

10  publication. Consequently, this court has no authority to rule on the Ordinance under the validation

11  procedures, nor the authority to order service by publication. Since the necessary initial statutory basis to

12  confer *in rem* jurisdiction upon this court does not exist Plaintiff's *ex parte* request for service by

13  publication must be denied.

14

15                                   Respectfully submitted,

16  Dated:  March 21, 2022            COTCHETT, PITRE & McCARTHY, LLP

17                                   By:  _____

18                                        Joseph W. Cotchett
                                          Tamarah P. Prevost
19                                        Melissa Montenegro

20                                   Attorneys for CITY OF SAN JOSE

21

22

23

24

25

26

27

| 8 | |
|---|---|
| **CITY OF SAN JOSE'S OPPOSITION TO EX PARTE APPLICATION FOR ORDER APPROVING PUBLICATION OF SUMMONS** | **Case Number:  22CV395596** |

**PROOF OF SERVICE**

CASE NAME: HOWARD JARVIS TAXPAYERS ASSN., et al.,v. CITY OF SAN JOSE

CASE NO.: 22CV395596

I, the undersigned declare as follows:

I am a citizen of the United States, over 18 years of age, employed in Santa Clara County, and not a party to the within action. My business address is 200 East Santa Clara Street, San Jose, California 95113-1905, and is located in the county where the service described below occurred.

On March 21, 2022, I caused to be served the within:

**CITY OF SAN JOSE'S OPPOSITION TO EX PARTE APPLICATION FOR ORDER APPROVING PUBLICATION OF SUMMONS**

☐ by MAIL, with a copy of this declaration, by depositing them into a sealed envelope, with postage fully prepaid, and causing the envelope to be deposited for collection and mailing on the date indicated above.

I further declare that I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service. Said correspondence would be deposited with the United States Postal Service that same day in the ordinary course of business.

☐ by PERSONAL DELIVERY, with a copy of this declaration, by causing to be personally delivered a true copy thereof to the person at the address set forth below.

☐ by FACSIMILE TRANSMISSION, with a copy of this declaration, to a facsimile machine at the facsimile machine telephone number listed below.

The above-described transmission was reported as complete without error by a transmission report issued by the facsimile machine immediately following the transmission.

☐ by ELECTRONIC SERVICE listed below, transmitted using the One Legal Process Service electronic filing system. The document(s) listed above was/were electronically served to the electronic address(s) below

☒ by ELECTRONIC TRANSMISSION, with a copy of this declaration, to an electronic address listed below.

I further declare that the electronic transmission was sent on        March 21, 2022, before 5:30 p.m., and that the City of San Jose, City Attorney's electronic address is CAO.Main@sanjoseca.gov.

The above-described transmission was reported as sent by a transmission report available for printing from the computer.

☐ by EXPRESS MAIL, with a copy of this declaration, by depositing them into a sealed envelope, with postage fully prepaid, and causing the envelope to be deposited for collection and mailing on the date indicated above.

9

| CITY OF SAN JOSE'S OPPOSITION TO EX PARTE APPLICATION FOR ORDER APPROVING PUBLICATION OF SUMMONS | Case Number: 22CV395596 |
| --- | --- |

I further declare that I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service. Said correspondence would be deposited with the United States Postal Service that same day in the ordinary course of business.

☐ by OVERNIGHT DELIVERY, with a copy of this declaration, by depositing them into a sealed envelope/package, with delivery fees fully prepaid/provided for, and

☐ causing the envelope/package to be deposited for collection
☐ causing the envelope/package to be delivered to an authorized courier or driver to receive the envelope/package

designated by the express service carrier for next day delivery.

I further declare that I am readily familiar with the business' practice for collection and processing of correspondence for overnight delivery by an express courier service. Such correspondence would be deposited with the express service or delivered to the authorized express service courier/driver to receive an envelope/package for the express service that same day in the ordinary course of business.

Addressed as follows:

| Jonathan M. Coupal<br>Timothy A. Bittle<br>Laura A. Dougherty<br>Howard Jarvis Taxpayers Foundation<br>921 Eleventh Street, Suite 1201<br>Sacramento, CA 95814<br>Tel: (916) 444-9950<br>Email: tim@hjta.org<br><br>***Attorneys for Plaintiffs Howard Jarvis Taxpers Assn., Silicon Valley Taxpayers Assn., Silicon Valley Public Accountability Foundation, Jim Barry, and George Arrington*** | |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on March 21, 2022, at San Jose, California.

*Brian Ward*
Brian Ward

10

| CITY OF SAN JOSE'S OPPOSITION TO EX PARTE APPLICATION FOR ORDER APPROVING PUBLICATION OF SUMMONS | Case Number: 22CV395596 |
| --- | --- |

1    Joseph W. Cotchett (SBN 36324)
     Tamarah P. Prevost (SBN 313422)
2    Melissa Montenegro (SBN 329099)
     **COTCHETT, PITRE & McCARTHY, LLP**
3    San Francisco Airport Office Center
     840 Malcolm Road, Suite 200
4    Burlingame, CA  94010
     Telephone:  (650) 697-6000
5    Facsimile:  (650) 697-0577
     jcotchett@cpmlegal.com
6    tprevost@cpmlegal.com
     mmontenegro@cpmlegal.com
7

     Attorneys for CITY OF SAN JOSE
8

**F I L E D**

MAR 22 2022

Clerk of the Court
Superior Court of CA County of Santa Clara
BY *K. Sandoval* DEPUTY

9

10            **SUPERIOR COURT OF CALIFORNIA**

11      **IN AND FOR THE COUNTY OF SANTA CLARA**

12               **UNLIMITED JURISDICTION**

13

14    HOWARD JARVIS TAXPAYERS ASSN.,
     SILICON VALLEY TAXPAYERS ASSN.,
     SILICON VALLEY PUBLIC
15    ACCOUNTABILTY FOUNDATION, JIM
     BARRY, and GEORGE ARRINGTON,
16

17              Plaintiff(s),

18        v.

19    CITY OF SAN JOSE, and ALL PERSONS
     INTERESTED in the matter of San Jose
     Ordinance No. 30716, establishing an Annual
20    Gun Har Reduction Fee,

21             Defendant(s).

Case Number:  22CV395596

**CITY OF SAN JOSE'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO EX PARTE APPLICATION FOR ORDER APPROVING PUBLICATION OF SUMMONS**

Date: TBD
Time: TBD
Dept. 20
Judge: Hon. Socrates P. Manoukian

Trial Date:  Not Assigned

**TELEPHONE APPEARANCE**

22

23

24

25

26

                1

27    | CITY OF SAN JOSE'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO EX PARTE APPLICATION FOR ORDER APPROVING PUBLICATION OF SUMMONS | Case Number:  22CV395596 |

Pursuant to California Evidence Code sections 452, and 453, and California Rules of Court 3.1306(c), Defendant City of San Jose ("City") respectfully requests that the Court take judicial notice of the following documents attached hereto.

1.      Ordinance No. 30716, "An Ordinance of the City of San Jose Adding Part 6 to Chapter 10.32 of Title 10 of the San Jose Municipal Code To reduce Gun Harm By Requiring Gun Owners to Obtain and Maintain Liability Insurance and Establishment of Annual Gun Harm Reduction Fee." A true and correct copy of this certified document is attached hereto as Exhibit 1. The Ordinance is the proper subject of judicial notice under Evidence Code section 452(b), which provides that the Court may take judicial notice of legislative enactments issued by any public entity in the United States.

Respectfully submitted,

Dated:  March 21, 2022            COTCHETT, PITRE & McCARTHY, LLP

By:   _____
        Joseph W. Cotchett
        Tamarah P. Prevost
        Melissa Montenegro

Attorneys for CITY OF SAN JOSE

| CITY OF SAN JOSE'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO EX PARTE APPLICATION FOR ORDER APPROVING PUBLICATION OF SUMMONS | Case Number: 22CV395596 |
|---|---|

2.



# CITY OF SAN JOSÉ, CALIFORNIA

Office of the City Clerk
200 East Santa Clara Street
San José, California 95113
Telephone (408) 535-1260
FAX (408) 292-6207

**City Clerk**

STATE OF CALIFORNIA)
COUNTY OF SANTA CLARA)
CITY OF SAN JOSE)

I, Toni J. Taber, City Clerk & Ex-Officio Clerk of the Council of and for the City of San Jose, in said County of Santa Clara, and State of California, do hereby certify that **"Ordinance No. 30716"**, the original copy of which is attached hereto, was passed for publication of title on the **25th day of January, 2022,** was published in accordance with the provisions of the Charter of the City of San Jose, and was given final reading and adopted on the **8th day of February, 2022, with a bifurcated vote as follows:**

**Including Insurance Requirements; Excluding Sections 10.32.215, 10.32.220, and 10.32.230(b)**

AYES:    ARENAS, CARRASCO, ESPARZA, COHEN, FOLEY, JONES, JIMENEZ, MAHAN, PERALEZ, LICCARDO.

NOES:    DAVIS.

ABSENT:    NONE.

DISQUALIFIED:  NONE.

**Excluding Insurance Requirements; Sections 10.32.215, 10.32.220, and 10.32.230(b) only:**

AYES:    ARENAS, CARRASCO, COHEN, ESPARZA, JONES, JIMENEZ, PERALEZ, LICCARDO.

NOES:    DAVIS, FOLEY, MAHAN.

ABSENT:    NONE.
DISQUALIFIED:    NONE.

Said Ordinance is effective as of the **11th day of March, 2022.**

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the corporate seal of the City of San Jose, this **8th Day of February, 2022.**

(SEAL)_____

/rmk

TONI J. TABER, CMC
CITY CLERK & EX-OFFICIO
CLERK OF THE CITY COUNCIL

NVF:TLC:KML
2/3/2022

ORD. NO. 30716

## ORDINANCE NO. 30716

**AN ORDINANCE OF THE CITY OF SAN JOSE ADDING PART 6 TO CHAPTER 10.32 OF TITLE 10 OF THE SAN JOSE MUNICIPAL CODE TO REDUCE GUN HARM BY REQUIRING GUN OWNERS TO OBTAIN AND MAINTAIN LIABILITY INSURANCE AND ESTABLISHMENT OF ANNUAL GUN HARM REDUCTION FEE**

**WHEREAS,** the Constitution of the United States of America affords certain protections to the ownership of firearms; and

**WHEREAS,** the United States Supreme Court has recognized that the Constitutional protections related to firearms ownership are not unlimited, and can be subject to certain types of governmental regulations; and

**WHEREAS,** a city's police power includes the power to regulate firearms and many courts throughout the nation have upheld local regulations related to the ownership or possession of firearms; and

**WHEREAS,** firearm injuries have a significant adverse public health and safety impact nationally, in the State of California, and locally; and

**WHEREAS,** each year more than 23,000 United States residents die by firearm suicide, 14,000 die by firearm homicide, and nearly 500 die from unintentional firearm injuries; and

**WHEREAS,** in California, between 2005 and 2015, nearly 4,000 children and teenagers were killed or injured with firearms, and 533 children and teenagers committed suicide with firearms, according to data from the Center for Disease Control and Prevention; and

NVF:TLC:KML                                                ORD. NO. 30716
2/3/2022

**WHEREAS,** the Santa Clara County Public Health Department issued a report on firearm injuries in April 2018.  In 2016, 11% of injury deaths were due to firearms injuries.  During the period 2007-2016, there were an average of 46 deaths per year due to self-inflicted/suicide from firearms injuries, and an average of 28 deaths per year due to assault/homicide from firearms injuries.  Self-inflicted/suicide accounted for the highest percentage of deaths (59%) from firearms injuries, with assault/homicide accounting for 36% of deaths from firearm injuries; and

**WHEREAS,** the April 2018 Santa Clara County Public Health Department report on firearm injuries reported that during the period from 2010-2014, there were an annual average of 28 emergency department visits and 12 hospitalizations due to unintentional firearms injuries.  During 2010-2014, 31% of emergency department visits and 16% of hospitalizations from firearms injuries were due to unintentional shootings; and

**WHEREAS,** research published in the American Journal of Epidemiology in 2004 found that regardless of storage practice, type of gun, or number of firearms in the home, having a gun in the home was associated with an increased risk of firearm homicide and firearm suicide in the home; and

**WHEREAS,** a 2014 review in the Annals of Internal Medicine suggests that access to firearms within the home doubles the risk that family members will become a victim of homicide, and triples the risk of suicide; and

**WHEREAS,** a study in the New England Journal of Medicine in 2020 found that handgun ownership is associated with eight times greater likelihood for firearm suicide among men, and 35 times greater likelihood of firearm suicide among women; and

**WHEREAS,** according to the American Academy of Pediatrics, in homes with guns, suicide rates in children and adolescents and the likelihood of accidental death by shooting are each four times higher than in homes without guns; and

T-887.014.004\1894578                              2
Council Agenda: 1-25-2022
Item Number: 4.1

NVF:TLC:KML
2/3/2022

ORD. NO. 30716

**WHEREAS,** in the past decade, 40% of the suicides committed by children and teens involved guns, and 90% of these suicides were with guns that the victims accessed at their own homes or from a relative's home; and

**WHEREAS,** 58% of shooting deaths in children and teens are homicides, and the risk of homicide is three times higher when there are guns in the home; and

**WHEREAS,** a June 2014 report published by Everytown for Gun Safety and Moms Demand Action which analyzed publicly reported gun deaths nation-wide over a one-year period from December 15, 2012 to December 12, 2013, showed that at least 100 children were killed in unintentional shootings, amounting to nearly two each week; and

**WHEREAS,** according to research published in Social Science and Medicine in 2007 based on data over a three-year study period from 2001 to 2003, states with higher rates of household firearm ownership had higher rates of firearm homicide but not of non-firearm homicide, and this relationship held across gender, age, income and multiple other variables; and

**WHEREAS,** a study in the Journal of Urban Health conducted in 2015 estimated there are as many as 4.6 million children in the United States living in homes with loaded unsecured guns; and

**WHEREAS,** injuries from unintentional shootings, which are generally insurable, comprise more than a third of all gun-related injuries nationally; and

**WHEREAS,** in some instances, gun owners have been successfully sued for harm resulting from the use of the owner's firearm by themselves or a third party; and

NVF:TLC:KML
2/3/2022

ORD. NO. 30716

**WHEREAS,** auto insurers have used risk-adjusted premiums to reward good driving and incentivize use of airbags and other safety features, and by using a comprehensive public health approach to car safety the United States reduced per-mile auto fatalities by nearly 80% from 1967 to 2017; and

**WHEREAS,** similarly, insurance-based mechanisms can encourage firearm owners to take safety classes, use gun safes, install trigger locks, or utilize chamber-load indicators, and according to 2018 research published in The Actuary there is evidence that some actuaries and insurance companies are recognizing firearm-related risk through their product offerings, pricing and underwriting decisions; and

**WHEREAS,** pursuant to the provisions and requirements of the California Environmental Quality Act of 1970, together with related State CEQA Guidelines and Title 21 of the San José Municipal Code (collectively, "CEQA"), the Director of Planning, Building and Code Enforcement has determined that the provisions of this Ordinance do not constitute a project, under File No. PP17-008 (General Procedure & Policy Making resulting in no changes to the physical environment); and

**WHEREAS,** the City Council of the City of San José is the decision-making body for this Ordinance; and

**WHEREAS,** this Council has reviewed and considered the "not a project" determination under CEQA prior to taking any approval actions on this Ordinance;

**NOW, THEREFORE,** BE IT ORDAINED BY THE COUNCIL OF THE CITY OF SAN JOSE:

**SECTION 1.** Chapter 10.32 of Title 10 of the San José Municipal Code is hereby amended by adding a Part to be numbered, entitled and to read as follows:

T-887.014.004\1894578
Council Agenda: 1-25-2022
Item Number: 4.1

4

NVF:TLC:KML
2/3/2022

ORD. NO. 30716

**Part 6**

**REDUCTION OF GUN HARM – LIABILITY INSURANCE REQUIREMENT AND GUN HARM REDUCTION FEE**

**10.32.200** **Purpose and Findings**

A.  This Part is passed and adopted in the exercise of the police power of the City, and for the protection of the welfare, peace and comfort of the residents of the City of San José.  Specifically, it is the intent of this Ordinance to reduce gun harm.

B.  Findings:

1.  Firearm injuries have a significant adverse public health and safety impact nationally, in the State of California, and locally; and

2.  Each year more than twenty-three thousand (23,000) United States residents die by firearm suicide, fourteen thousand (14,000) die by firearm homicide, and nearly five hundred (500) die from unintentional firearm injuries; and

3.  In California, between 2005 and 2015, nearly four thousand (4,000) children and teenagers were killed or injured with firearms, and five hundred thirty-three (533) children and teenagers committed suicide with firearms, according to data from the Center for Disease Control and Prevention; and

4.  During 2010-2014 in Santa Clara County, thirty-one percent (31%) of emergency department visits and sixteen percent (16%) of

NVF:TLC:KML
2/3/2022

ORD. NO. 30716

hospitalizations from firearms injuries were due to unintentional shootings; and

5. A 2014 review in the Annals of Internal Medicine suggests that access to firearms within the home doubles the risk that family members will become a victim of homicide, and triples the risk of suicide; and

6. A study in the New England Journal of Medicine in 2020 found that handgun ownership is associated with eight (8) times greater likelihood for firearm suicide among men, and thirty-five (35) times greater likelihood of firearm suicide among women; and

7. Based upon a November 2021 analysis by Dr. Ted Miller, Ph.D. and the Pacific for Institute Research and Evaluation (PIRE), on average, 206 people suffer death or serious injury from gunshots each year in the City of San José; and

8. Conservatively, San José taxpayers annually spend approximately $39.7 million, or approximately $151 per firearm-owning household, to respond to gun violence with such public services as emergency police and medical response, victim assistance, incident investigation, acute and long-term health care, and perpetrator adjudication and judicial sanctioning; and

9. Including private costs to individuals and families in the calculation, San José residents incur an annual financial burden of $442 million per year for gun deaths and injuries; and

10. Injuries from unintentional shootings, which are generally insurable, comprise more than a third of all gun-related injuries nationally; and

NVF:TLC:KML
2/3/2022

ORD. NO. 30716

11.     Auto insurers have used risk-adjusted premiums to reward good driving
         and incentivize use of airbags and other safety features, and by using a
         comprehensive public health approach to car safety the United States
         reduced per-mile auto fatalities by nearly eighty percent (80%) from 1967
         to 2017; and

12.     Liability insurance can reduce the number of gun incidents by
         encouraging safer behavior and it can also provide coverage for losses
         and damages related to gun incidents; and

13.     Programs and services to gun owners and their households can also
         encourage safer behavior, and provide education and resources to those
         residents.

## 10.32.205  Definitions

As used in this Part, the following terms have the following meaning:

A.      "Firearm" means a device, designed to be used as a weapon, from which is
         expelled through a barrel, a projectile by the force of an explosion or other form
         of combustion.  Firearm does not include antique firearms as defined by 18
         U.S.C. Section 921(a).

B.      "Designated Nonprofit Organization" means an entity that qualifies as a nonprofit
         corporation under the federal internal revenue code and is designated pursuant
         to the City Manager's authority under Section 10.32.235. No City official or
         employee shall sit on the board of directors of the Designated Nonprofit
         Organization.

## 10.32.210  Liability Insurance Required

NVF:TLC:KML
2/3/2022

ORD. NO. 30716

A.    Insurance required.  A person who resides in the City and owns or possesses a Firearm in the City shall obtain and continuously maintain in full force and effect a homeowner's, renter's or gun liability insurance policy from an admitted insurer or insurer as defined by the California Insurance Code, specifically covering losses or damages resulting from any accidental use of the Firearm, including but not limited to death, injury or property damage.

B.    For purposes of this Section, a person shall be deemed to be the owner of a Firearm if such Firearm is lost or stolen until such loss or theft is reported to the police department or sheriff which has jurisdiction in which such Firearm owner resides.

C.    Any person who owns a Firearm on the effective date of this Section shall obtain the insurance required by this Section within thirty (30) days of the effective date of this Ordinance, or by a later date certain established in the regulations promulgated by City Manager pursuant to Section 10.32.235.

### 10.32.215  Annual Gun Harm Reduction Fee

A person who resides in the City and owns or possesses a Firearm in the City shall pay an Annual Gun Harm Reduction Fee to the Designated Nonprofit Organization each year.  The date by which payment shall be made annually shall be established in the regulations promulgated by City Manager pursuant to Section 10.32.235. The annual fee will be set forth in the schedule of fees and charges established by resolution of the City Council.

NVF:TLC:KML
2/3/2022

ORD. NO. 30716

### 10.32.220  Expenditure of Gun Harm Reduction Fee

A.  All monies from the Gun Harm Reduction Fee shall be expended by the Designated Nonprofit Organization on providing services to residents of the City that own or possess a Firearm in the City, to members of their household, or to those with whom they have a close familial or intimate relationship.  Such expenditures may include, but are not necessarily limited to the following:

　　1.　Suicide prevention services or programs;

　　2.　Violence reduction or gender based violence services or programs;

　　3.　Addiction intervention and substance abuse treatment;

　　4.　Mental health services related to gun violence; or

　　5.　Firearms safety education or training.

B.  No portion of the monies from the Gun Harm Reduction Fee shall be used for litigation, political advocacy, or lobbying activities.

C.  The Designated Nonprofit Organization shall spend every dollar generated from the Gun Harm Reduction Fee, minus administrative expenses, exclusively for programs and initiatives designed to (a) reduce the risk or likelihood of harm from the use of firearms in the City of San José, and (b) mitigate the risk of physical harm or financial, civil, or criminal liability that a San José firearm owner or her family will incur through her possession of firearms. Otherwise, the City shall not specifically direct how the monies from the Gun Harm Reduction Fee are expended.

NVF:TLC:KML
2/3/2022

ORD. NO. 30716

D.    The designated non-profit shall provide a biannual report to an appropriate
      council committee and the report may also be provided to the City Council, as
      directed by the council committee.

## 10.32.225  Exceptions

The provisions of this Part shall not apply to any of the following:

A.    Those persons designated as peace officers pursuant to Chapter 4.5 of Title 3 of
      Part 2 of the California Penal Code (§830 et seq.), including sworn peace
      officers, active reserve peace officers and retired peace officers.

B.    Those persons who have a license to carry a concealed weapon issued pursuant
      to California Penal Code § 26150 or § 26155, for as long as these statutes are
      legally enforceable.

C.    Those persons for which compliance with this Part would create a financial
      hardship.

## 10.32.230  Compliance

A.    Insurance requirement.  Each person required to obtain and maintain insurance
      under Section 10.32.210 shall demonstrate compliance with the insurance
      requirement by completing and executing a City-designated attestation form.
      Each such person shall state both the name of the insurance company issuing
      the policy and the number of the insurance policy on the attestation form, sign
      the form under penalty of perjury and keep the attestation form with the Firearms
      where they are being stored or transported.  Each person shall complete and
      sign a new attestation form under penalty of perjury in the event any of the
      information on the form changes.  Each person shall present the form when

NVF:TLC:KML
2/3/2022

ORD. NO. 30716

lawfully requested to do so by a peace officer who knows or has reason to believe that a person possesses a firearm.

B.    Fee provisions.  Each person shall affix proof of payment of the annual Gun Harm Reduction Fee to the attestation form and keep it with the Firearm or Firearms where they are being stored or transported.

## 10.32.235 <u>Authority of the City Manager</u>

A.    The City Manager is authorized to promulgate all regulations necessary to implement the requirements and fulfill the policies of this Part relating to the reduction of gun harm, including, but not limited, to the following subjects:

1.    Processes and procedures related to the implementation of the liability insurance requirement, and forms necessary thereto.

2.    Designation of the nonprofit organization that will receive the Gun Harm Reduction Fee, any processes and procedures related to the payment of the fee, and any additional guidelines or auditing of the use of the monies from the fee.

3.    Designation of any third-party agency and/or organization that will aid in the implementation of the noticing of the requirements of this Part or any other administrative tasks related to the requirements of this Part.

4.    The criteria by which a person can claim a financial hardship exemption from this Part pursuant to Section 10.32.225.C.

B.    Regulations shall be published on the City's website.

NVF:TLC:KML
2/3/2022

ORD. NO. 30716

C.      Regulations promulgated by the City Manager shall have the same force and effect of law.  Unless a later date is specified in a regulation, a regulation shall become effective upon date of publication.

## 10.32.240  Enforcement

A.      Any violation of this Part shall be punishable by an administrative citation in accordance with the procedures set forth in Chapter 1.15 of Title 1 of this Code relating to the issuance of administrative citations, imposing of administrative fines, right to appeal, and the right to an administrative hearing.

B.      The amounts of the fines for violations imposed pursuant to this Part shall be set forth in the schedule of fines established by resolution of the City Council.

C.      A violation of this Part is also enforceable through all other civil and administrative remedies available to the City.

## 10.32.245  Impoundment

To the extent allowed by law, the Firearm or Firearms of a person that is not in compliance with this Part may be impounded subject to a due process hearing.

## 10.32.250  Fees and Charges

The City Manager is hereby authorized to charge and collect any and all cost recovery fees associated with fulfilling the policies of this Part relating to the reduction of gun harm, including any associated third-party costs.  All fees shall be as set forth in the schedule of fees and charges established by resolution of the City Council.

NVF:TLC:KML
2/3/2022

ORD. NO. 30716

**SECTION 2.**  This Ordinance shall become effective at the expiration of one hundred eighty (180) days after its adoption.

**SECTION 3.**  Consistent with Section 1.04.160 of the San José Municipal Code, should any provision of this Ordinance or its application to any person or circumstance be determined by a court of competent jurisdiction to be unlawful, unenforceable or otherwise void, that determination shall have no effect on any other provision of this Ordinance or the application of this Ordinance to any other person or circumstance and, to that end, the provisions hereof are severable.

**SECTION 4.**  The City Council of the City of San José takes action on this Ordinance based upon the totality of the administrative record including the facts stated above, the facts stated in the memorandums to the City Council for the January 25, 2022 City Council Meeting, as well as any oral or written testimony at the January 25, 2022 City Council meeting.

NVF:TLC:KML
2/3/2022

ORD. NO. 30716

**PASSED FOR PUBLICATION** of title this 25th day of January, 2022, by the following bifurcated vote:
Including Insurance Requirements; Excluding Sections 10.32.215, 10.32.220, and 10.32.230(b)

| | |
|---|---|
| AYES: | ARENAS, CARRASCO, COHEN, ESPARZA, FOLEY, JONES, JIMENEZ, MAHAN, PERALEZ, LICCARDO. |
| NOES: | DAVIS. |
| ABSENT: | NONE. |
| DISQUALIFIED: | NONE. |

**PASSED FOR PUBLICATION** of title this 25th day of January, 2022, by the following bifurcated vote:
Excluding Insurance Requirements; Sections 10.32.215, 10.32.220, and 10.32.230(b) only:

| | |
|---|---|
| AYES: | ARENAS, CARRASCO, COHEN, ESPARZA, JONES, JIMENEZ, PERALEZ, LICCARDO. |
| NOES: | DAVIS, FOLEY, MAHAN. |
| ABSENT: | NONE. |
| DISQUALIFIED: | NONE. |

SAM LICCARDO
Mayor

ATTEST:

TONI J. TABER, CMC
City Clerk

T-887.014.004\1894578
Council Agenda: 1-25-2022
Item Number: 4.1

14

1

## PROOF OF SERVICE

2    CASE NAME:   HOWARD JARVIS TAXPAYERS ASSN., et al.,v. CITY OF SAN JOSE

3    CASE NO.:      22CV395596

4       I, the undersigned declare as follows:

5       I am a citizen of the United States, over 18 years of age, employed in Santa Clara County, and not a party to the within action. My business address is 200 East Santa Clara Street, San Jose,
6    California 95113-1905, and is located in the county where the service described below occurred.

7       On March 21, 2022, I caused to be served the within:

8    **CITY OF SAN JOSE'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO EX PARTE APPLICATION FOR ORDER APPROVING**
9    **PUBLICATION OF SUMMONS**

10    ☐   by MAIL, with a copy of this declaration, by depositing them into a sealed envelope, with postage fully prepaid, and causing the envelope to be deposited for collection and mailing on the date
11       indicated above.

12       I further declare that I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service. Said correspondence would
13    be deposited with the United States Postal Service that same day in the ordinary course of business.

14    ☐   by PERSONAL DELIVERY, with a copy of this declaration, by causing to be personally delivered a true copy thereof to the person at the address set forth below.
15

   ☐   by FACSIMILE TRANSMISSION, with a copy of this declaration, to a facsimile machine at
16       the facsimile machine telephone number listed below.

17       The above-described transmission was reported as complete without error by a transmission report issued by the facsimile machine immediately following the transmission.
18

   ☐   by ELECTRONIC SERVICE listed below, transmitted using the One Legal Process Service
19       electronic filing system. The document(s) listed above was/were electronically served to the electronic address(s) below

20    ☒   by ELECTRONIC TRANSMISSION, with a copy of this declaration, to an electronic address listed below.
21

22       I further declare that the electronic transmission was sent on      March 21, 2022, before 5:30 p.m., and that the City of San Jose, City Attorney's electronic address is
23    CAO.Main@sanjoseca.gov.

24       The above-described transmission was reported as sent by a transmission report available for printing from the computer.

25

26                    3

27

| CITY OF SAN JOSE'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO EX PARTE APPLICATION FOR ORDER APPROVING PUBLICATION OF SUMMONS | Case Number: 22CV395596 |
| --- | --- |

☐   by EXPRESS MAIL, with a copy of this declaration, by depositing them into a sealed envelope, with postage fully prepaid, and causing the envelope to be deposited for collection and mailing on the date indicated above.

I further declare that I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service. Said correspondence would be deposited with the United States Postal Service that same day in the ordinary course of business.

☐   by OVERNIGHT DELIVERY, with a copy of this declaration, by depositing them into a sealed envelope/package, with delivery fees fully prepaid/provided for, and

☐   causing the envelope/package to be deposited for collection
☐   causing the envelope/package to be delivered to an authorized courier or driver to receive the envelope/package

designated by the express service carrier for next day delivery.

I further declare that I am readily familiar with the business' practice for collection and processing of correspondence for overnight delivery by an express courier service. Such correspondence would be deposited with the express service or delivered to the authorized express service courier/driver to receive an envelope/package for the express service that same day in the ordinary course of business.

Addressed as follows:

| | |
|---|---|
| Jonathan M. Coupal<br>Timothy A. Bittle<br>Laura A. Dougherty<br>Howard Jarvis Taxpayers Foundation<br>921 Eleventh Street, Suite 1201<br>Sacramento, CA 95814<br>Tel: (916) 444-9950<br>Email: tim@hjta.org<br><br>***Attorneys for Plaintiffs Howard Jarvis Taxpers Assn., Silicon Valley Taxpayers Assn., Silicon Valley Public Accountability Foundation, Jim Barry, and George Arrington*** | |

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on March 21, 2022, at San Jose, California.

*Brian Ward*
_____
Brian Ward

4

| CITY OF SAN JOSE'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO EX PARTE APPLICATION FOR ORDER APPROVING PUBLICATION OF SUMMONS | Case Number: 22CV395596 |
|---|---|

MAR 23 2022

JONATHAN M. COUPAL, State Bar No. 107815
TIMOTHY A. BITTLE, State Bar No. 112300
LAURA E. DOUGHERTY, State Bar No. 255855
Howard Jarvis Taxpayers Foundation
921 Eleventh Street, Suite 1201
Sacramento, CA 95814
Tel: (916) 444-9950
Fax:(916) 444-9823
Email: tim@hjta.org
Attorneys for Plaintiffs

Filed
March 25, 2022
Clerk of the Court
Superior Court of CA
County of Santa Clara
22CV395596
By: rsandoval

**SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF SANTA CLARA**

HOWARD JARVIS TAXPAYERS ASSN.,
SILICON VALLEY TAXPAYERS ASSN.,
SILICON VALLEY PUBLIC ACCOUNTA-
BILITY FOUNDATION, JIM BARRY, and
GEORGE ARRINGTON,

        Plaintiffs

        v.

CITY OF SAN JOSE, and ALL PERSONS
INTERESTED in the matter of San Jose
Ordinance No. 30716, establishing an
Annual Gun Harm Reduction Fee,

        Defendants

No. 22CV395596

**[PROPOSED] ORDER APPROVING
PUBLICATION OF SUMMONS**

Department:  20
Case Filed:  March 7, 2022
Trial Date:  Not Set

Calendar preference per CCP § 867

## ORDER

On the application of plaintiffs, which was considered ___24 March___, 2022, in Department 20 with notice to counsel for defendant City of San Jose, the Court having considered the authorities cited and good cause appearing therefor:

IT IS HEREBY ORDERED that plaintiffs' application for approval to publish summons as to All Persons Interested in the matter of San Jose Ordinance No. 30716 is GRANTED AS FOLLOWS:

1.    Plaintiffs shall use the form of Summons attached hereto as Exhibit 1.

2.    Plaintiffs shall cause the Summons to be published once a week for three consecutive weeks, with at least five days intervening between publication dates, in the Legal Notices section of the San Jose Mercury News.

3.    Plaintiffs shall obtain Proof of Publication from said newspaper and file it with this Court immediately thereafter, or show good cause for their failure to do so.

DATED: ___24 March___, 2022.

Signed: 3/24/2022 12:38 PM

HON. Socrates Peter Manoukian
JUDGE OF THE SUPERIOR COURT

2

*HJTA v. City of San Jose*, No. 22CV395596, Order Approving Publication of Summons

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**EXHIBIT 1**

3

*HJTA v. City of San Jose*, No. 22CV395596, Order Approving Publication of Summons

**SUMMONS**

**NOTICE!  YOU HAVE BEEN SUED.  THE COURT MAY DECIDE AGAINST YOU WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND NOT LATER THAN  [A date to be determined that is 10 or more days after the completion of publication of the summons in the newspaper].   READ THE INFORMATION BELOW.**

**AVISO!  USTED HA SIDO DEMANDADO.  EL TRIBUNAL PUEDE DECIDIR CONTRA USTED SIN AUDIENCIA A MENOS QUE USTED RESPONDA NO MÁS TARDE QUE EL DÍA   [The date from above that is 10 or more days after the completion of publication of the summons in the newspaper].   LEA LA INFORMACIÓN QUE SIGUE.**

**TO ALL PERSONS INTERESTED IN THE MATTER OF CITY OF SAN JOSE ORDINANCE NO. 30716**, ESTABLISHING AN ANNUAL GUN HARM REDUCTION FEE.

A civil complaint has been filed in California Superior Court for the County of Santa Clara by Howard Jarvis Taxpayers Association and other plaintiffs against defendant City of San Jose for the purpose of determining the validity of the City's Annual Gun Harm Reduction Fee.

Plaintiffs allege that the new fee violates their constitutional rights of free speech and association, places an unconstitutional condition on the right to bear arms, is a special tax which needed 2/3 voter approval, unlawfully delegates governmental taxing power to a private organization, and for these reasons is invalid.

To be heard regarding this matter, you must file with the court a written response

1    to the complaint by _[the date from above that is 10 or more days after the completion of

2    publication of the summons in all newspapers]._   If you do not file a timely written response

3    with the court, plaintiffs may apply for entry of default and the relief sought by their

4    complaint. You may obtain a copy of the complaint by contacting plaintiffs' counsel using

5    the address or telephone number shown below. If you respond to defend the legality or

6    validity of the matter, you will not be subject to punitive action such as wage garnishment

7    or seizure of real or personal property.

8

9    **YOU MAY SEEK THE ADVICE OF AN ATTORNEY IN ANY MATTER**

10   **CONNECTED WITH THE COMPLAINT OR THIS SUMMONS. SUCH ATTORNEY**

11   **SHOULD BE CONSULTED PROMPTLY SO THAT YOUR PLEADING MAY BE FILED**

12   **OR ENTERED WITHIN THE TIME REQUIRED BY THIS SUMMONS.**

13

14   **PUEDE SOLICITAR EL CONSEJO DE UN ABOGADO EN CUALQUIER ASUNTO**

15   **RELACIONADO CON LA DENUNCIA O CON ESTA CITACIÓN. DICHO ABOGADO**

16   **DEBERÁ CONSULTARSE INMEDIATAMENTE PARA QUE SU ALEGATO PUEDA SER**

17   **PRESENTADO O ENTRADO EN EL MOMENTO REQUERIDO POR ESTA CITACIÓN**

18   **JUDICIAL.**

19

20   The name and address of the Court is (El nombre y dirección del Tribunal es):

21

22      Superior Court, County of Santa Clara

23      191 North First Street

24      San Jose, CA 95113

25      CASE NUMBER (Numero del Caso): 22CV395596

26

27

1   The name, address, and telephone number of plaintiffs' attorney is (El nombre, dirección

2   y número de teléfono de los abogados del demandante es):

3

4       Timothy A. Bittle

5       Howard Jarvis Taxpayers Foundation

6       921 11th Street, Ste. 1201

7       Sacramento, CA 95814

8       Tel: 916-444-9950

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**PROOF OF SERVICE**

I am employed in San Mateo County, California, and I am over the age of 18 years and not a party to this action. My business address is the Law Offices of Cotchett, Pitre & McCarthy, LLP, 840 Malcolm Road, Burlingame, California, 94010. On this day, I served the following document(s) in the manner described below:

**DEFENDANT CITY OF SAN JOSE'S NOTICE OF THE FILING OF A NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

✓    **BY MAIL**: I am readily familiar with this firm's practice for collection and processing of correspondence for mailing. Following that practice, I placed a true copy of the aforementioned document(s) in a sealed envelope, addressed to each addressee, respectively, as specified below. The envelope was placed in the mail at my business address, with postage thereon fully prepaid, for deposit with the United States Postal Service on that same day in the ordinary course of business.

✓    **BY E-MAIL**: My e-mail address is kdelia@cpmlegal.com and service of this document(s) occurred on the date shown below. This document is being served electronically and the transmission was reported as complete and without error.

| | |
|---|---|
| Jonathan M. Coupal<br>Timothy A. Bittle<br>Laura E. Dougherty<br>Howard Jarvis Taxpayers Foundation<br>921 Eleventh Street, Suite 1201<br>Sacramento, CA  95814<br>Telephone: (916) 444-9950<br>Email: tim@hjta.org | Attorneys for Plaintiffs Howard Jarvis Taxpayers Association; Silicon Valley Taxpayers Association, Inc.; Silicon Valley Public Accountability Foundation; James Barry; and George Arrington |

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct. Executed at Burlingame, California, on April 15, 2022.

*/s/ Kathleen D'Elia*
Kathleen D'Elia

3

Notice of Filing of Notice of Removal
Case No. 22CV395596

JOSEPH W. COTCHETT (SBN 36324)
jcotchett@cpmlegal.com
TAMARAH P. PREVOST (SBN 313422)
tprevost@cpmlegal.com
ANDREW F. KIRTLEY (SBN 328023)
akirtley@cpmlegal.com
MELISSA MONTENEGRO (SBN 329099)
mmontenegro@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA  94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| **NATIONAL ASSOCIATION FOR GUN RIGHTS, INC.**, a non-profit corporation, and **MARK SIKES**, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>**CITY OF SAN JOSE**, a public entity; **JENNIFER MAGUIRE**, in her official capacity as City Manager of the City of San Jose; and **CITY OF SAN JOSE CITY COUNCIL**,<br><br>Defendants. | **Case No. 5:22-cv-00501-BLF**<br><br>**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date:  August 4, 2022<br>Time:  9:00 A.M.<br>Courtroom:  Via Zoom Webinar<br>Judge:  Hon. Beth Labson Freeman<br><br>Complaint filed: January 25, 2022<br>FAC filed: February 14, 2022 |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE NO. 5:22-CV-00501-BLF**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on August 4, 2022, at 9:00 A.M., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Beth Labson Freeman, United States District Judge for the Northern District of California, located at 280 South 1st Street, San Jose, California, 95113, Defendants City of San Jose, Jennifer Maguire in her official capacity as City Manager of the City of San Jose, and the City of San Jose City Council will and hereby do move this Court to dismiss the First Amended Complaint (ECF No. 19) ("FAC") filed by Plaintiffs National Association for Gun Rights, Inc., and Mark Sikes in its entirety under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and under Rule 12(b)(6) for failure to state a claim as to each of Plaintiffs' six causes of action.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the supporting Declaration of Tamarah P. Prevost and Sarah Zarate and all corresponding exhibits attached thereto, the Proposed Order, the anticipated reply brief, and any other papers Defendants may file in support of the motion, as well as all judicially noticeable facts, the files and records in this action, and such other evidence and argument as may be provided to the Court at or before the hearing.

Dated: April 8, 2022                          **COTCHETT, PITRE & McCARTHY, LLP**

By: _____*/s/ Tamarah P. Prevost*_____
JOSEPH W. COTCHETT
TAMARAH P. PREVOST
ANDREW F. KIRTLEY
MELISSA MONTENEGRO

*Attorneys for Defendants*

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE NO. 5:22-CV-00501-BLF**                                                                                    1

# TABLE OF CONTENTS

Page

I.    **INTRODUCTION** ............................................................................................1

II.   **FACTUAL AND PROCEDURAL BACKGROUND** ......................................2

   A.    History of the Ordinance and Procedural Posture ...................................2

   B.    Summary of the Ordinance .......................................................................3

     1.    Liability Insurance Requirement .......................................................4

     2.    Annual Gun Harm Reduction Fee ....................................................4

     3.    Self-Certification of Compliance .....................................................5

III. **LEGAL STANDARDS**.........................................................................................6

   A.    Rule 12(b)(1)..............................................................................................6

   B.    Rule 12(b)(6)..............................................................................................6

IV. **ARGUMENT** ....................................................................................................7

   A.    THE COURT SHOULD DISMISS THE FAC UNDER RULE 12(b)(1). .....................7

     1.    The FAC Fails for Lack of Ripeness..................................................7

     2.    The FAC Does Not State a Proper Facial Constitutional Challenge.............................9

   B.    THE COURT SHOULD DISMISS THE FAC UNDER RULE 12(b)(6). ....................10

     1.    Plaintiffs Fail to State a Second Amendment Claim.......................10

       a.    *The Appropriate Level of Scrutiny is Intermediate Scrutiny.* ......................10

       b.    *The Ordinance Easily Survives Intermediate Scrutiny.*...............................12

     2.    Plaintiffs Fail to State a First Amendment Claim Based on Compelled Speech or Association...............................16

     3.    Plaintiffs Fail to Sufficiently Allege State Law Preemption...........17

     4.    Plaintiffs Fail to State a Claim that the Ordinance Imposes a Tax in Violation of the California Constitution........................19

     5.    The Ordinance Does Not Violate the San Jose City Charter. .........20

       a.    *The Charter Does Not Require Placing the Fee into the General Fund.*....................21

       b.    *The Fee is Not Subject to the Charter's Budgetary Procedures.* ...............................21

       c.    *The Council Properly Delegated Regulatory Authority to the City Manager.*.............22

     6.    Plaintiffs Fail to State a Claim for Declaratory Relief. ...................23

   C.    THE FAC SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND..................23

V.    **CONCLUSION** ..............................................................................................**24**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*1300 N. Curson Investors, LLC v. Drumea,*
   225 Cal.App.4th 325 (2014) ...............................................................................21

*Abbott Labs. v. Gardner,*
   387 U.S. 136 (1967) ...............................................................................................7

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...............................................................................................7

*Bauer v. Becerra,*
   858 F.3d 1216 (9th Cir. 2017) ...............................................................12, 15, 16

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ...............................................................................................7

*Birkenfeld v. City of Berkeley,*
   17 Cal.3d 129 (Cal. 1976) ...................................................................................22

*Bishop v. City of San Jose,*
   1 Cal.3d 56 (1969) ...............................................................................................18

*Cal. Democratic Party v. Jones,*
   530 U.S. 567 (2000) (Stevens, J., dissenting) ....................................................17

*Cal. Rifle & Pistol Assn. v. City of West Hollywood,*
   66 Cal.App.4th 1302 (1998) ...............................................................................19

*Calguns Foundation, Inc. v. County of San Mateo,*
   218 Cal.App.4th 661 (2013) ...............................................................................19

*Chandler v. State Farm Mut. Auto. Ins. Co.,*
   598 F.3d 1115 (9th Cir. 2010) ..............................................................................8

*City of Renton v. Playtime Theaters, Inc.,*
   475 U.S. 41 (1986) ...............................................................................................14

*City of San Jose v. Lynch,*
   4 Cal.2d 760 (1935) .............................................................................................21

*Cox v. New Hampshire,*
   312 U.S. 569 (1941) .............................................................................................15

*Cramer v. Brown,*
   2012 WL 13059699 (C.D. Cal. Sept. 12, 2012) ..................................................7

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE
NO. 5:22-CV-00501-BLF**
ii

*District of Columbia v. Heller,*
    554 U.S. 570 (2008)..................................................................10, 11, 15

*Galvan v. Superior Court,*
    70 Cal.2d 851 (1969) .........................................................................19

*Gonzales v. Carhart,*
    550 U.S. 124 (2007)............................................................................9

*Great Western Shows, Inc. v. County of Los Angeles,*
    27 Cal.4th 853 (Cal. 2002)...........................................................18, 19

*Heller v. District of Columbia,*
    670 F.3d 1244 (D.C. Cir. 2011)........................................................11

*Heller v. District of Columbia,*
    801 F.3d 264 (D.C. Cir. 2015).........................................................12

*Isaakhani v. Shadow Glen Homeowners Assn., Inc.,*
    63 Cal.App.5th 917, 931-932 (2021).................................................21

*Jackson v. City and County of San Francisco,*
    746 F.3d 953 (9th Cir. 2014) ..................................................... *passim*

*Janus v. AFSCME, Council 31,*
    138 S. Ct. 2448 (2018)......................................................................16

*Kachalsky v. County of Westchester,*
    701 F.3d 81 (2d Cir. 2012)................................................................13

*Keller v. State Bar of California,*
    496 U.S. 1 (1990)........................................................................16, 17

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
    511 U.S. 375 (1994)............................................................................6

*Kwong v. Bloomberg,*
    723 F.3d 160 (2d Cir. 2013), *cert. denied,* 134 S. Ct. 2696 (2014)....................12, 15

*Lares v. West Bank One,*
    188 F.3d 1166 (9th Cir. 1999)...........................................................21

*Laurent v. City and County of San Francisco,*
    99 Cal.App.2d 707 (1950) .................................................................21

*Leadsinger Inc. v. BMG Music Pub.*
    512 F.3d at 532 (9th Cir. 2008).........................................................23

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY, LLP

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE NO. 5:22-CV-00501-BLF**

iii

1

2  *Lopez v. Turnage,*
       2021 WL 5142070 (N.D. Cal. Oct. 15, 2021)..................................................23

3  *Los Angeles Unified Sch. Dist. v. Garcia,*
       58 Cal.4th 175 (2013) ......................................................................................21
4

5  *McDonald v. City of Chicago,*
       561 U.S. 742 (2010) .........................................................................................15

6  *Minneapolis Star and Tribune Co. v. Minnesota Comm'r of Rev.,*
       460 U.S. 575 (1983) .........................................................................................15
7

8  *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization,*
       858 F.2d 1376 (9th Cir. 1988), *cert. denied,* 488 U.S. 1006 (1989)...............23

9  *Murdock v. Pennsylvania,*
10      319 U.S. 105 (1943)....................................................................................15, 16

11 *Nat'l Park Hosp. Assn. v. Dep't. of Interior,*
       538 U.S. 803 (2003) ...........................................................................................8
12

13 *Nordyke v. King,*
       681 F.3d 1041 (9th Cir. 2012) (en banc), *cert. denied,* 133 S. Ct. 840 (2013)....................10, 15
14

15 *O'Connell v. Gross,*
       No. CV 19-11654-FDS, 2020 WL 1821832 (D. Mass. Apr. 10, 2020).....................12

16 *Olsen v McGillicuddy,*
       15 Cal. App. 3d 897 (1971) .............................................................................19
17

18 *Parks Sch. of Bus. v. Symington,*
       51 F.3d 1480 (9th Cir. 1995) .............................................................................6
19

20 *Portland Police Ass'n v. City of Portland,*
       658 F.2d 1272 (9th Cir. 1981) .........................................................................23

21 *Reno v. Catholic Soc. Servs., Inc.,*
       509 U.S. 43 (1993)..............................................................................................6
22

23 *Rizzo v. Goode,*
       423 U.S. 362 (1976)..........................................................................................23

24 *S. Cal. Edison Co. v. Pub. Util. Comm'n,*
       227 Cal.App.4th 172 (2014) .............................................................................20
25

26 *Sacramento Chamber of Commerce v. Stephens,*
       212 Cal. 607 (1931) ..........................................................................................22
27

28 *Safe Air for Everyone v. Meyer,*
       373 F.3d 1035 (9th Cir. 2004) ...........................................................................6

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE
NO. 5:22-CV-00501-BLF**                                                                      iv

*Schmeer v. County of Los Angeles*,
   213 Cal.App.4th 1310 (2013) .......................................................................19, 20

*Scholl v. Mnuchin*,
   489 F.Supp.3d 1008 (N.D. Cal. 2020) .................................................................7

*Scott v. Pasadena Unified Sch. Dist.*,
   306 F.3d 646 (9th Cir. 2002) ................................................................................8

*Sherwin-Williams Co. v. City of Los Angeles*,
   4 Cal.4th 893 (1993) ...........................................................................................18

*Sierra Club v. United States Army Corps of Eng'rs*,
   990 F.Supp.2d 9 (D.C. Cir. 2013) ........................................................................9

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ................................................................................6

*Stimmel v. Sessions*,
   879 F.3d 198 (6th Cir. 2018) ..............................................................................12

*Sunset Amusement Co. v. Bd. of Police Comm'rs*,
   7 Cal.3d 64 (1972) ..............................................................................................17

*Thomas v. Anchorage Equal Rights Comm'n*,
   220 F.3d 1134 (9th Cir. 2000) (en banc) .............................................................6

*Toilet Goods Ass'n, Inc. v. Gardner*,
   387 U.S. 158 (1967) ..............................................................................................7

*Torcivia v. Suffolk Cty., New York*,
   17 F.4th 342 (2d Cir. 2021) ................................................................................12

*Turner Broad. Sys., Inc. v. FCC*,
   520 U.S. 180 (1997) ............................................................................................13

*United States v. Chovan*,
   735 F.3d 1127 (9th Cir. 2013) ..............................................................10, 12, 13

*United States v. Gila Valley Irr. Dist.*,
   31 F.3d 1428 (9th Cir. 1994) ................................................................................8

*United States v. Masciandaro*,
   638 F.3d 458 (4th Cir. 2011) ..............................................................................15

*United States v. Power Co.*,
   2008 WL 2626989 (D. Nev. June 26, 2008) ........................................................8

*Vieux v. Easy Bay Reg'l Park Dist.*,
   906 F.3d 1330 (9th Cir. 1990) ..............................................................................8

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE
NO. 5:22-CV-00501-BLF**                                                                     v

*Ward v. Rock Against Racism*,
    491 U.S. 781 (1989) ................................................................................................ 11

*Wash. State Grange v. Wash. State Republican Party*,
    552 U.S. 442 (2008) ................................................................................ 9, 10, 17

*Westlands Water Distrib. Dist. v. Nat. Res. Defense Council*,
    276 F.Supp.2d 1046 (E.D. Cal. 2003) .................................................................. 24

*Young v. Hawaii*,
    992 F.3d 765 (9th Cir. 2021) (en banc) ........................................................... 9, 11

**Statutes**

Cal. Gov. Code § 53071 ................................................................................................ 18

Cal. Pen. Code § 25605 ................................................................................................ 18

Ordinance ................................................................................................................. *passim*

Ordinance. ¶ 26 ............................................................................................................... 2

San Jose Ordinance ("Ordinance") ............................................................................... 1

**Other Authorities**

First Amendment ..................................................................................................... *passim*

Second Amendment ................................................................................................. *passim*

Cal. Const., Art. XIII C, § 1 ................................................................................. 19, 20

California Constitution .............................................................................................. 2, 19

California Constitution Article XI, Section 5(a) .......................................................... 18

California Constitution Article XI, Section 7 .............................................................. 17

California Constitution Article XIII C ......................................................................... 19

NAGR Press Release, *National Association for Gun Rights Files Lawsuit Against*
    *the City of San Jose* (Jan. 26, 2022), *available at* https://tinyurl.com/2p89jdu5 ......... 2

NAGR Website, *Frequently Asked Questions*,
    https://nationalgunrights.org/resources/faqs/ (accessed Apr. 5, 2022) ................. 2

6 Wright & Miller, Fed. Prac. & Proc. § 1473 (3d ed. 2021) ...................................... 23

Charters Budgetary Procedures:
    §§ 300, 700 .............................................................................................................. 22
    § 411 ........................................................................................................................ 23

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE
NO. 5:22-CV-00501-BLF**         vi

§§§1204, 1206, and 1207 ................................................................................21
§ 1207 ......................................................................................................22

**Rules**

Federal Rules of Civil Procedures:
    Rule 12(b)(1) ........................................................................6, 7, 24
    Rule 12(b)(6) ................................................................2, 6, 10, 24
    Rule 15(a) ..........................................................................................23
    Rule 15(d) ..........................................................................................23

**Ordinances:**

§ 10.32.200(A) ..............................................................................................3
§§ 10.32.215, 10.32.235(A), 10.32.240(B) ..............................................3
§ 10.32.200(B)(10)-(13) ..............................................................................3
§ 10.32.200(B)(11) ......................................................................................3
§ 10.32.200(B)(4)-(10) ................................................................................3
§ 10.32.255(A)-(C) ......................................................................................3
§ 10.32.235(A)(4) ........................................................................................3
§ 10.32.210(A), (C) ......................................................................................4
§ 10.32.220(B)(11)-(12) ..............................................................................4
§ 10.32.235(A)(1) ........................................................................................4
§§10.32.215, 10.32.220(A) ..........................................................................4
§ 10.32.200(B)(13) ......................................................................................4
§ 10.32.220(A)(1)-(5) ..................................................................................4
§ 10.32.205(B) ..............................................................................................4
§ 10.32.200(B)-(C) ......................................................................................4
§ 10.32.215 ..............................................................................................5, 21
§ 10.32.235(A)(2) ........................................................................................5
§ 10.32.230(A)-(B) ......................................................................................5
§ 10.32.230(A) ..............................................................................................5
§ 10.32.240(A) ..............................................................................................5
§ 10.32.240(B) ..............................................................................................5
§ 10.32.245 ....................................................................................................5
§§ 10.32.215, 10.32.240(B) ........................................................................7
§ 10.32.235(A) ..............................................................................................7
§ 10.32.220(B) ........................................................................................9, 16
§§ 10.32.210(A), 10.32.215, 10.32.220 ..................................................11
§§ 10.32.210(A), 10.32.215 ......................................................................12
§ 10.32.200(B) ............................................................................................12
§ 10.32.200(B)(6) ......................................................................................13
§ 10.32.200(B)(8) ......................................................................................14
§§ 10.32.225(C), 10.32.235(A)(4) ..........................................................14
§ 10.32.225(B) ............................................................................................19
§§ 10.32.215, 10.32.220 ............................................................................20
§ 10.32.305(B) ............................................................................................22
§ 10.32.220(C) ............................................................................................22

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE NO. 5:22-CV-00501-BLF**

vii

§ 10.32.220(C) ...................................................................................................22
§ 10.32.235 (A), *et seq*. ....................................................................................22
§ 10.32.235 ........................................................................................................23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE
NO. 5:22-CV-00501-BLF**                                                                                    viii

SER-191

## I.      INTRODUCTION

The San Jose Ordinance ("Ordinance") at issue in this action springs from the legitimate authority of Defendant City of San Jose ("City" or "San Jose") to enact legislation aimed at reducing gun deaths and injuries and compensating victims of accidental shootings. The City believes that smart, innovative policies informed by public health experts and gunowners alike can reduce firearm-related deaths and injuries, while fully respecting lawful gunowners' Second Amendment rights to keep and bear arms for self-defense. State and local governments must be granted leeway to address the complex challenge of reducing the ever-increasing numbers of gun-related deaths and injuries.

The Ordinance here requires non-exempted San Jose gunowners to obtain liability insurance for gun accidents and to pay a reasonable annual Gun Harm Reduction Fee ("Fee"), which a nonprofit organization will use to provide gunowners and their families with voluntary programming and services related to gun safety, mental health, and domestic violence. Notwithstanding the Ordinance's modest scope, Plaintiffs seek to strike it down. The lead Plaintiff in this case is the National Association for Gun Rights ("NAGR"), which calls itself the nation's largest "no compromise" pro-gun organization and is opposed to the existence of any law that regulates firearms in any way. Their operative First Amended Complaint ("FAC") is legally defective and should be dismissed on two grounds.

First, Plaintiff's claims fail under Federal Rule of Civil Procedure ("Rule") 12(b)(1) for lack of standing and ripeness, because key components of the Ordinance, which bear directly on the validity of Plaintiffs' claims, have not yet been decided by the City. For example, Plaintiffs' FAC rests on the theory that the annual Fee is a substantial and unconstitutional burden on the right to keep and bear arms—even though the amount of the Fee has not yet been set, and even though the criteria for the Ordinance's "financial hardship" exemption have not yet been established. Similarly, Plaintiffs' FAC is premised on speculation that the nonprofit organization referenced in the Ordinance (which the City Manager has not yet designated) will harbor anti-gun views and discourage gun ownership. Plaintiffs' abstract objections to these and other aspects of

the law rest on speculation, contingent future events, and hypotheticals that would require this Court to issue an advisory opinion about an ordinance that is still incomplete and unfinished.

Second, under Rule 12(b)(6), all six of Plaintiffs' claims under the First and Second Amendment to the U.S. Constitution, the California Constitution (Proposition 26), and the San Jose City Charter are legally defective under binding precedent or otherwise collapse under scrutiny. Because there are no facts Plaintiffs could allege to cure those defects, all six claims should be dismissed with prejudice.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    History of the Ordinance and Procedural Posture

In June 2021, the City's mayor and City Council directed the City Attorney to draft a gun safety ordinance designed to mitigate gun harms for Council's consideration. *See* Decl. of Tamarah Prevost ("Prevost Decl.") ¶ 2, Ex. 1. Six months and seven detailed memoranda later, the Council, at its January 25, 2022 meeting, heard a first reading of the draft ordinance, directed that it be published, that certain amendments be drafted, and voted to re-consider the Ordinance at a later date. *Id.* ¶¶ 3-9, Exs. 2-8.

That same day, Plaintiffs NAGR and Mark Sikes, filed this lawsuit seeking to invalidate the Ordinance, even though it was still being negotiated and drafted. ECF 1; *see also* NAGR Press Release, *National Association for Gun Rights Files Lawsuit Against the City of San Jose* (Jan. 26, 2022), *available at* https://tinyurl.com/2p89jdu5 (NAGR denouncing "new ordinance" as "tyrannical"). "Unlike other groups such as the NRA, NAGR believes in absolutely NO COMPROMISE on gun rights issues." NAGR Website, *Frequently Asked Questions*, https://nationalgunrights.org/resources/faqs/ (accessed Apr. 5, 2022).

On February 4, 2022, Defendants moved to dismiss the Complaint for lack of jurisdiction. ECF 17. On February 8, the City enacted the Ordinance. ¶ 26.[1] The Ordinance expressly leaves key aspects of the law unspecified and dependent on future action by the City Council and City

---

[1] "¶" on its own refers to a paragraph of the FAC.

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE NO. 5:22-CV-00501-BLF**                                                                     2

Manager (§§ 10.32.215, 10.32.235(A), 10.32.240(B)),[2] which the FAC repeatedly concedes (*see* ¶¶ 1, 36-37, 90-91). The Ordinance provides the Council and City Manager 180 days to take those actions before the Ordinance becomes effective on August 7, 2022. § 2. On February 14, before the Council or City Manager had taken any of those further actions, Plaintiffs filed their FAC (ECF 19), and the Court terminated the motion to dismiss the Complaint as moot (ECF 21). Three weeks later, Plaintiffs filed a motion for preliminary injunction that mirrors their FAC in substance, and which is now fully briefed and set to be heard on July 21, 2022. ECF 25, 28, 31-32.

**B.  Summary of the Ordinance**

The Ordinance's basic purpose is to "reduce gun harm" "for the protection of the welfare, peace, and comfort of the residents of the City of San Jose." § 10.32.200(A). To "reduce the number of gun incidents," the Ordinance seeks to provide voluntary gun safety and other "[p]rograms and services to gun owners and their households" and to require gunowners to obtain liability insurance to compensate victims of accidental shootings, which is partly informed by an analogue to the success of car insurance mandates in helping reduce vehicle collision fatalities and injuries. § 10.32.200(B)(10)-(13); *see also* § 10.32.200(B)(11) (finding risk-based automobile liability insurance mandates were part of "a comprehensive public health approach to car safety" that helped reduce U.S. motor vehicle collision fatalities by 80%). The Ordinance is informed by public health research and data, such as findings that more than a third of all gun injuries are from unintentional shootings, that gunowners and those who live with them are at significantly higher risk of gun suicide and homicide than the rest of the population, and that gun-related deaths or serious bodily injuries cost San Jose residents $442 million per year. § 10.32.200(B)(4)-(10).

The Ordinance applies to all City residents who own a gun, with three exceptions: (1) peace officers, (2) those with a state concealed weapon license, and (3) those for whom compliance with the Ordinance would create a "financial hardship." § 10.32.255(A)-(C). With respect to the latter, the Ordinance authorizes the City Manager to "promulgate [] regulations" on "[t]he criteria by which a person can claim a financial hardship exemption." § 10.32.235(A)(4).

---

[2] "§_" on its own refers to a section of the Ordinance, which is attached as Exhibit K to the FAC.

1    The City Manager has not yet promulgated these regulations. *See* Decl. of Sarah Zarate, City
2    Manager's Office ("CMO Decl.") ¶¶ 4-8. With respect to all non-exempt persons, the Ordinance
3    imposes three main requirements.

**1.   Liability Insurance Requirement**

5         First, gunowners must obtain "a homeowner's, renter's or gun liability insurance policy …
6    specifically covering losses or damages resulting from any accidental use of the Firearm, including
7    but not limited to death, injury or property damage" within 30 days of the Ordinance taking effect
8    (i.e., September 7, 2022) or a later date prescribed by regulation. § 10.32.210(A), (C). The purpose
9    of the liability insurance requirement is to ensure victims of accidental shootings have access to
10   compensation, and to leverage private insurance market forces as a means of "encouraging safer
11   behavior." § 10.32.220(B)(11)-(12). The Ordinance authorizes the City Manager to "promulgate []
12   regulations" on "[p]rocesses and procedures related to the implementation of the liability insurance
13   requirement, and forms necessary thereto," which it must complete before the Ordinance can be
14   fully effectuated. § 10.32.235(A)(1); CMO Decl. ¶¶ 4-8.

**2.   Annual Gun Harm Reduction Fee**

16        Second, gunowners must pay an annual Fee to make available voluntary programming and
17   services to gunowner residents, "to members of their household, or to those with whom they have
18   a close familiar or intimate relationship" (§§10.32.215, 10.32.220(A)) with the goal of
19   "encourage[ing] safer behavior" related to gun ownership and use (§ 10.32.200(B)(13)). The
20   programs and services will focus on suicide prevention, violence reduction and gender-based
21   violence, addiction intervention and substance abuse treatment, mental health services related to
22   gun violence, and firearms safety education or training. § 10.32.220(A)(1)-(5). These programs
23   and services will be provided to qualifying City residents by a nonprofit organization to be
24   designated by the City Manager. § 10.32.205(B); CMO Decl. ¶ 6. While the City may not
25   "specifically direct" how the nonprofit spends monies from the Fee, the Ordinance is clear that
26   "[n]o portion of the monies … shall be used for litigation, political advocacy, or lobbying
27   activities." § 10.32.200(B)-(C).

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY, LLP

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE
NO. 5:22-CV-00501-BLF**                                                                    4

**SER-195**

The Ordinance does not set the amount of the Fee but leaves that to be "established by [separate] resolution of the City Council." § 10.32.215. *Accord* ¶¶ 1, 36, 90-91 (alleging that, under Ordinance, Fee amount is "unspecified" and City Council must "determine the fee amount at a later date"). To date, no such resolution has been passed. CMO Decl. ¶¶ 7-8. The Ordinance also authorizes the City Manager to "promulgate [] regulations" concerning the "[d]esignation of the nonprofit organization that will receive the [Fee], any processes and procedures related to the payment of the fee, and any additional guidelines or auditing of the use of the monies from the fee" (§ 10.32.235(A)(2)), as well as the annual due date for payment of the Fee (§ 10.32.215). The City Manager has not yet promulgated these regulations. CMO Decl. ¶¶ 7-8. *Accord* ¶¶ 1, 37, 91 (conceding nonprofit has not yet been designated and characterizing services to be provided as "unspecified programs").

### 3. Self-Certification of Compliance

Third, much in the same way car owners must document their compliance with liability insurance and annual registration fee requirements, the Ordinance requires gunowners to complete a "City-designated attestation form" that states basic information about their gun liability insurance and to keep that form and "proof of payment of the [Fee]" "with the[ir] Firearms where they are being stored or transported." § 10.32.230(A)-(B). Gunowners must also produce the form and proof of payment "when lawfully requested to do so by a peace officer." § 10.32.230(A). The City Manager has not yet designated the attestation form. CMO Decl. ¶ 5.

Violations of the Ordinance are punishable by an administrative citation and fine, subject to due process protections. § 10.32.240(A). Similar to the Fee, the Ordinance does not set the amount of the administrative fine but leaves that to be "established by [separate] resolution of the City Council." § 10.32.240(B). To date, no such resolution has been passed. CMO Decl. ¶¶ 7-8. *Accord* ¶¶ 17, 90 (conceding fine amount is presently "unspecified"). Contrary to Plaintiffs' allegations that the Ordinance authorizes the "seizure of firearms" of those who fail or refuse to comply with the Ordinance (¶¶ 3, 44), the Ordinance only authorizes the "impoundment" of firearms and only "to the extent allowed by law" (§ 10.32.245). There is currently no lawful basis to impound firearms under state or federal law, meaning this particular provision will not take effect until, for

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY, LLP

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE NO. 5:22-CV-00501-BLF**

5

SER-196

1  example, the passage of a state law permitting municipalities to impound firearms. The Ordinance

2  also contains a severability clause. § 3.

3  **III.    LEGAL STANDARDS**

4      **A. Rule 12(b)(1)**

5          The plaintiff bears the burden of establishing the Court has jurisdiction. *Kokkonen v.*

6  *Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).[3] The Court's proper role is "to adjudicate

7  live cases or controversies consistent with the powers granted the judiciary in Article III of the

8  Constitution," which means it lacks jurisdiction "to issue advisory opinions []or to declare rights in

9  hypothetical cases." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir.

10  2000) (en banc). The doctrine of ripeness "prevent[s] the courts, through avoidance of premature

11  adjudication, from entangling themselves in abstract disagreements." *Id.* Ripeness "is drawn from

12  both Article III limitations on judicial power and from prudential reasons for refusing to exercise

13  jurisdiction." *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993). "A Rule 12(b)(1)

14  jurisdictional attack may be facial or factual," *Safe Air for Everyone v. Meyer*, 373 F.3d 1035,

15  1039 (9th Cir. 2004). The City primarily makes a facial attack, that "the allegations contained in a

16  complaint are insufficient on their face to invoke federal jurisdiction." *Id.* To the extent the Court

17  deems any part of the City's argument to represent a factual attack disputing the truth of Plaintiffs'

18  allegations purporting to establish federal jurisdiction, the court "need not presume the truthfulness

19  of the plaintiff's allegations" and "may review evidence beyond the complaint without converting

20  the motion to dismiss into a motion for summary judgment." *Id.*

21      **B. Rule 12(b)(6)**

22          Defendants are entitled to dismissal under Rule 12(b)(6) if, accepting Plaintiffs' allegations

23  as true, the complaint fails to state a claim. *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484

24  (9th Cir. 1995). The Court should not accept as true "allegations that are merely conclusory,

25  unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*,

26  266 F.3d 979, 988 (9th Cir. 2001). Plaintiffs' "obligation to provide the 'grounds' of [their]

27

28  _____
[3] Unless otherwise noted, internal citations, alterations, and quotations are omitted.

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE NO. 5:22-CV-00501-BLF**                                                                                    6

1   'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the

2   elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

3   "Nor does a complaint suffice if it tenders naked assertions devoid of further factual

4   enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The allegations must be

5   "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and "must be enough

6   to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

7   **IV.    ARGUMENT**

8        **A.  THE COURT SHOULD DISMISS THE FAC UNDER RULE 12(b)(1).**

9              **1.  The FAC Fails for Lack of Ripeness.**

10      The Ordinance was enacted in February 2022, but it expressly provides a 180-day period

11   before it becomes effective on August 7, 2022 (§ 2), during which time the Council would need to

12   pass resolutions setting the amount of the Fee and any administrative fine (§§ 10.32.215,

13   10.32.240(B)), and the City Manager would promulgate key regulations, such as those establishing

14   the criteria for the financial hardship exemption and designating the nonprofit organization

15   (§ 10.32.235(A)). *See generally* CMO Decl. Since the Ordinance is not yet "effective," and since

16   none of the required resolutions or regulations have yet been passed or promulgated, Plaintiffs'

17   claims are not ripe for review. *See Scholl v. Mnuchin*, 489 F.Supp.3d 1008, 1024-27 (N.D. Cal.

18   2020).

19      Ripeness is justiciability doctrine that looks primarily at two considerations: "the hardship

20   to the parties of withholding court consideration" and "the fitness of the issues for judicial

21   decision." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967). The "basic rationale" of the

22   ripeness requirement is "to prevent the courts, through avoidance of premature adjudication, from

23   entangling themselves in abstract disagreements" (*id.* at 148), and to ensure that challenges to laws

24   are "test[ed] … in a concrete situation" (*Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 165

25   (1967)). Pre-enforcement challenges to laws are not ripe for judicial review if it is likely that the

26   law will change before it goes into effect. *See, e.g.*, *Cramer v. Brown*, 2012 WL 13059699, at *3

27   (C.D. Cal. Sept. 12, 2012) (finding pre-enforcement claim justiciable, in part, because the

28   legislature "ha[d] no power to amend the statute before its effective date" and there was "no reason

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE
NO. 5:22-CV-00501-BLF**       7

**SER-198**

1    to think the law change"). Additionally, an issue "may not be ripe for review if further factual

2    development would significantly advance [the court's] ability to deal with the legal issues

3    presented." *Nat'l Park Hosp. Assn. v. Dep't. of Interior*, 538 U.S. 803, 812 (2003); *see also*

4    *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122-23 (9th Cir. 2010) (case not ripe

5    if it "involves uncertain or contingent future events that may not occur as anticipated, or indeed

6    may not occur at all"); *Vieux v. Easy Bay Reg'l Park Dist.*, 906 F.3d 1330, 1344 (9th Cir. 1990)

7    (federal courts may not issue advisory opinions based on a "hypothetical state of facts").

8           "The prudential considerations of ripeness are amplified when constitutional considerations

9    are concerned." *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 662 (9th Cir. 2002) ("*Scott*").

10   Indeed, "[t]he Supreme Court has neatly instructed that the jurisdiction of federal courts to hear

11   constitutional challenges should be exercised only when the underlying constitutional issues [are

12   tendered] in clean-cut and concrete form." *Id.* (quoting *Rescue Army v. Mun. Ct. of Los Angeles*,

13   332 U.S. 549, 584 (1947)). In *Scott*, for example, the Ninth Circuit determined that an equal

14   protection challenge to an admissions policy was not ripe because it lacked a "basis to infer" how

15   the policy's criteria was to be implemented. 306 F.3d at 663. And "[w]ithout knowing the

16   conditions under which the policy was to be implemented, no court can make a true determination

17   as to whether the policy" passes constitutional muster. *Id.*

18          Here, Plaintiffs' claims are not ripe for precisely the same reasons Plaintiffs repeatedly

19   emphasize on the face of the FAC—i.e., because key aspects of the Ordinance that Plaintiffs

20   challenge have not yet been established. *See, e.g.*, ¶¶ 1, 36-37, 90-91. For example, Plaintiffs

21   challenge the constitutionality of the insurance and Fee requirements as an unconstitutional burden

22   on Second Amendment rights, even Plaintiffs' allege the amount of the Fee and the cost of the

23   required insurance is "as yet unknown." ¶¶ 1, 90. This is precisely the kind of situation in which it

24   is "premature" to ask a federal court "to issue a binding interpretation of a local ordinance based

25   on what might happen in the future without first giving the City … the opportunity to interpret its

26   own ordinance." *United States v. Power Co.*, 2008 WL 2626989, at *4 (D. Nev. June 26, 2008).

27   Since claims are not ripe when based on "mere speculation" as to what a future regulatory decision

28   will be (*United States v. Gila Valley Irr. Dist.*, 31 F.3d 1428, 1436 (9th Cir. 1994)), they certainly

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE
NO. 5:22-CV-00501-BLF**                                                                        8

**SER-199**

1   are not ripe when the plaintiffs' own complaint admits that necessary legislative action and

2   rulemaking has not yet occurred, and plaintiffs have no idea what the content of those items will

3   be. *See, e.g.*, ¶¶ 1, 36-37, 90-91. As for Plaintiffs' speculative fears that firearms will be "seized"

4   and onerous fines imposed, that also is not ripe for review because it "rests upon contingent future

5   events that may not occur as anticipated, or indeed may not occur at all." *Young v. Hawaii*, 992

6   F.3d 765, 828 (9th Cir. 2021) (en banc) ("*Young*").

7          Similarly, Plaintiffs' First Amendment challenge is based on allegations that the "yet-to-be-

8   determined nonprofit" will "likely" be "dedicated to exclusively preaching the negative risks of

9   gun ownership," and that it will administer "unspecified programs" and "activities of ideological

10  or political nature with which Plaintiffs disagree," such as "endorsing gun control." ¶¶ 6, 53, 62-

11  63, 112. This is all speculation that ignores the Ordinance's express limitations on the nonprofit's

12  activities. § 10.32.220(B) (expressly prohibiting nonprofit from spending any "portion of the

13  monies from the [Fee]" on "litigation, political advocacy, or lobbying activities"). Plaintiffs'

14  speculation about the "likely" views and activities of the yet-to-be-determined nonprofit is also

15  devoid of factual support. *See Sierra Club v. United States Army Corps of Eng'rs*, 990 F.Supp.2d

16  9, 31-32 (D.C. Cir. 2013) (grounds for preliminary injunction not ripe where the complained-of

17  conduct "has not yet occurred and is still in the process of being addressed").

18                    **2.   The FAC Does Not State a Proper Facial Constitutional Challenge.**

19          In addition to being unripe for review, Plaintiffs' facial challenge to the Ordinance should

20  be rejected for other reasons. Courts may not "resolve questions of constitutionality with respect to

21  each potential situation that might develop" in litigation, especially when the moving party does

22  not demonstrate that the law "would be unconstitutional in a large fraction of relevant cases."

23  *Gonzales v. Carhart*, 550 U.S. 124, 167-68 (2007). Because constitutional facial challenges "often

24  rest on speculation" (*Jackson v. City and County of San Francisco*, 746 F.3d 953, 962 (9th Cir.

25  2014) ("*Jackson*")), "they raise the risk of premature interpretations of statutes on the basis of

26  factually barebones records," and "threaten to short circuit the democratic process by preventing

27  laws embodying the will of the people from being implemented in a manner inconsistent with the

28  Constitution" (*Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450-51

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE
NO. 5:22-CV-00501-BLF**                                                                                    9

1   (2008)). To be successful, a facial challenge must show that "no set of circumstances exists under

2   which the [law] would be valid, i.e., that the law is unconstitutional in all of its applications," or at

3   least that it lacks a "plainly legitimate sweep." *Id.* at 449.

4        Plaintiffs fail to allege facts establishing that the Fee would be unconstitutional in a "large

5   fraction" of cases, especially since the amount of the Fee has not even been determined yet.

6   Assuming the Council and City Manager establish constitutionally reasonable fees, fines, and

7   regulations, the Ordinance's sweep is plainly legitimate because it furthers the City's legitimate

8   efforts to reduce the harm caused by gun-related accidents and imposes only de minimus or

9   marginal burdens on the constitutional right to obtain a keep a firearm in the home for self-defense.

10  *Cf. Nordyke v. King*, 681 F.3d 1041, 1044 (9th Cir. 2012) (en banc), *cert. denied*, 133 S. Ct. 840

11  (2013) (rejecting facial challenge to ordinance that regulated gun shows "only minimally and only

12  on county property," without even requiring empirical support justifying the regulation). Plaintiffs'

13  FAC should be dismissed for this reason alone.

14        **B.  THE COURT SHOULD DISMISS THE FAC UNDER RULE 12(b)(6).**

15            **1.  Plaintiffs Fail to State a Second Amendment Claim.**

16        Plaintiffs contend the Ordinance impermissibly burdens the Second Amendment rights of

17  City residents to whom the Ordinance applies. ¶¶ 45-49. The Ninth Circuit adjudicates Second

18  Amendment challenges using a two-step test, which "(1) asks whether the challenged law burdens

19  conduct protected by the Second Amendment and (2) if so, directs courts to apply an appropriate

20  level of scrutiny." *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013). For purposes of

21  this Motion, Defendants concede the Ordinance imposes some minimal or slight burden, and so

22  proceed to the second step of the test. *See e.g., Heller*, 554 U.S. at 625; *Jackson*, 746 F.3d at 959.

23            ***a.  The Appropriate Level of Scrutiny is Intermediate Scrutiny.***

24        To determine the appropriate level of scrutiny, Courts look to two factors. First, Courts

25  assess how close the law comes to the core of the Second Amendment right, which is the right to

26  keep firearms in the home for purposes of self-defense. *Heller*, 554 U.S. at 629; *Jackson*, 746 F.3d

27  at 963. Unless the challenged law "implicates the core of the Second Amendment right and

28  severely burdens that right," courts in the Ninth Circuit generally apply intermediate scrutiny.

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE NO. 5:22-CV-00501-BLF**                                                                      10

1   *Young*, F.3d 765 at 784; *see also Heller v. District of Columbia*, 670 F.3d 1244, 1257 (D.C. Cir.

2   2011) ("*Heller II*") ("[A] regulation that imposes a substantial burden upon the core right of self-

3   defense protected by the Second Amendment must have a strong justification, whereas a regulation

4   that imposes a less substantial burden should be proportionately easier to justify."). Here,

5   intermediate scrutiny applies because the Ordinance does not "impos[e] restrictions on the use of

6   handguns within the home" or otherwise come close to regulating the core Second Amendment

7   right of keeping firearms in the home for self-defense. *Jackson*, 746 F.3d at 963. The Ordinance

8   merely requires resident gunowners to obtain liability insurance to provide a mechanism for

9   compensating victims of accidental gun injuries, and to pay a reasonable Fee to fund services

10  aimed at reducing well-established harms that result from guns being present in the home.

11  §§ 10.32.210(A), 10.32.215, 10.32.220.

12       The second factor of the scrutiny evaluation requires the Court to assess the "severity of the

13  law's burden" on the core Second Amendment right. *Jackson*, 746 F.3d at 963. A law that

14  "severely burdens that right receives strict scrutiny," but in all "other cases in which Second

15  Amendment rights are affected in some lesser way, we apply intermediate scrutiny." *Young*, 992

16  F.3d at 784. Laws that regulate only the "manner in which persons may exercise their Second

17  Amendment rights" are obviously less burdensome than those which ban firearm possession

18  completely. *Jackson*, 746 F.3d at 961 (citing *Chovan*, 735 F.3d at 1138). Similarly, "firearm

19  regulations which leave open alternative channels for self-defense are less likely to place a severe

20  burden on the Second Amendment right than those which do not. *Jackson*, 746 F.3d at 961; *see

21  also Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (noting that laws placing "reasonable

22  restrictions on the time, place, or manner of protected speech" and that "leave open alternative

23  channels" for communication pose less burden to a First Amendment right and are reviewed under

24  intermediate scrutiny).

25       Here, the burden the Ordinance imposes is minimal: it neither regulates the use of firearms,

26  how or where they are stored, nor any other factors evaluated by courts as directly affecting

27  residents' ability to keep and bear arms for self-defense. *See e.g.*, *Heller*, 554 U.S. at 629. Instead,

28  it merely requires gunowners to obtain insurance and pay a reasonable annual Fee.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE
NO. 5:22-CV-00501-BLF**                                                                    11

**SER-202**

1    §§ 10.32.210(A), 10.32.215. The Ordinance neither seeks to ban guns nor threatens to seize them.

2    Indeed, the Ninth Circuit (in line with the other Circuits) has long applied intermediate scrutiny to

3    uphold similar laws. *See, e.g., Bauer v. Becerra*, 858 F.3d 1216 (9th Cir. 2017) (upholding DOJ's

4    use of gun sale fee for enforcement efforts targeting illegal firearm possession after point of sale

5    under intermediate scrutiny); *Heller v. District of Columbia*, 801 F.3d 264, 278 (D.C. Cir. 2015)

6    ("*Heller III*") (upholding $48 in gun licensing fees under intermediate scrutiny); *Kwong v.*

7    *Bloomberg*, 723 F.3d 160, 161, 167 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2696 (2014) (upholding

8    $340 gun licensing fee under intermediate scrutiny); *O'Connell v. Gross*, No. CV 19-11654-FDS,

9    2020 WL 1821832 (D. Mass. Apr. 10, 2020) (upholding law requiring mandatory safety courses

10   and $300 in fees under intermediate scrutiny). Intermediate scrutiny is appropriate.

                        ***b.*  The Ordinance Easily Survives Intermediate Scrutiny.**

12           To withstand intermediate scrutiny, the City need only show (1) that their stated objective

13   is significant, substantial, or important; and (2) a reasonable fit between the Ordinance and that

14   objective. *Chovan*, 735 F.3d at 1139.

15           First, the City's objective of promoting public safety and addressing gun injuries is an

16   "important" government interest. *Chovan*, 735 F.3d at 1139; *see also Fyock*, 779 F.3d at 1000 (it is

17   "self-evident" that government's interest in promoting public safety and reducing violent crime are

18   substantial and important government interests"); *Stimmel v. Sessions*, 879 F.3d 198, 201 (6th Cir.

19   2018) (referring to "government's compelling interest of preventing gun violence"); *Torcivia v.*

20   *Suffolk Cty., New York*, 17 F.4th 342, 359 (2d Cir. 2021) (finding a "substantial governmental

21   interest in preventing suicide and domestic violence"). The Ordinance's other stated purpose of

22   reducing the social and financial costs caused by guns (§ 10.32.200(B)) is also an important

23   interest. *See, e.g., Bauer*, 858 F.3d at 1226; *Kwong*, 723 F.3d at 168 (city permitted to recover

24   costs as part of scheme "designed to promote public safety and prevent gun violence"). There can

25   be no serious doubt that gun violence is a major public health crisis. *See* U.S. Centers for Disease

26   Control and Prevention, *Firearm Violence Prevention*, available at

27   https://www.cdc.gov/violenceprevention/firearms/fastfact.html (accessed Apr. 6, 2022) (deeming

28

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE
NO. 5:22-CV-00501-BLF**                                                                        12

**SER-203**

1   firearm injuries a "serious public health problem."). Thus, the Ordinance clearly meets the first

2   prong under intermediate scrutiny.

3         Second, there is a reasonable fit between the challenged regulation and the City's objective.

4   *See Chovan*, 735 F.3d at 1139. When assessing the reasonableness of fit under immediate scrutiny,

5   courts must give "substantial deference to the predictive judgments" of the legislature on public

6   policy questions that fall outside the courts' competence. *Turner Broad. Sys., Inc. v. FCC*, 520

7   U.S. 180, 195 (1997) ("*Turner II*"). This is because "the legislature is far better equipped than the

8   judiciary to make sensitive public policy judgments (within constitutional limits)" on complex

9   empirical questions like "the dangers in carrying firearms and the manner to combat those risks."

10  *Kachalsky v. County of Westchester*, 701 F.3d 81, 97 (2d Cir. 2012) (quoting *Turner Broad. Sys.,*

11  *Inc. v. FCC*, 512 U.S. 622, 665 (1994) ("*Turner I*")). This Court's "sole obligation" is simply "to

12  assure that, in formulating its judgments, [the legislature] has drawn reasonable inferences based

13  on substantial evidence." *Turner II*, 520 U.S. at 181. That standard is easily met here.

14        The City's reasonable legislative judgments are entitled to deference. Plaintiffs' vaguely

15  allege the Ordinance is "not a reasonable fit" with its stated aims of reducing gun injuries and

16  reducing and offsetting some of the enormous social costs of gun injuries and violence in the City.

17  *See* ¶¶ 52-56, 96. Simply because "primary costs" of gun violence are associated with City

18  response costs does not detract from the City's lawful goal (and authority) to prevent and reduce

19  gun injuries and associated costs for the City and its residents in the first instance, with the goal of

20  saving the City and its residents from ever incurring the related costs. That the Ordinance does not

21  also seek to recover police or other response costs does not somehow invalidate it. And in any

22  event, the PIRE study does include findings related to suicide and self-inflicted harm, which the

23  Ordinance seeks to address.

24        Moreover, the City relied on several studies and findings to form its reasonable judgment

25  that an insurance mandate will deter, prevent, or reduce accidental gun harm. *See e.g.*, Prevost

26  Decl. ¶ 12, Ex. 11 (*The New England Journal of Medicine* article "Handgun Ownership and

27  Suicide in California," cited in Ordinance findings at § 10.32.200(B)(6)). The City also evaluated

28  and reviewed materials concerning the civil liability and financial harm arising from gun violence.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE**
**NO. 5:22-CV-00501-BLF**                                                              13

1   *See id.* ¶ 13, Ex. 12 (The Educational Fund to Stop Gun Violence, "Unintentional Shootings"); *id.*

2   ¶ 14, Ex. 13 (Hartford Courant, "Sandy Hook Families Settle Lawsuits Against Lanza Estate for

3   $1.5M"); *id.* ¶ 15, Ex. 14 (Gilman & Bedigian LLC, "Man who shot intruder in his home sued for

4   wrongful death"). The Ordinance is also based on the City's reasonable judgment that requiring

5   gun liability insurance might be effective in reducing harm, relying on the useful analogue of

6   automobile liability insurance. *See* § 10.32.200(B)(8) (noting "risk-adjusted premiums used by the

7   automobile insurance industry reduced per-mail auto fatalities by 80% over the past five decades

8   and saved 3.5 million lives"); Prevost Decl. ¶ 8, Ex. 7 (compendium of materials provided to City

9   Council in advance its January 25, 2022 meeting).

10          This multitude of studies support the City's view that the Ordinance's insurance mandate,

11   annual Fee requirement, and related education programming and services will positively improve

12   public health, safety, and well-being. Indeed, a city is allowed "a reasonable opportunity to

13   experiment with solutions to admittedly serious problems," such as unintentional harm caused by

14   firearms. *Jackson*, 746 F.3d at 966 (citing *City of Renton v. Playtime Theaters, Inc.*, 475 U.S. 41,

15   52 (1986)). The Ordinance findings and legislative record more than sufficiently support the

16   reasonableness of the fit between City's important interests in deterring gun-related deaths and

17   injuries and compensating victims of accidental shootings. *See City of Renton*, 475 U.S. at 51-52;

18   *Jackson*, 746 F.3d at 969. Additionally, Plaintiffs are well-aware that the Mayor has publicly

19   proposed a mere $25 fee in a Memorandum provided for Council's review. *See* Prevost Decl. ¶ 5,

20   Ex. 4. Yet the FAC contains no non-conclusory allegations as to why such a minimal Fee would be

21   an unconstitutional burden on Second Amendment rights. Nor do Plaintiffs' claims account for the

22   Ordinance's "financial hardship" exemption, which would exempt from the Ordinance's

23   requirements any person who meets its yet-to-be-promulgated criteria. §§ 10.32.225(C),

24   10.32.235(A)(4).

25          Ultimately, Plaintiffs' allegations regarding the purported lack of a "reasonable fit"

26   between the Ordinance and the City's important interests are far too limited, ignore key provisions

27   of the Ordinance, and ignore the deference due to a municipality's reasonable legislative

28   judgments. *See City of Renton*, 475 U.S. at 51-52 (municipality may rely on any evidence

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE
NO. 5:22-CV-00501-BLF**                                                                    14

**SER-205**

1    "reasonably believed to be relevant" to substantiate its important interest in regulating speech);

2    *Jackson*, 746 F.3d at 969 (finding San Francisco's evidence more than "fairly supports" its

3    conclusion that hollow point bullets are lethal).

4        Tellingly, Plaintiffs' cited cases in its FAC (*see* ¶¶ 46-49, 86-87) striking down gun laws

5    are inapposite as they either concerned "handgun bans," a far more severe burden than the

6    Ordinance here (*McDonald v. City of Chicago*, 561 U.S. 742, 750, 792 (2010); *District of*

7    *Columbia v. Heller*, 554 U.S. 570, 635 (2008)), or actually contradict their position. *See Nordyke v.*

8    *King*, 681 F.3d 1041, 1044-45 (9th Cir. 2012) (en banc) (upholding constitutionality of ordinance

9    regulating display of guns at gun shows "no matter what form of scrutiny applies"); *United States*

10   *v. Masciandaro*, 638 F.3d 458, 459-60 (4th Cir. 2011) (upholding constitutionality of federal law

11   prohibiting carrying or possessing a loaded handgun in a motor vehicle in a national park area);

12   *Bauer*, 858 F.3d 1216 (upholding California law requiring payment of $19 fee on every firearm

13   sale conducted in the state because of the "minimal nature of the burden" and plaintiff's failure to

14   show the fee "has any impact on [his] actual ability to obtain and possess a firearm"); *Kwong*, 723

15   F.3d at 161, 167 (upholding mandatory $340 three-year gun license fee because it imposed merely

16   a "marginal, incremental, or [] appreciable [but not substantial] restraint" on Second Amendment

17   rights, "especially considering that plaintiffs [] put forth no evidence … that the fee is prohibitively

18   expensive"). Like the plaintiffs in *Bauer* and *Kwong*, Plaintiffs' FAC provides no facts  on the cost

19   of the liability insurance or annual fee requirements, nor that the Ordinance's "financial hardship"

20   exception under Section 10.32.225(C) would fail to fully address this concern.

21       Rather, Plaintiffs rely on three decades-old First Amendment fee cases (¶¶ 1, 57-58, 85-

22   86), all of which are readily distinguishable. *See Minneapolis Star and Tribune Co. v. Minnesota*

23   *Comm'r of Rev.*, 460 U.S. 575, 591-92 (1983) (newspaper tax held unconstitutional because it was

24   "tailor[ed]" so that "a small group" of newspapers were required to pay enormous taxes); *Murdock*

25   *v. Pennsylvania*, 319 U.S. 105, 113-14 (1943) (striking down licensing fee that was "not a nominal

26   fee" properly imposed as a regulatory measure); *Cox v. New Hampshire*, 312 U.S. 569, 577 (1941)

27   (holding that fee imposed on a constitutional right cannot not be a general "revenue tax"). Indeed,

28   the Ninth Circuit has rejected the same argument Plaintiffs make here. *See Bauer*, 858 F.3d at 1225

1  (upholding constitutionality of California law imposing $19 fee on all gun sales). The Ordinance is

2  constitutional under *Bauer*, *Murdock*, *and Cox* because the Ordinance's liability insurance and

3  annual Fee requirements are carefully tailored to ensure they are not a general revenue tax, directly

4  further the maintenance of public order in the matter regulated, and are even subject to a "financial

5  hardship" exception. § 10.32.225(C). In sum, intermediate scrutiny applies, and the Ordinance

6  clearly survives. Plaintiffs fail to state a claim under the Second Amendment.

7       **2.  Plaintiffs Fail to State a First Amendment Claim Based on Compelled**

8       **Speech or Association.**

9       Plaintiffs' First Amendment claim is based on speculation that a yet-to-be-designated

10  nonprofit with unknown leadership is likely hold anti-gun views and be hostile to the Second

11  Amendment. ¶¶ 60-64. This claim should be dismissed as pure speculation and for ignoring,

12  among other things, that the political advocacy that Plaintiffs fear the nonprofit might engage in is

13  expressly prohibited by the Ordinance. § 10.32.220(B) (providing that no portion of the Fee may

14  be used "for litigation, political activity, or lobbying activities").

15       Additionally, Plaintiffs' authorities cited in the FAC (i.e., a Thomas Jefferson quote and

16  two Supreme Court decisions from disparate contexts) do not support their First Amendment claim

17  that the Ordinance's Fee requirement is compelled speech in violation of the First Amendment.

18  ¶¶ 61, 63, 110-113. First, *Janus* concerns whether non-union public employees can be compelled

19  to pay union dues to fund the unions' political lobbying, advertising, litigation, and social and

20  recreational activities, and other activities. *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2459-

21  61, 2480 (2018). *Janus's* holding and reasoning are deeply rooted in the union context. *See, e.g.,*

22  *id.* at 2486 ("State and public sector unions may [not] extract agency fees from nonconsenting

23  employees . . . [u]nless employees clearly and affirmatively consent[.]"). Second, Plaintiffs cite a

24  case against the State Bar concerning the use of compulsory bar membership dues to engage in

25  political activities, such as "lobbying for or against state legislation," opposing federal legislation,

26  and endorsing political measures. *See Keller v. State Bar of California*, 496 U.S. 1, 15 (1990).

27       Tellingly, Plaintiffs never explain why language and reasoning from these factually

28  inapposite cases should be extracted from their highly specific public union and State Bar contexts

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE NO. 5:22-CV-00501-BLF**                                                                 16

1  and applied to an entirely different scenario, where a legislature seeks funds for reasonable

2  measures to carry out its police powers to protect public health and safety. Nor do Plaintiffs cite

3  any cases in which a court has applied these cases in that context, much less relied on them (as

4  Plaintiffs do), to strike down a gun regulation. Plaintiffs' argument should be rejected for these

5  reasons alone. The core concern of the First Amendment compelled speech doctrine—i.e.,

6  prohibiting compelled speech and association in matters of political lobbying, advocacy, or

7  litigation—simply does not exist here. *See also Keller*, 496 U.S. at 12-13 (1990) ("If every citizen

8  were to have a right to insist that no one paid by public funds express a view with which he

9  disagreed, debate over issues of great concern to the public would be limited to those in the private

10  sector, and the role of government as we know it radically transformed.").

11      Ultimately, Plaintiffs fail to plausibly allege that the Ordinance will compel speech with

12  which they do not agree—especially in view of federalism concern that federal courts should not

13  invalidate state laws on the grounds that they violate the right of association based only on "factual

14  assumptions." *Wash. State Grange*, 552 U.S. at 457; *accord Cal. Democratic Party v. Jones*, 530

15  U.S. 567, 600 (2000) (Stevens, J., dissenting) ("[A]n empirically debatable assumption … is too

16  thin a reed to support a credible First Amendment distinction" with respect to burdens on

17  association). Plaintiffs' First Amendment claim should be dismissed.

18          **3.  Plaintiffs Fail to Sufficiently Allege State Law Preemption.**

19      Plaintiffs argue that the Ordinance is preempted by state law under Article XI, Section 7 of

20  the California Constitution. ¶¶ 65-69. Under that provision, a local ordinance that is "in conflict

21  with the general laws" is preempted and void, but a "city may make and enforce … all local, …

22  sanitary, and other ordinances … not in conflict with general laws" under its police power. Cal.

23  Const., Art. XI, § 7. The "general rule" is that "ordinances will be upheld against constitutional

24  challenge if they are reasonably related to promoting the health, safety, comfort and welfare of the

25  public, and if the means adopted to accomplish that promotion are reasonably appropriate to the

26  purpose." *Sunset Amusement Co. v. Bd. of Police Comm'rs*, 7 Cal.3d 64, 72 (1972). The Ordinance

27  here fits well within that general rule.

28

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE
NO. 5:22-CV-00501-BLF**                                                17

**SER-208**

1      Additionally, under Article XI, Section 5(a) of the California Constitution, charter cities

2  (like San Jose) have the right to adopt ordinances that conflict with general state laws, provided the

3  subject of the ordinance is a "municipal affair" rather than one of "statewide concern." As to

4  matters of "statewide concern," charter cities remain subject to and controlled by applicable

5  general state laws only "if it is the intent and purpose of such general laws to occupy the field to

6  the exclusion of municipal regulation." *Bishop v. City of San Jose*, 1 Cal.3d 56, 60-61 (1969). A

7  law is preempted if it "duplicates, contradicts, or enters an area fully occupied by general law,

8  either expressly or by legislative implication." *Sherwin-Williams Co. v. City of Los Angeles*, 4

9  Cal.4th 893, 897-98 (1993).

10      Here, Plaintiffs do not argue that the Ordinance duplicates or contradicts state law. Instead,

11  they argue that "[g]un regulation is already fully occupied by the State of California." ¶ 68.

12  Plaintiffs ignore that gun regulation as a whole has not been fully occupied by general law. *Great*

13  *Western Shows, Inc. v. County of Los Angeles*, 27 Cal.4th 853, 861 (Cal. 2002). Instead, the State

14  Legislature has expressly preempted only discrete areas of gun regulation, such as permitting,

15  licensing, and registration of firearms. *See* Cal. Pen. Code § 25605 (permitting and licensing); Cal.

16  Gov. Code § 53071 (registration and licensing). The State has neither expressly nor impliedly

17  preempted the entire field of gun regulation, or the discrete areas regulated by the Ordinance here

18  (e.g., firearm liability insurance, the provision of voluntary programming and services to gunowner

19  households to improve public health and safety). This impedes Plaintiffs' preemption argument.

20      Additionally, Plaintiffs ignore the test for preemption. A local ordinance can only duplicate

21  or contradict state law if it addresses the exact same subject matter of the state law. In *Great*

22  *Western Shows*, for example, the California Supreme Court explained that, in a prior case, it had

23  "distinguished between licensing, which signifies permission or authorization, and registration,

24  which entails recording 'formally and exactly' and therefore declined to find express conflict

25  between the statute and the ordinance." 27 Cal.4th at 860-61 (2002) (citing *Galvan v. Superior*

26  *Court*, 70 Cal.2d 851 (1969)). Here, the Ordinance has nothing to do with licensing. It neither

27  prevents nor expressly authorizes City residents to obtain gun licenses, prevents a law enforcement

28  official from issuing a license, or creates new or different requirements for obtaining a license.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE
NO. 5:22-CV-00501-BLF**                                                                                      18

**SER-209**

1   Indeed, it expressly exempts from its requirements any gunowner with a concealed weapon license

2   under State law, indicating the City's intent not to encroach into State territory. § 10.32.225(B).

3   Permitting, licensing, and registration concern completely different subjects than the insurance

4   mandate contained within the Ordinance. *See Great Western Shows*, 27 Cal.4th at 860-61; *Galvan*,

5   70 Cal.2d 85.

6        Numerous California state courts have upheld gun regulations, rejecting preemption

7   arguments similar to those Plaintiffs make here. *See e.g., Calguns Foundation, Inc. v. County of*

8   *San Mateo*, 218 Cal.App.4th 661 (2013) (upholding county ban on gun possession in County

9   parks); *Cal. Rifle & Pistol Assn. v. City of West Hollywood*, 66 Cal.App.4th 1302 (1998)

10  (ordinance banning sale of "Saturday Night Special" handgun); *Olsen v McGillicuddy*, 15 Cal.

11  App. 3d 897 (1971) (upholding ordinance prohibiting gun possession in cars); *Great Western*

12  *Shows*, 27 Cal. 4th 853, 863 (2002) (upholding regulation of gun sales on municipal land).

13  Plaintiffs' state preemption argument is without merit and should be dismissed.

14        **4.   Plaintiffs Fail to State a Claim that the Ordinance Imposes a Tax in**

15        **Violation of the California Constitution.**

16        Plaintiffs argue that the Ordinance's insurance mandate and Fee requirements are taxes that

17  may not be imposed without voter approval under California Constitution Article XIII C, as

18  amended by Proposition 26. ¶¶ 70-72. A tax is defined to include any levy, charge, or exaction of

19  any kind imposed by a local government. Cal. Const., Art. XIII C, § 1 ("Proposition 26").

20  Proposition 26 sets forth seven exemptions to this rule. *Id*. However, neither the insurance mandate

21  nor the Fee constitute a tax because (aside from modest administrative costs) none of the proceeds

22  from those requirements will pass into government hands. *See Schmeer v. County of Los Angeles*,

23  213 Cal.App.4th 1310 (2013).

24        In *Schmeer*, Los Angeles County enacted an ordinance that prohibited retail stores in

25  unincorporated areas of the county from providing disposable plastic carryout bags to customers.

26  213 Cal.App.4th at 1314. The stores could provide recyclable paper carryout bags but were

27  required to charge customers ten cents per bag. *Id*. Critically, the proceeds of the paper bag sales

28  were retained by the store—not the County—to be used for prescribed purposes, including to cover

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY, LLP

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE
NO. 5:22-CV-00501-BLF**                                                                    19

**SER-210**

1   the actual costs of the paper bags. Id. The *Schmeer* plaintiffs sued on the same theory advanced by

2   Plaintiffs here: that the bag charge is a tax as defined by Proposition 26. The court ruled that

3   because the proceeds of the bag charge are retained by the retail store and not remitted to the

4   county, the voter approval requirements of Article XIII C, § 2 [were] therefore inapplicable." *Id.* at

5   1326, 1329. Applied here, Schmeer makes clear that Plaintiffs' failure to explain how money that

6   never passes to the City could constitute a tax is fatal to their Proposition 26 claim. Under the

7   Ordinance, all monies from payment of the annual Fee will go directly to the nonprofit

8   organization, insurance premiums will be paid to insurance carriers, and insurance claims will be

9   paid out to victims of accidental gun injuries. *See* §§ 10.32.215, 10.32.220. The City will receive

10  none of the monies at issue.

11      *Schmeer* also defeats the Plaintiffs' argument that the City must prove that the amount of

12  the fees is no more than necessary to cover the reasonable costs of the governmental activity and

13  that the manner in which those costs are allocated to a payor bear a reasonable relationship to the

14  payor's burdens on, or benefits from, the governmental activity. ¶ 42. But even if it did not, this

15  argument would fail for the separate and independent reason that Fee money collected from

16  gunowners would be fairly categorized under the exception from Proposition 26 for fees "imposed

17  for a specific benefit conferred or privilege granted directly to the payor that is not provided to

18  those not charged." Cal. Const., Art. XIII C, § 1 ("specific benefit exemption"); *see also S. Cal.*

19  *Edison Co. v. Pub. Util. Comm'n*, 227 Cal.App.4th 172, 200 (2014) (finding a public utility fee

20  was "designed to benefit … ratepayers" and "[t]he possibility that some EPIC research may

21  incidentally provide a social benefit to the public at large does not transform EPIC into a tax where

22  a discrete group, namely the utility corporations' ratepayers, is specifically benefitted.")

23      In sum, neither the insurance mandate nor the Fee is a tax under Proposition 26, and

24  Plaintiffs' claim should be dismissed.

25      **5.  The Ordinance Does Not Violate the San Jose City Charter.**

26      Plaintiffs allege that the Ordinance violates the San Jose City Charter ("Charter") "by

27  prohibiting the San Jose City Council from using its budgetary and appropriating powers to direct

28

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE
NO. 5:22-CV-00501-BLF**                                                                 20

1  how" the designated nonprofit expends the Fee, and by "divert[ing] a City fee to a nonprofit rather

2  than the City's General Fund." ¶¶ 73-81. Both arguments fail.

3         When interpreting a California statute, Federal courts apply California rules of statutory

4  construction. *Lares v. West Bank One*, 188 F.3d 1166, 1168 (9th Cir. 1999). The same rules of

5  construction apply to local ordinances and city charters. *See 1300 N. Curson Investors, LLC v.*

6  *Drumea*, 225 Cal.App.4th 325, 332 (2014); *Laurent v. City and County of San Francisco*, 99

7  Cal.App.2d 707, 708 (1950). The language of the Charter and the Ordinance must be read in the

8  context of the respective statutes as a whole. *See Isaakhani v. Shadow Glen Homeowners Assn.,*

9  *Inc.*, 63 Cal.App.5th 917, 931-932 (2021); *City of San Jose v. Lynch*, 4 Cal.2d 760, 766 (1935).

10 And when interpreting a statute, the court must "avoid a construction that would lead to

11 impractical or unworkable results." *Los Angeles Unified Sch. Dist. v. Garcia*, 58 Cal.4th 175, 194

12 (2013). But read in context, the isolated the provisions of the Ordinance and the Charter upon

13 which Plaintiffs rely do not support their conclusion.

### a.  The Charter Does Not Require Placing the Fee into the General Fund.

16        Plaintiffs ignore the first sentence of Section 1211 of the Charter, which states that "[a]ll

17 monies paid into the San Jose City Treasury shall be credited to and kept in separate funds in

18 accordance with provisions of this Charter or ordinance." *Id.* When read together with the

19 sentences that follow, it is clear the General Fund applies to "monies paid into the City Treasury."

20 *Id.* But the Ordinance requires that the Fee be paid to the designated nonprofit, not "paid into the

21 City Treasury." § 10.32.215.

### b.  The Fee is Not Subject to the Charter's Budgetary Procedures.

23        The premise of Plaintiffs' argument, that the Ordinance "violates the [Charter's]

24 reservation of budgeting and appropriation power to the City Council," is incorrect. Sections 1204,

25 1206, and 1207 of the Charter do not apply to the Fee. All three sections concern the City's

26 budgetary process, which expressly applies to "City departments, offices, and agencies" – not the

27 designated nonprofit or the Fee it receives. Charter §§ 1204, 1206, 1207. The nonprofit is not a

28 City department, office, or agency. Indeed, "[n]o City official or employee shall sit on the board of

1    directors of the Designated Nonprofit Organization" (§ 10.32.305(B)), and the City "shall not

2    specifically direct how the monies from the [Fee] are expended" (§ 10.32.220(C)).

3    The Ordinance does not provide for or contemplate using the Fee for the operation of City

4    departments. § 10.32.220(C). Rather, the Ordinance requires the designated nonprofit to "spend

5    every dollar generated from the [Fee]" on programs and initiatives within a particular category –

6    none of which include the operation of offices, departments, or agencies of the City. *Id.*; *c.f.*

7    Charter § 1207. Therefore, the Fee is not subject to the City's budgetary process and Plaintiffs'

8    argument fails on its premise.

9                    *c.   The Council Properly Delegated Regulatory Authority to the City*

10                         *Manager.*

11           The City Manager is the Chief Administrative Officer and head of the administrative

12   branch of San Jose's council-manager government. Charter §§ 300, 700. The City Manager is thus

13   "responsible for the faithful execution of all laws, provisions of [the] Charter, and acts of the

14   Council which are subject to enforcement by the City Manager or by officers who are under the

15   City Manager's direction and supervision." *Id.* § 701(d).

16           The Council may lawfully delegate administrative or ministerial functions to the City

17   Manager. *Sacramento Chamber of Commerce v. Stephens*, 212 Cal. 607, 610 (1931). It is

18   sufficient that the Council "declare a policy, fix a primary standard, and authorize executive or

19   administrative officers to prescribe subsidiary rules and regulations that implement the policy and

20   standard and to determine the application of the policy or standard to the facts of particular cases."

21   *Birkenfeld v. City of Berkeley*, 17 Cal.3d 129, 167 (Cal. 1976) (citation omitted). That is precisely

22   the case here.

23           The Ordinance directs the City Manager to "implement the requirements and fulfill the

24   policies of [the Ordinance] relating to the reduction of gun harm," including by designating the

25   nonprofit receiving the Fee and setting forth "processes and procedures relating to the payment of

26   the fee, and any additional guidelines or auditing of the use of the monies from the fee." §

27   10.32.235 (A), *et seq*. The nonprofit clearly has more than vague directions from the City. ¶¶ 77,

28   143. Simply because the City "shall not specifically direct how" the designated nonprofit will

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE
NO. 5:22-CV-00501-BLF**                                                                 22

1  expend the fee, that does not "violate the City Charter's delegation of executive functions to the

2  administrative branch of the City Government." *Id*. San Jose maintains authority over how the

3  designated nonprofit expends the fee through the administrative oversight of the City Manager. (§

4  10.32.235). But "[n]either Council nor any of its members nor the Mayor shall interfere with the

5  execution by the City Manager of [their] powers and duties." Charter § 411. Therefore, authority

6  over expenditure of the Fee is properly vested and Plaintiffs claim the City is violating its own

7  charter are false.

8          **6.  Plaintiffs Fail to State a Claim for Declaratory Relief.**

9        Plaintiffs' make a claim for declaratory relief "to the extent that each of the claims above

10  have not already established a remedy." ¶ 148. This claim should be dismissed as impermissibly

11  duplicative of Plaintiffs' other five claims, and because it fails for all the same reasons as those set

12  forth above.

13        **C.  THE FAC SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND.**

14        Defendants respectfully request that the FAC be dismissed without leave to amend, in light

15  of futility, and serious federalism concerns. Preliminarily, the Ninth Circuit's permissive standards

16  for granting leave to amend do not apply here. Rule 15(a) only allows parties to amend pleadings

17  to "assert matters that were overlooked or were unknown *at the time the party interposed the*

18  *original complaint*." 6 Wright & Miller, FED. PRAC. & PROC. § 1473 (3d ed. 2021). Both Plaintiffs'

19  original complaint and FAC were filed before the Ordinance was effective. No amount of

20  amending could teleport the FAC "to the future," to a time when the Ordinance is effective. And

21  allowing Plaintiffs to supplement their pleadings under Rule 15(d) would also not be permissible.

22  "If jurisdiction is lacking at the outset [of a litigation], the district court has no power to do

23  anything with the case except dismiss." *Morongo Band of Mission Indians v. Cal. State Bd. of*

24  *Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988), *cert. denied*, 488 U.S. 1006 (1989); *Lopez v.*

25  *Turnage*, 2021 WL 5142070, at *1 (N.D. Cal. Oct. 15, 2021). Moreover, the Ordinance is what it

26  is. The legal defects described in this Motion cannot be cured by adding different factual

27  allegations to the FAC. "Any amendment would be futile." *Leadsinger, Inc. v. BMG Music Pub*.,

28  512 F.3d 522, 532 (9th Cir. 2008).

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY, LLP

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE NO. 5:22-CV-00501-BLF**                    23

1    A practice of allowing plaintiffs to sue legislators before a bill is effective so that the

2    plaintiffs could amend or supplement their pleadings when the bill becomes effective is

3    inappropriate. *Rizzo v. Goode*, 423 U.S. 362, 380 (1976); *Portland Police Ass'n v. City of

4    Portland*, 658 F.2d 1272, 1275 n.3 (9th Cir. 1981) (citing "federalism concerns" as reason for

5    declining to exercise jurisdiction in litigation involving municipal police department policies);

6    *Westlands Water Distrib. Dist. v. Nat. Res. Defense Council*, 276 F.Supp.2d 1046, 1051 (E.D. Cal.

7    2003). The Court should dismiss the FAC with prejudice.

8    **V.      CONCLUSION**

9        For the foregoing reasons, the City respectfully requests that the Court dismiss the FAC

10   under Rules 12(b)(1) and 12(b)(6). Since the FAC's defects cannot be cured, Plaintiffs respectfully

11   request the dismissal be without leave to amend.

12

13   Dated: April 8, 2022                    **COTCHETT, PITRE & McCARTHY, LLP**

14

15                                           By: */s/ Tamarah Prevost*
                                                  JOSEPH W. COTCHETT
16                                                TAMARAH P. PREVOST
                                                  ANDREW F. KIRTLEY
17                                                MELISSA MONTENEGRO

18                                           *Attorneys for Defendants*

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE
NO. 5:22-CV-00501-BLF**                                                                    24

**SER-215**

1  HARMEET K. DHILLON (SBN: 207873)
   harmeet@dhillonlaw.com
2  MICHAEL A. COLUMBO (SBN: 271283)
   mcolumbo@dhillonlaw.com
3  MARK P. MEUSER (SBN: 231335)
   mmeuser@dhillonlaw.com
4  DHILLON LAW GROUP INC.
5  177 Post Street, Suite 700
   San Francisco, California 94108
6  Telephone: (415) 433-1700

7
   DAVID A. WARRINGTON*
8  dwarrington@dhillonlaw.com
   CURTIS M. SCHUBE (admitted *pro hac vice)*
9  cschube@dhillonlaw.com
10 DHILLON LAW GROUP INC.
   2121 Eisenhower Avenue, Suite 402
11 Alexandria, VA 22314
   Telephone: (571) 400-2121
12
13 *Admission *pro hac vice* pending

14                 **UNITED STATES DISTRICT COURT**

15            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

16                        **SAN JOSE DIVISION**

17

18 **NATIONAL ASSOCIATION FOR GUN**          Case Number: 5:22-cv-00501-BLF
   **RIGHTS, INC.,** a nonprofit corporation, and
19 **MARK SIKES,** an individual,             **PLAINTIFFS' NOTICE OF MOTION**
                                             **AND MOTION FOR PRELIMINARY**
20              Plaintiffs,                   **INJUNCTION AND MEMORANDUM OF**
                                             **POINTS AND AUTHORITIES IN**
21              v.                            **SUPPORT THEREOF**

22 **CITY OF SAN JOSE, a public entity,**
   **JENNIFER MAGUIRE,** in her official capacity  Hearing Date: July 21, 2022
23 as City Manager of the City of San Jose, and the  Hearing Time: 9:00 a.m.
   **CITY OF SAN JOSE CITY COUNCIL,**         Location: Courtroom 3, 5th Floor
24                                            Robert F. Peckham Federal Building
25              Defendants.                   280 South First Street, San Jose, CA

26                                            Judge: Honorable Beth Labson Freeman

27

28



Plaintiffs' Notice of Motion and Motion for
Preliminary Injunction                                      No: 22-cv-00501-BLF

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on July 21, 2022, at 9:00 a.m. or as soon thereafter this matter may be heard before the Honorable Beth Labson Freeman, in Courtroom 3 of the above-entitled Court, located at the Robert F. Peckham Federal Building & United States Courthouse, 280 South 1st Street, Room 2112, San Jose, California, 95113.

Plaintiffs National Association for Gun Rights, Inc. ("NAGR") and Mark Sikes ("Sikes"), pursuant to Fed. R. Civ. P. 65, will and hereby do move this Court for the issuance of a preliminary injunction prohibiting Defendants from enforcing Part 6 of Chapter 10.32 of Title 10 (§§10.32.200-10.32.250) of the City of San Jose's local ordinances.

The grant of a preliminary injunction is warranted because: (i) to allow the Ordinance to go into effect would deprive Plaintiffs, as well as all citizens of San Jose, of their First, Second, Fifth, and Fourteenth Amendment rights under the United States Constitution, articles XI and XIIIC of the California Constitution, and the San Jose Charter, (ii) the denial of such relief would irreparably harm Plaintiffs, (iii) providing said relief would not harm Defendants; and (iv) the public interest favors upholding the United States and California Constitutions and the San Jose City Charter, and (v) Plaintiffs are likely to succeed on the merits.

In support of this Motion, Plaintiffs respectfully refer this Court to this Motion, the Memorandum of Points and Authorities in Support of the Motion for Preliminary Injunction, the attached exhibits, the pleadings on record, and the arguments of counsel.

//
//
//
//
//
//
//
//
//

1

Plaintiffs' Notice of Motion and Motion for
Preliminary Injunction

Case No.22-cv-00501-BLF

1

2  Date: March 8, 2022

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

DHILLON LAW GROUP INC.

By:      /s/ Harmeet K. Dhillon
         Harmeet K. Dhillon
         Michael A. Columbo
         Mark P. Meuser
         DHILLON LAW GROUP INC.
         177 Post Street, Suite 700
         San Francisco, California 94108
         (415) 433-1700

         David A. Warrington*
         Curtis M. Schube (admitted *pro hac vice*)
         DHILLON LAW GROUP INC.
         2121 Eisenhower Avenue, Suite 402
         Alexandria, VA 22314
         (571) 400-2121

         *Admission *pro hac vice* pending

         Attorneys for Plaintiffs



Plaintiffs' Notice of Motion and Motion for
Preliminary Injunction

Case No.22-cv-00501-BLF

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................1

RELEVANT FACTUAL BACKGROUND.........................................................2

    The Ordinance ............................................................................................4

    The Purpose and Justifications of the Ordinance.......................................4

ARGUMENT .....................................................................................................9

    I.    PLAINTIFFS ARE ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF. ..............9

        A.    There Is a Strong Likelihood Plaintiffs' Will Succeed in Proving Their Claims on Multiple Grounds. ..............................................................................9

            1.    The Ordinance violates the Second Amendment of the United States Constitution...................................................................................9

                a. The Ordinance Burdens The Right to Keep Arms...................................... 11

                b.The Court Should Apply Strict Scrutiny...................................... 11

                c.The Ordinance Even Fails Intermediate Scrutiny........................................ 13

                d. Alternatively, the Ordinance is Unconstitutional Because It Burdens the Second Amendment Right to Keep and Bear Arms ..............................13

            2.    The Ordinance Violates Plaintiffs' Free Speech and Association Rights........15

            3.    The Ordinance Violates article XI, § 7 of the California Constitution............18

            4.    The Orders Violate Article XIII C, Section 1 of the California Constitution..19

            5.    The Ordinance Violates the San Jose's City Charter's Reservation of Budget and Appropriation Powers to the City Council and Administrative Powers to the City Manager.....................................................................................20

            6.    The Ordinance Violates the San Jose City Charter's Requirement that City Receipts Be Deposited into City Accounts....................................................21

        B.    Plaintiffs Face Imminent Irreparable Harm Absent Immediate Injunctive Relief.21

        C.    The Balance of Hardships Tips Decidedly in Plaintiffs' Favor. ............................22

        D.    Injunctive Relief Is In The Public Interest.................................................22

    II.    THE COURT SHOULD DISPENSE WITH ANY BOND REQUIREMENT...............23



Plaintiffs' Notice of Motion and Motion for                                    Case No.22-cv-00501-BLF
Preliminary Injunction

1

CONCLUSION ................................................................................................................23

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



Plaintiffs' Notice of Motion and Motion for                                   Case No.22-cv-00501-BLF
Preliminary Injunction

**TABLE OF AUTHORITIES**

**Cases**                                                                       **Page(s)**

*All for Wild Rockies v. Cottrell,*
   632 F.3d 1127 (9th Cir. 2011). ........................................................... 8

*Americans for Prosperity Foundation v. Harris,*
   182 F. Supp. 3d 1049 (C.D. Cal. 2016). ........................................... 21

*Bauer v. Becerra,*
   858 F.3d 1216 (9th Cir. 2017) ........................................................ 14

*Bible Club v. Placentia-Yorba Linda School Dist.,*
   573 F. Supp. 2d 1291 (C.D. Cal. 2008). ........................................... 22

*College Republicans at San Francisco State University v. Reed,*
   523 F. Supp. 2d 1005 (N.D. Cal. 2007) ........................................... 20

*Community House, Inc. v. City of Boise,*
   490 F.3d 1041 (9th Cir. 2007) ........................................................ 21

*Cox v. New Hampshire,*
   312 U.S. 569 (1941)................................................................. 13, 14

*District of Columbia v. Heller,*
   554 U.S. 570 (2008)............................................................... passim

*Doctor John's, Inc. v. Sioux City,*
   305 F. Supp. 2d 1022 (N.D. Iowa 2004)........................................... 22

*Doe v. Harris,*
   772 F.3d 563  (9th Cir.2014) .................................................... 21, 22

*Duncan v. Becerra,*
   265 F.Supp.3d 1106 (S.D. Cal. 2017)......................................... 21, 22

*Elrod v. Burns,*
   427 U.S. 347 (1976)....................................................................... 20

*Ezell v. City of Chicago,*
   651 F.3d 684 (7th Cir. 2011) ............................................... 10, 11, 20



Plaintiffs' Notice of Motion and Motion for
Preliminary Injunction                             Case No.22-cv-00501-BLF

*Fiscal v. City and County of San Francisco,*
    158 Cal.App.4th 895 (Cal. Ct. App. 2008) .................................................. 17

*Janus v. AFSCME, Council 31,*
    138 S.Ct. 2448 (2018) ............................................................................ 15, 16

*Jorgensen v. Cassiday,*
    320 F.3d 906 (9th Cir. 2003). ....................................................................... 22

*Keller v. State Bar of California,*
    496 U.S. 1 (1990) .......................................................................................... 15

*Knox v. SEIU,*
    567 U.S. 298 (2012) ...................................................................................... 15

*Kwong v. Bloomberg,*
    723 F.3d 160 (2nd Cir. 2013). ...................................................................... 14

*McDonald v. City of Chicago, Ill.,*
    561 U.S. 742 (2010) ........................................................................................ 9

*Minneapolis Star and Tribune Co. v. Minnesota Comm'r. of Rev.,*
    460 U.S. 575 (1983) ...................................................................................... 10

*Murdock v. Com. of Pennsylvania,*
    319 U.S. 105, 112 (1943) ............................................................. 1, 9, 13, 14

*Nordyke v. King,*
    681 F.3d 1041 (9th Cir. 2012) ........................................................................ 9

*Pimentel v. Dreyfus,*
    670 F.3d 1096 (9th Cir. 2012) ........................................................................ 8

*Regan v. Taxation with Representation of Wash.,*
    461 U.S. 540 (1983) ...................................................................................... 16

*S.O.C., Inc. v. Cnty. of Clark,*
    152 F.3d 1136 (9th Cir. 1998). ..................................................................... 20

*Sammartano v. First Jud. Dist. Ct.,*
    303 F.3d 959 (9th Cir. 2002). ......................................................... 20, 21, 22

iv



**SER-222**

*Stormans, Inc. v. Selecky*,

  586 F.3d 1109 (9th Cir. 2009). ................................................................. 21

*United States v. Chester*,

  628 F.3d 673 (4th Cir. 2010) .................................................................... 11

*United States v. Chovan*,

  735 F.3d 1127 (9th Cir. 2013) ..................................................... 9, 10, 11, 12

*United States v. Masciandaro*,

  638 F.3d 458 (4th Cir. 2011) ...................................................................... 9

*Winter v. Natural Res. Def. Council, Inc.*,

  555 U.S. 7 (2008). ..................................................................................... 8

*Wooley v. Maynard*,

  430 U.S. 705 (1977) ................................................................................. 16

**STATUTES**

42 U.S.C. § 1983 ........................................................................................ 8

Cal. Penal Code § 12026 ........................................................................... 17

Cal. Penal Code § 23500 ........................................................................... 17

Cal. Penal Code § 23520 ........................................................................... 17

Cal. Penal Code § 25225 ........................................................................... 17

Cal. Penal Code § 25850 ............................................................................. 4

Cal. Penal Code § 26150 ............................................................................. 4

Cal. Penal Code § 26155 ............................................................................. 4

Cal. Penal Code § 26350 ............................................................................. 4

Cal. Penal Code § 26400 ............................................................................. 4

Cal. Penal Code § 28070 ........................................................................... 17

Cal. Penal Code § 29010 ........................................................................... 17

Cal. Penal Code § 29184 ........................................................................... 17

Cal. Penal Code § 29610 ........................................................................... 17



Plaintiffs' Notice of Motion and Motion for
Preliminary Injunction

Case No.22-cv-00501-BLF

Cal. Penal Code § 30165 .................................................................................................. 17

Cal. Penal Code § 30900 .................................................................................................. 17

Cal. Penal Code § 34370 .................................................................................................. 17


Title 10 of the San José Municipal Code:

§ 10.32.200 ................................................................................................................. 12

§ 10.32.200.A .............................................................................................................. 4

§ 10.32.200.B.2 ........................................................................................................... 4

§ 10.32.200.B.4 ........................................................................................................... 4

§ 10.32.200.B.7 ........................................................................................................... 4

§ 10.32.200.B.8 ...................................................................................................... 5, 13

§ 10.32.200.B.9 ...................................................................................................... 5, 13

§ 10.32.200.B.12 .......................................................................................................... 5

§ 10.32.205 ................................................................................................................... 7

§ 10.32.210 ................................................................................................................... 4

§ 10.32.210.A .............................................................................................................. 6

§ 10.32.215 .......................................................................................................... passim

§ 10.32.220 ............................................................................................................. 7, 14

§ 10.32.220.A .............................................................................................................. 7

§ 10.32.220.C ......................................................................................................... 7, 19

§10.32.225 ............................................................................................................. 4, 10

§ 10.32.230.A .............................................................................................................. 6

§ 10.32.240 .......................................................................................................... 4, 6, 8

§10.32.245 ........................................................................................................... 4, 6, 8

§10.32.250 ......................................................................................................... 4, 8, 14

San Jose City Charter:

§  400 ......................................................................................................................... 19

§ 1204 ....................................................................................................................... 19



Plaintiffs' Notice of Motion and Motion for
Preliminary Injunction

Case No.22-cv-00501-BLF

**SER-224**

§ 1206.................................................................................................. 19

§ 1211.................................................................................................. 20

**RULES**

Fed. R. Civ. P. 65(c) ......................................................................... 22

**CONSTITUTIONAL AUTHORITIES:**

California Consitution:

Article XI, section 7................................................................ 17, 18

Article XIII C, §2(b) ..................................................................... 18

Article XIII C, §1 ........................................................................... 18

Article XIII C, §1(e) ...................................................................... 18

Article XIII C, §2(d) ...................................................................... 18

United States Consitution:

amend. I....................................................................................... passim

amend. II ..................................................................................... passim

amend. XIV ……………………………………………………………..1

**OTHER AUTHORITIES**

A Bill for Establishing Religious Freedom, in 2 papers of Thomas Jefferson 545 (J. Boyd ed. 1950) ............................................................................................... 15l

Lauren Hernández, *Gun Owners In San Jose Must Buy Liability Insurance Under Newly Passed First-In-The-Nation Law,* SAN FRANCISCO CHRONICLE, Jan. 25, 2022 (updated Jan. 26, 2022) …… 3

Liccardo Press Release, Jan. 19, 2022 ............................................ 4, 5, 6, 13

Liccardo Press Release, Jan. 25, 2022 ............................................ 2, 3

Olga R. Rodriguez and Juliet Williams, *San Jose Approves First Law In U.S. Requiring Gun Owners To Have Insurance,* LOS ANGELES TIMES, Jan. 25, 2022 ................................. 3



**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

"The power to tax the exercise of a privilege is the power to control or suppress its enjoyment."

*Murdock v. Pennsylvania*, 319 U.S. 105, 112, 63 S. Ct. 870, 874, 87 L. Ed. 1292 (1943).

 

     The Supreme Court has made it clear that laws designed to burden the exercise of the fundamental right to own a gun and keep it in one's own home is unconstitutional. Just as taxing the press for the right to circulate its content is unconstitutional, so too is an annual tax on the right to own a gun. Yet, the City of San Jose ("City") has taken the unprecedented step of requiring virtually all gun owners who reside in the City to pay annual fees just for their right to own a gun and to pay for special insurance, or risk forfeiture of their guns.

     The amount of the fees and the cost of the insurance are not defined by this new law and are subject to the whims of the San Jose City Council and private insurance companies—who may not even offer the policy that the City demands to avoid nullification of a person's Second Amendment rights. To make matters worse, one of the fees comprises a compulsory donation to a government-chosen nonprofit, forcing gun owners to associate with a group against their will and to fund educational programs targeting themselves that they didn't ask for and may not want, need, or agree with.

     This new law does not just violate the United States Constitution. It also violates the California Constitution and the City's own Charter. The California Constitution prevents local governments from enacting laws when state law already occupies the field and California already has extensive gun regulations thoroughly occupying this field. Additionally, the insurance requirement and the Gun Harm Reduction Fee are taxes within the meaning of the law and the City failed, as required by the California Constitution, to submit them to the electorate for approval. Finally, by forcing gun owners to pay the City's Gun Harm Reduction Fee directly to a third party nonprofit to spend as it chooses outside of the control of the City Council, the City's new gun ordinance violates provisions of its own Charter by unlawfully delegating the City Council's budgetary and appropriation powers and by not depositing all of the Ordinance's



Plaintiffs' Notice of Motion and Motion for                Case No.22-cv-00501-BLF
Preliminary Injunction

1   proceeds into the City's general fund.

2       Accordingly, this Court should immediately issue a preliminary injunction to prevent the

3   City from enforcing the unconstitutional and unlawful Ordinance.

4                    **RELEVANT FACTUAL BACKGROUND**

5       On June 29, 2021, the City Council directed San Jose City Attorney Nora Frimann "to return

6   to Council with an ordinance for Council consideration that would require every gun owner residing

7   in the City of San José, with certain exceptions, to obtain and maintain a City-issued document

8   evincing payment of an annual fee, and attestation of insurance coverage for unintentional firearm-

9   related death, injury, or property damage." Frimann Mem. re Gun Harm Reduction Ord., Jan. 14,

10  2022, ("City Attorney Mem.") (attached hereto as Exhibit A). Plaintiff National Association for Gun

11  Rights immediately sent the City a cease and desist letter warning that the proposed ordinance was

12  unconstitutional.  *See* Ltr. From D. Warrington and H. Dhillon to San Jose City Council, July 14,

13  2021 (attached hereto as Exhibit B).

14      On January 14, 2022, in advance of the City Council's January 25 meeting, the San Jose City

15  Attorney issued a memorandum in compliance with the City Council's directions that recommended

16  the Council "[c]onsider approving an ordinance amending Title 10 of the San José Municipal Code

17  to add Part 6 to Chapter 10.32 to reduce gun harm by: (a) requiring gun owners to obtain and

18  maintain liability insurance; and (b) authorizing a fee to apply to gun harm reduction programs."

19  City Attorney Mem. at 1(Ex. A). Under a section addressing penalties for noncompliance, the City

20  Attorney stated that "[f]ailure to comply shall constitute a civil violation subjecting the owner to the

21  temporary or permanent seizure of the gun, and under specified circumstances, a fine." *Id*. at 2.

22      In an op-ed published on January 19, 2021, in the Los Angeles Times, San Jose Mayor Sam

23  Liccardo wrote "[l]ast June our City Council unanimously approved my proposals that will mitigate

24  gun harm in our community — and a final vote on Jan. 25 should turn them into law." Mayor Sam

25  Liccardo, *Op-Ed: My City's New Gun Control Laws Will Help More Than Waiting On Congress To*

26  *Do Something*, LOS ANGELES TIMES, Jan. 19, 2022), https://www.latimes.com/opinion/story/2022-

27  01-19/op-ed-new-gun-control-laws-help-congress (attached as Exhibit C).

28  //

2



Plaintiffs' Notice of Motion and Motion for                    Case No.22-cv-00501-BLF
Preliminary Injunction

1    On January 21, 2022, Mayor Liccardo, Vice Mayor Jones, Councilmember Cohen, and

2    Councilmember Carrasco issued "Directions" to the City Council, including to "[a]pprove the

3    proposed ordinance," with certain modifications. Mayor's Mem. to City Council, Jan. 21, 2022, 2

4    (attached as Exhibit D). The Mayor's Memorandum also noted that "Members of the California

5    legislature are exploring bills to have law enforcement agencies *seize guns as a sanction for*

6    *violations of local gun regulations*, with subsequent restoration of ownership as required by

7    constitutional due process." *Id.* at 4 (emphasis added).

8    Following the City Council's January 25, 2022, meeting, the Mayor immediately issued a

9    press release the night of the vote, in which he boasted that "Tonight San José became the first city

10   in the United States to *enact* an ordinance to require gun owners to purchase liability insurance, and

11   to invest funds generated from fees paid by gun owners into evidence-based initiatives to reduce gun

12   violence and gun harm." Liccardo Press Release, Jan. 25, 2022 (emphasis added) (attached as

13   Exhibit E).

14   Within 24 hours, articles were published about San Jose enacting an unprecedented

15   regulation of gun ownership, including the San Francisco Chronicle and the Los Angeles Times. *See*

16   Lauren Hernández, *Gun Owners In San Jose Must Buy Liability Insurance Under Newly Passed*

17   *First-In-The-Nation Law,* SAN FRANCISCO CHRONICLE, Jan. 25, 2022 (updated Jan. 26, 2022),

18   https://www.sfchronicle.com/bayarea/article/Gun-owners-in-San-Jose-must-buy-liability-

19   16804951.php ("The San Jose City Council adopted a measure Tuesday night requiring gun owners

20   in the South Bay city to buy liability insurance for their firearms, city officials said.")(attached as

21   Exhibit F); Olga R. Rodriguez and Juliet Williams, *San Jose Approves First Law In U.S. Requiring*

22   *Gun Owners To Have Insurance*, LOS ANGELES TIMES, Jan. 25, 2022,

23   https://www.latimes.com/california/story/2022-01-25/san-jose-gun-liability-insurance (attached as

24   Exhibit G)("The city of San Jose voted Tuesday night to require gun owners to carry liability

25   insurance in what's believed to be the first measure of its kind in the United States. The San Jose

26   City Council overwhelmingly approved the measure despite opposition from some gun owners who

27   said it would violate their 2nd Amendment rights.").

28   The Ordinance was placed on the consent calendar for the City Council's February 8, 2022,



Plaintiffs' Notice of Motion and Motion for                                    Case No.22-cv-00501-BLF
Preliminary Injunction

1  meeting, during which a majority of the City Council voted again to approve the Ordinance. Def.'s
2  Mem. Supp. Mot. Dismiss 3.

3  **The Ordinance**

4  The Ordinance will take effect on August 8, 2022, one hundred eighty days from the date
5  of its adoption on February 8, 2022, Ord., Sec. 2, and will be codified as Chapter 10.32 of Title
6  10 of the San Jose Municipal Code, Ordinance section 1-2. Ordinance (attached as Exhibit H). It
7  will require 50,000-55,000 San Jose residents, minus a few exceptions, to keep proof with their
8  guns that they have an insurance policy for gun accident liability and have paid an annual Gun
9  Harm Reduction Fee to a nonprofit chosen by the City Manager. *Id.*, §§ 10.32.210, 10.32.215,
10 10.32.250; Liccardo Mem. Re Gun Harm Reduction Ord., Jan. 19, 2022 (attached as Exhibit I).
11 The penalties for noncompliance include "impoundment" (seizure) of a person's guns and the
12 payment of fines. Ordinance §§ 10.32.240, 10.32.245.

13 This Ordinance targets gun ownership in the home because it does not apply to those who
14 have a license to carry a concealed weapon. Ordinance §10.32.225. (Without a concealed carry
15 permit, there is virtually no other way San Jose residents can exercise their Second Amendment
16 rights outside of the home. *See* CAL. PENAL CODE §§ 25850, 26150, 26155, 26350, 26400.)

17 **The Purpose and Justifications of the Ordinance**

18 The City's vague purpose for the Ordinance is "to reduce gun harm." Ordinance
19 § 10.32.200.A. The Ordinance cites overall state and national injury data for homicide, suicide, and
20 accidents, and statistics on the total number of youth injured in California in certain years. Ordinance
21 § 10.32.200.B.2. As to "gun harm" in San Jose, specifically, the Ordinance notes that in *Santa Clara*
22 *County*, in which San Jose is located, "sixteen (16%) of hospitalizations from firearms injuries were
23 due to unintentional shootings." Ordinance § 10.32.200.B.4. The nonprofit organization helping the
24 City enact and justify the Ordinance, Pacific Institute for Research and Evaluation (PIRE), concluded
25 in its own analysis that an average of "206 people suffer death or serious bodily injury from gunshots
26 each year" in San Jose, though the Ordinance does not specify how many were typically due to
27 accidents or suicide, or intentional violence. *See* Ordinance § 10.32.200.B.7.

28 The Ordinance contains an estimation that "San Jose taxpayers annually spend approximately



1   $39.7 million, or approximately $151 per firearm-owning household, to respond to gun violence with

2   such public services as emergency police and medical response, victim assistance, incident

3   investigation, acute and long-term care, and perpetrator adjudication and judicial sanctioning."

4   Ordinance § 10.32.200.B.8. This estimation also does not differentiate between the costs arising due

5   to intentional violence, suicide, and accidents.

6        The Ordinance boldly claims that "including private costs to individuals and families…San

7   Jose residents incur an annual financial burden of $442 million per year." *Id.*, § 10.32.200.B.9.

8   However, more than $328,355,500 or 74% of these alleged costs are for the impact of guns on

9   "quality of life," which includes the "value of pain, suffering, and lost quality of life." Liccardo Jan.

10  19, 2022, Memo., 4 (Ex. I). The next highest figure within the asserted $442 million calculation is

11  "lost work," accounting for $78,272,000 or nearly 18% of the total. *Id.* In other words, 92% of the

12  $442 million in "costs" claimed in the Ordinance comprises artificially calculated "quality of life"

13  and "lost work" due to all causes of firearm deaths and injuries.

14       Accordingly, the costs used to calculate the total financial burden on San Jose, which the

15  Ordinance aims to fully or partially recoup from all gun owners, does not correct for the

16  overwhelming costs imposed by the perpetrators of violent criminal conduct that the Ordinance does

17  not target, and 92% of the highest dollar figure the Ordinance cites for support does not comprise

18  actual expenses incurred by the City. And yet, the Ordinance uses these sham figures to justify:

19       (A) imposing a collective financial burden on all gun owners (except those with a permit to

20  carry their guns) through the Gun Harm Reduction Fee;

21       (B) compelling gun owners to pay the Gun Harm Reduction Fee directly to a City-chosen

22  nonprofit, a forced donation, allegedly for programs to re-educate gun owners about the dangers of

23  guns *and other purposes*; and

24       (C) requiring all gun owners to buy insurance to cover the costs to victims of the accidental

25  use of guns (but not all crime victims).

26       As to compelling purchase of insurance, the Ordinance provides no studies or statistics

27  establishing that gun liability insurance will reduce gun violence. Instead, the Ordinance includes

28  only the conclusory statement that "Liability insurance can reduce the number of gun incidents by

5



Plaintiffs' Notice of Motion and Motion for
Preliminary Injunction

Case No.22-cv-00501-BLF

1   encouraging safer behavior….” Ordinance § 10.32.200.B.12.

2          Thus, every citizen of San Jose will be forced to pay a fee and buy insurance to exercise their

3   fundamental Constitutional right to home and self-defense by owning a gun based on the direct and

4   societal costs primarily caused by criminals using guns illegally. Liccardo Jan. 19, 2022, Memo. 1

5   (Ex. I) (noting that "Assaults and homicides are most common" and "Unintentional gunshot wounds

6   tend to be less serious."). Specifically, according to PIRE, the alleged costs to the City of homicide

7   and assault are $7,067,303 out of $7,940,358 (or 89%) of the total costs, *id.* at 2, and PIRE also

8   attributed the majority of its artificially calculated societal costs of guns to "Homicide/Assault/Legal

9   Intervention." *Id.* at 5 ($253,828,000 out of $441,699,000).

10              *a.   The Insurance Mandate*

11          The insurance mandate requires that "A person who resides in the City of San Jose and owns

12   or possesses a Firearm in the City shall obtain and continuously maintain in full force and effect a

13   homeowner's, renter's or gun liability insurance policy…specifically covering losses or damages

14   resulting from any accidental use of the Firearm, including but not limited to, death, injury, or

15   property damage." Ordinance § 10.32.210.A. The Ordinance does not include any information about

16   minimum insurance coverage thresholds or premiums. *See generally* Ordinance. Thus, the insurance

17   requirement lacks certainty as to the cost of insurance, what has to be covered, and minimum

18   coverage thresholds. This guesswork will allow private for-profit corporations to dictate the

19   government mandated cost of owning a gun. Additionally, based on the insurance companies'

20   economic interests, they may choose not to insure a person who nonetheless has a Constitutional

21   right to keep and bear arms.

22          To comply with the Ordinance, gun owners must present a "City-designated attestation form"

23   signed under penalty of perjury identifying their insurance policy to any police officer who "knows

24   or *has reason to believe"* they possess a firearm.  Ordinance § 10.32.230.A (emphasis added).

25   Failure to comply with the Ordinance authorizes seizure ("impoundment") of the person's gun and

26   fines. Ordinance §§ 10.32.240; 10.32.245.

27              *b.   Gun Harm Reduction Fee*

28          The first of two fees the Ordinance imposes requires that "A person who resides in the City



Plaintiffs' Notice of Motion and Motion for                                Case No.22-cv-00501-BLF
Preliminary Injunction

1  and owns or possesses a Firearm in the City shall pay an Annual Gun Harm Reduction Fee to the

2  Designated Nonprofit Organization each year." Ordinance § 10.32.215. The fee amount is not

3  specified in the Ordinance, which neither contains any criteria to determine what the fee will be nor

4  any limits on how high it can be set. *See id*. Rather, the City Council reserved the right for itself to

5  determine this amount at an unspecified later date. *Id*.

6      The Ordinance requires gun owners to pay this fee directly to a nonprofit chosen by the City

7  Manager, Defendant Jennifer Maguire ("Maguire"). *Id*., §§ 10.32.205; 10.32.220. No part of the

8  City's fee actually goes to the City. Further, "all monies…shall be expended by the Designated

9  Nonprofit Organization." *Id*., § 10.32.220.A. Additionally, once the money is in the nonprofit's

10  coffers, "the City shall not specifically direct how the monies from the Gun Harm Reduction Fee are

11  expended." *Id*., §10.32.220.C. Accordingly, without City oversight or even knowledge of the fees

12  being paid to the nonprofit, and with the City prohibiting itself from controlling how the funds are

13  being spent, the potential for waste, fraud, and abuse is staggering.  As discussed below, it is also

14  illegal.

15      The Ordinance provides scant information about the Designated Nonprofit Organization,

16  other than the fact that it will have a contract with the City. In recent public comments, Mayor

17  Liccardo has claimed that, in addition to funding this nonprofit, the City will also be creating it and

18  choosing its members—but this is not stated anywhere in the Ordinance. Mary Harris, *San Jose's*

19  *New Gun Law Is the First of Its Kind*, Slate.com (Feb. 3, 2022), https://slate.com/news-and-

20  politics/2022/02/san-jose-gun-law-mayor-sam-liccardo-interview.html (attached as Exhibit

21  J)("We're forming a 501(c)(3) foundation, which is going to receive the dollars, and the board,

22  which will be comprised of a host of folks, . . .").

23      The only criteria for the City's contract with the nonprofit as to how the funds are ultimately

24  spent is that the nonprofit's services are to "include, but are not necessarily limited to" suicide

25  prevention services or programs, violence reduction or domestic violence services or programs,

26  addiction intervention and substance abuse treatment, mental health services related to gun violence,

27  and firearms safety education or training. *Id*., § 10.32.220.A. "All monies from the Gun Harm

28  Reduction Fee shall be expended by the Designated Nonprofit Organization" to provide the services

7



Plaintiffs' Notice of Motion and Motion for
Preliminary Injunction

Case No.22-cv-00501-BLF

1  and programs listed above exclusively to "residents of the city that own or possess a Firearm in the
2  City, to members of their household, or to those with whom they have a close familial or intimate
3  relationship." *Id.*

4      The fee thus functions as a way to compel gun owners to give their money to a government
5  approved nonprofit, that will inevitably hold the City's anti-gun biases, to spend on unspecified
6  programs targeting gun owners at the nonprofit's sole discretion with little to no City oversight. The
7  program forces gun owners to subsidize an organization that is hostile to gun ownership, to be used
8  for their own re-education. But although the Gun Harm Reduction Fee must be exclusively spent on
9  programs to re-educate gun owners, members of their household, or to those with whom they have a
10 close familial or intimate relationship, *id.*, the Ordinance in fact does not include *any* requirement for
11 gun owners or anyone else to attend the nonprofit's programs.

12     Despite justifying the Ordinance on the grounds that gun injuries are allegedly costing the
13 City hundreds of millions of dollars, the Gun Harm Reduction Fee does not compensate the city for
14 any of those alleged losses. The Ordinance authorizes the City Manager to collect *another*
15 undetermined fee to administer the Ordinance, that is, to "charge and collect any and all cost
16 recovery fees associated with fulfilling the policies of this Part relating to the reduction of gun harm,
17 including any associated third-party costs." Ordinance § 10.32.250.

18     Any gun owner who does not pay the Gun Harm Reduction Fee could be issued an as yet
19 undetermined fine, Ordinance § 10.32.240 (it "shall be set forth in the schedule of fines established
20 by resolution of the City Council") and may have their gun "impounded." *Id*. at §10.32.245.
21 In a recent interview, the Mayor disclosed how the Ordinance could allow the police new
22 opportunities to confiscate guns.

23
24     Encountering people with guns, out on the street, in bars and nightclubs—you can
       imagine a host of different venues where a police officer would really like to have the
25     ability to remove a gun from a potentially combustible situation. For example, there's
       a bar brawl and they're patting down everybody and someone's got a gun. "Have you
26     paid your fee? You have insurance?" "No." OK, well, there's an opportunity for us to
       remove the gun.
27

28 *San Jose's New Gun Law Is the First of Its Kind*, *Supra*. (Ex. J).



Plaintiffs' Notice of Motion and Motion for                                    Case No.22-cv-00501-BLF
Preliminary Injunction

*     *     *     *

The insurance requirement and both of the fees in the Ordinance are unknown costs imposed on gun owners that are designed to deter gun ownership. These unknown costs are subject to the whims of the City Council and insurance companies and bear a significant risk of making gun ownership cost prohibitive. The unknown extent of the costs further, whatever they may be now or in the future, chills the exercise of Second Amendment rights.

Plaintiffs therefore seek a preliminary injunction to prevent the City from enforcing the Ordinance, which it will do should this Court not take action prior to August 8, 2022.

**ARGUMENT**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 20 (2008); *see Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012) (applying *Winter* to claim under 42 U.S.C. § 1983); *All for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

**I.     PLAINTIFFS ARE ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF.**

    **A.  There Is a Strong Likelihood Plaintiffs' Will Succeed in Proving Their Claims on Multiple Grounds.**

        **1.  The Ordinance violates the Second Amendment of the United States Constitution.**

Defendants' Ordinance violates the Second Amendment to the U.S. Constitution, which prohibits the government from infringing "the right of the people to keep and bear Arms." U.S. Const., amend. II. The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). Even in the face of "the problem of handgun violence in this country…the enshrinement of constitutional rights necessarily takes certain policy choices off the table." *Id.* at 636. "[I]t is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty." *McDonald v. City of Chicago, Ill.*,

9



1   561 U.S. 742, 778 (2010). "The upshot of [*Heller* and *McDonald*] is that there now exists a clearly-

2   defined fundamental right to possess firearms for self-defense within the home." *United States v.*

3   *Masciandaro*, 638 F.3d 458, 467 (4th Cir. 2011). Local governments, including the City of San Jose,

4   are bound by the Second Amendment. *McDonald*, 561 U.S. at 790; *Nordyke v. King*, 681 F.3d 1041,

5   1044 (9th Cir. 2012).

6          In Second Amendment challenges, the Ninth Circuit, along with other circuits have "looked

7   to the First Amendment as a guide." *United States v. Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013).

8   In *Murdock v. Pennsylvania*, the Supreme Court considered a payment for a license to solicit or

9   deliver orders for goods, as applied to the evangelizing activity of Jehovah's Witnesses. 319 U.S.

10  105, 106 (1943). The court thus examined the constitutionality of a requirement to, as it called it,

11  "pay a license *tax* as a condition to the pursuit of their activities" that were protected by the First

12  Amendment. *Murdock*, 319 U.S. at 110 (emphasis added).

13         Similarly, the Ordinance's requirement that gun owners pay a Gun Harm Reduction Fee and

14  purchase insurance comprise taxes as a condition for the ownership of a gun, a constitutional right.

15  "This tax is not a charge for the enjoyment of a privilege or benefit *bestowed by the state*," but rather

16  "[t]he privilege in question *exists apart from state authority*" because "[i]t is guaranteed [to] the

17  people by the federal constitution." *Murdock*, 319 U.S. *at* 115 (emphasis added).

18         Under the California Constitution, too, the Gun Harm Reduction Fee and the Insurance

19  Mandate are deemed taxes.  A "'tax' means any levy, charge, or exaction of any kind imposed by a

20  local government," with the exception of seven kinds of charges not relevant here. Cal. Const. Art. X

21  III C §1 (e).

22         Courts have historically rejected taxing First Amendment rights and therefore Second

23  Amendment rights cannot be taxed. "A tax that burdens rights protected by the [Constitution] cannot

24  stand unless the burden is necessary to achieve an overriding government interest." *Minneapolis Star*

25  *and Tribune Co. v. Minnesota Comm'r. of Rev.*, 460 U.S. 575, 582 (1983). Taxing the press's

26  circulation of content "suggests that the goal of the regulation is not unrelated to the suppression of

27  expression." *Id.* at 585.  The same is true for the taxation of guns. It is a thinly veiled attempt at

28  suppressing the exercise of the right to keep and bear arms by making it more costly and



Plaintiffs' Notice of Motion and Motion for                              Case No.22-cv-00501-BLF
Preliminary Injunction

1  burdensome to own a gun—in addition to compelling the subsidization of anti-gun education

2  programs.

3  Courts evaluate Second Amendment challenges by using a two-step inquiry. First, a court

4  asks "whether the challenged law burdens conduct protected by the Second Amendment." *Chovan*,

5  735 F.3d at 1136. This step evaluates "a textual and historical inquiry into original meaning." *Ezell*

6  *v. City of Chicago*, 651 F.3d 684, 701 (7th Cir. 2011) (citing *Heller*, 554 U.S. at 634-35; *see also*

7  *Chovan*, 735 F.3d at 1137). This first step has a low bar. Even a prohibition on "domestic violence

8  misdemeanants" from possessing firearms satisfied the first step of the test. *Chovan*, 735 F.3d at

9  1137.

10  *a.  The Ordinance Burdens the Right to Keep and Bear Arms*

11  Regulations on guns in the home fall squarely into the Second Amendment's protections.

12  Indeed, it is at home "where the need for defense of self, family, and property is most acute." *Heller*,

13  554 U.S. at 628. The Ordinance's primary, if not sole, aim is at guns possessed within the home, as

14  evidenced by it only applying to citizens who cannot carry a weapon outside the home. Ordinance

15  §10.32.225.

16  Further, Mayor Liccardo's January 21, 2022, Memo states that the insurance mandate will

17  encourage "use of gun safes [and] install child-safe trigger locks," which address storage in the

18  home, and noted that "4.6 million children live in a *household* where a gun is kept and unlocked and

19  loaded, and 72% of gun injuries occur *at home*." Pg. 3 (Ex. D) (emphasis added). Additionally, in

20  justifying the fee, the Memo states that "a properly stored firearm *in the home* doubles occupants'

21  risk of becoming a victim…[and] prioritizing those investments for residents living with guns *in the*

22  *home* will provide the most direct path for reducing gun harm." *Id*. at 4. (emphasis added).

23  The Ordinance thus directly regulates firearms *in the home*, where the need is "most acute."

24  Consequently, the Ordinance burdens protected Second Amendment rights.

25  *b.  If Applying a Level of Scrutiny, the Court Should Apply Strict Scrutiny*

26  The second step of the traditional test is for the court to "apply an appropriate level of

27  scrutiny." *Id*. "Given *Heller*'s focus on 'core' Second Amendment conduct and the Court's frequent

28  references to First Amendment doctrine, we agree with those who advocate looking to the First



Plaintiffs' Notice of Motion and Motion for                                    Case No.22-cv-00501-BLF
Preliminary Injunction

1   Amendment as a guide in developing a standard of review for the Second Amendment." *United*

2   *States v. Chester*, 628 F.3d 673, 682 (4th Cir. 2010). Thus, like the First Amendment, some burdens

3   receive strict scrutiny, such as content based speech restrictions, while others receive intermediate

4   scrutiny, such as time, place and manner restrictions. *Id.* The level of scrutiny "should depend on (1)

5   'how close the law comes to the core of the Second Amendment right, and (2) 'the severity of the

6   law's burden on the right.'" *Chovan*, 735 F.3d at 1138 (quoting *Ezell*, 651 F.3d 703).

7           Strict scrutiny should apply because this law strikes at the very core of the Second

8   Amendment. It specifically targets guns in the home, "where the need for defense of self, family, and

9   property is most acute," *Heller*, 554 U.S. at 628, and threatens the impoundment of guns—the

10   complete denial of Second Amendment rights—for noncompliance with its arbitrary insurance and

11   annual fee requirements.

12           The Ordinance will severely burden a gun owner's ability to exercise his right to own a gun

13   for home or self-defense by imposing uncertain costs just to exercise a constitutional right. Even if

14   the fees are initially a low sum, the Ordinance does not cap or otherwise provide a limiting principle

15   for the total amount the Council may impose as a cost for owning a gun, and the cost of insurance

16   will be at the mercy of private insurers. This unbridled discretion that the City Council has given

17   itself, along with the discretion left to a private, for-profit, industry, can, and likely will, severely

18   burden or chill the residents of San Jose's Second Amendment rights. It also gives the City the

19   ability to strategically play possum in this litigation, proffering the Ordinance imposes a lower

20   financial burden and citing economic hardship exceptions, despite the Ordinance not limiting the

21   costs they can impose tomorrow.

22           For example, if the essential purpose and mechanism of the Ordinance are ratified by the

23   Court, regardless of the amount of the City's fees and the cost of the mandatory insurance and the

24   actual direct costs to the city, there would be nothing to prevent the City from attempting to shift the

25   full brunt of its bogus claim of $442 million in societal costs in San Jose onto the estimated 55,000

26   gun owners, for a per-owner charge of $8,036.36 per person—in addition to whatever insurance

27   companies may charge, if they cover the liabilities the City mandates they cover.

28   //



1    Accordingly, strict scrutiny is the appropriate level of scrutiny if the Court applies any level

2  of scrutiny.

3                    *c.  The Ordinance Even Fails Intermediate Scrutiny*

4    This Ordinance does not satisfy the lower standard of an intermediate scrutiny analysis, let

5  alone the strict scrutiny standard. Intermediate scrutiny requires "1) the government's stated

6  objective to be significant, substantial, or important; and 2) a reasonable fit between the challenged

7  regulation and the asserted objective." *Chovan*, 735 F.3d at 1139.

8    While neither the Supreme Court nor the Ninth Circuit have found reducing gun violence to

9  be a compelling government interest, the Ninth Circuit has stated that it is important. *Chovan*, 735

10  F.3d at 1139. Nevertheless, the Ordinance's provisions are not a reasonable fit, much less narrowly

11  tailored, to its claimed purposes. The City makes no findings, other than conclusory self-serving

12  statements, that special gun accident insurance or compulsory donations to anti-gun nonprofits will

13  reduce gun violence or other injuries, particularly gun violence by those who lawfully possess

14  firearms to be kept in the home, much less the root cause of most costs cited in the Ordinance:

15  criminals who use guns to commit intentional acts of violence. *See generally* Ordinance § 10.32.200.

16    That the Ordinance does not in fact limit how the chosen nonprofit would spend the City's

17  Gun Harm Reduction Fee, and specifically forbids the City from directing the spending of its own

18  fee, renders speculative any argument that payment of the fee furthers the Ordinance's aims. And, so

19  far, there is no requirement that any particular gun owner (or their household members and close

20  personal associates) subject to the Ordinance must actually receive the services for which the City's

21  fee is paying the nonprofit to provide.

22    Additionally, the Ordinance embodies a second government purpose of shifting the claimed

23  collective costs of gun injuries caused by some onto nearly all gun owners. *See* Ordinance

24  § 10.32.200.B.8, 9. The extrajudicial exaction of payments from a whole class of persons (those

25  exercising their Second Amendment rights) to pay City or societal costs arising from the actions of a

26  few individuals (violent criminals, including perpetrators of domestic gun violence, and careless gun

27  owners) smacks of collective punishment. It is neither a reasonable fit with a significant, substantial,

28



Plaintiffs' Notice of Motion and Motion for                                      Case No.22-cv-00501-BLF
Preliminary Injunction

1  or important government interest, nor narrowly tailored to a compelling interest—indeed it is an

2  illegitimate government practice.

3          Further, the city's costs related to police, fire, judicial expenses form a substantial part of the

4  City's costs—but none of the Ordinance's measures will compensate the city for these claimed

5  municipal losses.  They are also *normal* government costs, shared by all, that have historically been

6  financed through general tax revenue, not taxes imposed selectively on particular citizens or

7  communities.

8          The other private costs related to loss of work and quality of life are purely manufactured and

9  arbitrary abstract concepts that will only be impacted by the Ordinance in equally arbitrary, abstract,

10 speculative, and attenuated ways. The City's own hired research firm concluded that $253,828,000

11 of the $411,699,000 in total costs it calculated came from "Homicide/Assault/Legal Intervention"

12 alone. Liccardo Jan. 19 Memo 5 (Ex. I). Thus, roughly 57% of the costs incurred by the City, by its

13 own calculation, comes from crime alone, which neither insurance nor the fee will ever reimburse.

14 Indeed, the City's research states that its "primary costs" are for "fire department and police

15 response." The Gun Harm Reduction Fee going to the nonprofit is supposed to be for educational

16 programs, not to compensate San Jose for its losses and there is no indication in the Ordinance that

17 the City expects to claim any funds from the gun owners' insurance policies.

18
19         Finally, the government cannot impose fees on guns for purposes other than administrative

20 costs. The government "may not impose a charge for the enjoyment of a right granted by the federal

21 constitution." *Murdock*, 319 U.S. at 113. It may collect a fee to "meet the expense incident to the

22 administration of the act and to the maintenance of public order in the matter licensed." *Cox v. New

23 Hampshire*, 312 U.S. 569 (1941). "[I]mposing fees on the exercise of constitutional rights is

24 permissible when the fees are designed to defray (and do not exceed) the administrative costs of

25 regulating the protected activity." *Kwong v. Bloomberg*, 723 F.3d 160, 165 (2nd Cir. 2013). The

26 Ninth Circuit has adopted this *Murdock/Cox* fee-jurisprudence for the Second Amendment. *Bauer v.

27 Becerra*, 858 F.3d 1216 (9th Cir. 2017).  Here, the Gun Harm Reduction Fee goes directly to a

28 nonprofit for the purposes of reeducating gun owners. Ordinance §§ 10.32.215, 10.32.220. The



1   administrative costs of the Ordinance, if any, are actually covered by an entirely separate fee

2   authorized by the Ordinance. *Id*. at § 10.32.250.

3       d. *Alternatively, the Ordinance is Unconstitutional Because It Burdens the Second Amendment*

4       *Right to Keep and Bear Arms*

5       The majority opinion in *Heller* noted that "We know of no other enumerated constitutional

6   right whose core protection has been subjected to a freestanding 'interest-balancing' approach." 554

7   U.S. at 634. This was in response to Justice Breyer's dissent, which claimed that a law restricting

8   guns was constitutional after weighing its burden on Second Amendment rights against handgun

9   violence, urban geography, and history. *Id*. But the majority stated that "The very enumeration of the

10  right takes out of the hands of government —even the Third Branch of Government—the power to

11  decide on a case-by-case basis whether the right is *really worth* insisting upon." *Id*. Indeed, as

12  Justice Kavanaugh noted, while on the D.C. Circuit, "The Court's failure to employ strict or

13  intermediate scrutiny appears to have been quite intentional and well-considered." *Heller v. District*

14  *of Columbia*, 670 F.3d 1244, 1273 (D.C. Cir. 2011)(Kavanagh, B., dissenting) (quoting Tr. Of Oral

15  Arg. at 44, *Heller*, 554 U.S. 570 (No. 07-290)) ("[T]hese various phrases under the different

16  standards that are proposed, 'compelling interest,' 'significant interest,' 'narrowly tailored,' none of

17  them appear in the Constitution…these standards that apply in the First Amendment just kind of

18  developed over the years as sort of baggage that the First Amendment picked up."). Thus, a

19  balancing tests that weighs a government interest against a constitutional right under a strict scrutiny

20  or intermediate scrutiny analysis is inappropriate under *Heller*.

21      The Ordinance is therefore unconstitutional based on the mere fact that its insurance

22  requirement and fees burden Plaintiffs' ability to exercise their Second Amendment rights.

23      **2.  The Ordinance Violates Plaintiffs' Free Speech and Association Rights.**

24      To continue to exercise their Second Amendment rights, the Ordinance unconstitutionally

25  forces gun owners to associate with and subsidize the speech of others with whom they may

26  disagree.

27       "[M]andatory associations are permissible only when they serve a compelling state interest

28  that cannot be achieved through means significantly less restrictive of associational freedoms." *Knox*

15



**SER-240**

1   *v. SEIU*, 567 U.S. 298, 310 (2012). "Compelling a person to subsidize the speech of other private

2   speakers raises similar First Amendment concerns." *Janus v. AFSCME, Council 31*, 138 S.Ct. 2448,

3   2464 (2018)(citing *Knox*, 567 U.S. at 309). "As Jefferson famously put it, 'to compel a man to

4   furnish contributions of money for the propagation of opinions which he disbelieves and abor[s] is

5   sinful and tyrannical." *Id.* (quoting A Bill for Establishing Religious Freedom, in 2 papers of

6   Thomas Jefferson 545 (J. Boyd ed. 1950)). "Because the compelled subsidization of private speech

7   seriously impinges on First Amendment rights, it cannot be casually allowed." *Id.* Thus, in *Janus*,

8   the Supreme Court concluded that a law that requires government agencies to extract "agency fees"

9   from "nonconsenting employees," violates the First Amendment. *Id.* at 2486.

10         The operation of the Ordinance is strikingly similar to the imposition of mandatory union

11   "agency fees" on public sector employees, addressed by the Supreme Court in *Janus*. In *Janus*, an

12   employee, whether or not he/she wanted to associate with the union, was required to pay an "agency

13   fee" to the union. *Janus*, 138 S.Ct. at 2460. Here, whether a gun owner wants to associate with or

14   donate to the nonprofit or not, he/she must pay the Gun Harm Reduction Fee directly to the City's

15   chosen nonprofit. Ordinance § 10.32.215. In *Janus*, no form of employee consent was required by

16   the state's statute. *Janus*, 138 S.Ct. at 2486. Likewise, the Ordinance does not have any consent

17   provision. *See generally* Ordinance. Such a procedure "violates the First Amendment." *Janus*, 138

18   S.Ct. at 2486.

19         In another illustrative case, the Supreme Court held that the California Bar could use

20   members' dues to "fund activities germane" to the "State's interest in regulating the legal

21   profession" but it could not use members' dues to "fund activities of an ideological nature which

22   falls outside of those areas of activity." *Keller v. State Bar of California*, 496 U.S. 1, 13 (1990). So

23   likewise, the City of San Jose cannot force gun owners to pay fees to a nonprofit for whatever

24   purposes they desire, particularly to discourage exercising the right to keep and bear arms.

25   It is a well-established principle that:

26         [T]he right of freedom of thought protected by the First Amendment against state
           action includes both the right to speak freely and the right to refrain from speaking at
27         all. A system which secures the right to proselytize religious, political, and
           ideological causes must also guarantee the concomitant right to decline to foster such

28



Plaintiffs' Notice of Motion and Motion for                                    Case No.22-cv-00501-BLF
Preliminary Injunction

1   concepts. The right to speak and the right to refrain from speaking are complementary
    components of the broader concept of individual freedom of mind.

2   *Wooley v. Maynard*, 430 U.S. 705, 714 (1977) (citations and internal quotations

3   omitted).

4        In recent comments, Mayor Liccardo has likened the compulsory payment of the Gun Harm

5   Reduction Fee to forced membership in a club. After describing the nonprofit's activities the gun

6   owner's payment of the annual fee to the nonprofit would fund, a reporter asked the mayor if "it's

7   almost like joining a club," to which the Mayor responded:

8

9        Yeah, and look, I don't pretend to believe these are overwhelmingly folks who are
         willing to want to do this. I recognize that this is by government fiat, and many would
10        prefer not to pay the fee.

11

12  Mary Harris, *San Jose's New Gun Law Is the First of Its Kind*, Slate.com, https://slate.com/news-

13  and-politics/2022/02/san-jose-gun-law-mayor-sam-liccardo-interview.html.

14       Here, the forced association and subsidization of speech is more severe even than in *Janus*.

15  In *Janus*, the employees' union fees were a condition of employment. While conditioning

16  employment on forgoing constitutional rights is significant, here, the Ordinance conditions a

17  constitutional right on forgoing other constitutional rights.

18       Indeed, "government may not deny a benefit to a person because he exercises a constitutional

19  right." *Regan v. Taxation with Representation of Wash.*, 461 U.S. 540, 545 (1983). Here, the

20  Ordinance denies citizens a benefit (freedom of speech and association) by forcing them to associate

21  with and subsidize a nonprofit that will communicate messages which gun owners will not agree

22  with solely because the citizens exercise their constitutional right to own a gun. The Gun Harm

23  Reduction Fee therefore violates the First Amendment.

24       As stated above, in *Heller*, Justice Roberts noted that interest-balancing tests for the First

25  Amendment are "baggage."  Tr. of Oral Arg. At 44, *Heller*, 554 U.S. 570 (No. 07-290). Currently,

26  the Supreme Court has not assigned a test for compelled subsidization of speech. *See Janus*, 138

27  S.Ct. at 2465 ("[W]e again find it unnecessary to decide the issue of strict scrutiny because the

28  Illinois scheme cannot survive under even the more permissive standard…."). The Court did say,



Plaintiffs' Notice of Motion and Motion for                                    Case No.22-cv-00501-BLF
Preliminary Injunction

1  however, that "minimal scrutiny is foreign to our free-speech jurisprudence." *Id*. As Justices Scalia

2  and Roberts have noted in *Heller*, the Constitution does not prescribe a balancing test, so there

3  should not be one. However, if such a test is administered, for the reasons stated above, this

4  Ordinance cannot pass even intermediate scrutiny; therefore, the Ordinance should be enjoined for

5  violating the First Amendment.

6       **3.  The Ordinance Violates article XI, § 7 of the California Constitution.**

7       Article XI, section 7 of the California Constitution states that "A county or city may make

8  and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in

9  conflict with general laws." This provision prohibits a local law that "duplicates, contradicts, or

10  *enters an area fully occupied by general law*, either expressly or by legislative implication." *Fiscal*

11  *v. City and County of San Francisco* 158 Cal.App.4th 895, 903 (Cal. Ct. App. 2008)(quotation

12  omitted)(emphasis added).

13       The State of California has voluminous statutes comprehensively regulating firearm

14  ownership in California. *See generally* Cal. Penal Code §§ 23500-34370. This includes firearm

15  safety, CAL. PENAL CODE §§ 23500-23520, the appearance of firearms, *id*., §§ 23800-24790, storage

16  of firearms, *id*., §§ 25000-25225, how to handle lost or stolen firearms, *id*., §§ 25250-25225,

17  carrying firearms, *id*., §§ 25300-26406, the sale, lease, or transfer of firearms, *id*., §§ 26500-28490,

18  the registration and assignment of firearms, *id*., §§ 28010-28024, how to transfer firearms between

19  private persons, *id*., §§ 28050-28070, recordkeeping, background checks, and fees related to transfer,

20  *id*., §§ 28100-28490, the manufacture of firearms, *id*., §§ 29010-29184, who may not possess a

21  firearm, *id*., §§ 29610-30165, rules pertaining to "firearm equipment," *id*., §§ 30150-30165, and, in

22  some cases, firearm registration, *id*., §§ 30900-30965. This is but a sample of all of the separate

23  statutes regulating firearms in California.

24       California courts have already determined that "the Legislature intended to occupy the field

25  of residential handgun possession to the exclusion of local government entities." *Fiscal*, 158

26  Cal.App.4th at 909 (citing Cal. Penal Code § 12026).[1] Thus, the Ordinance, insofar as it intends to

27

28  ────────────────
[1] The specific mandates in the state laws cited in *Fiscal* have since been transferred into other statutes with no substantive change.



Plaintiffs' Notice of Motion and Motion for                         Case No.22-cv-00501-BLF
Preliminary Injunction

1    impose gun storage and safety requirements, plainly encroaches upon a field already occupied by

2    state law, and thus violates Article XI, section 7.

3          **4.   The Ordinance Violates Article XIII C, Section 1 of the California Constitution.**

4          The California Constitution requires that "No local government may impose, extend, or

5    increase any *general tax* unless and until that tax is submitted to the electorate and approved by a

6    majority vote." Article XIII C, §2(b) (emphasis added). It also requires that "No local government

7    may impose, extend, or increase any *special tax* unless and until that tax is submitted to the

8    electorate and approved by a two-thirds vote." Article XIII C, §2(d) (emphasis added). A "tax" is

9    "any levy, charge, or exaction of any kind imposed by a local government," with exceptions that do

10   not apply here. Article XIII C, §1(e). The Gun Harm Reduction Fee and the insurance requirement

11   (backed by the threat of a fine payable to the City) are levies, charges or exactions imposed by the

12   City of San Jose and thus each constitutes a "tax" within the meaning of the California Constitution.

13   *Cf. Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 564-566 (2012) (a law describing a payment

14   as a "penalty" for not complying with an insurance requirement does not determine whether the

15   payment is a tax for constitutional purposes).

16         If the City disputes that the Gun Harm Reduction Fee or insurance requirement is a tax, "the

17   [City] bears the burden of proving by a preponderance of the evidence that a levy, charge, or other

18   exaction is not a tax, that the amount is no more than necessary to cover the reasonable costs of the

19   governmental activity, and that the manner in which those costs are allocated to a payor bear a fair or

20   reasonable relationship to the payor's burdens on, or benefits received from, the governmental

21   activity." Article XIII C, §1.

22         The City cannot meet this burden.  The amount of the Gun Harm Reduction Fee and the

23   required insurance payments (including penalties for noncompliance) are "more than necessary to

24   cover the reasonable costs of the governmental activity" because neither is for government activity.

25   Additionally, as to both the Gun Harm Reduction Fee and the mandatory insurance, "the manner in

26   which those costs are allocated to" gun owners do not "bear a fair or reasonable relationship to the

27   payor's burdens on, or benefits received from" the City's "governmental activity." Article XIII C,

28   §1. Every gun owner would be compelled by the Ordinance to pay an arbitrary amount for the Gun



Harm Reduction Fee and pay the city a fine if they do not have an insurance policy specifically covering them for owning a gun.  The Ordinance does not establish, or claim, that each gun owner will receive a benefit in return for the fee paid having a value commensurate with the amount they paid.  For the same reasons stated in the Second Amendment analysis regarding reasonable fit, neither the insurance requirement nor the Gun Harm Reduction Fee bear a fair or reasonable relationship to the payor's burdens on, or benefits received from, a governmental activity.

The Ordinance's required payments, whether general or special taxes, were never voted upon by the citizens of San Jose. Compl. First Am. Compl. ¶ 72.  Accordingly, they violate the California Constitution.

> **5. The Ordinance Violates the San Jose's City Charter's Reservation of Budget and Appropriation Powers to the City Council and Administrative Powers to the City Manager.**

The Ordinance violates the San Jose City Charter by commanding gun owners to directly pay the City's Gun Harm Reduction Fee to one nonprofit to be used for program activity that was not directed by the City Council or managed by the City Manager.

The San Jose City Charter vests in the City Council "[a]ll powers of the City and the determination of all matters of policy." San Jose City Charter § 400. With regard to the expenditure of City funds, only the City Council has the power to establish a budget. *Id.* §§ 1204, 1206.  The Council also has the sole power to appropriate the expenditure of City funds. *Id.*, § 1207. The City Manager, by contrast, is the "Chief Administrative Officer and head of the administrative branch of the City government." *Id.,* § 502; *see also id.,* § 701.

The Ordinance, by prohibiting the City Council from using its budgeting and appropriating powers to direct how the receipts from the City's Gun Harm Reduction fee are expended by the chosen nonprofit, Ordinance § 10.32.220.C, violates the San Jose City Charter's reservation of budgeting and appropriation power to the City Council.  The Ordinance also violates the City Charter's delegation of executive functions to the "administrative" branch of the City Government under the leadership and control of the City Manager because the Ordinance says "the City shall not specifically direct how the monies from the Gun Harm Reduction Fee are expended" other than a



Plaintiffs' Notice of Motion and Motion for Preliminary Injunction

Case No.22-cv-00501-BLF

1   vague direction to "reduce the risk" of harm from using firearms and "mitigate the risk" of harm or

2   liability from possessing firearms. *Id.*

### 6. The Ordinance Violates the San Jose City Charter's Requirement that City Receipts Be Deposited into City Accounts.

5   The San Jose City Charter states that "[a]ll revenues and receipts which are not required by

6   [the] Charter, State law or ordinances to be placed in special funds shall be credited to the [City's]

7   General Fund." *Id.*, § 1211.  The General Fund is "a medium of control and accounting for all City

8   activities excepting activities for which special funds are established and maintained." *Id.*

9   The Ordinance requires gun owners to pay the City-required, City-determined fee directly to

10  a nonprofit organization, *id.*, § 10.32.215, thereby diverting a City fee to a nonprofit rather than the

11  City's General Fund or a special fund.  This violates the City Charter's requirement that all City

12  revenues and receipts be deposited into City accounts.  The loss of this essential means of City

13  "control and accounting," in combination with the Ordinance's prohibition against City control of

14  the nonprofit's use of the funds and the vague statements about what the nonprofits should use the

15  funds for, is an open invitation to corruption, waste, fraud, and abuse.

### B. Plaintiffs Face Imminent Irreparable Harm Absent Immediate Injunctive Relief.

17  For a statute that violates the Second Amendment, the "remedy is necessarily directed at the

18  statute itself and *must* be injunctive and declaratory." *Ezell*, 651 F.3d at 698. (emphasis in original).

19  A city ordinance that violates the Second Amendment "stands as a fixed harm to every [citizen's]

20  Second Amendment right." *Id*. "Irreparable harm is presumed" and cannot be remedied by damages.

21  *Id*. at 699.

22  Additionally, "where the First Amendment is implicated, the Supreme Court has made clear

23  that '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably

24  constitutes irreparable injury' for purposes of the issuance of a preliminary injunction." *College

25  Republicans at San Francisco State University v. Reed*, 523 F. Supp. 2d 1005, 1011 (N.D. Cal. 2007)

26  (*citing Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959, 973-74 (9th Cir. 2002), *in turn citing Elrod

27  v. Burns*, 427 U.S. 347, 373 (1976)); *see also S.O.C., Inc. v. Cnty. of Clark*, 152 F.3d 1136, 1148

28  (9th Cir. 1998) (holding that a civil liberties organization that had demonstrated probable success on



Plaintiffs' Notice of Motion and Motion for                                          Case No.22-cv-00501-BLF
Preliminary Injunction

1  the merits of its First Amendment overbreadth claim had thereby also demonstrated irreparable

2  harm). "In other words, the requirement that a party who is seeking a preliminary injunction show

3  'irreparable injury' is deemed fully satisfied if the party shows that, without the injunction, First

4  Amendment freedoms would be lost, even for a short period." *Reed*, 523 F. Supp. 2d at 1011.

5  "Unlike a monetary injury, violations of the First Amendment 'cannot be adequately remedied

6  through damages.'" *Americans for Prosperity Foundation v. Harris*, 182 F. Supp. 3d 1049, 1058

7  (C.D. Cal. 2016) (*citing Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009)).

8        Without an injunction preventing Defendants from enforcing the Ordinance, Plaintiffs will

9  suffer irreparable harm in the form of deprivation of fundamental freedoms secured by the First,

10  Second and Fourteenth Amendment to the U.S. Constitution and the California Constitution.

11  Plaintiffs' irreparable injuries cannot adequately be compensated by damages or any other remedy

12  available at law. Thus, irreparable injury is clearly shown, necessitating the relief Plaintiffs seek in

13  this Motion.

14        **C.**    **The Balance of Hardships Tips Decidedly in Plaintiffs' Favor.**

15        "[S]erious First Amendment questions compel[] a finding that there exists the potential for

16  irreparable injury, or that a the very least the balance of hardships tips sharply in [the plaintiffs']

17  favor." *Community House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007) (quoting

18  *Sammartano*, 303 F.3d at 973). Similarly, when there is a threat of sanctions for failure to act on a

19  law that restricts Second Amendment rights, even if the government endures hardship, the balance

20  favors the plaintiffs. *See Duncan v. Becerra*, 265 F.Supp.3d 1106, 1136 (S.D. Cal. 2017).

21        Here, if the Ordinance goes into effect and is enforced, tens of thousands of San Jose citizens

22  will risk seizure of their guns and the payment of fines if they do not forgo their fundamental rights

23  to keep arms and to free speech and association, as well as rights under the California constitution to

24  vote on tax increases, and rights under the City Charter to have City fees deposited into City

25  accounts. The balance of hardships sharply tips in favor of Plaintiffs.

26        **D.**    **Injunctive Relief Is in The Public Interest**

27        "As the Ninth Circuit has consistently recognized, there is a significant public interest in

28  upholding First Amendment principles." *Americans for Prosperity Foundation*, 182 F. Supp. 3d at

---

22



Plaintiffs' Notice of Motion and Motion for
Preliminary Injunction

Case No.22-cv-00501-BLF

1   1059 (internal citations omitted); *see also Doe v. Harris*, 772 F.3d 563, 683 (9th Cir.2014);

2   *Sammartano*, 303 F.3d at 974. Similarly, "the public interest favors the exercise of Second

3   Amendment rights by law-abiding responsible citizens." *Duncan*, 265 F.Supp.3d 1106.

4        As discussed above, Plaintiffs' core constitutional rights to own guns to defend one's home

5   and self will remain in jeopardy so long as Defendants remain free to enforce their Ordinance.

6   Likewise, Plaintiffs' right to free speech and association will be jeopardized by forcing them to

7   subsidize and associate with a nonprofit. Holding the City Council to account for the constraints on

8   its power in the California constitution and the City Charter are also in the public interest.

9   Accordingly, issuance of injunctive relief is proper, and the Court should grant this Motion.

10  **II.     THE COURT SHOULD DISPENSE WITH ANY BOND REQUIREMENT**

11       Rule 65(c) of the Federal Rules of Civil Procedure provides that a preliminary injunction

12  may be issued "only if the movant gives security in an amount that the court considers proper to pay

13  the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."

14  Fed. R. Civ. P. 65(c). However, the Court has discretion as to whether any security is required and, if

15  so, the amount thereof. *See, e.g., Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

16       Plaintiffs request that the Court waive any bond requirement, because enjoining Defendants

17  from unconstitutionally enforcing the Ordinance will not financially affect Defendants, who do not

18  have a financial stake in enforcing the Ordinance. A bond would, however, be burdensome on

19  already burdened Plaintiffs under these circumstances. *See, e.g., Bible Club v. Placentia-Yorba

20  Linda School Dist.*, 573 F. Supp. 1291, fn. 6 (C.D. Cal. 2008) (waiving requirement of student

21  group to post a bond where case involved "the probable violation of [the club's] First Amendment

22  rights" and minimal damages to the District of issuing injunction)(*citing Doctor John's, Inc. v. Sioux

23  City*, 305 F. Supp. 1022, 1043-44 (N.D. Iowa 2004) ("requiring a bond to issue before enjoining

24  potentially unconstitutional conduct by a governmental entity simply seems inappropriate, because

25  the rights potentially impinged by the governmental entity's actions are of such gravity that

26  protection of those rights should not be contingent upon an ability to pay.")).

27  //

28  //



Plaintiffs' Notice of Motion and Motion for
Preliminary Injunction

Case No.22-cv-00501-BLF

**CONCLUSION**

Plaintiffs respectfully request that the Court grant Plaintiffs' motion for a preliminary injunction to restrain and enjoin Defendants, as well as their agents, employees, and successors in office, from enforcing, attempting to enforce, threatening to enforce, or otherwise requiring compliance with any provision of the Ordinance.

Respectfully submitted,

Date: March 8, 2022                    DHILLON LAW GROUP INC.

By:     /s/ Harmeet K. Dhillon
        Harmeet K. Dhillon
        Michael A. Columbo
        Mark P. Meuser
        DHILLON LAW GROUP INC.
        177 Post Street, Suite 700
        San Francisco, California 94108
        (415) 433-1700

        David A. Warrington*
        Curtis M. Schube (admitted *pro hac vice*)
        DHILLON LAW GROUP INC.
        2121 Eisenhower Avenue, Suite 402
        Alexandria, VA 22314
        (571) 400-2121

        *Admission *pro hac vice* pending

        Attorneys for Plaintiffs



Plaintiffs' Notice of Motion and Motion for                    Case No.22-cv-00501-BLF
Preliminary Injunction

**SER-249**

1

**CERTIFICATE OF SERVICE**

2

    I, Harmeet K. Dhillon, hereby certify that on March 8, 2022, I electronically filed the above

3

document with the Clerk of the Court using CM/ECF, which will send electronic notification of such

4

filing to all registered counsel.

5

6

Dated: March 8, 2022                 By: /s/Harmeet K. Dhillon
                           Harmeet K. Dhillon

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



Plaintiffs' Notice of Motion and Motion for
Preliminary Injunction

Case No.22-cv-00501-BLF