No. 23-16091

---

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

HOWARD JARVIS TAXPAYERS ASSOCIATION, et al.,

*Plaintiffs-Appellants*,

v.

CITY OF SAN JOSE, et al.,

*Defendants-Appellees*.

---

On Appeal from the United States District Court, Northern District of California
Consolidated Case Nos. 5:22-cv-00501-BLF and 5:22-cv-02365-BLF
(Hon. Beth Labson Freeman)

---

## APPELLEE'S ANSWERING BRIEF

---

JOSEPH W. COTCHETT (SBN 36324)
jcotchett@cpmlegal.com
TAMARAH P. PREVOST (SBN 313422)
tprevost@cpmlegal.com
ANDREW F. KIRTLEY (SBN 328023)
akirtley@cpmlegal.com
COTCHETT, PITRE & McCARTHY, LLP
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Fax: (650) 697-0577

*Attorneys for Defendants-Appellees City of San José, et al.*

## <u>TABLE OF CONTENTS</u>

<u>Page No.</u>

INTRODUCTION ..... 1

JURISDICTIONAL STATEMENT ..... 3

LEGAL AUTHORITY ..... 4

ISSUES PRESENTED ..... 4

STATEMENT OF THE CASE ..... 5

    A.    The Ordinance ..... 5

        1.    The Insurance Requirement ..... 6

        2.    The Fee Requirement ..... 7

        3.    Compliance and Enforcement ..... 9

    B.    Procedural History ..... 10

        1.    The NAGR Plaintiffs ..... 10

        2.    The HJTA Plaintiffs ..... 11

        3.    The Claims for Relief in the SAC ..... 12

        4.    The Court's Order Dismissing the SAC ..... 13

        5.    Subsequent District Court Proceedings ..... 13

SUMMARY OF THE ARGUMENT ..... 14

STANDARD OF REVIEW ..... 16

ARGUMENT ..... 17

i

I.      HJTA'S CLAIMS ARE NOT SUFFICIENT FACIAL
        CHALLENGES. ..................................................................17

II.     THE FIRST AMENDMENT CLAIM IS UNRIPE. ...........................18

        A.      The District Court Correctly Dismissed with Leave to Amend
                HJTA's First Amendment Claim for Lack of Prudential
                Ripeness. ...................................................................19

                1.      The District Court's Findings of Lack of Ripeness in its
                        MPI Order (August 2022) and First MTD Order
                        (September 2022) Were Sound......................................20

                2.      The District's Finding in its MTD SAC Order
                        (July 2023) that the Claim Remained Unripe, and the
                        Decision to Dismiss it with Leave to Amend, Should
                        be Affirmed..................................................................22

        B.      HJTA's Contrary Arguments Lack Legal and Factual
                Merit. ........................................................................25

                1.      HJTA's Rights are Not "Hanging in Limbo" Pending
                        Implementation of the Fee Requirement. .......................26

                2.      HJTA's First Amendment Claim Is Not "Ripe
                        Enough." ......................................................................33

                        a.      The sole issue on appeal of HJTA's First
                                Amendment Claim is ripeness..............................33

                        b.      HJTA's argument its claim is ripe because
                                requiring a fee be paid to any nonprofit for any
                                purpose inherently violates the First Amendment
                                is contrary to case law. .........................................35

                        c.      HJTA's "ripe enough" cases do not help its
                                argument. .............................................................38

III.    THE DISTRICT COURT CORRECTLY DISMISSED HJTA'S
        STATE LAW "TAX" CLAIM............................................................43

        A.      The tax claim is not adequately pleaded under *Iqbal* and
                *Twombly*. ...................................................................44

B.    The Fee is not a "tax" under Article XIII C..............................45

       1.    The Fee is not a "tax" under the only appellate authority on the issue, *Schmeer v. County of Los Angeles*, as HJTA concedes.................................................................46

       2.    *Schmeer* is directly on point and fatal to HJTA's claim that the Fee is "tax" under article XIII C.............48

       3.    The Fee also is not a "special tax" because it is "not placed into a general fund."...........................................51

CONCLUSION .........................................................................................52

# TABLE OF AUTHORITIES

**Page No(s).**

**Cases**

*303 Creative LLC v. Elenis*
143 S. Ct. 2298 (2023).......................................................................30

*Abbott Labs. v. Gardner*
387 U.S. 136 (1967)................................................................... 18, 28

*Americans for Prosperity Found. v. Bonta*
141 S. Ct. 2373 (2021)......................................................................17

*Arcara v. Cloud Books, Inc.*
478 U.S. 697 (1986).................................................................. 21, 36

*Ashcroft v. Iqbal*
556 U.S. 662 (2009)........................................................ 2, 15, 16, 44

*Ashwander v. Tennessee Valley Authority*
297 U.S. 288 (1936).........................................................................30

*Babbitt v. United Farm Workers Nat'l Union*
44 U.S. 289 (1979)................................................................ 31, 32, 33

*Bd. of Regents of the Univ. of Wis. Sys. v. Southworth*
529 U.S. 217 (2000).........................................................................37

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007)................................................................ 2, 15, 45

*Cal. Democratic Party v. Jones*
530 U.S. 567 (2000).........................................................................43

*City of Dallas v. Stanglin*
490 U.S. 19 (1989)...........................................................................36

*City of Santa Monica v. Stewart*
126 Cal. App. 4th 43 (2005) ..........................................................29

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*
657 F.3d 936 (9th Cir. 2011) ..........................................................38

iv

*Cramer v. Brown*
  2012 WL 13059699 (C.D. Cal. Sept. 12, 2012) ................................... 18, 22, 33

*Doğan v. Barak*
  932 F.3d 888 (9th Cir. 2019) ................................................................16

*Eichenberger v. ESPN, Inc.*
  876 F.3d 979 (9th Cir. 2017) ...............................................................16

*Forsyth Cnty. v. Nationalist Movement*
  505 U.S. 123 (1992) ..............................................................................27

*Franklin v. Cmty. Reg'l Med. Ctr.*
  998 F.3d 867 (9th Cir. 2021) ...............................................................47

*Greenwood v. FAA*
  28 F.3d 971 (9th Cir. 1994) .................................................................17

*Griffith v. City of Santa Cruz*
  207 Cal.App.4th 982 (2012) .................................................................50

*Human Life of Washington Inc. v. Brumsickle*
  624 F.3d 990 (9th Cir. 2010) ...............................................................30

*In re Kirkland*
  915 F.2d 1236 (9th Cir. 1990) .............................................................47

*Jackson v. City and County of San Francisco*
  746 F.3d 953 (9th Cir. 2014) ...............................................................17

*Janus v. American Federation of State, County, and Mun. Employees,
  Council 31*
  (2018) 585 U.S. 878 ................................................................ 39, 40, 41

*Jones v. Allison*
  9 F.4th 1136 (9th Cir. 2021) ........................................................ 17, 20

*Keller v. State Bar of California*
  496 U.S. 1 (1990) ..................................................................... 37, 40, 42

*Knox v. SEIU*
  567 U.S. 298 (2012) .................................................................. 35, 41, 42

v

*Libertarian Party of Los Angeles Country v. Bowen*
709 F.3d 867 (9th Cir. 2013) ................................................................31

*McCormack v. Hiedeman*
694 F.3d 1004 (9th Cir.2012) ..............................................................31

*Mills v. United States*
742 F.3d 400 (9th Cir. 2014) ...............................................................16

*Mollett v. Netflix, Inc.*
795 F.3d 1062 (9th Cir. 2015) .............................................................16

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*
15 F.4th 885 (9th Cir. 2021) .......................................................... 47, 48

*Nat'l Ass'n for Gun Rights, Inc. v. City of San Jose*
618 F.Supp.3d 901 (N.D. Cal. 2022) ...................................................11

*Nat'l Park Hosp. Ass'n v. Dep't. of Interior*
538 U.S. 803 (2003) ........................................................................ 19, 21

*R.J. Reynolds Tobacco Co. v. Shewry*
423 F.3d 906 (9th Cir. 2005) ...............................................................37

*Rescue Army v. Municipal Court*
332 U.S. 549 (1947) .............................................................................19

*Roberts v. U.S. Jaycees*
468 U.S. 609 (1984) .............................................................................41

*Ruhrgas AG v. Marathon Oil Co.*
526 U.S. 574 (1999) .............................................................................34

*Rumsfeld v. Forum for Academic and Inst'l Rights, Inc.*
547 U.S. 47 (2006) ...............................................................................37

*Schmeer v. County of Los Angeles*
213 Cal.App.4th 1310 (2013), as modified (Mar. 11, 2013),
review denied (May 15, 2013) .................................................... passim

*Scott v. Pasadena Unified Sch. Dist.*
306 F.3d 646 (9th Cir. 2002) ...............................................................19

*Susan B. Anthony List v. Driehaus*
 573 U.S. 149 (2014)......................................................................................33

*Texas v. United States*
 523 U.S. 296 (1998)......................................................................................21

*Thomas v. Anchorage Equal Rts. Comm'n*
 220 F.3d 1134 (9th Cir. 2000)................................................................ 21, 25

*Toilet Goods Ass'n, Inc. v. Gardner*
 387 U.S. 158 (1967)......................................................................................18

*U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.*
 792 F.3d 1121 (9th Cir. 2015) .....................................................................16

*U.S. v. Stevens*
 559 U.S. 460 (2010)......................................................................................38

*United States v. Briones*
 35 F.4th 1150 (9th Cir. 2021) ................................................................ 17, 20

*United States v. Gila Valley Irrigation Dist.*
 31 F.3d 1428 (9th Cir. 1994).......................................................................25

*Vieux v. Easy Bay Reg'l Park Dist.*
 906 F.3d 1330 (9th Cir. 1990) .....................................................................19

*Wagner v. Cty. of Maricopa*
 747 F.3d 1048 (9th Cir. 2013) .....................................................................16

*Washington State Grange v. Washington State Republican Party*
 552 U.S. 442 (2008)................................................................................ 18, 43

*Wilson & Wilson v. City Council of Redwood City*
 191 Cal. App. 4th 1559 (2011) ....................................................................29

*Young v. Hawaii*
 992 F.3d 765 (9th Cir. 2021)........................................................................25

**Rules and Statutes**

28 U.S.C. § 1291 ................................................................................3

28 U.S.C. § 1331 ................................................................................3

28 U.S.C. § 1367(a) ...........................................................................3

28 U.S.C. §§ 2201-2202 ...................................................................29

Fed. R. App. P. 4(a)(1)(A) ...............................................................3

Fed. R. Civ. P. 57 .............................................................................29

**Other Authorities**

Cal. Const., art. XIII C §§ 1-2............................................... 43, 45

Cal. Const., art. XIII C § 1(d) .........................................................46

Cal. Const., art. XIII C § 1(e) ................................................ 45, 46

CMO Regulations § 2-2 ....................................................................8

CMO Regulations § 3 ........................................................................9

CMO Regulations § 4 ........................................................................6

CMO Regulations § 4-3 ...................................................................42

San José Muni. Code § 10.32.200, *et seq.* ......................................5

San José Muni. Code § 10.32.205(B) ...............................................7

San José Muni Code § 10.32.250......................................................32

San José Muni. Code § 10.32.210.....................................................6

San José Muni. Code § 10.32.215.......................................... 6, 7, 8, 9, 49

San José Muni. Code § 10.32.220......................................................7, 49

San José Muni. Code § 10.32.220(A)................................................7

San José Muni. Code § 10.32.220(A)(5) ................................................. 21

San José Muni. Code § 10.32.220(B) ..................................... 7, 21, 40, 42

San José Muni. Code § 10.32.220(B)-(C) ............................... 7, 21, 40, 42

San José Muni. Code § 10.32.230 .............................................................. 9

San José Muni. Code § 10.32.235 ......................................................... 7, 42

San José Muni. Code § 10.32.235(A)(2) ................................................... 9

San José Muni. Code § 10.32.240 .............................................................. 9

San José Muni. Code § 10.32.245 ........................................................... 10

San José Muni. Code § 10.32.255 .............................................................. 6

## **INTRODUCTION**

This appeal concerns two claims brought by five plaintiffs-appellants led by the Howard Jarvis Taxpayers Association (collectively, "HJTA") against the City of San José and certain public officials (collectively, the "City"). The District Court properly dismissed these claims, and HJTA's opening brief provides no legitimate grounds for reversal. The dismissals should be affirmed.

The first claim is HJTA's facial challenge under the First Amendment to a $25 Fee requirement set forth in a San José Ordinance. At the time of the decision below (and still today), the Fee requirement was both far from fully implemented and far from being enforced. Among other things, the Ordinance requires the Fee to be paid to a City-designated Nonprofit, which the City has yet to designate. As a result, there is no entity to which the Fee could be paid, and it is impossible for HJTA to plausibly allege that an unenforced requirement to pay a $25 Fee to this yet-to-be-determined Nonprofit to pay for yet-to-be-determined services violates HJTA's First Amendment rights against compelled speech and association. Given this, the District Court had little difficulty ruling the claim failed for lack of prudential ripeness, and dismissing it with leave for HJTA to amend the claim when the Fee is fully implemented and ripe for review. But instead of doing that, HJTA rushed to file this premature appeal. The District Court was correct in ruling the claim was not ripe, and its dismissal on this basis should be affirmed.

1

The second claim is HJTA's state law claim that the $25 Fee is a "special tax" under article XIII C of the California Constitution, and thus is unlawful for failure to comply with that article's voter-approval requirements. This claim, too, was correctly dismissed by the District Court for multiple reasons under Rule 12(b)(6). At the outset, the District Court held the claim failed under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) because it contains few factual allegations and consists "largely [of] legal conclusions." The District Court gave HJTA leave to amend this claim to correct those deficiencies, but HJTA simply refiled the same claim, leading to a dismissal with prejudice.

Additionally, the claim fails as a matter of law because it does not meet article XIII C's definition of a "tax," which all parties agree is a threshold requirement, and that HJTA cannot meet that requirement if this Court follows the only on-point appellate authority on the issue, *Schmeer v. County of Los Angeles*, 213 Cal.App.4th 1310, 1327-29 (2013), as modified (Mar. 11, 2013), review denied (May 15, 2013) ("*Schmeer*") (holding a fee is not a "tax" under article XIII C if is not "payable to, or for the benefit of, a local government"). Because *Schmeer* is fatal to the claim, HJTA argues that this unanimous Court of Appeal decision was wrongly decided. But at no point does HJTA provide any contrary authority or other evidence (much less the requisite "convincing evidence") that the California Supreme Court would not follow *Schmeer*. This Court should follow *Schmeer* and affirm the dismissal.

## JURISDICTIONAL STATEMENT

The United States District Court for the Northern District of California ("District Court") had subject matter jurisdiction over appellants HJTA's First Amendment claims under 28 U.S.C. § 1331, and supplemental jurisdiction over HJTA's state law claims under 28 U.S.C. § 1367(a) because they form part of the same case or controversy as the First Amendment claims. The District Court had personal jurisdiction over appellee City of San José because the City is located in, and was served with a copy of the Complaint and Summons in, the Northern District of California.

This Court has jurisdiction over this appeal under 28 U.S.C. § 1291 because the appeal is taken from a final decision of the District Court dismissing all appellants HJTA's claims in their entirety. 1-ER-003-4.[1] This Court has personal jurisdiction over appellee City of San José for the same reasons that the District Court has personal jurisdiction over the City.

The orders appealed from (1-ER-003-4; 1-ER-005-27) were entered on July 13, 2023, and July 28, 2023, respectively. HJTA's notice of appeal was filed on August 11, 2023, and was therefore timely under Fed. R. App. P. 4(a)(1)(A).

This appeal is from a final order that disposes of all of appellants' claims.

---

[1] "ER" refers to the Excerpts of Record filed by appellant. Dkt. No. 19-1. The ER page numbers cited herein are to the internal page numbers at the bottom of each page.

## <u>LEGAL AUTHORITY</u>

The text of all pertinent constitutional provisions, ordinances, and regulations appear in the Addendum to this brief.

## <u>ISSUES PRESENTED</u>

1.      Whether the District Court, faced with appellants' First Amendment challenge to an ordinance imposing a future requirement that gunowners pay a $25 Fee to a yet-to-be-designated nonprofit organization to fund certain services for gunowners and their families, erred in dismissing that claim with leave to amend for lack of prudential ripeness because important aspects of the Fee requirement relevant to adjudicating the claim have not been established?

2.      Whether the District Court, faced with appellants' challenge to the same future $25 Fee requirement on the basis that it violates the voter-approval requirements for new "taxes" under article XIII C to the California Constitution, erred in dismissing that claim because the Fee is not "payable to, or for the benefit of, a local government," and therefore is not a "tax" to which article XIII C applies under the only on-point appellate authority, *Schmeer v. County of Los Angeles*, 213 Cal.App.4th 1310, 1327-29 (2013), *review denied* (May 15, 2013)?

/ / /

/ / /

/ / /

4

## STATEMENT OF THE CASE

**A. The Ordinance**

In June 2021, San José's mayor and City Council directed the drafting of an ordinance to reduce gun harm in San José. 2-ER-124 (SAC ¶ 26).[2] In February 2022, after exchanging numerous public memorandums on the topic, the City Council voted on and enacted the San José Gun Harm Reduction Ordinance, San José Muni. Code § 10.32.200, *et seq*. ("Ordinance"). 2-ER-127 (SAC ¶ 38). The Ordinance seeks to reduce gun harm and is informed by public health research and data, such as findings that more than a third of gun injuries are from accidental shootings, and that persons have a significantly higher risk of gun-induced suicide and homicide if they live in a household with a gun. ADD-3 (§ 10.32.200).[3]

This litigation initially concerned two requirements that the Ordinance imposes on non-exempt[4] gun owners residing in San José: (1) maintaining liability

---

[2] Because this appeal is from an order granting a motion to dismiss, this section cites largely to operative Second Amended Complaint ("SAC") and to the Ordinance that is the subject of the SAC.

[3] "ADD-" refers to the Addendum accompanying this brief. "§" refers to a section of the Ordinance, unless otherwise indicated.

[4] Exempted from the Ordinance are peace officers, state concealed weapon license holders, and those for whom complying with the Ordinance would be a "financial hardship." ADD-5-6 (§§ 10.32.210, 10.32.215 10.32.255). Regulations promulgated by the City Manager's Office in October 2022 ("CMO Regulations") flesh out these exemptions, including by defining the "financial hardship" exemption

insurance covering accidental shootings involving their firearm (the "Insurance requirement"), and (2) paying an annual fee to a City-designated nonprofit organization to fund voluntary services for gun owners and those living in a house with a gun (the "Fee requirement"). ADD-5-6 (§§ 10.32.210, 10.32.215, 10.32.220).

### 1.   The Insurance Requirement

The Insurance requirement obliges non-exempt San José residents who own or possess a firearm to maintain "a homeowner's, renter's or gun liability insurance Policy … covering losses or damages resulting from any accidental use of the Firearm," such as death, injury, or property damage. ADD-5 (§ 10.32.210); 2-ER-125, 129 (SAC ¶¶ 30, 53). This requirement went into effect on January 1, 2023. 2-ER-127 (SAC ¶ 40). The Insurance requirement was challenged in the proceedings below by the National Association for Gun Rights, Inc., and Mark Sikes (collectively, "NAGR"), whose appeal before this Court was dismissed on December 27, 2023. Dkt. No. 20. As a result, the Insurance requirement is no longer at issue in this appeal. *Accord* Op. Br. 12 & note 2 (stating the Insurance requirement "is no longer challenged herein").

/ / /

---

as applying when a gun owner's "household income is at or below the Extremely Low Income threshold for Santa Clara County" (i.e., 30% of Area Median Income based on household size). ADD-10 (CMO Regulations § 4); 2-ER-127 (SAC ¶ 39).

### 2. <u>The Fee Requirement</u>

The Fee requirement obliges non-exempt San José gun owners to pay an Annual Gun Harm Reduction Fee ("Fee") to a Designated Nonprofit Organization ("Nonprofit") selected by the City Manager. ADD-5-7 (§§ 10.32.215, 10.32.235). The Ordinance requires that the Fee be paid directly to the Nonprofit and used by it to provide voluntary programming and services to gun owners, as well as "members of their household" and "those with whom they have a close familiar or intimate relationship." ADD-4-6 (§§ 10.32.205(B), 10.32.215, 10.32.220). The Ordinance instructs the Nonprofit to spend the funds generated from the Fee "exclusively for programs and initiatives designed to (a) reduce the risk or likelihood of harm from the use of firearms in the City of San José, and (b) mitigate the risk of physical harm or financial, civil, or criminal liability that a San José firearm owner or her family will incur through her possession of firearms." ADD-6 (§ 10.32.220(C)). Such programs can include those related to suicide prevention, reduction of gender-based violence, addiction intervention and substance abuse treatment, mental health services, and firearms safety education and training. ADD-5-6 (§ 10.32.220(A)). Proceeds generated by the Fee may not be "used for litigation, political advocacy, or lobbying activities," nor may the City "specifically direct how the monies from the Gun Harm Reduction Fee are expended." ADD-6 (§ 10.32.220(B)-(C)).

/ / /

7

The Ordinance does not set the Fee amount but leaves that for later decision by the City Council. ADD-5 (§ 10.32.215). In June 2022, the City Council set a placeholder Fee amount of $25 per gun-owning household with the express caveat that the Fee would not yet be enforced. 2-ER-125 (SAC ¶ 31); 1-SER-035 (Aug. 2022 Status Report at 2); *see also* ADD-10 (CMO Regulations § 2-2) (similarly providing that "a payment date will be established in an amended version of these regulations to be issued in the future," and that payment of the Fee is "not required … until a payment date is set through the amended regulations"). This action did not permanently set the Fee or permit enforcement of the Fee requirement, neither of which can occur until the City Manager's Office ("CMO") completes numerous additional implementing steps, including designating and contracting with a Nonprofit, reappearing before the City Council to request that it vote on and approve the CMO's authority to begin requiring payment of the Fee, and promulgating amended regulations that set a payment date. 1-SER-035-36 (Aug. 2022 Status Report at 2-3) (noting the City Council can also change the amount of the Fee if and when the necessary vote occurs); ADD-10 (CMO Regulations § 2-2).

At one time, these implementing steps were expected to occur by December 2022, but they have since been delayed because the CMO did not receive any acceptable responses from a qualified entity interested in serving as the Nonprofit.

2-ER-193 (ECF No. 85).[5] Contrary to HJTA's assertions, *see, e.g.*, Op. Br. 14, 27, the City never has and is not currently enforcing the Fee requirement because, among many other reasons, there is no designated Nonprofit to which the Fee could be paid.

### 3.    Compliance and Enforcement

Much in the same way car owners must document their compliance with liability insurance and annual Fee requirements, the Ordinance requires non-exempt gun owners to complete an "attestation form" providing information about their gun liability insurance and to keep that form and "proof of payment of the [Fee]" "with the[ir] Firearms where they are being stored or transported." ADD-6-7 (§ 10.32.230). Gun owners must also produce the form and proof of payment of the Fee "when lawfully requested to do so by a peace officer." *Id.* In October 2022, the City published the referenced "attestation form" as part of the CMO Regulations. *See* ADD-10 (CMO Regulations § 3); 2-ER-190 (SAC Ex. H) (attestation form).

Violations of the Ordinance are punishable by an administrative citation and fine established by the City Council. ADD-7-8 (§ 10.32.240). Although the

---

[5] The Ordinance also authorizes the City Manager to promulgate regulations concerning the "[d]esignation of the [Nonprofit], any processes and procedures related to the payment of the [F]ee, and any additional guidelines or auditing of the use of the monies from the [F]ee," and also to set the date when payment of the Fee is due each year. ADD-5-7 (§§ 10.32.215, 10.32.235(A)(2)). The CMO Regulations issued in October 2022 do not contain any of these regulations. *See* ADD-9-11; 2-ER-187-189 (SAC Ex. H).

Ordinance permits the impoundment of any non-compliant person's firearm to the extent allowed by law, ADD-8 (§ 10.32.245), the City has admitted in its briefing below (and now on appeal before this Court) that that provision is inoperable because "there is currently no lawful basis to impound firearms under state or federal law." 1-ER-007 (District Court order), citing 2-ER-095 (City's MTD SAC at 6). HJTA also alleges this same lack of authority to impound. 2-ER-129 (SAC ¶ 51) ("At present, the City has no authority to seize a person's gun for violating the Ordinance").

### B.    Procedural History

#### 1.    <u>The NAGR Plaintiffs</u>

The original plaintiffs in the underlying case, NAGR, filed their complaint on January 25, 2022, the same day the City passed the first reading of the Ordinance. *See* 2-SER-479. NAGR then filed a First Amended Complaint ("FAC") challenging the Ordinance's Fee and Insurance requirements, and moved for a preliminary injunction against the enforcement of both requirements. 1-SER-216, 2-SER-252. Shortly thereafter, the City moved to dismiss NAGR's FAC. 1-SER-182. In August 2022, after briefing and oral argument, the Court denied NAGR's motion for preliminary injunction for lack of ripeness and for failure to show a likelihood of success on the merits. *Nat'l Ass'n for Gun Rights, Inc. v. City of San Jose*, 618

F.Supp.3d 901 (N.D. Cal. 2022); 1-SER-039 ("MPI Order").[6] In September 2022, the District Court also largely granted the City's motion to dismiss the FAC for lack of ripeness and failure to state a claim, dismissing most claims with leave to amend. 1-SER-006-29 ("First MTD Order"). The District Court then consolidated the NAGR and HJTA actions for all purposes, 2-SER-030, and the NAGR and HJTA Plaintiffs filed a consolidated Second Amended Complaint ("SAC"), containing separate claims alleged by each Plaintiff group, as summarized below.

## 2.    **The HJTA Plaintiffs**

Plaintiffs-Appellants Howard Jarvis Taxpayers Association, Silicon Valley Taxpayers Association, Silicon Valley Public Accountability Foundation, Jim Barry, and George Arrington (collectively, "HJTA") are three nonprofit corporations and two individuals that respectively seek to reduce taxes and monitor Santa Clara County public officials. 2-ER-122-123 (SAC ¶¶ 16-20). In March 2022, they filed their original Complaint in Santa Clara County Superior Court seeking to invalidate only the Fee requirement and a related compliance requirement under various federal and state constitutional theories. 1-SER-116-121 (HJTA Compl. ¶¶ 9-37). The City removed the HJTA Complaint to the Northern District of California based on the First and Second Amendment claims. 1-SER-071-75. Shortly thereafter, the Court

---

[6] "SER" refers to the Supplement Excerpts of Record that appellees-defendants are filing with this Answering Brief.

granted the City's motion to relate HJTA's case with NAGR's case. 1-SER-069-70. In April 2022, the City moved to dismiss the HJTA Complaint under Rule 12(b)(1) and (b)(6) grounds. 1-SER-010 (First MTD Order at 5). In September 2022, as previously noted, the District Court consolidated both cases for all purposes. 1-SER-030.

The District Court then, in the same written order that it largely dismissed NAGR's FAC, granted the City's motion to dismiss the HJTA Complaint for lack of prudential ripeness and failure to state a claim. 1-SER-023-29 (First MTD Order at 18-24). Pertinent to this appeal, the District Court gave HJTA leave to amend their First Amendment and state tax claims challenging the Fee. 1-SER-029 (First MTD Order at 24).

### 3. **The Claims for Relief in the SAC**

On February 2, 2023, NAGR and HJTA filed their "Consolidated Second Amended Complaint for Injunctive Relief, Declaratory Judgment, Invalidation of §§ 10.32.215 and 10.32.230(B) of Chapter 10.32 of the Title 10 of the San Jose Municipal Code, and Nominal Damages." 2-ER-119 ("SAC"). All claims are facial challenges. 2-ER-135-141 (SAC ¶¶ 84-127). While the plaintiffs challenged both the Ordinance's Fee requirement and Insurance requirement, only the second and sixth claims challenging the Fee requirement are at issue in this appeal. *See generally* Op. Br. 2 (table of contents); *id.*, at 11 (statement of issues 1-2); *see also* 1-ER-009

(containing a chart listing each claim, corresponding to each plaintiff group).

### 4. The Court's Order Dismissing the SAC

On July 13, 2023, the District Court dismissed without leave to amend all the claims in the SAC for failure to state to a claim, except that it dismissed with leave to amend the facial challenges to the Fee requirement under the First Amendment claim (Claim 2), and the related declaratory relief and California constitution claims (Claims 3-4). 1-ER-005 ("MTD SAC Order"). The District Court dismissed those claims for lack of prudential ripeness and granted leave to amend the claims "once the City designates the Nonprofit," ordering that a further amended complaint was not due until 14 days after "final implementation of the Fee Provision." 1-ER-020, 027 (*id.* at 16:17-23, 23:1-2). The Court noted that the "lengthy time for amendment is granted so that Plaintiffs' claims may become ripe upon the City's enactment of further implementing regulations as contemplated by the Ordinance's express terms." 1-ER-027 (*id.,* at 23). HJTA opted not to amend, filing this appeal instead.

### 5. Subsequent District Court Proceedings

NAGR and HJTA filed a Notice of Intent Not to Amend Complaint on July 27, 2023, two weeks after the dismissal order. 2-ER-041 (ECF No. 108). The following day, the District Court issued an Order dismissing the case in its entirety. 1-ER-003. The NAGR and HJTA then filed various notices of appeal in August 2023. 2-ER-31-39. On December 20, 2023, the parties filed in this Court a Stipulated

Motion to Voluntarily Dismiss Appeal as to the NAGR appellants, which was granted. Dkt. Nos. 16, 20. As a result, all that remains before this Court is the appeal by HJTA concerning the District Court's order dismissing their First Amendment claims with leave to amend, and dismissing their state law tax claim with prejudice.

## SUMMARY OF THE ARGUMENT

HJTA's two claims on appeal are facial challenges to the Ordinance's Fee requirement. Both were properly dismissed by the District Court.

*First*, HJTA's First Amendment claim based on compelled speech and association was properly dismissed *with leave to amend* for lack of prudential ripeness. This dismissal is fully consistent with precedent that federal courts should avoid premature adjudication of facial challenges to laws that are not yet fully implemented, where further development of the factual record would aid the Court's analysis. That is undoubtedly the case here, as HJTA's First Amendment challenge to the Fee requirement is impossible to evaluate on the current factual record. Indeed, HJTA's claim in the SAC consists of only nine lines of allegations, and fails to identify the Nonprofit or specify any expressive speech or activity by the Nonprofit with which HJTA disagrees. The fact that HJTA rushed to file this appeal instead of waiting to amend its claim once these critical facts were known does nothing to alter the correctness of the decision below. The dismissal should be affirmed.

/ / /

14

**Second**, the District Court also properly dismissed HJTA's state law "tax" claim under article XIII C of the California Constitution for at least three reasons, including for failure to plead sufficiently *factual* allegations under *Iqbal* and *Twombly*. *See* 1-SER-027 (First MTD Order at 22) (holding claim lack sufficient facts and is just "largely legal conclusions couched in the language of article XIII C"); 1-ER-023-025 (MTD SAC Order at 19-21) (same). The claim also fails because the directly-on-point appellate authority makes clear that the Fee does not meet article XIII C's definition of a "tax," which is a threshold requirement. *See Schmeer v. County of Los Angeles*, 213 Cal.App.4th 1310, 1327-29 (2013*), as modified* (Mar. 11, 2013), *review denied* (May 15, 2013) (holding a fee is not a "tax" under article XIII C if it is not "payable to, or for the benefit of, a local government"). HJTA urges this Court not to follow *Schmeer* even though the decision was unanimous, the California Supreme Court denied review, and there is no contrary authority. But HJTA provides no evidence (much less the requisite "convincing evidence") that the California Supreme Court would decide the matter differently from *Schmeer*. Additionally, as an alternative grounds for affirmance, the claim fails because the Fee is not paid into a "general fund," and thus cannot be a "special tax" within the meaning of article XIII C.

/ / /

/ / /

## STANDARD OF REVIEW

Dismissal of a claim for lack of subject matter jurisdiction under Rule 12(b)(1) is reviewed *de novo*. *See Doğan v. Barak*, 932 F.3d 888, 892 (9th Cir. 2019) (citing *Mills v. United States*, 742 F.3d 400, 404 (9th Cir. 2014)). "Where the district court relied on findings of fact to draw its conclusions about subject-matter jurisdiction, we review those factual findings for clear error." *U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121, 1126-27 (9th Cir. 2015). "Evidentiary rulings, such as the district court's decision to consider extrinsic evidence, are reviewed for an abuse of discretion" and will be "reverse[d] only if the exercise of discretion was 'both erroneous and prejudicial.'" *Doğan*, 932 F.3d at 892 (quoting *Wagner v. Cty. of Maricopa*, 747 F.3d 1048, 1052 (9th Cir. 2013)).

A dismissal for failure to state a claim upon which relief can be granted under Rule 12(b)(6) is also reviewed *de novo*. *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 982 (9th Cir. 2017). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "We must uphold a district court's decision to dismiss *either* if a cognizable legal theory is absent *or* if the facts alleged fail to suffice under a cognizable claim." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 982 (emphasis in original).

This Court generally "review[s] only issues which are argued specifically and distinctly in a party's opening brief." *United States v. Briones*, 35 F.4th 1150, 1158 (9th Cir. 2021). The Court "will not manufacture arguments for an appellant," and a party's "bare assertion does not preserve a claim." *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994). An appellant's failure to challenge the dismissal of any claim on appeal results in that claim being "forfeited." *Jones v. Allison*, 9 F.4th 1136, 1139 n.6 (9th Cir. 2021).

## ARGUMENT

### I.     HJTA'S CLAIMS ARE NOT SUFFICIENT FACIAL CHALLENGES.

All of HJTA's claims are facial challenges, which are subject to unique considerations. Op. Br. 18; 1-ER-019 (MTD SAC Order at 15:25-27). For the facial challenge on First Amendment grounds, HJTA must show that "a substantial number of [the law's] applications are unconstitutional, judged in relation to the [law]'s plainly legitimate sweep." *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2387 (2021). For its other facial challenge, which is based on tax-related provisions of the California Constitution, HJTA must meet an even more demanding standard of "establish[ing] no set of circumstances exists under which the law would be valid or show that the law lacks a plainly legitimate sweep." *Id*.

Because facial challenges "often rest on speculation," *Jackson v. City and County of San Francisco*, 746 F.3d 953, 962 (9th Cir. 2014) ("*Jackson*"), they are

17

"disfavored" for "several reasons." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450, 455 (2008). Among other reasons, facial challenges "threaten to short circuit the democratic process," "run contrary to the fundamental principle of judicial restraint," and "raise the risk of premature interpretations of statutes on the basis of factually barebones records." *Id*., at 450-51. As set forth below, HJTA cannot meet the requisite showing to support its facial challenges, making affirmance appropriate.

## II.     THE FIRST AMENDMENT CLAIM IS UNRIPE.

Given the foregoing concerns about facial challenges, it is particularly important that a facial challenge be ripe for review, including under the doctrine of prudential ripeness.

Ripeness looks primarily at two considerations: "the hardship to the parties of withholding court consideration" and "the fitness of the issues for judicial decision." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967). The "basic rationale" of ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements," *id.,* at 148, and to ensure that challenges to laws are "test[ed] … in a concrete situation." *Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 165 (1967). Pre-enforcement challenges are not ripe if it is likely that the law will change before it goes into effect. *See, e.g.*, *Cramer v. Brown*, 2012 WL 13059699, at *3 (C.D. Cal. Sept. 12, 2012) (finding pre-

enforcement claim justiciable, in part, because there was "no reason to think the law will change"). Another common reason that issues "may not be ripe for review [is] if further factual development would significantly advance [the court's] ability to deal with the legal issues presented." *Nat'l Park Hosp. Ass'n v. Dep't. of Interior*, 538 U.S. 803, 812 (2003); *see also Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122-23 (9th Cir. 2010) (case not ripe if it "involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all"); *Vieux v. Easy Bay Reg'l Park Dist.*, 906 F.3d 1330, 1344 (9th Cir. 1990) (federal courts cannot issue advisory opinions based on a "hypothetical state of facts").

"The prudential considerations of ripeness are amplified when constitutional considerations are concerned." *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 662 (9th Cir. 2002). Indeed, "[t]he Supreme Court has neatly instructed that the jurisdiction of federal courts to hear constitutional challenges should be exercised only when the underlying constitutional issues [are tendered] in clean-cut and concrete form." *Id.* (quoting *Rescue Army v. Municipal Court*, 332 U.S. 549, 584 (1947)). The District Court properly dismissed HJTA's facial challenge.

A. **The District Court Correctly Dismissed with Leave to Amend HJTA's First Amendment Claim for Lack of Prudential Ripeness.**

The District Court dismissed HJTA's facial challenge to the Fee requirement under the First Amendment's compelled speech and association doctrines, finding

that the challenge was "unripe because the Court had no information as to what activities—and more critically what First Amendment speech or expression, if any—the proceeds from the Fee would fund." 1-ER-019 (MTD SAC Order at 15:16-21) (finding that, without the benefit of such facts, the court could not "determine if the Fee would fund *any* expressive activities").[7] As the District Court noted, its dismissal of this claim as unripe followed two of its prior rulings that reached the same conclusion. *See* 1-SER-045-48 (MPI Order at 7-10); 1-SER-012-14, 23-24 (First MTD Order at 7-9, 18-19). The reasoning of the District Court's earlier rulings is instructive.

### 1. The District Court's Findings of Lack of Ripeness in its MPI Order (August 2022) and First MTD Order (September 2022) Were Sound.

Explaining that it was "unclear whether the Fee would fund any kind of speech or expressive activities, much less anti-gun sentiments," the District Court noted in its August and September 2022 Orders that one could "readily conceive" of the yet-to-be-designated Nonprofit making available "a program that may reduce gun harm without involving speech or other expressive activity, such as offering optional

---

[7] HJTA also brought a similar claim for violation of California constitutional rights of speech and association, *see* 2-ER-137-138 (SAC ¶¶ 103-106) (citing Cal. Const., art. I, §§ 2-3), but they never mention that claim in their Opening Brief. Under Ninth Circuit law, HJTA has thus forfeited that claim. *Briones*, 35 F.4th at 1158; *Allison*, 9 F.4th at 1139 n.6.

20

firearm safety training to first-time gun owners." 1-SER-047-48, (MPI Order at 9:16-10:1) (citing *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 707 (1986) [finding no First Amendment violation where closure sanction of a bookstore was targeting non-expressive activity]); *cf.* ADD-5-6 (§ 10.32.220(A)(5), (B)) (authorizing Nonprofit to provide firearm safety training, and expressly prohibiting the Nonprofit from spending any "portion of the monies from the [Fee]" on "litigation, political advocacy, or lobbying activities"). Per the District Court, "[a]bsent speculation on the Nonprofit's activities, Plaintiffs' First Amendment claim 'rests upon contingent future events that may not occur as anticipated.'" 1-SER-048 (MPI Order at 10:1-3) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). "Without a concrete idea of the Nonprofit's actual programs and activities, the Court is left 'entangling [itself] in abstract disagreements.'" 1-SER-048 (MPI Order at 10:26-28) (quoting *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000)).

Accordingly, in these orders, the District Court correctly found the facial challenge to the Fee requirement to be prudentially unripe and appropriate for dismissal with leave to amend, so that there could be "further factual development," which "would significantly advance [the Court's] ability to deal with the legal issues presented." 1-SER-048 (MPI Order at 10:4-7) (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 812 (2003)).

/ / /

**2.    The District's Finding in its MTD SAC Order (July 2023) that the Claim Remained Unripe, and the Decision to Dismiss it with Leave to Amend, Should be Affirmed.**

Following these rulings, in January 2022, the City filed a status report with the District Court regarding the implementation of the Fee requirement. 2-ER-193. The City reported that it had attempted to handle the Nonprofit designation process through an RFI process, but it did not receive any satisfactory responses, even after republishing the RFI. 2-ER-195. As a result, the City had decided to issue an RFP, a process that would unavoidably delay the remaining steps to implement the Fee requirement, including the City Manager selecting and contracting with an appropriate nonprofit, and the City Council voting on whether to approve the City Manager's authority to begin requiring payment of the Fee. 2-ER-195-196; *see also* 2-ER-130 (SAC ¶ 58) (alleging "[t]he destination of the [Fee] money is to a still undetermined nonprofit").

In short, the City was at that time (and still is today) grappling with and developing ways to fully implement the Ordinance's requirements, making it premature for courts to try to evaluate whether those requirements, when fully implemented in the future, will be constitutional. While courts have rejected ripeness arguments in pre-enforcement challenges where the legislature "ha[d] no power to amend the statute before its effective date" and there was "no reason to think the law will change," *Cramer,* 2012 WL 13059699, at *3, the opposite is true here. This is

one important reason why the District Court was correct in ruling that the First Amendment challenge to the Fee requirement (which today is still not fully implemented and not being enforced) was unripe for review.

Another reason the District Court was correct is that many of the allegations in the SAC rest on self-serving speculation about how an unknown Nonprofit might spend future Fee monies in an objectionable way, and what future objectionable services the Nonprofit might one day provide. For example, HJTA alleges that the Fee requirement violates the compelled speech and association doctrines because the undetermined Nonprofit's future activities "*may* include advocating about the dangers of gun ownership, and other services with little to no connection to the payer's ownership of a gun," and that the Fee requirement is (for unspecified reasons) whole situation is somehow "an invitation to corruption and waste." 2-ER-131 (SAC ¶ 62). Elsewhere, HJTA alleges that the unknown Nonprofit may choose to ignore the Ordinance requirement that Fee monies be spent providing voluntary services to gun owners and their family and household members, and may instead choose to spend Fee monies providing services to "the general public." 2-ER-128 (SAC ¶ 49).[8]

---

[8] *See also* 1-SER-048 (MPI Order at 10:18-24) (District Court rejecting similar speculation in prior complaints and briefing that the Nonprofit will "inevitably hold the City's anti-gun biases," will be "hostile to gun ownership," and will be "inherently political," especially given Plaintiffs' failure to explain "how

HJTA also alleges that they have First Amendment rights "to not be forced by the government to support someone else's speech, particularly when you disagree with their message," and "to not be forced by the government to associate with or support … a group with which you would not voluntarily assemble," but they cannot plausibly allege that they will disagree with the unknown "message" of an unknown Nonprofit, or that the unknown Nonprofit is a group with which they would not voluntarily associate. 2-ER-136 (SAC ¶ 95); *see also* 1-SER-046 (MPI Order at 8:15-23) (collecting authority for proposition that "the First Amendment freedom of association is closely, if not inextricably, tied to speech and expression"). This speculation is the foundation of HJTA's First Amendment claim for relief, the key allegations of which are vague, span just nine lines, and are articulated at an extremely high level of generality. *See, e.g.*, 2-ER-136 (SAC ¶¶ 95-96). The culmination of all this speculation is HJTA's claim that the Fee requirement violates the First Amendment because it "forces San Jose gun owns to associate with or support [the unknown Nonprofit]," in furtherance of similarly unknown (but nevertheless objectionable) speech and activities. 2-ER-136 (SAC ¶ 96).

/ / /

---

suicide prevention, violence reduction, addiction intervention, mental health services, or firearm safety training necessarily evidence viewpoints that are 'hostile' to gun ownership or are 'inherently political'").

Faced with these speculative allegations, the District Court correctly held in July 2023 that the First Amendment challenge to the Fee requirement was still "unripe because the Court [still] had no information as to what activities—and more critically what speech or expression, if any—the proceeds from the Fee would fund." 1-ER-019 (MTD SAC Order at 15:16-18); *accord* 1-SER-024 (First MTD Order at 19:18-20) ("Without the critical facts regarding the Nonprofit's activities, the Court would be asked to speculate on the unknown activities of a faceless nonprofit to determine if such activities would involve compelled speech."). The District Court thus reaffirmed its prior findings and reasoning regarding the lack of ripeness, and again "decline[d] to prematurely adjudicate such 'abstract disagreements.'" *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000). The District Court's holding is correct and on all fours with this Court's own decisions declining to adjudicate constitutional challenges that "rest[] upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Young v. Hawaii*, 992 F.3d 765, 828 (9th Cir. 2021) (en banc); *see also United States v. Gila Valley Irrigation Dist.*, 31 F.3d 1428, 1436 (9th Cir. 1994) (declining to adjudicate challenge based on "speculation" regarding future regulatory decisions).

### B. HJTA's Contrary Arguments Lack Legal and Factual Merit.

Against the backdrop of the foregoing well-established authorities and the District Court's well-reasoned findings about the under-developed factual record,

25

HJTA complains their rights are "hanging in limbo" and argues that their claims are "ripe enough" for review. Op. Br. 21-34. Neither is true, and nothing HJTA undermines or justifies reversing the lower court's well-reasoned decision.

### 1. HJTA's Rights are Not "Hanging in Limbo" Pending Implementation of the Fee Requirement.

HJTA accuses the City of intentionally delaying implementation of the Ordinance for some unspecified litigation advantage, and appears to claim unspecified hardship attendant to that delay. These unfocused arguments fail to identify any reversible error in the lower court's decision, for all the reasons argued below.

***First***, the City's ongoing implementation efforts do not bear on the ripeness of HJTA's claim, nor have they caused HJTA any hardship. Further, HJTA concedes there is no hardship by alleging that "the City is not currently enforcing proof of payment (because there is no nonprofit to accept payment)" and that the Fee would only be "due and payable once a nonprofit has been designated." 2-ER-128 (SAC ¶ 48). Since it is undisputed that a Nonprofit has not yet been designated, that directly contradicts HJTA's assertion, made with no factual basis, that San José gun owners are somehow "accumulating debt" of $25 per year. Op. Br. 27.

There is also no factual basis for HJTA's offhand claims that the City is somehow retroactively enforcing or collecting the Fee payments. Indeed, the CMO Regulations are directly to the contrary. ADD-9-10 (CMO Regulations § 2-2) ("This

version of the City Manager Regulations for the [Ordinance] does not set a [Fee] payment date …. Individuals covered by the Gun Harm Reduction Fee are not required to pay the fee until a payment date is set through the amended regulations."). HJTA errs in arguing that the District Court simply "accept[ed]" the City's assertions it was not enforcing or retroactively applying the Fee requirement. Op. Br. 27. Rather, the District Court acknowledged the lack of any allegations, information, or evidence to the contrary. While courts accept as true all well-pleaded allegations on a motion to dismiss, those allegations must be both plausible and set forth in the operative pleading, not unsupported statements set forth in district or appellate court briefing. To the extent there is any ambiguity in the Ordinance's terms or implementation (to be clear, there is not), courts adjudicating a facial challenge "must consider the [City]'s authoritative constructions of the ordinance, including its own implementation and interpretation of it." *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 131 (1992).[9]

HJTA's overall contention that the City's "strategy … has been to avoid facing the merits of plaintiffs' claims" is unsupported and belies common sense. Op.

---

[9] HJTA's reliance on City memorandums, which served to update the Court and the public about the City's implementation efforts as they progressed, is misplaced. *See* Op. Br. 23-24 (arguing, for example, that the wholly unremarkable statement in one memorandum that the Ordinance will not be further implemented if it is deemed unlawful by a Court is somehow evidence of the City's "delay").

Br. 23. The sole issue underpinning HJTA's First Amendment claim on appeal is whether the District Court erred in dismissing the claim with leave to amend for lack of prudential ripeness. None of HJTA's scattershot arguments about the City's implementation of the Fee requirement support its position on that narrow legal question. Instead, they merely reinforce the correctness of the holding below that the factual record was and still is underdeveloped, rendering HJTA's unripe for review.

*Second*, there is no hardship to HJTA caused by the delayed adjudication of an unimplemented, unenforced Ordinance. While any hardship to the affected party in avoiding review is relevant to analyzing a facial challenge, *see Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), the District Court correctly found that HJTA failed to identify "any hardship they would suffer from the court withholding consideration [of their First Amendment claim] at this time." 1-SER-012-13 (First MTD Order at 7-8); 1-ER-019 (MTD SAC Order at 15:22-23). That finding was correct when it was made, and it remains true on appeal.

In its opening brief, HJTA repeats its failed arguments that there somehow has been harm to it attendant to the time spent implementing the Ordinance. Even if there were any basis for the notion that the City "halted implementation" until legal challenges had been "resolved" (there is not), HJTA would actually appear to *benefit* from the City's "delay," since preventing enforcement is the precise remedy HJTA seeks in this case. Op. Br. 24; 2-ER-141 (SAC Prayer A). HJTA failed to show any

hardship from delayed adjudication in the District Court, and it fails to show any before this Court.

**Third**, HJTA tries to avoid federal prudential ripeness by pivoting to its abandoned state validation action claim, which was the basis of HJTA's original complaint filed in state court. Op. Br. 15. The state procedural requirements applicable to such actions in state court are obviously not dispositive of or relevant to the claims on appeal. Moreover, validation actions are required to be ripe in any event. *See, e.g., Wilson & Wilson v. City Council of Redwood City*, 191 Cal. App. 4th 1559, 1579-81 (2011) ("To the extent that [plaintiff] appears to argue that validation actions are somehow exempt from ordinary rules of justiciability, it is incorrect. Like all other actions, validation actions must be justiciable."); *City of Santa Monica v. Stewart*, 126 Cal. App. 4th 43, 66–69 (2005) (accord).

**Fourth**, the same is true of HJTA's derivative declaratory relief claim under 28 U.S.C. §§ 2201-2202, which also fails for lack of ripeness. *See* 2-ER-137 (SAC ¶¶ 101-102) (claiming "entitle[ment] to declaratory relief based on the First Amendment with respect to the fee provision of the Ordinance"). After all, a declaratory judgment is only "appropriate when it will 'terminate the controversy' giving rise to the proceeding," and the "'controversy' must necessarily be 'of a justiciable nature, thus excluding an advisory decree upon a hypothetical state of facts.'" Fed. R. Civ. P. 57, Advisory Committee Notes (citing *Ashwander v.*

*Tennessee Valley Authority*, 297 U.S. 288, 325 (1936)). Thus, the District Court properly dismissed with leave to amend HJTA's derivative declaratory judgment claim for the same reasons that it properly dismissed the First Amendment claim.

***Lastly***, the pre-enforcement authorities HJTA relies on do nothing to support the ripeness of its claims. HJTA relies primarily on cases involving pre-enforcement challenges to restrictions on speech, which involve different concerns not present here. "Where a plaintiff has refrained from engaging in expressive activity for fear of prosecution under the challenged statute, such self-censorship is a constitutionally sufficient injury as long as it is based on an actual and well-founded fear that the challenged statute will be enforced." *Human Life of Washington Inc. v. Brumsickle*, 624 F.3d 990, 1001 (9th Cir. 2010). But HJTA does not allege its expressive activity is being threatened, or that it is injured by way of a chilling effect.

Similarly, HJTA relies on *303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2310-12 (2023) ("*303 Creative*") for the proposition that "[t]he enforcement provision in a statute or ordinance is sufficient in itself to justify a pre-enforcement facial challenge." Op. Br. 23. The plaintiff in *303 Creative* challenged an anti-discrimination statute, arguing it could "forc[e] her to create wedding websites celebrating marriages that **defied her religious beliefs** about marriage" and "show a credible threat existed that Colorado would, in fact, seek to compel speech from her **that she did not wish to produce**." *Id.*, at 580 (emphasis added). The plaintiff's

beliefs were clearly alleged, as were the precise nature of the speech to be compelled. Further, the statute at issue in *303 Creative* was finalized and fully implemented, so the plaintiff could allege and articulate how her beliefs conflicted with it, as well as identify a "credible threat" of sanctions for violating the Act based on Colorado's record of past enforcement. *Id*., at 581-82.

HJTA also cites *Libertarian Party of Los Angeles Country v. Bowe*n, 709 F.3d 867, 870 (9th Cir. 2013) ("*Libertarian Party*"), for the general proposition that "a plaintiff may make a pre-enforcement claim when there is 'an actual and well-founded fear that the challenged statute will be enforced," and cites similar language from *Babbitt v. United Farm Workers Nat'l Union*, 44 U.S. 289, 298 (1979). Op. Br. 22. This is an oversimplification of the holdings and analyses from these cases.

*Libertarian Party* is inapplicable because it concerns constitutional rather than prudential standing, and is otherwise distinguishable. "In evaluating the genuineness of a claimed threat of prosecution, courts examine … (1) whether the plaintiffs have articulated a 'concrete plan' to violate the law in question, (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and (3) the history of past prosecution or enforcement under the challenged statute." *Libertarian Party*, 709 F.3d at 870 (citing *McCormack v. Hiedeman*, 694 F.3d 1004, 1021 (9th Cir.2012)).

/ / /

31

Without knowing the identity of the Nonprofit or its activities, HJTA cannot and has not alleged a "credible threat" of a violation of its constitutional rights. HJTA has not alleged the specific activities the Nonprofit will fund, that it disagrees with those activities, that it disagrees with the identity of the Nonprofit, and the Nonprofit and any such activities are unknown. HJTA does not even allege that it disagrees with the broadly worded possible activities the Fees will be spent on in the Ordinance already. ADD-8 (§ 10.32.250). This was appropriately deemed by the District Court to be too thin a reed to engage in substantive First Amendment scrutiny.

Here, HJTA alleges no plan whatsoever to violate the Ordinance, much less a "concrete" plan. Nor is there any potential expressive activity that HJTA alleges could be chilled, giving rise to a credible threat of injury. *Id.*, at 871 (noting it is insufficient for a plaintiff to fail to specify "when, to whom, where, or under what circumstances" they intended to violate the challenged statute). The Ordinance has not been implemented yet, and there is also history of past prosecution or enforcement for HJTA to point to. *Id.*, at 872 (noting a lack of history of past prosecution or enforcement does not support plaintiffs' Article III standing).

*Babbitt* is another Article III standing case that concerns a statute that was fully implemented but not yet enforced against the plaintiff. In *Babbitt,* the plaintiff, a farmworkers' union, a union agent, farmworkers, and a union supporter, brought action challenging constitutionality of Arizona Agricultural Employment Relations

Act, which was fully implemented and being enforced. *Id*., at 298. *Babbitt* simply held that when "contesting the constitutionality of a criminal statute, it is not necessary that [the plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute that he claims deters the exercise of his constitutional rights." *Id.*, at 298 (citations omitted). *Babbitt* does not support prudential ripeness of HJTA's First Amendment claim. And as noted *supra* in any event, pre-enforcement challenges are not ripe if it is likely that the law will change before it goes into effect. *See, e.g., Cramer v. Brown*, 2012 WL 13059699, at *3 (C.D. Cal. Sept. 12, 2012).

At bottom, HJTA has the burden of alleging an intention to engage in conduct affected by a constitutional interest, which it has not done, and cannot do on this underdeveloped factual record. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (looking to whether "the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute"); *Babbitt*, at 298 (same). It is not the City's or the Court's obligation to articulate this "necessary allegation" for HJTA.

### 2. HJTA's First Amendment Claim Is Not "Ripe Enough."

#### a. *The sole issue on appeal of HJTA's First Amendment Claim is ripeness.*

In its August 2022 Order, the District Court found that the plaintiff's First Amendment challenge was unripe because the Court "lacked information about the

activities -- and more critically, the speech or expression -- the proceeds from the fee would fund." 1-SER-045 (MPI Order at 7). In its September 2022 Order, the District Court found this same reasoning applied. 1-SER-006-29. Applying the principle that "jurisdiction generally must precede merits in dispositional order," the District Court began with the City's argument the First Amendment claim was not ripe. 1-SER-012 (First MTD Order at 7) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999)). The District Court again found the claim was not ripe, found there was no hardship in withholding adjudication until there was a more developed factual record, and thus dismissed the claim on that basis with leave to amend to "cure jurisdictional defects." 1-SER-013 (*id.,* at 8). By the time of the July 2023 Order, the City Manager had still not been able to designate a Nonprofit and had not promulgated regulations related to the Nonprofit. Accordingly, the District Court followed its earlier reasoning in concluding that the Court still had no basis "to determine if the Fee would fund any expressive activities," and that the Fee requirement thus "remain[ed] unfit for judicial determination" for lack of ripeness. 1-ER-019 (MTD SAC Order at 15).

By electing to forego the Court's invitation to amend its First Amendment claim once the Fee requirement was implemented, the sole issue is HJTA's appeal concerning that claim is whether the District Court erred in dismissing that claim leave to amend for lack of ripeness in July 2023. That this is the only issue being

appealed is not disputed. *See, e.g.*, Op. Br. 28; *see also id.* 34 ("The District Court erred in ruling that plaintiffs' facial challenge is unripe. The order dismissing plaintiffs' Complaint should be reversed."). The merits are not at issue.[10]

> **b. *HJTA's argument its claim is ripe because requiring a fee be paid to any nonprofit for any purpose inherently violates the First Amendment is contrary to case law.***

By appealing prematurely, HJTA effectively went "all in" on its argument that a mandatory fee paid to *any* nonprofit to fund *any* activity inherently violates the First Amendment—an argument that District Court correctly rejected on multiple occasions. *See* 1-ER-019 (MTD SAC Order at 15); 1-SER-013 (First MTD Order at 8); 1-SER-067 (MPI Order at 29). In its opening brief, HJTA's contrary argument continues to rely entirely on speculation about what the Nonprofit's activities could end up being (even suggesting "commercial speech" at one point). Op. Br. 32. Far from undermining the District Court's dismissal of the claims as unripe, HJTA's arguments serve only to reinforce the correctness of the decision below.

/ / /

---

[10] The merits of HJTA's First Amendment claim—i.e., whether the Fee requirement passes constitutional muster in that it "serve[s] a compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms," *Knox v. SEIU*, 567 U.S. 298, 310 (2012)—was not reached by the lower court, 1-ER-020 (MTD SAC Order at 16), and is not at issue in this appeal. *See* Op. Br. 11. Accordingly, HJTA's argument and citation to various materials regarding the City's justifications for enacting the Fee requirement, *see* Op. Br. 31-33, are beyond the scope of this appeal and not properly before the Court.

35

First, HJTA argues that the $25 Fee necessarily constitutes compelled speech or association because the Nonprofit will have to do some "speaking" and engaging in "communication" to provide the voluntary services contemplated by the Ordinance. Op. Br. 33. HJTA makes similarly blanket argument with respect to compelled association, arguing "it is irrelevant how the nonprofit will actually behave" because HJTA "alleges a right against being forced by the government to associate with *anyone*." Op. Br. 29 (emphasis in original). These blanket arguments assume that all communication and association is protected by the First Amendment, which is incorrect. *See City of Dallas v. Stanglin*, 490 U.S. 19, 24 (1989) (not every group is engaged in "the sort of 'expressive association' that the First Amendment has been held to protect"); *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 707 (1986) (finding no First Amendment violation occurred where bookstore was ordered to close because of non-expressive activity). As the District Court held, it is "unclear whether the Fee would fund *any* kind of speech or expressive activities," mentioning as an example, the possibility of "a program that may reduce gun harm without involving speech or other expressive activity, such as offering optional firearm safety training to first-time gun owners." 1-SER-047 (MPI Order at 9:16-27). HJTA has no answer to that point.

Second, "[i]t is inevitable that government will adopt and pursue programs and policies within its constitutional powers but which nevertheless are contrary to

the profound beliefs and sincere convictions of some of its citizens." *Bd. of Regents of the Univ. of Wis. Sys. v. Southworth*, 529 U.S. 217, 229 (2000); *accord Keller v. State Bar of California*, 496 U.S. 1, 12-13 (1990); *R.J. Reynolds Tobacco Co. v. Shewry*, 423 F.3d 906, 917 (9th Cir. 2005). So the Fee requirement is not unconstitutional simply because HJTA and others may profoundly dislike or disagree with it.

Third, even if HJTA could plausibly allege at this early stage that the still unknown Nonprofit will inevitably engage in First Amendment speech (it cannot), its unsupported allegation that San José gun owners will be "forced … to support [the Nonprofit's] speech," 2-ER-136-137 (SAC ¶¶ 95, 105), is contrary to binding case law. *See e.g., Rumsfeld v. Forum for Academic and Inst'l Rights, Inc.*, 547 U.S. 47, 65 (2006) (rejecting compelled-speech-and-association challenge to federal law conditioning law schools' receipt of federal funds on allowing on campus military recruiters during era of "Don't Ask, Don't Tell" because law did "not sufficiently interfere with any message of the school").

In sum, the District Court correctly rejected HJTA's various unsupported speculations about the future activities of an unknown Nonprofit under yet-to-be-promulgated regulation, and correctly held that the First Amendment claim is prudentially unripe. That decision should be affirmed.

/ / /

37

> ### c.  HJTA's "ripe enough" cases do not help its argument.

HJTA's argument that its First Amendment claim is "ripe enough" relies on a handful of First Amendment cases, all of which are distinguishable on multiple grounds, the most important being that **none** of the cases concern ripeness.

For example, *Stevens* and *Comite* not only fail to address ripeness, they are not even cases about compelled speech or association; instead, they concern overbreadth challenges to *restrictions* on speech. *Compare U.S. v. Stevens,* 559 U.S. 460, 460 (2010) ("*Stevens*") (law prohibiting creation, sale, or possession of depictions of animal cruelty), *and Comite de Jornaleros de Redondo Beach v. City of Redondo Beach,* 657 F.3d 936, 941-42, 945-47 (9th Cir. 2011) (time-place-and-manner law prohibiting solicitation of motor vehicle occupants), *with* 2-ER-136 (SAC ¶ 95) (HJTA grounding its claim in the right "not be forced by the government to support someone else's speech, particularly when you disagree with their message," and of "right to not be forced by the government to associate with or support someone else's organization"), *and* Op. Br. 29 (referencing its "compelled association" claim).

Additionally, unlike here, the statutes at issue in both cases were already being enforced to the plaintiffs' detriment. *See Stevens,* 559 U.S. at 460 (plaintiff indicted under statute at issue); *Comite*, 657 F.3d at 946 (noting enforcement and application of the ordinance at issue). And even if these cases were somehow analogous to the

unripe compelled speech claims at issue here (they are not), *Comite* actually cuts against HJTA's "ripe enough" argument: "The first step in the overbreadth analysis is to construe the challenged statute; **it is impossible to determine whether a statute reaches too far without first knowing what the statute covers**." 657 F.3d at 945 (emphasis added). Unable to know what the Ordinance here covered until the Nonprofit was designated and began operations, the District Court correctly held HJTA's First Amendment challenge was unripe. *See, e.g.*, 1-SER-013 (First MTD Order at 8) (holding the uncertainty precluded "any level of First Amendment scrutiny").

HJTA also relies on *Janus*, arguing that this case having nothing to do with ripeness stands for the sweeping proposition that it is "irrelevant whether plaintiffs will agree or disagree with [the still-unknown Nonprofit's] message," and that "[i]t is enough that the nonprofit will be speaking." Op. Br. 30; *Janus v. American Federation of State, County, and Mun. Employees, Council 31* (2018) 585 U.S. 878. But HJTA ignores that the law challenged in *Janus* was fully settled and known at the time of adjudication, and also that the Court conducted a searching inquiry to ultimately hold some aspects of the challenged law were constitutional and others were not. *Id.*, 891–930.

Specifically, *Janus* concerned a challenge to an Illinois statute authorizing public-sector unions to require non-members to pay "agency fees" (i.e., a charge for

that individual's proportionate share to expenses needed to fund the union's core duties, such as being employees' exclusive collective-bargaining representative). *Id*., at 884–885. There, unlike here, the recipient of compulsory fees (the union) and the activities the fees would fund (the costs of collective bargaining, lobbying, social and recreational activities, advertising, membership meetings and conventions, and litigation), were all well-defined and fully known for the purposes of First Amendment analysis. *Id.,* at 887. While the Court held requiring individuals to endorse ideas they find objectionable is counter to First Amendment principles, the Court singled out for particularly opprobrium compelled fees towards *political speech* or that regarding issues of "profound value and concern to the public." *Janus*, 585 U.S. at 914, 892. By contrast, the Ordinance here expressly *prohibits* the yet-to-be-designated Nonprofit for using Fee monies to fund "litigation, political advocacy, or lobbying activities." ADD-5-6 (§ 10.32.220(B)-(C)). *See also Keller v. State Bar of California*, 496 U.S. 1, 3 (1990) ("*Keller*") (striking down the spending of State Bar dues on "political or ideological" activities under the First Amendment, but upholding as constitutional the spending of those dues for the purpose of "regulating the legal profession or improving the quality of legal services").

At its core, *Janus* supports the District Court's decision to dismiss HJTA's First Amendment claim on ripeness grounds. A threshold issue in *Janus* was that the plaintiff non-union members objected to the speech they alleged they were

40

compelled to support. *See, e.g.*, *Janus*, 585 U.S. at 884-85 (referencing plaintiffs' "'involuntary affirmation' of objected-to beliefs"); *see also Knox v. SEIU, Local 1000567*, U.S. 298, 310-311 (2012) ("*Knox*") (holding public-sector union can charge nonmembers for chargeable expenses but may not require them to fund union's political or ideological speech). In other words, there was a factual record of the union having used the fees at issue to fund union speech expressing "beliefs" to which the plaintiffs objected, which entirely undercuts HJTA's argument that "[i]t is irrelevant whether plaintiffs will agree or disagree with [the still-unknown Nonprofit's] message." Op. Br. 30. In sum, *Janus* is largely irrelevant to this appeal except to the extent it bears on ripeness, and on that issue the case cuts against HJTA's position. *Accord* 1-ER-019-20 (MTD SAC Order at 15-16).

Similarly misplaced is HJTA's reliance on *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984) ("*Jaycees*"). This case concerned a challenge brought by the Jaycees, a mens-only club that excluded women, to a Minnesota public accommodation law that prohibited the group's practice as a form of sex-based discrimination. The *Jaycees* court ultimately held the statute compelled the Jaycees to accept women as regular members, and that this did not violate the Jaycees male members' freedom of intimate or expressive association. *Id.,* at 619. Here, the District Court correctly found that *Jaycees* further exemplifies why HJTA's allegations are not "sufficiently concrete," contrasting them with the *Jaycees* where "the factual circumstances were

well-defined for First Amendment scrutiny." 1-ER-020 (MTD SAC Order at 16). Moreover, *Jaycees* cuts directly against HJTA's absolutist position, noting specifically that "the right to associate… is not absolute," and that burdens on associational rights "may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas." *Jaycees*, 468 U.S. at 623.

In light of this precedent, particularly *Keller* and *Knox*, any argument from HJTA that the Ordinance is per se unconstitutional is foreclosed by the Ordinance's express prohibition on Fee monies being used for political or ideological activities, namely "litigation, political advocacy, or lobbying activities." ADD-5-6 (§ 10.32.220(B)-(C)). Rather, use of the Fee monies is limited to programs and initiatives designed to "(a) reduce the risk or likelihood of harm from the use of firearms in the City of San José, and (b) mitigate the risk of physical harm or financial, civil, or criminal liability that a San José firearm owner or her family will incur through her possession of firearms," and is subject to additional guidelines and auditing by the City Manager's Office. ADD-6-7 (§§ 10.32.220(C), 10.32.235); ADD-11 (CMO Regulations § 4-3).

In sum, peppered throughout HJTA's allegations and brief are admissions that the Nonprofit in question is not known, its activities are not known, and any disagreement by HJTA with the unknown Nonprofit's "message" or "speech" are also inarticulable. HJTA's claims are based entirely on speculation about contingent

future events and "factual assumptions" that render them unripe for review. *Wash. State Grange*, 552 U.S. at 457; *see also Cal. Democratic Party v. Jones*, 530 U.S. 567, 600 (2000) (Stevens, J., dissenting) ("[A]n empirically debatable assumption … is too thin a reed to support a credible First Amendment distinction" with respect to burdens on association). The District Court's dismissal of HJTA's First Amendment claim was proper and should be affirmed.

## III. THE DISTRICT COURT CORRECTLY DISMISSED HJTA'S STATE LAW "TAX" CLAIM.

HJTA also appeals the dismissal of its claim that the Fee requirement violates a state constitutional prohibition on municipalities imposing "special taxes" without voter approval. *See* Cal. Const., art. XIII C §§ 1-2; 2-ER-139-140 (SAC ¶¶ 114-122). To achieve reversal, HJTA must prevail on four separate issues. First, it must convince this Court that the claim is adequately pleaded under *Iqbal* and *Twombly*, contrary to the District Court's holding that the claim was short on facts and "largely legal conclusions couched in the language of article XIII C." 1-SER-027 (First MTD Order at 22); *accord* 1-ER-023-25 (MTD SAC Order at 19-21).

Second, HJTA must prevail on the threshold legal issue of whether the Fee meets article XIII C's definition of a "tax." *Contra* 1-ER-023-25 (Order re MTD SAC at 19-21); 1-SER-018-020, 27 (Order re MTD FAC at 13-15, 22); 1-SER-062-65 (Order Denying MPI at 24-27). HJTA concedes that it loses this issue if this Court applies the sole appellate decision on the issue. *See* Op. Br. at 47-48 (conceding the

Fee "is not paid or remitted to the government"); *Schmeer v. County of Los Angeles*, 213 Cal.App.4th 1310, 1327-29 (2013), *as modified* (Mar. 11, 2013), *review denied* (May 15, 2013) (holding a fee is a "tax" under article XIII C only if it is "payable to, or for the benefit of, a local government"). HJTA urges this Court not to follow *Schmeer* even though its decision was unanimous, the California Supreme Court denied review, there is no contrary authority, and HJTA provides no evidence that the California Supreme Court would decide the matter differently.

The third issue, although not reached by the District Court below, provides yet another ground for affirming dismissal of this claim because the Fee is not deposited into the City's "general fund," and thus likely is not a "special tax" within the meaning of article XIII C, § 1(d). In short, HJTA's arguments on appeal should be rejected for all the reasons cited by the District Court, and more.

### A.     The tax claim is not adequately pleaded under *Iqbal* and *Twombly*.

The first time the District Court ruled on this claim, it dismissed it with leave to amend after concluding the claim "contains very limited factual allegations in support. The only fact alleged is that the City of San José imposed the Fee; the remaining allegations are largely legal conclusions couched in the language of article XIII C." 1-SER-027 (First MTD Order at 22), citing 1-SER-119-120 (HJTA Compl. ¶¶ 25-30). The District Court that this "falls short of the federal standard required by *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)," and granted HJTA leave to amend this

claim. *Id.* Despite being granted leave to amend, HJTA then re-filed the *exact same* claim, except for the addition of a sentence at end of the claim stating "The fes [sic] is therefore invalid." 1-ER-024 (MTD SAC Order at 20:1-2, 20:17, 20:22-26); 2-ER-141 (SAC ¶ 127); *compare* 2-ER-139-140 (SAC ¶¶ 114-21), *with* 1-SER-119-120 (HJTA Compl. ¶¶ 24-31). This alone is reason to affirm the dismissal of this claim.

### B.    The Fee is not a "tax" under Article XIII C.

Even if this Court concludes that HJTA's barebones charging allegations are sufficient to satisfy *Iqbal* and *Twombly*, the claim fails as matter of law. The claim alleges the Fee violates article XIII C of the California Constitution, which is the result of voter initiatives adopted in 1996 and 2010 requiring that any new local "taxes" be approved by voters. *See* 1996 Cal. Legis. Serv. Prop. 218, §§ 1-2 (Nov. 5, 1996) (codified at art. XIII C §§ 1(a)-(d), 2); 2010 Cal. Legis. Serv. Prop. 26, §§ 1, 3 (Nov. 2, 2010) (codified at art. XIII C § 1(e)). Under article XIII C, these voter-approval requirements apply to all "taxes imposed by any local government," which "shall be deemed to be either general taxes or special taxes." Cal. Const., art. XIII C § 2(a); *accord* 2-ER-140 (SAC ¶ 119). HJTA does not plead that the Fee is a "general tax" but claims only that it is a "special tax." *See* 2-ER-140 (SAC ¶¶ 119-121 & p. 20:4); *see also* Cal. Const., art. XIII C § 1(a), (d) (defining both terms).

/ / /

A special tax is "any **tax** imposed for specific purposes" and "which is placed into a general fund." Cal. Const., art. XIII C § 1(d) (emphasis added). The bolded word "tax" is further defined as "any levy, charge, or exaction of any kind imposed by a local government," subject to seven enumerated "except[ions]." Cal. Const., art. XIII C, § 1(e). Synthesizing these textual requirements, the Fee can be a special tax under article XIII C only if it meets five requirements: (1) it is a "tax" (2) imposed by a local government (3) for specific purposes (4) that is "placed into a general fund" and (5) does not fall into any of the seven exceptions enumerated in subsection e. *Id.* § 1(d)-(e). At minimum, the Fee does not meet two of these requirements (i.e., the first and fourth), each of which provides a separate and independent basis for affirming dismissal.

  **1.** **The Fee is not a "tax" under the only appellate authority on the issue, *Schmeer v. County of Los Angeles*, as HJTA concedes.**

  As the District Court held, the Fee is not a "tax" under *Schmeer* because it is not "payable to, or for the benefit of, a local government." 1-ER-024 (MTD SAC Order at 20:4-8) (quoting *Schmeer*, 213 Cal. App. 4th at 1328-29). As the District Court noted, and all parties agree: "On this particular question of state law, *Schmeer* is the only California appellate court opinion on point." 1-SER-063 (MPI Order at 25:5-6); *see generally* Op. Br. at 39-53 (HJTA not disputing that *Schmeer* is the only authority directly on point, but arguing that *Schmeer* should be distinguished or

limited to its facts).

As this Court has stated on many occasions, "When interpreting state law, we are bound to follow the decisions of the state's highest court, and when the state supreme court has not spoken on an issue, we must determine what result the court would reach based on state appellate court opinions, statutes and treatises." *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir. 2021); *Paulson v. City of San Diego*, 294 F.3d 1124, 1128 (9th Cir. 2002) (en banc). "[I]n the absence of convincing evidence that the highest court of the state would decide differently, a federal court is obligated to follow the decisions of the state's intermediate courts." *In re Kirkland*, 915 F.2d 1236, 1238 (9th Cir. 1990); *Mudpie*, 15 F.4th at 889 (similar). "This is especially true when the supreme court has refused to review the lower court's decision," *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 871 (9th Cir. 2021), which is precisely the case here. *See Schmeer*, 213 Cal.App.4th 1310 (2013), *review denied* (May 15, 2013).

The District Court correctly applied these binding principles when it ruled: "In the absence of contrary California authority or the California Supreme Court's interpretation of article XIII C, the Court finds persuasive the thorough analysis conducted in *Schmeer*," which "considered the historical foundations behind the voter initiative that gave rise to article XIII C," including case law "from the California Supreme Court." 1-SER-019 (First MTD Order at 14:3-7); *accord* 1-ER-

47

025 (MTD SAC Order at 21:7-9) ("the Court's previous determination that the Fee is not a tax under *Schmeer* still stands"). *Schmeer* was unanimous, the California Supreme Court denied review, there is no contrary appellate authority, and HJTA has pointed to no evidence (much less "convincing evidence," *Mudpie*, 15 F.4th at 889) that the California Supreme Court would not follow *Schmeer*'s analysis. The District Court's ruling to follow *Schmeer* was correct and should be upheld.

> **2.** ***Schmeer* is directly on point and fatal to HJTA's claim that the Fee is "tax" under article XIII C.**

In *Schmeer*, Los Angeles County enacted an ordinance that prohibited stores in unincorporated areas of the county from providing disposable plastic carryout bags to customers. 213 Cal.App.4th at 1314. The ordinance permitted stores to provide recyclable paper carryout bags but required them to charge customers ten cents per bag. *Id.* Critically, the ordinance provided that the proceeds of the paper bag sales were to be retained by the stores to be used for certain purposes, including to cover the costs of the paper bags. Id. The *Schmeer* plaintiffs sued on the same theory advanced by HJTA here: that the bag charge is a "tax" subject to article XIII C's voter-approval requirements. In a unanimous decision, the Court of Appeal disagreed. After conducting an exhaustive review of the history of the voter initiatives that led to article XIII C and the prior case law that those initiatives effectively constitutionalized, the Court of Appeal held that a "tax" under article XIII C is limited to fees that are "payable to, or for the benefit of, a local

48

government." 1-ER-024 (quoting *Schmeer*, 213 Cal. App. 4th at 1328-29). It thus concluded that 10-cent bag charge at issue in the case was not a "tax" under article XIII C because the charge "is payable to and retained by the retailer store and is not remitted to the county," and thus "raises no revenue for the county." *Id.* at 1314, 1326, 1329.

*Schmeer* is fatal to HJTA's claim. Under the Ordinance, no Fee monies are ever received by the City; rather, the Ordinance requires that gun owners "shall pay" the Fee directly "to the Designated Nonprofit Organization," which is required to then use those monies to make available voluntary programming and services, such as gun safety training, to gun owners and members of their households. Ordinance §§ 10.32.215, 10.32.220. Consistent with the text of the Ordinance, HJTA *alleges* the Ordinance "requires San Jose gun owners to pay [the Fee] to a 'Designated Nonprofit Organization,'" 2-ER-125 (SAC ¶ 31), an allegation that "on its face would seem to place the Fee beyond the scope of article XIII C per *Schmeer*." 1-SER-027 (First MTD Order at 22:17-21) (citing SER-117 [HJTA Compl. ¶ 11], which is identical in relevant part to SAC ¶ 31). And consistent with its allegations, HJTA *concedes* in its opening brief not only that "the annual gun fee is not paid or remitted to the government," but also that the Fee here "has [this] in common with [the fee at issue in] *Schmeer*." Op. Br. at 47-48. If this Court follows *Schmeer*, as it should, that concession is fatal to HJTA's claim.

Recognizing this, HJTA urges this Court to reject *Schmeer*, but it provides no "convincing evidence" the California Supreme Court would echo such a rejection. *In re Kirkland*, 915 F.2d at 1238. Instead, HJTA criticizes the *Schmeer* as having "cited no precedent for its interpretation of article XIII C," Op. Br. at 51, which is an empty criticism given that there was no prior precedent interpreting this aspect of the 2010 initiative at issue.[11] HJTA also makes a bare assertion that the District Court is the only court to have followed *Schmeer* since it was decided, but it fails to cite any cases that have *declined* to follow *Schmeer*. Op. Br. at 51. That is because they are none. *Cf. Howard Jarvis Taxpayers Ass'n v. Bay Area Toll Auth.*, 51 Cal.App.5th 435, 446 n.6, 452, 453, 458, 461 (2020) (repeatedly citing *Schmeer* with approval in recent case in which HJTA was the lead plaintiff); *Cnty. Inmate Tel. Serv. Cases*, 48 Cal.App.5th 354, 361-62 (2020) (crediting *Schmeer*'s analysis of the purpose of Proposition 26).

/ / /

---

[11] HJTA criticizes *Schmeer* for ignoring that a prior case interpreting article XIII C noted that the 2010 proposition intended a "broadened definition of 'tax,'" Op. Br. at 51 (citing *Griffith v. City of Santa Cruz*, 207 Cal.App.4th 982, 989 (2012), which held that a property inspection fee was not a tax because of a specific exception for such fees under article XIII C, § 1(e)(3)). But that argument falls flat because *Schmeer* made the very same point. *See Schmeer,* 213 Cal.App.4th at 1322 (noting that the 2010 proposition "expanded the definition of taxes so as to include fees and charges, with specified exceptions," and was an "effort to close perceived loopholes").

HJTA also attacks *Schmeer* for being wrongly decided, but without citing any legal authority supporting their position. *See* Op. Br. 51. HJTA's vague insinuations that the Court of Appeals' unanimous decision in *Schmeer* was a rogue exercise of judicial power is belied by even a cursory review of the panel's published opinion, which contains a thorough legal analysis of Proposition 26's historical context and plain language. *See* 213 Cal.App.4th at 1317-26. Similarly, HJTA's attempt to distinguish *Schmeer* as limited to government-mandated fees paid by consumers as part of a transaction with a retailer or other entity with no connection to the government is, like many of its other arguments, unsupported by any on-point case law. *See* Op. Br. 51. The attempted distinction is also unpersuasive in light of *Schmeer*'s straight-forward reasoning, which is grounded simply in the meaning of the word "tax" under article XIII C. *See* 213 Cal.App.4th at 1326.

In sum, *Schmeer* is thorough, persuasive, and the only on-point appellate authority on the issue, and HJTA provides no "convincing evidence" that the California Supreme Court would decline to follow *Schmeer*. *In re Kirkland*, 915 F.2d at 1238. This Court is therefore required to follow *Schmeer*, which is fatal to HJTA's claim.

### 3. The Fee also is not a "special tax" because it is "not placed into a general fund."

To be a "special tax" as HJTA alleges, the Fee must be both imposed for specific purposes and "placed into a general fund." Cal. Const., art. XIII C § 1(d).

Underscoring the District Court's conclusion that the claim is inadequately pled, the SAC contains no alleged *facts* as to why the Fee meets this requirement. *See* 2-ER-139-140 (SAC ¶¶ 114-21). The closest the SAC comes is alleging the Fee is a "special tax" under article XIII C, 2-ER-140 (SAC ¶¶ 119-121), which is merely a "legal conclusion[] couched in the language of article XIII C." 1-SER-027 (First MTD Order at 22); *accord* 1-ER-023-25 (MTD SAC Order at 19-21). Further, *Schmeer'*s reasoning strongly indicates that the "general fund" would have to be a fund owned and controlled by the government, which the Ordinance makes clear would not occur here, as the Nonprofit is required to retain and use the funds itself. This too is fatal to HJTA's claim.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the judgment of the district court should be affirmed.

Dated: March 20, 2024     **COTCHETT, PITRE & McCARTHY LLP**

By:   */s/ Tamarah P. Prevost*
      JOSEPH W. COTCHETT
      TAMARAH P. PREVOST
      ANDREW F. KIRTLEY

*Attorneys for Defendants-Appellees*
*City of San José, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-16091

I am the attorney or self-represented party.

**This brief contains** | 12,626 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties.
[ ] a party or parties are filing a single brief in response to multiple briefs.
[ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated [        ].

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Tamarah P. Prevost | **Date** | March 20, 2024
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** | *Rev. 12/01/22*

# ADDENDUM

Pertinent Constitutional Provisions, Ordinances, and Regulations

# TABLE OF CONTENTS

**Page No.**

**Ordinances**

San José Gun Harm Reduction Ordinance
  San José Municipal Code § 10.32.200, *et seq.* ......................................... ADD-3


**Regulations**

San José Gun Harm Reduction Ordinance
  City Manager Regulations ........................................................................ ADD-9


**Constitutional Provisions**

U.S. Constitution
  Amendment I ............................................................................................ ADD-12

California Constitution
  Article XIII C [Voter Approval for Local Tax Levies] ........................... ADD-13

ADD-2

**City of San José Municipal Code**

Title 10—Public Peace, Morals and Welfare

Chapter 10.32—Weapons
Part 6—Reduction of Gun Harm - Liability Insurance
Requirement and Gun Harm Reduction Fee

## 10.32.200 Purpose and Findings.

A. This Part is passed and adopted in the exercise of the police power of the City, and for the protection of the welfare, peace and comfort of the residents of the City of San José. Specifically, it is the intent of this Ordinance to reduce gun harm.

B. Findings:

   1. Firearm injuries have a significant adverse public health and safety impact nationally, in the State of California, and locally; and

   2. Each year more than twenty-three thousand (23,000) United States residents die by firearm suicide, fourteen thousand (14,000) die by firearm homicide, and nearly five hundred (500) die from unintentional firearm injuries; and

   3. In California, between 2005 and 2015, nearly four thousand (4,000) children and teenagers were killed or injured with firearms, and five hundred thirty-three (533) children and teenagers committed suicide with firearms, according to data from the Center for Disease Control and Prevention; and

   4. During 2010-2014 in Santa Clara County, thirty-one percent (31%) of emergency department visits and sixteen percent (16%) of hospitalizations from firearms injuries were due to unintentional shootings; and

   5. A 2014 review in the Annals of Internal Medicine suggests that access to firearms within the home doubles the risk that family members will become a victim of homicide, and triples the risk of suicide; and

   6. A study in the New England Journal of Medicine in 2020 found that handgun ownership is associated with eight (8) times greater likelihood for firearm suicide among men, and thirty-five (35) times greater likelihood of firearm suicide among women; and

ADD-3

7. Based upon a November 2021 analysis by Dr. Ted Miller, Ph.D. and the Pacific for Institute Research and Evaluation (PIRE), on average, 206 people suffer death or serious injury from gunshots each year in the City of San José; and

8. Conservatively, San José taxpayers annually spend approximately $39.7 million, or approximately $151 per firearm-owning household, to respond to gun violence with such public services as emergency police and medical response, victim assistance, incident investigation, acute and long-term health care, and perpetrator adjudication and judicial sanctioning; and

9. Including private costs to individuals and families in the calculation, San José residents incur an annual financial burden of $442 million per year for gun deaths and injuries; and

10. Injuries from unintentional shootings, which are generally insurable, comprise more than a third of all gun-related injuries nationally; and

11. Auto insurers have used risk-adjusted premiums to reward good driving and incentivize use of airbags and other safety features, and by using a comprehensive public health approach to car safety the United States reduced per-mile auto fatalities by nearly eighty percent (80%) from 1967 to 2017; and

12. Liability insurance can reduce the number of gun incidents by encouraging safer behavior and it can also provide coverage for losses and damages related to gun incidents; and

13. Programs and services to gun owners and their households can also encourage safer behavior, and provide education and resources to those residents.

## 10.32.205 Definitions.

As used in this Part, the following terms have the following meaning:

A. "Firearm" means a device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of an explosion or other form of combustion. Firearm does not include antique firearms as defined by 18 U.S.C. Section 921(a).

B. "Designated Nonprofit Organization" means an entity that qualifies as a nonprofit corporation under the federal internal revenue code and is designated pursuant to the City Manager's authority under Section

10.32.235. No City official or employee shall sit on the board of directors of the Designated Nonprofit Organization.

## 10.32.210 Liability Insurance Required.

A. Insurance required. A person who resides in the City and owns or possesses a Firearm in the City shall obtain and continuously maintain in full force and effect a homeowner's, renter's or gun liability insurance policy from an admitted insurer or insurer as defined by the California Insurance Code, specifically covering losses or damages resulting from any accidental use of the Firearm, including but not limited to death, injury or property damage.

B. For purposes of this Section, a person shall be deemed to be the owner of a Firearm if such Firearm is lost or stolen until such loss or theft is reported to the police department or sheriff which has jurisdiction in which such Firearm owner resides.

C. Any person who owns a Firearm on the effective date of this Section shall obtain the insurance required by this Section within thirty (30) days of the effective date of this Ordinance, or by a later date certain established in the regulations promulgated by City Manager pursuant to Section 10.32.235.

## 10.32.215 Annual Gun Harm Reduction Fee.

A person who resides in the City and owns or possesses a Firearm in the City shall pay an Annual Gun Harm Reduction Fee to the Designated Nonprofit Organization each year. The date by which payment shall be made annually shall be established in the regulations promulgated by City Manager pursuant to Section 10.32.235. The annual fee will be set forth in the schedule of fees and charges established by resolution of the City Council.

## 10.32.220 Expenditure of Gun Harm Reduction Fee.

A. All monies from the Gun Harm Reduction Fee shall be expended by the Designated Nonprofit Organization on providing services to residents of the City that own or possess a Firearm in the City, to members of their household, or to those with whom they have a close familial or intimate relationship. Such expenditures may include, but are not necessarily limited to the following:

   1. Suicide prevention services or programs;

   2. Violence reduction or gender based violence services or programs;

ADD-5

3. Addiction intervention and substance abuse treatment;

4. Mental health services related to gun violence; or

5. Firearms safety education or training.

B. No portion of the monies from the Gun Harm Reduction Fee shall be used for litigation, political advocacy, or lobbying activities.

C. The Designated Nonprofit Organization shall spend every dollar generated from the Gun Harm Reduction Fee, minus administrative expenses, exclusively for programs and initiatives designed to (a) reduce the risk or likelihood of harm from the use of firearms in the City of San José, and (b) mitigate the risk of physical harm or financial, civil, or criminal liability that a San José firearm owner or her family will incur through her possession of firearms. Otherwise, the City shall not specifically direct how the monies from the Gun Harm Reduction Fee are expended.

D. The designated non-profit shall provide a biannual report to an appropriate council committee and the report may also be provided to the City Council, as directed by the council committee.

## 10.32.225 Exceptions.

The provisions of this Part shall not apply to any of the following:

A. Those persons designated as peace officers pursuant to Chapter 4.5 of Title 3 of Part 2 of the California Penal Code (§830 et seq.), including sworn peace officers, active reserve peace officers and retired peace officers.

B. Those persons who have a license to carry a concealed weapon issued pursuant to California Penal Code § 26150 or § 26155, for as long as these statutes are legally enforceable.

C. Those persons for which compliance with this Part would create a financial hardship.

## 10.32.230 Compliance.

A. Insurance requirement. Each person required to obtain and maintain insurance under Section 10.32.210 shall demonstrate compliance with the insurance requirement by completing and executing a City-designated attestation form. Each such person shall state both the name of the insurance company issuing the policy and the number of the insurance policy on the attestation form, sign the form under penalty of perjury and keep the attestation form with the

Firearms where they are being stored or transported. Each person shall complete and sign a new attestation form under penalty of perjury in the event any of the information on the form changes. Each person shall present the form when lawfully requested to do so by a peace officer who knows or has reason to believe that a person possesses a firearm.

B. Fee provisions. Each person shall affix proof of payment of the annual Gun Harm Reduction Fee to the attestation form and keep it with the Firearm or Firearms where they are being stored or transported.

## 10.32.235 Authority of the City Manager.

A. The City Manager is authorized to promulgate all regulations necessary to implement the requirements and fulfill the policies of this Part relating to the reduction of gun harm, including, but not limited, to the following subjects:

1. Processes and procedures related to the implementation of the liability insurance requirement, and forms necessary thereto.

2. Designation of the nonprofit organization that will receive the Gun Harm Reduction Fee, any processes and procedures related to the payment of the fee, and any additional guidelines or auditing of the use of the monies from the fee.

3. Designation of any third-party agency and/or organization that will aid in the implementation of the noticing of the requirements of this Part or any other administrative tasks related to the requirements of this Part.

4. The criteria by which a person can claim a financial hardship exemption from this Part pursuant to Section 10.32.225 C.

B. Regulations shall be published on the City's website.

C. Regulations promulgated by the City Manager shall have the same force and effect of law. Unless a later date is specified in a regulation, a regulation shall become effective upon date of publication.

## 10.32.240 Enforcement.

A. Any violation of this Part shall be punishable by an administrative citation in accordance with the procedures set forth in Chapter 1.15 of Title 1 of this Code relating to the issuance of administrative citations, imposing of administrative fines, right to appeal, and the right to an administrative hearing.

B.   The amounts of the fines for violations imposed pursuant to this Part shall be set forth in the schedule of fines established by resolution of the City Council.

C.   A violation of this Part is also enforceable through all other civil and administrative remedies available to the City.

**10.32.245 Impoundment.**

To the extent allowed by law, the Firearm or Firearms of a person that is not in compliance with this Part may be impounded subject to a due process hearing.

**10.32.250 Fees and Charges.**

The City Manager is hereby authorized to charge and collect any and all cost recovery fees associated with fulfilling the policies of this Part relating to the reduction of gun harm, including any associated third-party costs. All fees shall be as set forth in the schedule of fees and charges established by resolution of the City Council.

## CITY MANAGER REGULATIONS FOR THE GUN HARM REDUCTION ORDINANCE

## PART I - GENERAL PROVISIONS

### SECTION 1-1. PURPOSE AND AUTHORITY

The Gun Harm Reduction Ordinance, set forth in Title 10, Chapter 10.32, Part 6 of the San José Municipal Code ("SJMC" or "Code"), provides that individuals who own or possess firearms and reside in the City of San José ("City") must maintain liability insurance covering losses or damages resulting from any accidental use of their firearm and pay an annual gun harm reduction fee. These regulations implement the provisions of SJMC Chapter 10.32, Part 6 and are issued by the City Manager under the authorization granted pursuant to SJMC Section 10.32.235. These regulations are not intended to be exhaustive and can be amended at any time by the City Manager. These regulations shall be referred to as the "City Manager Regulations for the Gun Harm Reduction Ordinance."

### SECTION 1-2. DEFINITIONS AND CONSTRUCTION

The definitions set forth in SJMC Chapter 10.32 Part 6, and herein, shall govern the application and interpretation of these regulations. Any reference to federal, state or local statutes and ordinances includes any regulations promulgated thereunder and is deemed to include any successor or amended version of the referenced statute, ordinance or regulatory provision.

## PART II – IMPLEMENTATION TIMELINE

### SECTION 2-1. LIABILITY INSURANCE REQUIREMENT OPERATIVE DATE

Firearm owners residing in San José who are required by SJMC section 10.32.210 to obtain liability insurance shall obtain such insurance by January 1, 2023.

### SECTION 2-2. ANNUAL GUN HARM REDUCTION FEE PAYMENT DATE

SJMC section 10.32.215 provides that the date by which payment of the Gun Harm Reduction Fee shall be made annually will be set by regulations

ADD-9

promulgated by the City Manager. This version of the City Manager Regulations for the Reduction of Gun Harm Ordinance does not set a payment date; a payment date will be established in an amended version of these regulations to be issued in the future. Individuals covered by the Gun Harm Reduction Fee are not required to pay the fee until a payment date is set through the amended regulations.

## PART III – INSURANCE REQUIREMENT ATTESTATION FORM SECTION

### 3-1. INSURANCE REQUIREMENT ATTESTATION FORM ESTABLISHED

Individuals subject to the insurance requirement must demonstrate compliance with the requirement by completing and executing an Attestation Form. The form included with these regulations as Exhibit A shall be used for this purpose. The attestation form shall be kept with the subject individual's firearm(s) where they are being stored or transported.

## PART IV – EXEMPTIONS

### SECTION 4-1. PEACE OFFICER EXEMPTION

SJMC section 10.32.225 provides that those persons designated as peace officers pursuant to Chapter 4.5 of Title 3 of Part 2 of the California Penal Code (§830 et seq.), including sworn peace officers, active reserve peace officers and retired peace officers are exempted from the Gun Harm Reduction Ordinance. In any instance where they would otherwise be required to present the attestation form to demonstrate compliance with the ordinance, a person claiming the peace officer exemption must instead present a valid identification card, issued by a law enforcement agency, that indicates that the person claiming the exemption is a peace officer. If an individual claiming this exemption cannot present a valid identification card as described above, then they are not covered by the exemption and are subject to the requirements of the ordinance.

### SECTION 4-2. CONCEALED WEAPON LICENSE EXEMPTION

SJMC section 10.32.225 provides that those persons who have a license to carry a concealed weapon issued pursuant to California Penal Code § 26150 or § 26155 are exempted from the Gun Harm Reduction Ordinance. In any instance

where they would otherwise be required to present the attestation form to demonstrate compliance with the ordinance, any person claiming the concealed weapon license exemption must instead present their license to carry a concealed weapon. If an individual claiming this exemption cannot present their license, then they are not covered by the exemption and are subject to the requirements of the ordinance.

## SECTION 4-3. FINANCIAL HARDSHIP EXEMPTION

SJMC section 10.32.225 provides that those persons for which compliance with the Gun Harm Reduction Ordinance would create a financial hardship are exempted from the ordinance. SJMC section 10.32.235 provides that the criteria by which a person can claim a financial hardship exemption shall be defined through regulations issued by the City Manager. An individual qualifies for financial hardship if their household income is at or below the Extremely Low Income threshold for Santa Clara County, adjusted for household size, according to the Area Median Income (AMI) calculations released annually by the California Department of Housing and Community Development (HCD). (The Extremely Low Income threshold is set at 30% of AMI.) HCD does not calculate the Extremely Low Income threshold for households of nine individuals or larger. For these households, the financial hardship standard shall be calculated by taking the difference between the threshold for households of eight individuals and households of seven individuals, multiplying the difference by the number of individuals in the household in excess of eight, and adding the product to the Extremely Low Income threshold for a household of eight individuals. To claim the financial hardship exemption, individuals must state their gross household income and the size of their household on the Attestation Form to show that they meet the hardship threshold, and sign the form under penalty of perjury. They must also attach a copy of their current Federal Income Tax Return (form 1040) to the Attestation Form. The Social Security number on the form 1040 should be redacted.

## PART V – ENFORCEMENT

## SECTION 5-1. ADMINISTRATIVE CITATIONS

Gun owners in San José found to be in violation of the Gun Harm Reduction Ordinance and who cannot show proof that they qualify for an exemption from the ordinance, as specified in Part IV of these regulations, will be subject to an administrative citation and associated fine, as specified in SJMC section 10.32.240.

**U.S. Constitution**

Amendment I

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

**California Constitution**

Article XIII C [Voter Approval for Local Tax Levies]

**SECTION 1.**  Definitions.  As used in this article:

(a) "General tax" means any tax imposed for general governmental purposes.

(b) "Local government" means any county, city, city and county, including a charter city or county, any special district, or any other local or regional governmental entity.

\*     \*     \*

(d) "Special tax" means any tax imposed for specific purposes, including a tax imposed for specific purposes, which is placed into a general fund.

(e) As used in this article, "tax" means any levy, charge, or exaction of any kind imposed by a local government, except the following:

(1) A charge imposed for a specific benefit conferred or privilege granted directly to the payor that is not provided to those not charged, and which does not exceed the reasonable costs to the local government of conferring the benefit or granting the privilege.

(2) A charge imposed for a specific government service or product provided directly to the payor that is not provided to those not charged, and which does not exceed the reasonable costs to the local government of providing the service or product.

(3) A charge imposed for the reasonable regulatory costs to a local government for issuing licenses and permits, performing investigations, inspections, and audits, enforcing agricultural marketing orders, and the administrative enforcement and adjudication thereof.

\*     \*     \*

The local government bears the burden of proving by a preponderance of the evidence that a levy, charge, or other exaction is not a tax, that the amount is no more than necessary to cover the reasonable costs of the governmental activity, and that the manner in which those costs are allocated to a payor bear a fair or

ADD-13

reasonable relationship to the payor's burdens on, or benefits received from, the governmental activity.

**SEC. 2.**  Local Government Tax Limitation. Notwithstanding any other provision of this Constitution:

(a) All taxes imposed by any local government shall be deemed to be either general taxes or special taxes. Special purpose districts or agencies, including school districts, shall have no power to levy general taxes.

(b) No local government may impose, extend, or increase any general tax unless and until that tax is submitted to the electorate and approved by a majority vote. A general tax shall not be deemed to have been increased if it is imposed at a rate not higher than the maximum rate so approved. The election required by this subdivision shall be consolidated with a regularly scheduled general election for members of the governing body of the local government, except in cases of emergency declared by a unanimous vote of the governing body.

(c) Any general tax imposed, extended, or increased, without voter approval, by any local government on or after January 1, 1995, and prior to the effective date of this article, shall continue to be imposed only if approved by a majority vote of the voters voting in an election on the issue of the imposition, which election shall be held within two years of the effective date of this article and in compliance with subdivision (b).

(d) No local government may impose, extend, or increase any special tax unless and until that tax is submitted to the electorate and approved by a two-thirds vote. A special tax shall not be deemed to have been increased if it is imposed at a rate not higher than the maximum rate so approved.